1 │ Benjamin P Cannon
2 │ Attorney in Propia Persona
   │ 1083 Vine St #215
3 │ Healdsburg, CA 95448
4 │ discovery@42usc1983.net

**FILED**
APR 1 5 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**RECEIVED**
2011 APR 15 P 4: 09
RICHARD W. WIEKING
U.S. DISTRICT COURT
OF CALIFORNIA

5 │ **IN THE UNITED STATES DISTRICT COURT**

6 │ **NORTHERN DISTRICT OF CALIFORNIA**

7 │ BENJAMIN PHILIP CANNON, an individual,

Case No: CV11 0651 EMC

8 │
9 │        Plaintiff,
   │     vs.

**FIRST AMMENDED COMPLAINT FOR DAMAGES, REQUEST FOR RELIEF, AND DEMAND FOR JURY TRIAL**

10 │ COUNTY OF SONOMA, a municipal entity,
11 │ CITY OF PETALUMA, a municipal entity,
   │ CITY OF SONOMA, a municipal entity,
12 │ PETALUMA POLICE DEPARTMENT,
13 │ SONOMA POLICE DEPARTMENT,
   │ SONOMA COUNTY SHERRIF'S
14 │ DEPARTMENT, SONOMA COUNTY
   │ DISTRICT ATTORNEY'S OFFICE.
15 │

42 U.S.C. §§ 1983, 1988

16 │ DAN FISH, JOHN SILVA, BERT WALKER,
   │ JASON JUCUTAN
17 │
18 │ BILL COGBILL, JIM NAUGLE, CHRIS
   │ SPALLINO, ERIC HAUFLER, JESSE
19 │ HANSHEW, SHAWN MURPHY, PERRY
   │ SPARKMAN,
20 │
21 │ JAMES CASEY, BOB WANER, STEPHEN
   │ PASSALACQUA.
22 │
23 │ SORINNE ARDELANU, CHRISTINE
   │ BARNETT individuals.
24 │ THE SONOMA SUN, a newspaper.

25 │ DOES 1-10, individuals or municipalities.

26 │        Defendants.

27 │

28 │

First Amended Complaint For Damages - Page 1 of 1

1

## COMPLAINT

2      COME NOW Plaintiff, BENJAMIN PHILIP CANNON, requests a jury trial and

3  complains of Defendants as follows:

4

5                                   **THE PARTIES**

6

7  1.  The following is true at all times relevant.

8  2.  Plaintiff BENJAMIN PHILIP CANNON is a natural person and a resident of the City of

9      Petaluma, County of Sonoma, State of California, and a citizen of the United States of

10     America.

11 3.  Defendant CITY OF PETALUMA is a municipality duly organized under the laws of the

12     State of California.  Defendant PETALUMA POLICE DEPARTMENT was a branch or

13     agency of the City.

14 4.  Defendant CITY OF SONOMA is a municipality duly organized under the laws of the State

15     of California. Defendant SONOMA POLICE DEPARTMENT was a branch or agency of the

16     City.

17 5.  Defendant COUNTY OF SONOMA is a municipality duly organized under the laws of the

18     State of California. Defendant SONOMA COUNTY SHERRIFF'S DEPARTMENT and

19     SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE are branches or agents of the

20     County.

21 6.  Defendant DAN FISH is the Chief of Police for the City of Petaluma, and as such, he is

22     responsible for formulating, executing, and administering the City of Petaluma's laws,

23     customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws,

24     customs, and practices against plaintiff, and is in fact presently enforcing the challenged

25     laws, customs, and practices against Plaintiff.  Defendant FISH is sued in both his individual

26     and official capacities.

27 7.  Defendants JOHN SILVA, BERT WALKER, and JASON JUCUTAN are Officers for the

28     City of Petaluma, and as such, are responsible for formulating, executing, and administering

First Amended Complaint For Damages - Page 2 of 2

the City of Petaluma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and are in fact presently enforcing the challenged laws, customs, and practices against Plaintiff. Defendants SILVA, WALKER, and JUCUTAN are sued in both their individual and official capacities.

8. Defendant BILL COGBILL is the Sherriff for the county of County of Sonoma, and as such, he is responsible for formulating, executing, and administering the County of Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiff. Defendant COGBILL is sued in both his individual and official capacities.

9. Defendants JAMES NAUGLE, CHRIS SPALLINO, ERIC HAUFLER, JESSE HANSHEW, SHAWN MURPHY, and PERRY SPARKMAN, are Detectives with the County of Sonoma's Sherriff's Department, and as such, are responsible for executing and administering the County of Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and are in fact presently enforcing the challenged laws, customs, and practices against plaintiff. Defendants NAUGLE, SPALLINO, HAUFLER, HANSHEW, MURPHY, SPARKMAN and are sued in both their individual and official capacities.

10. Defendant JAMES CASEY, and BOB WANER, are Deputy District Attorneys with the County of Sonoma, and as such, are responsible for executing and administering the County of Sonoma's laws, customs, practices, and policies at issue in this lawsuit; have enforced the challenged laws, customs, and practices against plaintiff, and are in fact presently enforcing the challenged laws, customs, and practices against plaintiff. Defendants CASEY and WANER are sued in both their individual and official capacities.

11. Defendant STEPHEN PASSALACQUA, is the District Attorney with the County of Sonoma, and as such, he is responsible for executing and administering the County of Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing

1     the challenged laws, customs, and practices against plaintiff. Defendant PASSALACQUA is

2     sued in both his individual and official capacity.

3   12. Defendants SORINNE ARDELANU, is a resident of California, and was an agent, servant

4     and/or employees of the other named Defendants, and was acting at all times with full

5     knowledge and consent, either expressed or implied, of their principal and/or employer and

6     each of the other named Defendants and each of the Defendants had approved or ratified the

7     actions of the other Defendants thereby making the currently named defendants herein liable

8     for the acts and/or omissions of their agents, servants and/or employees.

9   13. These Defendants, and DOES 1-10, were agents, servants and employees of each other, of

10     the other named Defendants, and were acting at all times within the full course and scope of

11     their agency and employment, with the full knowledge and consent, either expressed or

12     implied, of their principal and/or employer and each of the other named Defendants and each

13     of the Defendants had approved or ratified the actions of the other Defendants thereby

14     making the currently named defendants herein liable for the acts and/or omissions of their

15     agents, servants and/or employees.

16   14. Defendant CHRISTINE BARNETT is a resident of California.

17

18                          **JURISDICTION AND VENUE**

19   15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

20     1343, 2201, 2202 and 42 U.S.C. § 1983.

21   16. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

22   17. This Court has personal jurisdiction over the Defendants because the false and defamatory

23     statements made by Defendants were published in the California, and the Plaintiff-target of

24     the defamatory statements was and remains a resident of California.

25                            **STATEMENT OF FACTS**

26   18. Defendant SORINNE ARDELANU works or worked for the owner of Plaintiff Benjamin P

27     Cannon's primary business competitor, and was previously attempting to contact Cannon

28     regarding both his business. Later, Defendant attempted to destroy evidence of these

1  contacts by changing her profile name and then deleting and re-creating her Facebook
2  account as "Anna Kara".

3  19. On or about January 6, 2010, ARDELANU sent Cannon a "Facebook Comment" on January
4  6, 2010 stating "Where's my invite? I want to play :(" (See **Exhibit A-1 "Facebook**
5  **Comment")** Around the same time, ARDELANU sent "Facebook Chat" messages to
6  Cannon, congratulating him on launching his new technology startup company, competing
7  with ARDELANU's employer's previous ventures.

8  20. On or about February 1, 2010, ARDELANU contacted Rachel Francis, a friend of Cannon's.
9  In this Message, ARDELANU claims "I got this email from a very close friend and client of
10  mine about Ben Cannon" that friend is "My cop friend" (and JOHN DOE 1 in this
11  Complaint.) ARDELANU subsequently accused Cannon of stalking her *"for years now"*, of
12  possession of an illegal Assault Rifle, and stated that she feared Cannon would pull a woman
13  over under the guise of being a Law Enforcement Officer. ARDELANU postulates: "The
14  typical situation is a single woman driving at night on a lonely stretch of road." (See **Exhibit**
15  **A-2 "1st email.)**

16  21. On or about February 9, 2010, Cannon sent a Cease and Desist letter to ARDELANU,
17  requesting that she refrain from further defamatory statements.

18  *22.* Undeterred, On or about February 14, 2010, ARDELANU sent an e-mail to Allyson
19  Glasscock and an unspecified number of other third-parties stating: *"He actually pulled*
20  *someone over this time."* (See Exhibit **A-3 "OMG Guys")**

21  *23.* On or about Feb 19, ARDELANU admits "I have several friends in law
22  enforcement/investigation that do background/criminal checks for me" (See **Exhibit A-**
23  **4 "Email to Counsel")**

24  24. On or about April 23, ARDELANU admits "I physically went to the Petaluma police
25  department" and "I have had access to the detective [NAUGLE] that worked on this latest
26  case [The Feb 11 Arrest] It was explained to me that the victim was solid..." (See **Exhibit A-**
27  **5 "Email to Art Chambers")**

28  *25.* On or about January 28, 2010, Defendant JOHN SILVA of the PETALUMA POLICE

1  DEPARTMENT circulated a memo accusing Cannon of being a Police Impersonator.

2  ARDELANU, in collaboration with Defendant JOHN DOE 1, a Police Officer in an

3  unknown agency, obtained and distributed that memo to many of Cannon's Facebook friends

4  despite being advised that it was untrue. ARDELANU later admitted in email dated April 23

5  to illegally accessing law enforcement records to do this and to 'run background checks' (See

6  **Exhibit A-4 "Email to Counsel"**) as well as colluding with Defendant NAUGLE of the

7  Sonoma County Sherriff's Department.

8

9  26. On or about January 27, 2010, Cannon was stopped by Petaluma Police Department Officers

10  for an alleged equipment violation.

11  27. Plaintiff operates a technology company competing with PayPal, a licensed Engineering

12  Civil Construction firm, and is a member of the American Society of Civil Engineers.

13  28. During the traffic stop, Petaluma Police Officers SILVA, WALKER, and JUCUTAN

14  searched Cannon's BMW 750iL Sedan and found a legally stored firearm in the trunk, a

15  HAM radio, Yellow LED strobe lights on all 4 corners required for his civil construction

16  business, and other lawful items including a power inverter for remote operation of laptop

17  computers.

18  29. All of this equipment is legal, and was returned to Plaintiff during the course of the stop.

19  30. Following this stop, Defendant SILVA created and published a memo describing Cannon

20  factually as a "police impersonator" and describing the legal items found in his car as "police

21  equipment" during the January 27th stop. (See **Exhibit A-3 "OMG guys"**)

22  31. On February 4, 2010, it is alleged in a report compiled by defendant HAUFLER that

23  Christine Barnett, a resident of the town of Santa Rosa, was <u>a single woman driving at night</u>

24  <u>on remote Napa Road,</u> (note the similarity to ARDELANU's postulation, stated 3 days *prior*

25  to the date the incident was alleged to have occurred.) when she was stopped by a man

26  posing as a police officer driving a car with a single solid red light in its windscreen with a

27  "darker colored" hood. Barnett was able to leave the scene of the alleged stop and contacted

28  Defendant SONOMA POLICE DEPARTMENT law enforcement.

32. On February 4, 2010, Cannon was in Sacramento for the entire evening thru the next morning visiting a friend, Grant Early.  During that evening, Cannon used his credit card and to pay for a meal in Sacramento within 20 minutes of the time Ms. Barnett alleges to have been stopped in Sonoma.  Cannon also used his AT&T cellphone to make calls from the Sacramento area.

33. On February 11, Defendant JESSE HANSHAW claims to have interviewed Ms. Barnett, where she allegedly identified Cannon with "80 percent" certainty.

34. At 11:35 AM on February 11, 2010, Defendant Nagle obtained a search warrant  expressly prohibiting a "night search" of Cannon's residence. (See **Exhibit "B" Warrant**)

35. On February 11, 2010, at approximately 10:30 PM Cannon was parking his vehicle on a public road near his residence when he was stopped by Defendant(s) DOES 2 and 3, who identified themselves as Sherriff's Deputies.  Defendant was immediately arrested for "PC236".  The deputies transported hauled Cannon off in handcuffs infront of his family, then Cannon to Sonoma County Jail, where he was kept awake until 4am, interviewed by NAUGLE, and then jailed until he could post a \$10,000 bail.

36. Cannon continues to this day to suffer emotional distress and nightmares of this incident.

37. Meanwhile, On the same night, commencing approximately 11PM and into the early morning hours of February 12th, Sonoma County Sheriff's Deputies NAUGLE, SPARKMAN, MURPHY, and HANSHEW forced Cannon's family to wait outside shivering in their pajamas while he raided and searched the house, in spite of the fact the search warrant prohibited a "night search."

38. During the search, Cannon's plasma TV was smashed, and his house was ransacked, requiring weeks of cleanup.  His neighbors also witnessed the search, causing damage to his reputation and standing in the community.  A Detective was overheard saying "They're watching - we better be careful we don't get sued."

39. On or about February 12, 2011, immediately following the search, Sheriff's deputies left a "notice of service" admitting the search was performed at Cannon's residence pursuant to the warrant.

First Amended Complaint For Damages - Page 7 of 7

40. Nothing found in the searches was present in the Complaint against Cannon.

41. All things seized during the raid were legal, and were eventually released to Plaintiff.

42. Defendant was transported to Sonoma County Sherriff's Office, where he was interrogated. Cannon advised the officers that he "Wanted a letter of apology, this arrest canceled, my record expunged, and to be released immediately. Failing that, I wish to speak with my attorney."

43. Despite Cannon's profession of innocence, NAUGLE elected to charge Cannon and he was booked at approximately 5am.

44. On February 18th, under sealed court order reviewed by Defendant SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE, Defendant SONOMA COUNTY SHERRIF'S DEPARTMENT obtained exculpatory cellphone records of Cannon's AT&T phone showing he was in Sacramento the evening of February 4th, 2010.

45. On February 23rd, Cannon's counsel sent a Discovery letter to defendant SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE, and was directed to appear March 09 for a viewing. (see **Exhibit "C" Letter to DA"**)

46. On March 09, 2010, Cannon's counsel asked for, and was denied access to, the alleged video lineup used to incriminate Cannon. Defendant NAUGLE failed to disclose his possession of any exculpatory cell records showing Cannon was in Sacramento.

47. Defendants SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE, and NAUGLE, and others, intended to bury the exculpatory cell phone records, as they obtained them under Confidential court order.

48. On or about March 10, 2010, as part of an Affirmative Defense, Cannon obtained a copy of the complaint that included a date of the alleged incident, and Cannon's counsel attempted to Subpoena his phone records, which would prove he was in Sacramento at the time. AT&T informed Cannon's counsel that the records had already been delivered to Sonoma County Sherriff. (See **Exhibit D "Letter to NAUGLE"**) NAUGLE admitted over the phone to Chambers that he knowingly possessed and withheld the phone records, stating that they only proved Cannons' phone was in Sacramento. However, when asked what NAUGLE did with

1    his duty to investigate further, NAUGLE admitted he did nothing. When asked why he did
2    not turn over the evidence exonerating Cannon as exculpatory as was his duty, he said
3    nothing.

4    49. Defendants' prosecuted Cannon, and Cannon subpoenaed' witnesses, provided the phone
5    records exonerating himself, as well as signed credit card charge receipts proving he was in
6    Sacramento.

7    50. On or about March 16, 2010 Charges against Mr. Cannon were dismissed.

8    51. Cannon filed a Petition for and obtained a Factual Finding of Innocence. (see **Exhibit E**
9    **"Factual Innocence."**)

10   52. On April 6, 2010, Defendant JAMES PATRICK CASEY file a response in the form of an
11   Opposition to Cannons petition, admitting Cannon's residence was search pursuant to the
12   warrant issue by Judge, and falsely claiming it was obtained at 11:35PM, The April 6, 2010
13   Opposition filed by prosecutors is based on Defendants NAGLE and HAUFLER.

14   53. The opposition describes the eye-witness identification procedures of Cannon by Christine
15   Burnett used by Sheriff's Deputies.

16   54. The Opposition also falsely claims Defendant Naugle authored the search warrant at "11:35
17   pm" the night of February 11, 2010, which would imply night-time searches were
18   permissible. In-fact, the Warrant explicitly states twice that night search is barred. The time
19   stamp explicitly states "11:35AM" and the letters "AM" are circled, and PM is crossed-thru.

20   55. The April 6, 2010 Opposition admits "The search warrant was served" on Cannon's
21   residence. (for all of the above, see **Exhibit E "Factual Innocence."**)

22

23   56. Defendant JAMES PATRICK CASEY of the District Attorney's office, not only knowingly
24   prosecuted Cannon despite the presence of evidence exonerating him, but further proceeded
25   to oppose his factual finding even after the evidence and proof of it's concealment was
26   entered into the record by Plaintiff and Plaintiff's witnesses.

27   57. At all times material hereto, Defendants were acting under the color of state law.

28   58. At all times material hereto, the Defendants were acting as police officers for the Petaluma

1    Police Department, the Sonoma Police Department, and the Sonoma County Sherriff's office,
2    the Sonoma County District Attorney's office, the City of Petaluma, the City of Sonoma, and
3    the County of Sonoma, or as agents thereof.

4    59. At all times material hereto, Defendants were acting in concert with each other.

5    60. Defendants were made aware of (or were already aware of) Cannon' business opportunities,
6    but failed to resolve the underlying false arrest arrest in a timely manner, causing Cannon to
7    lose his company's business opportunities with Gunbroker.com, his company's stock
8    offering, and other investors.

9

10   61. On or about February 13, 2010, without opportunity to comment, and in a clear attempt to
11   destroy Cannon's reputation, personal life, and business, Defendant CHRIS SPALLINO
12   published a press release (See **EXHIBIT F "Sherriff's Press Release"**) engineered to
13   express and imply Cannon's guilt, including publishing his home address. Over 50 press
14   agencies picked up the story. Defendant SONOMA SUN published it as factual (See
15   **Exhibit G "Sonoma Sun Release."**) and failed to publish a retraction even after Chambers
16   notified them in email of the factual innocence. These releases were read by hundreds of
17   thousands of viewers, and to this day continue to poison Plaintiff's name.

18   62. Due to the false arrest, Cannon was forced to resign from his position as Treasurer of The
19   Calguns Foundation, a 501(c)3 nonprofit corporation dedicated to civil rights and education.

20   63. Due to the publishing of his home address, and Defendant's actions and threats, Cannon's
21   residence became unsafe and he was forced to move. (See **Exhibit "H" Threats**.)

22   64. Due to the false arrest, the delay in determining whether to file any charges, and the delay in
23   issuing a factual finding of innocence, Cannon lost his contract with gunbroker.com and
24   other investors, nearly resulting in the near total collapse of his business.

25   65. On or about August 1, 2006, Sonoma County District Attorney BROOKE POWELL
26   HALSEY JR. [#142330] was found guilty by a Judge in the California State Bar Court of
27   "violate(ing) California law by withholding, prior to trial, impeaching evidence and evidence
28   favorable to the defense, committing acts of moral turpitude, and he improperly suppressed

First Amended Complaint For Damages - Page 10 of 10

1  evidence, made multiple misrepresentations to the court and sought to mislead a judge." (see:

2  http://members.calbar.ca.gov/fal/Member/Detail/142330 )

3  66. All exhibits are incorporated as though fully stated herein.

4

5  **COUNT I**
**Unlawful Unreasonable Search and Seizure**

6  **Brought under 42 U.S.C. §1983**

7

8  67. Paragraphs 1 through 65 are incorporated as though fully stated herein.

9  68. Defendants searched Plaintiff's home at night, in clear violation of the terms of the Search

10  Warrant.

11  69. Defendants acted with deliberate indifference to Plaintiff's rights, Search Warrant terms and

12  conditions, and without Probable Cause.

13  70. Defendants' actions violated Plaintiff's rights protected by the United States Constitution,

14  including the First, Fourth, Eighth, and Fourteenth Amendments.

15  71. Defendants' actions during the encounter violated Plaintiff's rights, including those protected

16  by Article 1, Sections 1, 2, and 13 of the California Constitution.

17

18  **COUNT II**
**False Arrest**

19  **Brought under 42 U.S.C. §1983**

20

21  72. Paragraphs 1 through 65 are incorporated as though fully stated herein.

22  73. Acting without probable cause, Defendants seized Plaintiff, arrested Plaintiff absent a

23  Warrant, searched Plaintiff, handcuffed him, disarmed him, harassed him, transported him to

24  the Sonoma County Jail, and held him until he posted his bail.

25  74. Defendants acted with deliberate indifference to Plaintiff's rights, their duties as

26  investigators, and without Probable Cause.

27  75. Defendants' actions violated Plaintiff's rights protected by the United States Constitution,

28  including the First, Fourth, Eighth, and Fourteenth Amendments.

76. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

77. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

**COUNT III**
**Failure to Properly Train & Supervise**
**Brought under 42 U.S.C. §1983**

78. Paragraphs 1 through 65 are incorporated as though fully stated herein.

79. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for Police Officers and Prosecutors in the departments necessary to educate the Police Officers and Prosecutors as to the Constitutional rights of defendants, to prevent the consistent and systematic use of improper searches, and to prevent the improper searches by officers.

80. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for Police Officers and Prosecutors in the departments necessary to educate the Officers and Prosecutors as to the Constitutional rights of defendants, to prevent the systematic withholding of evidence from criminal defendants' counsel.

81. Defendants failed to provide adequate training to police officers and Prosecutors that hold the power, authority, insignia, equipment and arms entrusted to them.

82. Said custom, practice, and policy included a failure to adequately investigate, supervise, and discipline offending Police Officers and Prosecutors, which fostered the custom, practice, and policy within the Sonoma County District Attorney's Office, and the Sonoma County Sheriffs Department, which resulted in the above pled facts.

83. Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

84. The failure to promulgate or maintain constitutionally adequate policies regarding training

1    was done with deliberate indifference to the right of Plaintiff and others in his position.

2    85. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

3    be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

4    was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

5    punitive damages.

6

7                                          **COUNT IV**

8                                    **Withholding Evidence**
                                 **Brought under 42 U.S.C. §1983**
9

10   86. Paragraphs 1 through 65 are incorporated as though fully stated herein.

11   87. Defendants deliberately and knowingly conspired to withhold evidence proving Plaintiff's

12   innocence, with the intent to harm Plaintiff and his business.

13   88. Defendants deliberately and knowingly conspired to prosecute Plaintiff, even knowing or

14   being informed he was innocent.

15   89. Defendants' actions violated Plaintiff's rights protected by the United States Constitution,

16   including the First, Fourth, Eighth, and Fourteenth Amendments.

17   90. Defendants' actions during the encounter violated Plaintiff's rights, including those protected

18   by Article 1, Sections 1, 2, and 13 of the California Constitution.

19   91. Defendants' actions during the encounter violated Plaintiff's rights protected by the United

20   States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

21   92. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

22   be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

23   was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

24   punitive damages.

25                                          **COUNT V**
26                                  **Malicious Prosecution**
                         **Brought under California State Substantive Law.**
27

28   93. Paragraphs 1 through 59 are incorporated as though fully stated herein.

                        First Amended Complaint For Damages - Page 13 of 13

94. Defendants have shown a pattern of, and have been sanctioned for, unlawfully withholding evidence favorable to the defense.

95. Defendants deliberately, knowingly, and repeatedly conspired to withhold evidence proving Plaintiff's innocence, with the intent to harm Plaintiff and his business.

96. Defendants deliberately and knowingly prosecuted Plaintiff, even knowing or being informed he was innocent.

97. Indeed Defendants only stopped prosecution when Plaintiff caught them and brought it all in front of a judge.

98. Defendants acted in concert with one another, as agents or employees of one another, and conspired together knowingly and willfully to prosecute a Factually Innocent man.

99. Defendants continued to oppose Plaintiff's Factual Innocence motion, even after they were caught concealing evidence in front of a judge.

100.    Defendants acted without probable cause, with a conscious disregard for the consequences, and with inadequate investigation and research.

101.    Defendants' actions violated Plaintiff's rights protected by the United States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

102.    Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

103.    Defendants' actions during the encounter violated Plaintiff's rights protected by the United States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

104.    As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## COUNT VI
### Defamation Per Se
### Brought under California State Substantive Law.

105.   Paragraphs 1 through 59 are incorporated as though fully stated herein.

106.   Defendants conspired to distribute a press release engineered to destroy Plaintiff's reputation, business, and home life.

107.   The Defendants have made and endorsed the making of statements to others that Benjamin Cannon committed the crimes alleged.  These statements are false and defamatory *per se*.

108.   The Defendants' statements harmed Plaintiff's reputation in the public, excited derogatory opinions against him, and caused the public and others to hold Plaintiff in contempt.  They also impute the commission of a crime and call into question Cannon's fitness to perform his business, and profession.

109.   Defendants statements were made to reporters, law enforcement agencies, newspapers and other public outlets and wire services (among other places and persons).  These statements were not privileged in any way.

110.   Given cannon's Factual Innocence, and given a judge's determination that evidence exonerating him was deliberately withheld, Defendants issued these statements with actual knowledge that such statements were false and in reckless disregard for their falsity.  In either case, Defendants issued these statements intending to harm Plaintiff.

111.   Defendants' actions during the encounter violated Plaintiff's rights protected by the United States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

112.   Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

113.   As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

### COUNT VII
### False light Invasion of Privacy

First Amended Complaint For Damages - Page 15 of 15

**Brought under California State Substantive Law.**

114. Paragraphs 1 through 59 are incorporated as though fully stated herein.

115. Defendants conspired to distribute a press release engineered to destroy Plaintiff's reputation, business, and home life.

116. The Defendants have made and endorsed the making of statements to others that Benjamin Cannon committed the crimes alleged. These statements are false, misleading, and highly offensive.

117. The Defendants' statements harmed Plaintiff's reputation in the public, excited derogatory opinions against him, and caused the public and others to hold Plaintiff in contempt. They also impute the commission of a crime and call into question Cannon's fitness to perform his business, and profession.

118. Defendants statements were made to reporters, law enforcement agencies, newspapers and other public outlets and wire services (among other places and persons). These statements were not privileged in any way.

119. Given cannon's Factual Innocence, and given a judge's determination that evidence exonerating him was deliberately withheld, Defendants issued these statements with actual knowledge that such statements were false and in reckless disregard for their falsity. In either case, Defendants issued these statements intending to harm Plaintiff.

120. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. Declaratory relief, including a declaration that Defendants violated Plaintiff's Constitutional rights, including his First, Fourth, Eighth, and Fourteenth Amendment rights, by (a) detaining him and seizing his person and his property without probable cause to believe that

First Amended Complaint For Damages - Page 16 of 16

1      he had committed a crime and (b) Searching his residence without probable cause and

2      without a warrant and (c) withholding evidence favorable to the defense, and (d) attempting

3      to mislead a judge;

4    2. Judgment against Defendants, jointly and severally, as follows;

5    3. Compensatory damages in the amount of $22,999.00;

6    4. General Business damages in the amount of $9,945,751.60;

7    5. Special Business damages in the amount of $100,000,000;

8    6. Other General or Special damages to be determined at trial;

9    7. Presumed damages based on, among other things, harm to Plaintiff's reputation, other

10     businesses, his position with nonprofits, emotional health, pain and suffering, and personal

11     life;

12    8. Punitive damages as the court sees fit;

13    9. Pre and post-judgment interest on all judgments;

14    10.Award Plaintiff costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

15     and;

16    11.Any other further relief as the Court deems just and appropriate to protect the peaceable

17     exercise or enjoyment of the right or rights secured.

18    12.For Defendant CHRISTINE BERNETTE only – Plaintiff seeks only an apology at this time,

19     excluding her of any other damages, and extends his wishes that the Authorities find the real

20     perpetrator who accosted her.

21

22    Date: April 14, 2011            Respectfully submitted, with apologies for lack of brevity.

23

24                        Benjamin P Cannon
                       Attorney In Propia Persona

25                        1083 Vine St #215
                       Healdsburg, CA 95448

26                        Email: discovery@42usc1983.net

27                        By:

28                        Benjamin P Cannon,
                       Attorney in pro-per

**Exhibits Table of Contents**

**Exhibit "A" Publications by Sorinne Ardelanu - Pages 1-4**

**Exhibit "B" Warrant - Pages 8-11**

**Exhibit "C" Letter to DA" - Page 12**

**Exhibit D "Letter to NAUGLE" - Page 13**

**Exhibit E "Factual Innocence" – Pages 14-62**

**Exhibit F "Sherrif's Press Release" – Pages 5**

**Exhibit G "Sonoma Sun Release" – Pages 6**

**Exhibit H "Threats" – Pages 7**

1

**EXHIBIT A**

2

**A-1 "Facebook Comment"**

3

Sorinne Ardeleanu commented on your photo:

4

"Where was my invite? I want to play. :( "

5

**A-2 "1st Email"**

6

Rachel sent you a message.

7

--------------------

8

Subject: from sorrinne

9

Message:

10

I got this email from a very close friend and client of mine about Ben Cannon. We have him as a
mutual friend so I want to make sure that you look out for yourself and any other friends that

11

may know him. This is for real and it's scary. :( One of my very close friends and clients emailed

12

me this a couple days ago as he knows Ben has been stalking me for a few years now.

13

"He was arrested for impersonating a Law Enforcement Officer. His BMW contained many of
the items that a cop car has, including flashing lights, bull horn, scanner, etc. Also, he has a

14

secret compartment in the car for an automatic assault rifle. According to the police flyer, he has

15

a long criminal record. I would stay far, very far away from this guy.

16

17

My cop friend said that there have been many instances of civilians pulling over other civilians
under the guise of being a LEO. The typical situation is a single woman driving at night on a

18

lonely stretch of road...."

19

What's scarier to me is that he just launched GunPal which gives him access to a lot of personal

20

information pertaining to people buying and selling guns. Be safe please.

21

«close-delete»

22

--------------------

23

**A-3 "OMG Guys"**

24

Date: Sun, 14 Feb 2010 22:25:43 -0800

25

From: sorinne@yahoo.com

Subject: OMG Guys!

26

To: sorinne@yahoo.com

27

Please Please be careful. This is his 2nd arrest in just over 2 weeks. He actually

28

pulled someone over this time. A 22 year old woman. If you have any female

EXHIBITS incorporated into COMPLAINT Page 1 of 62

1   friends that know him, please warn them to be cautious.

2   http://abclocal.go.com/kgo/story?section=news/local/north_bay&id=7276282

3   Looks like he's posted bail. http://fugitive.com/archives/18598

4

5

6   # RFI -- Police Impersonator

7   | Date: 1/28/2010 | Case #: 10-0475 | Author ID: 2509 |

8

9

10

11   Benjamin Cannon (10-09-1980)

On 01-27-2010, Petaluma Police Dept. stopped Benjamin Philip Cannon (10-09-1980) for equipment
violations. Cannon had a warrant for FTA. A search of his car revealed a legally stored handgun (FN
12   5.7x28 caliber, with tac light and ammo) in the trunk. The gun was taken for safekeeping, and
Cannon was transported on the warrant.

Cannon's car was set up with police equipment -- loudspeaker mounted under the front grill, strobes
13   in the front headlights, scanner, handcuffs, and a siren.

The vehicle is a 2001 silver BMW 730i four-door with distinctive and extensive gold sponsorship-
type decorations on the body -- CA personalized plate USCA01. At the time of the stop, the car had
14   no plates displayed. The police-type modifications are not visible upon casual inspection.

Cannon has an extensive criminal history and a previous arrest for impersonating a police officer. If
agencies have had reports of a police impersonator in their jurisdiction that matches this description,
15   please contact Officer John Silva, Petaluma Police Dept., 707-788-4372.

Benjamin Philip Cannon
WMA/29 DOB: 10-09-1980
16   BRN/BLU, 6'02", 185
OLN: B6654027 (valid class C)

17

18   | Petaluma Police Dept. - Officer John Silva |
| (707) 778-4372 |

19   Produced on Critical Reach System 10154 641. See www.criticalreach.org for more information on Critical Reach alerts.

20

21   **A-4 "Email to Allyson Glasscock"**
Date: Fri, 19 Feb 2010 18:25:45 -0800

22   From: sorinne@yahoo.com

23   Subject: Re: Cease & Desist
To: allysonglasscock@glasscockglasscockandmullins.com

24

25   Hi Allyson,

26   Thanks for the note and clarification. As I mentioned in my note on FB to you, I was only
27   looking out for you, because I thought we clicked on L4P and FB. I considered you a
"virtual friend" and I was trying to look out for you. I hope you realize now after Ben's 2nd
28   arrest involving an actual person, and not just equipment, that my intentions were 100%

1 sincere. Maybe my approach wasn't the best, but hey, you live and you learn. One of my
faults is that I'm always honest. Some times people don't believe me, but in the end it's their
2 loss.

3 I'm not familiar with anyone with the last name of Baine, nor did I ask anybody to contact
4 you on my behalf. I did have 1 friend run a background check on you, but he's my mentor
and I trust him 100%. Can you please forward any communications with this person
5 concerning me to me? I have several friends in law enforcement/investigation that do
6 background/criminal checks for me and I want to make sure that I have no reason to be
alarmed. I'd like to run a check on this individual.
7

8 Since all this news has come out about Ben, I have had friends forward me emails from him,
contacting them over the years asking about me and how to get closer to me. I'm a bit afraid
9 of him now as I consider him highly unstable. I'm actually heading out of town for a while
10 till all of this settles.

11 I definitely will not contact you again as I was mistaken in thinking that we could be friends
in real life when I come down to SoCal. Oh well. I apologize for disturbing you.
12

13 Respectfully,
Sorinne
14

15 ps. I'm attaching the ranger rover I saw in case you're curious, since you're an RR fan like
me. I've never seen one like this before.
16
                              **A-4 "Email to Art Chambers"**
17 --- On **Fri, 4/23/10, Sorinne Ardeleanu <_sorinne@yahoo.com_>** wrote:

18 From: Sorinne Ardeleanu <sorinne@yahoo.com>
19 Subject: Re: Ben Cannon
To: art@artchambers.com
20 Date: Friday, April 23, 2010, 1:05 PM

21 Good Afternoon Art,
22

23 Thanks for the message. I hope all is well with you. It's been a while. Not sure if you
remember me, but I believe we met when I was BMC a few years ago as well as possibly on
24 some exotic car drives.

25 You may be mistaken with the information provided to you by Ben. I forwarded a copy of a
26 flier from the Petaluma PD from an arrest that Ben had in January, to warn our mutual
friends to be careful of Ben since this was not his first time being arrested for impersonating
27 an officer (as per the flier created by the arresting officer). I physically went to the Petulama
28 police department to verify this arrest as well as to the Santa Rosa Courthouse to get a print
out of Ben's full criminal history in that county. You are welcome to do the same if you have

1   not already. I highly doubt the information that these 2 public institutions have provided me
    are false. This is all public information and available to anyone who wants it at no cost. I
2   have referred some people to Google Ben Cannon after his 2nd arrest less than 3 weeks
    later, but alas I cannot control what information is available on Google, especially with his
3   arrest in February that did make various news sources. I have had access to the detective that
4   worked on this latest case in which you represented him at the Santa Rosa Courthouse. It
    was explained to me that the victim was solid, but that Ben produced a restaurant receipt
5   that showed his signature; dated/timed in Sacramento when the crime allegedly took place
6   and Ben also produced cell phone records showing he was in the Sacramento area. Since the
    case was a misdemeanor the DA dropped it as there was not enough evidence to create
7   reasonable doubt in the jury's mind. I also understand that Ben 'lawyered up' and did not
8   give a statement when asked about the equipment in his car. This information from the
    detective I have not shared with anyone except for my boyfriend and you as I do not wish to
9   be involved in whatever trouble Ben gets into.

10  I have not shared anything that is not public information about Ben Cannon. My only goal
11  with sharing this public information is to protect our mutual friends from possible injury
    from Ben Cannon. This is an individual, due to his most recent run ins with the law coming
12  to light, I deem mentally unstable. I am requesting that he does not contact me anymore
13  with these intimidating legal threats. I feel that he is harassing me and if it doesn't stop I will
    notify the authorities. I am also fearful for my life because I do not know if this man knows
14  what is acceptable and legal behavior, as my boyfriend travels a lot for work and I am
15  frequently home alone. I understand he is concerned about his reputation for business
    reasons, but I currently hold in my possession 5 of his arrest records. Who knows what
16  other ones exist in other counties/states. I'm not a lawyer and it's not my area of expertise to
17  research criminals.. I truly have no further interest in hearing or seeing his name ever again. I
    simply cannot imagine a person being wrongfully arrested so many times. There has to be
18  validity to the arrests, especially considering they were made by different officers at different
19  locations. I have never been arrested in my life and we are the same age.

20  I imagine you are doing this as a favor for Ben, as it appears your specialty is labor &
21  personal injury. On that note, I'd like to present you with a great business opportunity. My
    boyfriend is a broker for a company that buys structured settlements. On average they pay
22  out about 20% higher than their closest competitors. Let me know if you'd like to learn
23  more. You would get a referral fee as well as commissions. I'm looking to partner with as
    many personal injury attorneys as possible, so if you have other colleagues that are interested
24  in learning more, I'll gladly put you in touch with my boyfriend. You might already be
25  acquainted as he was one of the investors in Club Sportiva and a fellow Ferrari owner as
    well.

26  Regards,

27  Sorinne

28

**EXHIBIT "F" Sherrif's Press Release**

1
2
3
4
5
6

***Petaluma man arrested for impersonating officer***
*Saturday, February 13, 2010*

7

*PETALUMA, CA -- A Petaluma man was arrested Thursday on suspicion of impersonating a police officer after he allegedly pulled over a female driver near Sonoma, the Sonoma County Sheriff's Office said.*

8
9

*The 22-year-old woman was driving on Napa Road around 11 p.m. Feb. 2 when she was pulled over by an unmarked vehicle with a red light, Lt. Chris Spallino said.*

10
11

*A man not wearing a uniform then flashed what appeared to be a badge and asked her for identification, Spallino said.*

12

*The woman became uncomfortable and asked the man to have a marked vehicle respond. The man then became uncomfortable and drove away and the woman called police, Spallino said.*

13
14

*Detectives from the sheriff's office's violent crimes unit identified 29-year-old **Benjamin Philip Cannon** as a suspect. After the woman identified him as the man who pulled her over, Cannon was placed under surveillance, Spallino said.*

15
16
17

*Cannon was arrested Thursday at his residence in the 1100 block of East Sunnyslope Road for impersonating a police officer and false imprisonment, Spallino said.*

18

*Detectives seized Cannon's silver 2001 BMW and found a police scanner, strobe light, handcuffs and a siren inside, Spallino said. Cannon was booked into the Sonoma County jail and has since posted $10,000 bail.*

19
20

*Spallino said the woman's request for a marked car may have deterred the suspect and prevented a more serious incident. He said motorists in a similar situation should consider acknowledging the police vehicle and pull over in a safe location.*

21
22
23

*Anyone who may have has a similar encounter is asked to call detective James Naugle at (707) 565-2185.*

24
25
26
27
28

1

## Exhibit "G" Sonoma Sun Release.

2

3

Is this interesting?                                              More News | Share | Comment | Close
Yes    No

4

**Compare your opinion with people in Sonoma County!**
Finish the survey to compare and share opinions with your neighbors.

5                                                              Sports Classifieds Obituaries † Directory

Archives

6    • El Sol de Sonoma
     • Sun Open Houses
7    • KSVY 91.3 Sonoma
     • Sonoma Now
     • SVTV 27
8

## Most Popular Stories

9
     • Academy Awards party
10   • Sonoma Film Festival announces 2010 lineup
     • Travel notes - recalling high school friendships
     • Newly spayed pup in pain
11   • Seeing is believing
     • UPDATED – Mother and daughter found dead in apartment
     • Contact Us
12   • Local artist selected for public art project
     • Paradigm shift
13   • How did it all go "Sideways"?

News | February 18, 2010 ⏎ Email This Post
14

## Fake cop busted for false imprisonment

15

**Staff Report**

16
A man who terrified a female driver by impersonating a police officer was arrested last week on charges including false imprisonment.
Benjamin Cannon, 29, of Petaluma, was identified by the 22-year-old victim as the man who subjected her to a late-night ordeal just east
17   of Sonoma.

The woman told police she driving westbound on Napa Road on Feb. 22. At about 11 p.m., she was pulled over by what she believed to
18   be an unmarked police vehicle – a darkly-painted car displaying a single red light. A man, dressed in dark clothes, approached her
     window and quickly flashed what appeared to be a badge. He asked to see her identification.

19   Unnerved by the suspicious circumstances, the woman refused to hand over her identification, and insisted a marked police car show up
     to confirm the validity of the stop. According to the victim, the man became uncomfortable, returned to his vehicle and drove away.

20   Cannon emerged as a suspect during the investigation by detectives from the violent crimes investigations unit. After the victim
     positively identified Cannon, Lt. Chris Spallino reported, Cannon was located and arrested at his residence in the 1100 block of East
21   Sunnyslope Road.

22

23

24

25

26

27

28

**Exhibit "H" Threats**

1  Brad Johnson. February 12, 2010 at 1:58pm Report

2  I don't believe we've been formerly introduced but I thought now would be an appropriate time to say hello.

3  As you may know, I'm Sorinne's boyfriend. I normally don't get involved in her relationships with

4  others in her life, she's her own person, but I'm a bit concerned about some of the things I've heard you purportedly say about her. Now, I'm not going to start throwing around threats

5  and/or begin insulting you but I'm aware of the situation surrounding your recent run in with the law on 1/28.

6

7  I'm writing to either a) give you the opportunity to explain yourself and justify the threats you've levied against her or b) to serve notice that I will not stand by and let you drag her name through the mud for the actions you've taken.

8

9  If you'd like to discuss this either via phone or face to face, let me know and we'll make arrangements.

10  Regards,

11  Brad

12

13  Between You and Tom Baine

14  February 14, 2010 at 10:10pm Report

15  Listen asswipe – If I EVER see you or your BMW anywhere near any woman

16  I know, you're going to have more to worry about than a goddamn pillow fight. And go ahead and sick your fake ass lawyer on me... what's she

17  going to do, review my lease?

18

19

20

21

22

23

24

25

26

27

28

Exhibit "B" Warrant

SW No.

STATE OF CALIFORNIA - COUNTY OF SONOMA

# SEARCH WARRANT AND AFFIDAVIT

# (AFFIDAVIT)



## DETECTIVE JAMES NAUGLE, SONOMA COUNTY SHERIFF'S DEPARTMENT,

swears under oath that the facts expressed by him/her in this Search Warrant and Affidavit and the attached and incorporated Statement of Probable Cause are true and that based thereon he/she has probable cause to believe and does believe that the property and/or persons described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

#1 357

_____ , NIGHT SEARCH REQUESTED: YES ( ) NO (X)
(Signature of Affiant)

Prepared with the assistance of or reviewed by:

REVIEWED ELECTRONICALLY By BOB WANER
Deputy District Attorney

# (SEARCH WARRANT)

### THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF,

**POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SONOMA.** Proof by Affidavit having been made before me by **DETECTIVE JAMES NAUGLE**, that there is Probable Cause to believe that the property and/or persons described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524, as indicated below by "X"(s) in that it:

_____    was stolen or embezzled

__X__    was used as the means of committing a felony

__X__    is possessed by a person with the intent to use it as a means of committing a public offense or
         is possessed by another to whom he/she may have delivered it for the purpose of concealing
         it or preventing its discovery

__X__    is evidence which tends to show that a felony has been committed or that a particular person
         has committed a felony

_____    tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3,
         has occurred or is occurring.

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

        1. ██████████████ Petaluma, more particularly described as a two story single family dwelling. The residence is situated on the north side of East Sunnyslope Road and the front door faces south. The house has wood siding and is painted beige with brown trim. The numbers ████ are posted in approximately 4 inch black numerals on the siding of the house to the left of the garage door. The numbers ████ are also posted on the curb in front of the residence, in approximately four inch black numerals on a white painted background. The north and the east sides of the property back up to ██████████

        Said search to include all rooms, attics, basements and other parts located within the aforementioned residence; the surrounding grounds and any storage areas, trash containers and outbuildings of any kind located thereon and specifically designated for the sole use of said residence.

        2. Any and all vehicles under the dominion or control of any and all tenants of the aforementioned residence or located on the cartilage of the property to include, but not be limited to the following:

        A. A silver 2001 BMW, bearing California license plate ████, and VIN ████████████████

**FOR THE FOLLOWING PROPERTY:**

1. Any and all police style equipment, to include but not be limited to, scanners, badges, handcuffs, ID's, lights, sirens, radios, decals, firearms, holsters and clothing with police logos or identification;

2. A dark colored hooded sweatshirt or jacket;

3. Articles of personal property tending to establish the identity of persons in control of any premises, storage areas or containers being searched, such as utility company receipts, rent receipts, charge card receipts, tax receipts, airplane tickets and other receipts, checks, deposit slips, savings account passbooks, passports, drivers licenses, vehicle registrations/titles, land titles, escrow papers, legal documents, Social Security cards, Food Stamps, Medi-Cal cards, insurance bills and/or policies, medical records, prescriptions and prescription bottles, doctor bills, hospital bills, canceled mail, addressed envelopes, photographs, weapons with serial numbers, keys and safes;

4. Computer equipment including processors, monitors, keyboards, terminals, hard disk drives, floppy disk drives, tape drives, floppy disks (diskettes), modems, cartridges, tapes, computer disks (CD-ROM's), compact disks (CD's), laser disks, video cassettes,

recording devices and players for any such recording media, and any information or data stored in a media capable of being read by a computer or other electronic data storage device;

5. Any and all electronic day planners located within said residence for any and all evidence pertaining to the impersonation of a police officer.

AND TO SEIZE IT IF FOUND and bring it forthwith before me, or this court, at the courthouse of this court. Any item seized during the lawful service of the search warrant shall be disposed of in accordance with law by the Sonoma County Sheriff's Department upon adjudication of the case. The officers serving the search warrant are hereby authorized, without necessity of further court order, to return seized items to any known victim(s) if such items have been photographically documented.

This Search Warrant and incorporated Affidavit were sworn to and subscribed before me this 11ᵗʰ day of __FEBRUARY__, 2010, at __11:35__ (A.M./P.M. Wherefore, I find Probable Cause for the issuance of this Search Warrant and do issue it.

_____, NIGHT SEARCH APPROVED: YES ( ) NO (✓)
(Signature of Magistrate)
Judge of the Superior Court, County of Sonoma
State of California

//
//
//
//
//
//
//
//
//
//
//
//
//
//



# Sonoma County
# Sheriff's Department

**BILL COGBILL**
*Sheriff-Coroner*

**GARY A. ZANOLINI**
*Assistant Sheriff*
*Law Enforcement Division*

**MICHAEL M. COSTA**
*Assistant Sheriff*
*Detention Division*

## SEARCH WARRANT: NOTICE OF SERVICE

CR#: _10 - 000189_

### TO WHOM IT MAY CONCERN:

1.  THE PREMISES AT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    HAVE BEEN SEARCHED BY PEACE OFFICERS WITH THE **SONOMA
    COUNTY SHERIFF'S DEPARTMENT** PURSUANT TO A SEARCH
    WARRANT ISSUED ON _2/11/10_, SIGNED BY THE HONORABLE
    _MARK TANSIL_, JUDGE OF THE SUPERIOR COURT.

2.  THE SEARCH WAS CONDUCTED ON _2/11/10_. A LIST OF THE
    PROPERTY SEIZED PURSUANT TO THE SEARCH WARRANT IS
    ATTACHED.

2.  PURSUANT TO CALIFORNIA PENAL CODE SECTIONS 1539 AND 1540,
    YOU MAY FILE A WRITTEN MOTION IN THE COURT OF THE
    AFOREMENTIONED JUDGE WHO ISSUED THE WARRANT, SEEKING
    THE RETURN OF PROPERTY SEIZED PURSUANT TO THIS WARRANT.

3.  IF YOU WISH FURTHER INFORMATION, YOU MAY CONTACT
    DETECTIVE _NAUGLE_ AT ▮▮▮▮▮▮▮▮.

PAGE 1 OF _1_

INV-006

**Administration Division**
2796 Ventura Avenue
Santa Rosa, CA 95403
707.565.2781

**Law Enforcement Division**
2796 Ventura Avenue
Santa Rosa, CA 95403
707.565.2511

**Detention Division**
2777 Ventura Avenue
Santa Rosa, CA 95403
707.565.1422

**Coroner**
3336 Chanate Road
Santa Rosa, CA 95404
707.565.5070

Exhibit "C" Letter to DA"

# LAW OFFICES OF ARTHUR CHAMBERS

2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

### VIA FAX ONLY

February 23, 2010

District Attorney, Sonoma County
600 Administration Drive, Room 212-3
Santa Rosa, California 95403

Re: People v. Cannon, Action number: SCR578412

Dear District Attorney:

Please be advised that I represent Mr. Cannon and will be appearing at the Preliminary Hearing, currently set for March 16, 2010, at 8:30 am. In order to prepare for that hearing please consider this letter my informal request for discovery in this matter.

1.  The above-named defendant hereby requests that you provide to this office at the address indicated above, copies of any and all relevant written or recorded statements of witnesses, including any statement, diagrams, or drawings made by the investigating and or arresting officer on any piece of paper or other medium of information storage.

2.  The above-named defendant hereby also requests that you provide to this office at the address indicated above, investigating officer's qualifications.

3.  The above-named defendant hereby also requests that you provide to this office at the address indicated above, all records of any identification procedures pertaining to the identification of the above named defendant.

4.  The preliminary hearing on this matter is set August 18, 2006.   Please advise, prior to March 1, 2010, if you will provide these items.

**ARTHUR C. CHAMBERS**
Attorney for Defendant

EXHIBITS incorporated into COMPLAINT  Page 12 of 62

## Exhibit D "Letter to NAUGLE"

# LAW OFFICES OF ARTHUR CHAMBERS
2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

### VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office, I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know, those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message, I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010, your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have discovered that Mr. Cannon's phone was being used in Sacramento at or about the time the alleged victim claimed the incident occurred. I've got to tell you that this information leaves a very bad taste in my mouth, because you had exculpating information which was not provided at the informal discovery. Indeed, his cell phone contained virtually the same information, which you had immediately when the search warrant was served. If there is any other such information I would like to have it as soon as possible.

I've left you my cell phone number. Please call me before the preliminary hearing, or have the individual at the District Attorney's office give me a call.

Very truly yours,

*Arthur Chambers*

Arthur Chambers
acc/hms

# Exhibit E "Factual Innocence"

1  | Arthur Chambers, SBN: 53282
   | 2095 Van Ness Avenue
2  | San Francisco, CA 94109
   | (415) 775-2144

**ENDORSED FILED**

**MAY 18 2010**

3. | Attorney for Defendant Benjamin Cannon
4  |

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

5
6
7

8       SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SONOMA

10 | THE PEOPLE OF THE STATE OF          Case No. SCR578412
   | CALIFORNIA
11 |        Plaintiffs,                  ORDER ON PETITION FOR FINDING
   |                                     OF FACTUAL INNOCENCE
12 | v.                                  DATE: April 19th, 2010
13 |
   | BENJAMIN CANNON,                    TIME: 1:30 pm
14 |
   |        Defendant.                   DEPT: 9
15 | _____/

16        This matter came upon Calendar pursuant to noticed motion and serve thereon pursuant

17   to statute, and a transfer from Department 4 of the above entitled court. Arthur Chambers

18   appeared on behalf of moving party, Benjamin Cannon, and James Casey appeared on behalf of

19   the People.

20        The court, after considering the evidence, and the oral argument presented, and find good

21   cause, finds:

22        1. The motion for a factual finding of innocence by defendant Benjamin Cannon is

23   granted.

24        2. The law enforcement agency (Sheriff of Sonoma County) and the department of

25   justice are to request the destruction of any records of the arrest which they have given to any

26   local, state, or federal agency, person or entity.

27   //

28

ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

Case4:11-cv-00651-PJH Document4 Filed04/15/11 Page33 of 80

Dated:

MAY 18 2010

René Auguste Chouteau
Auguste Chouteau

Renee Chouteau, Judge of
the Superior Court of the State of California
Judge of the Superior Court

Approved as to form:

James Casey, Deputy District Attorney
County of Sonoma

ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

EXHIBITS incorporated into COMPLAINT Page 15 of 62

**Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
San Francisco, CA 94109
(415) 775-2144

Attorney for Defendant Benjamin Cannon

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SONOMA**

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA**<br><br>Plaintiffs,<br><br>v.<br><br>**BENJAMIN CANNON,**<br><br>Defendant | Case No. SCR578412<br><br>**DECLARATION OF ARTHUR CHAMBERS IN SUPPORT OF PETITION FOR FINDING OF FACTUAL INNOCENCE**<br><br>DATE<br>TIME<br>DEPT |

I, Arthur Chambers declare that the following is true and correct under the laws of the State of California.

1. I am the [illegible] defendant in this matter [illegible] personal knowledge, and if called as a witness, I would be competent to testify to those facts contained herein.

2. I was retained to assist Mr. Cannon with this matter. To that end, I investigated the charges against him. During the course of my research, I subpoenaed the telephone records for my client from AT&T. I then received a telephone call from an individual at AT&T regarding that subpoena. During the course of that conversation I was advised that the Sonoma County Sheriff's office had subpoenaed those records in February of this year.

3. After that telephone call, I wrote Jim Naugle, a detective at the Sonoma County

Sheriff's Office. A true copy of that letter is attached hereto, labeled Exhibit 1 and incorporated as though fully set forth herein.

4. After I sent that letter to Detective Naugle, we had a telephone conversation. In that conversation, Detective Naugle admitted to me that he had obtained those records, and that the records indicated that Mr. Cannon was in Sacramento at 9 pm on the date of the incident, and that the records also indicated Mr. Cannon was also within Sacramento on the morning of February 5, the day after the incident.

5. After that conversation, Detective Naugle requested that we provide him with a copy of the receipt for dinner for Mr. Cannon. My office FAX'd that document to him on March 11, 2010. During the course of that conversation, I questioned Detective Naugle about the alleged victim's description of Mr. Cannon's vehicle. He advised me that she had generally described a similar car to Mr. Cannon. He drives a Silver 2001 BMW 7 series car.

6. Given the relative scarcity of that particular model of vehicle and color, I find it very difficult to imagine that anyone who had committed this alleged crime would have driven a similar car to Mr. Cannon. Based on the above, I have come to the conclusion that the alleged victim was not telling the truth to Detective Naugle. I advised the detective of that and asked him what he intended to do about this, but did not receive a response.

Dated: _2 / 5_ , 2010

_Arthur Chambers_
Arthur Chambers

CHAMBERS DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                                                        2

# EXHIBIT 1

# LAW OFFICES OF ARTHUR CHAMBERS

2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office, I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know, those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message, I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010, your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have discovered that Mr. Cannon's phone was being used in Sacramento at or about the time the alleged victim claimed the incident occurred. I've got to tell you that this information leaves a very bad taste in my mouth, because you had exculpating information which was not provided at the informal discovery. Indeed, his cell phone contained virtually the same information, which you had immediately when the search warrant was served. If there is any other such information I would like to have it as soon as possible.

I've left you my cell phone number. Please call me before the preliminary hearing, or have the individual at the District Attorney's office give me a call.

Very truly yours,

Arthur Chambers
acc/hms

TRANSMISSION VERIFICATION REPORT

TIME : 03/10/2010 18:34
NAME : LAW OFFICES
FAX : 4157751308
TEL : 4157752144
SER. # : BROL7J724486

| | |
|---|---|
| DATE, TIME | 03/10 18:34 |
| FAX NO./NAME | 17075652414 |
| DURATION | 00:00:17 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# LAW OFFICES OF ARTHUR CHAMBERS

2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144. Fax: 415-775-1308

VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office, I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know. those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message, I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010. your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have

1  **Arthur Chambers, SBN: 53282**
   2095 Van Ness Avenue
2  San Francisco. CA 94109
   (415) 775-2144
3
   Attorney for Defendant Benjamin Cannon
4

5

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **COUNTY OF SONOMA**

10  **THE PEOPLE OF THE STATE OF**          Case No. SCR578412
    **CALIFORNIA**
11                                          DECLARATION OF ARTHUR
            Plaintiffs.                     CHAMBERS IN SUPPORT OF EX PARTE
12                                          MOTION TO SET DATE AND TIME FOR
    v.                                      PETITION FOR FINDING OF FACTUAL
13                                          INNOCENCE
    **BENJAMIN CANNON,**
14                                          DATE:
            Defendant.                      TIME:
15  _____                DEPT:

16

17  I. Arthur Chambers declare that the following is true and correct under the laws of the State of

18  California.

19      1. I am the counsel for defendant in this matter. and this declaration is made from my own

20  personal knowledge. and if called as a witness. I would be competent to testify to those facts

21  contained herein.

22      2. Attached hereto. labeled exhibit 1 is a true and correct copy of the Petition for Finding

23  of Factual innocence.

24      3. I attempted to file that motion today for a hearing on April 12, 2010 in this department.

25  The procedure for setting these motions. I was told. is that we could appear on April 12, 2010

26  and have the date for the hearing set.

27      4. The charges against my client have been dismissed by the District Attorney because he

28
    CHAMBERS  DECLARATION IN SUPPORT OF MOTION EX PATE TO SET THE DATE OF HEARING ON
    THE  PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1   didn't commit the crime. A quick review of the motion should convice the court of Mr. Cannon's

2   innocence of the charges. He wasn't anywhere near the scene of the crime and has both

3   documentary and testimony to prove that contention.

4        5. Mr. Cannon had just set up a new business prior to his arrest. That business is called

5   "Paypal" and it provides banking services for individuals who desire to purchase things on the

6   internet.

7        6. As can be seen from the motion, the arrest of Mr. Cannon and subsequent publicity

8   were extensive. I am informed and believe that the publicity had gravely damaged Mr. Cannon's

9   new enterprise.

10       7. Unless this matter can be hear as soon as possible, Mr. Cannon runs the risk of losing

11  his entire enterprise. I am advised that the publicity has affected his banking connections, and

12  that, if he loses that connection would cause the immediate cessation of his business.

13       8. Mr. Cannon has invested most of his savings into that new business.

14       9. It is therefore requested that this court set the hearing for his motion at the earlier date

15  possible, but no later than April 12, 2010.

16       10. On this date, I advised the District Attorney of Sonoma County that I would be

17  making this motion, ex-parte. A copy of the letter I faxed to them is attached hereto, labeled

18  Exhibit 2 to this declaration.

19  Dated: _5/23_ , 2010

20

21                                          Arthur Chambers

22

23

24

25

26

27

28
    CHAMBERS DECLARATION IN SUPPORT OF MOTION EX PATE TO SET THE DATE OF HEARING ON
    THE PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

**Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
San Francisco, CA 94109
(415) 775-2144

Attorney for Defendant Benjamin Cannon

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SONOMA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA<br><br>Plaintiffs,<br><br>v.<br><br>**BENJAMIN CANNON,**<br><br>Defendant. | Case No. SCR57[illegible]412<br><br>DECLARATION OF BENJAMIN CANNON IN SUPPORT OF PETITION FOR FINDING OF FACTUAL INNOCENCE<br><br>DATE:<br>TIME:<br>DEPT: |

I, Benjamin Cannon declare that the following is true and correct under the laws of the State of California:

1. I am the defendant in this matter, and this declaration is made from my own personal knowledge, and if called as a witness I would be competent to testify to those facts contained herein. I am a resident of the County of Sonoma, and of the age of majority. I am in the business of providing various internet services to individuals and businesses, and I was formally in the contracting business.

2. On February [illegible], 2010, I was scheduled to meet with Grant Early, a friend and potential business associate. That meeting had been set prior to that date. Mr. Early lives in Sacramento, and I planned on having dinner with him on that date.

3. Attached hereto labeled Exhibit 1 is a true and correct copy of the text messages that I

1    exchanged with Mr. Early regarding meeting for dinner.

2         4. The times stated on the text messages accurate show my progress in getting to

3    Sacramento. I arrived in Sacramento at approximately 9 pm on the evening of February 4th,

4    2010. The trip from Sonoma to Sacramento took in excess of 1 and ½ hours.

5         5. Mr. Early and I planned on having dinner in Sacramento, and we did have dinner at

6    Restaurant Brewhouse, which is located in Sacramento. Attached hereto, labeled Exhibit 2 is a

7    true and correct copy of the receipt for dinner, which I paid for with my credit card. It should be

8    noted that the receipt indicates we finished dinner at 10:46 pm that evening. We remained in the

9    restaurant for a few minutes after my signing of the check.

10        6. After dinner, I spent the night at Mr. Early's house, and didn't leave until the morning

11   at which time I drove back to Sonoma County.

12        7. I did not accost the alleged victim. I did not stop the alleged victim. I do not know the

13   alleged victim. I did not do any of the acts alleged in the complaint on file herein.

14        8. After my arrest, the local newspaper printed an article about the allegations.  Attached

15   hereto, labeled Exhibit 3 is a true and correct copy of the article that has appeared about my

16   arrest. Attached hereto, labeled Exhibit 4 is a true and correct copy of the Sonoma County

17   Sheriff's department's press release regarding my arrest. This press release is still on their

18   website as of March 17, 2010 days after they decided not to prosecute me for these alleged acts.

19        9. To this day I have been harassed, people have stopped doing business with me, and

20   various defamatory statements are being made about me by people on the internet. Despite the

21   dismissal of the charges, the Sonoma County Sheriff continues to post the allegations and

22   statements about me on their website, long after the District Attorney has decided that they did

23   not wish to prosecute me for this matter, probably because they realized that I didn't do the crime

24   I was accused of.

25        9. I am prepared to testify to the above at any hearing of this matter.

26        10. I am informed and believe, and thereon allege that Mr. Early is also prepared to testify

27   to the above facts, and that he will sign a declaration to that effect. Additionally, I am informed

28

CANNON DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                                                  2

1   and believe that the Sheriff's department has admitted that they subpoenaed my telephone

2   records which substantiated the fact that I was in Sacramento at the time of the alleged

3   occurrence.

4   Dated: _March 17_, 2010

5

6                                                      Benjamin Cannon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CANNON DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                                         3

# EXHIBIT 1

EXHIBITS incorporated into COMPLAINT  Page 26 of 62

Dude I hate to do this but could I reschegule for tomorow? Still jb the middle of something here

Tomorrow works fine. Bonnie gets home around 7:30 so we can go out after that.

Sounds great man, sorry again.

Is everything still looking good for your trip up?

Yep buit how about vu?

~~check with the who about~~
tomorrow if you need me
to

No tonite works, I'll call
you when Im on the road -
gonna be a bit though.

Cool.

ETA?

Only left 30min ago,
address?

3848 Bilsted way,
Sacramento, CA

Over an hour I'm fine to

3848 Bilsted way,
Sacramento, CA

Over an hour I'm fine to
drive but if you want to
meet in the middle lmk

Where are you now?

80 past 12

You are hauling ass! It
would be easier for you to
just come here. We have
a guest room if you would
like to crash and head out
tomorrow morning.

You are hauling ass!  It would be easier for you to just come here. We have a guest room if you would like to crash and head out tomorrow morning.

Sounds like a plan sir!

You get lost?

Almost there

Hey add your
grant.early@GUNPAL.net
address to your gp
account so we can make it

# EXHIBIT 2

Feb 23 2010 12:26AM   F   S Natomas          91′ 570-1334          p.1

Dat e 02.04.10
Time: 22:48
CCAuth
Swiped POS
Trans ID: 337
Batch #: 477
Sequence #: 337
Processor Paymentech CreditCard
User C287
Card type visa
Card #: xxxxxxxxxxx5737
Approval: 060860
Amount 54.62
Tip 8.00
Total 62.92

0613
Server: CHRISTY 2B R (0287)          Reg:409
02/04/10 22:46, Swiped   T: 312 Term: 1

BJ's RESTAURANT BREWHOUSE
3531 N. FREEWAY BLVD.
SACRAMENTO, CA 95834
(916)570-1327
MERCHANT #:

CARD TYPE      ACCOUNT NUMBER
VISA           X00000000005737
Name: BENJAMIN P CANNON
00 TRANSACTION APPROVED
AUTHORIZATION #: 060830
Reference: 02040100006°3
TRANS TYPE: Credit Card SALE  A

**CHECK:**          **54.92**

**TIP:**            _8.00_

**TOTAL:**          _62.92_

CARDHOLDER WILL PAY CARD ISSUER ABOVE
AMOUNT PURSUANT TO CARDHOLDER AGREEMENT
PLEASE LEAVE SIGNED COPY FOR SERVER

# EXHIBIT 3



Search:

GO

- 

- 
- 
- 
- 
- 

## Most Popular Stories

- 
- 
- 
- 
- 
- 
- 
- 
- 

February 18, 2010

# Fake cop busted for false imprisonment

**Staff Report**

A man who terrified a female driver by impersonating a police officer was arrested last week on charges including false imprisonment. Benjamin Cannon, 29, of Petaluma, was identified by the 22-year-old victim as the man who subjected her to a late-night ordeal just east of Sonoma

The woman told police she driving westbound on Napa Road on Feb. 22. At about 11 p.m., she was pulled over by what she believed to be an unmarked police vehicle - a darkly-painted car displaying a single red light. A man, dressed in dark clothes, approached her window and quickly flashed what appeared to be a badge. He asked to see her identification.

Unnerved by the suspicious circumstances, the woman refused to hand over her identification, and insisted a marked police car show up to confirm the validity of the stop. According to the victim, the man became uncomfortable, returned to his vehicle and drove away.

EXHIBITS incorporated into COMPLAINT Page 34 of 62

Fake cop busted for false imprisonment - Sonoma Valley Sun

Cannon emerged as a suspect during the investigation by detectives from the violent crimes investigations unit. After the victim positively identified Cannon, Lt. Chris Spallino reported, Cannon was located and arrested at his residence in the 1100 block of East Sunnyslope Road.

A warranted search of Cannon's vehicle – a silver 2001 BMW, revealed a police scanner, strobe light, handcuffs and a siren.
Cannon was booked into the Sonoma County Main Adult Detention Facility. His bail was set at $10,000.
The victim's request for a marked police vehicle may have deterred the suspect and prevented a more serious incident, Spallino stated. He advises motorists in similar circumstances consider acknowledging the police vehicle and proceeding to a safe area to pull over.

Detectives are asking anyone who may have had a similar encounter or anyone with information regarding this case to please contact Detective James Naugle at 565.2185

**Share and Enjoy:**

318 views

the **red** grape

**529 First Street West**
**Sonoma, CA 95476**
**Lunch and Dinner**
**Open 11:30 am Daily**
**Dine-in or Carry out**          996-4103

EXHIBITS incorporated into COMPLAINT  Page 35 of 62

Fake cop busted for false imprisonment : Sonoma Valley Sun





687 West Napa Street, Sonoma
707-996-2141
www.sonomachevy.com

Copyright © 2008

# EXHIBIT 4

Sonoma County Sheriff's Department Pressroom

---

## SHERIFF'S OFFICE PRESS RELEASES AND NEWS MEDIA COVERAGE

### SUBSCRIBE TO OUR FEED



---

### SONOMA COUNTY SHERIFF'S PRESS RELEASES

#### What is RSS?

RSS content can be read using software called an "RSS reader". News "feeds" or an "aggregator". The user subscribes to a feed by entering the feed's link into the reader or by clicking an RSS icon in a browser that initiates the subscription process. The reader checks the user's subscribed feeds regularly for new content, downloading any updates that it finds.

**Petaluma Man Arrested For Impersonating a Peace Officer**



**Sheriff's Office**
**County of Sonoma**
2796 Ventura Avenue
Santa Rosa, CA 95403
(707) 565-2700
www.sonomasheriff.org

**Bill Cogbill**
Sheriff-Coroner


**Thoughts or Comments?**
Do you have comments or a problem viewing or reading, contacting the Sonoma County Sheriff's Department

#### Press Release

On February 11, 2010, detectives from the Sonoma County Sheriff's Office arrested Benham H. Philip Cannon, age 29 of Petaluma, for impersonating a peace officer and false imprisonment.

On February 2, 2010, the Sheriff's Office was contacted by the 22 year-old victim. The victim reported that at about 10:00 P.M., she was traveling westbound Napa Road, just east of Sonoma. The victim said she was pulled over by what she believed to be an unmarked police vehicle that was displaying a red light. After she pulled over, she was contacted by a man wearing plain clothes. The man quickly flashed what appeared to be a badge and asked her for her identification.

The victim felt uncomfortable giving the man her identification, so she asked him to have a marked police vehicle respond. According to the victim, the man became uncomfortable, returned to his vehicle and drove away. The victim then contacted law enforcement.

Detectives from the Violent Crimes Investigations Unit developed Cannon as a possible suspect. After the victim positively identified Cannon as the suspect, detectives began a surveillance on him. Cannon was located and arrested at his residence in the 1100 block of East Sunnyslope Road.

Detectives conducted search of his residence and vehicle pursuant to a search warrant. When detectives searched Cannon's vehicle, a silver 2002 BMW, they located a police scanner, spotlight, handcuffs, and a siren.

Cannon was booked into the Sonoma County Main Adult Detention Facility. His bail was set at $10,000.

The victim's request for a marked police vehicle may have deterred the suspect and prevented a more serious incident. Motorists who find themselves in similar circumstances should consider acknowledging the police vehicle and proceeding to a safe area to pull over.

Detectives are asking anyone who may have had a similar encounter, or anyone with information regarding this case to please contact Detective James Naugle at 707-565-2145.

For further information please contact Lt. Chris Spallino at 707-565-2185.

Prepared by.

EXHIBITS incorporated into COMPLAINT Page 38 of 62

Lt. Chris Scalinc
Investigations Bureau
Case #SO 10-0000189

Posted on Feb Fri 2010

**HEADLINES**

Six arrested during probation search posted on Mar Sat 2010
Home Invasion robbery attempt victim stabbed posted on Mar Fri 2010
Gang Fight in Roseland Area posted on Mar Fri 2010
Theft of Aircraft posted on Mar Fri 2010
Suspect Flees Deputy and Leaves Children Behind posted on Mar Thu 2010
Home Invasion Robbery posted on Mar Thu 2010
Burglary suspect caught in Graton posted on Feb Thu 2010
Update Sonoma Murder/Suicide posted on Feb Mon 2010
Fisherman drowns after fall into ocean, friend rescued from rocks posted on Feb Sat 2010
Suspicious Death in Sonoma posted on Feb Fri 2010
Missing person in Healdsburg found posted on Feb Thu 2010
Missing person in Healdsburg posted on Feb Thu 2010
Subject dies in vehicle accident during pursuit posted on Feb Wed 2010
PRELIMINARY AUTOPSY RESULTS FOR TAKU SAKASHITA posted on Feb Tue 2010
Henry 1 rescue posted on Feb Sun 2010
Santa Rosa Man Arrested for Multiple Sex Crimes posted on Feb Sat 2010
[illegible] posted on Feb Fri 2010
Detectives Arrest Suspected Child Molester posted on Feb Thu 2010
Parolee at large arrested - SWAT deployment posted on Feb Sat 2010
Armed Robbery on Santa Rosa Avenue posted on Feb Wed 2010
Vehicle Pursuit in Santa Rosa posted on Jan Thu 2010
FEMALE FOUND DECEASED IN CAZADERO CREEK posted on Jan Wed 2010
Inmate Death at Sonoma County Detention Facility posted on Jan Fri 2010
UPDATE ON MISSING PERSON - BRYAN SCOREY posted on Jan Thu 2010
Petaluma Murder Update posted on Jan Tue 2010
Subject wielding a pole subdued by deputies posted on Jan Thu 2010
Sonoma County Escapee Back in Custody posted on Dec Mon 2009
Windsor Death Investigation posted on Dec Mon 2009
Sonoma Valley Concentrated Cannabis Lab Investigation posted on Dec Thu 2009
Two suspects arrested in Sonoma burglary, vehicle recovered posted on Dec Wed 2009
Residential Burglary in Sonoma posted on Dec Tue 2009
Names of [illegible] released posted on Nov Sat [illegible]
Man Murdered in South Santa Rosa posted on Nov Sat 2009
Three Youths rescued from cliff on the Sonoma Coast posted on Nov Fri 2009
Methamphetamine Dealer Arrested in Santa Rosa posted on Nov Wed 2009
Sheriff's helicopter crew [illegible] from the surf then rescued two men from being swept into ocean posted on Nov Sun 2009
Ab diver rescued from surf by Sheriff's helicopter Henry 1 posted on Nov Sat 2009
WEST COUNTY SEXUAL ASSAULT posted on Nov Tue 2009
Sonoma Police Catch 3 suspects in Stolen Vehicle posted on Nov Tue 2009
Windsor Traffic Collision posted on Nov Thu 2009
Man Arrested after Bizarre Behavior on Greyhound Bus posted on Nov Fri 2009
Suspect Identified in Cloverdale Murder posted on Oct Sat 2009
Man and dog rescued by Henry 1 helicopter crew at Bodega Head posted on Oct Sat 2009
Homicide Investigation north of Cloverdale posted on Oct Fri 2009
Fourth Arrest Made in Home Invasion Robbery posted on Oct Thu 2009
Traffic stop leads to arrest for concealed pistol posted on Oct Thu 2009
Lost Runner Shared [illegible] posted on Oct Sun 2009
Injured Lost Hiker and his Dog Found posted on Oct Sun 2009
Home Invasion Robbery posted on Oct Fri 2009
Injured Annadel mountain biker rescued by Sheriff's helicopter crew posted on Sep Mon 2009
Inmate [illegible] Preliminary Autopsy Results posted on Sep Mon 2009
Inmate Death at North County Detention Facility posted on Sep Fri 2009
Prostitution Sting posted on Sep Fri 2009
Two arrested for theft of marijuana posted on Sep Fri 2009
Lake Sonoma DUI [illegible] Results posted on Sep Sun 2009
Windsor Juvenile arrested for explosive devices posted on Sep Thu 2009
Suspicious Fires in Sonoma posted on Sep Wed 2009
Windsor Arrest posted on Aug Thu 2009
Sheriff Marine Unit Recovers Stolen Boat on the Sonoma Coast posted on Aug Thu 2009
Drowning at Dubrava Beach posted on Aug Sun 2009
[illegible] Shooting Suspect Arrested After Standoff posted on Aug Sun 2009
Deputy attacked by Pit bull posted on Aug Fri 2009
Bank Robbery at Exchange Bank in Santa Rosa posted on Aug Thu 2009
Attempted kidnapping in Forestville posted on Aug Thu 2009
Stabbing in Roseland posted on Jul Fri 2009
National Night Out posted on Jul Fri 2009
Update on Evidence in the 2004 Jenner Double Murder Case posted on Jul Thu 2009
Marijuana eradication leads to arrests posted on Jul Wed 2009
Parental abduction posted on Jul Tue 2009
Attempted Rape Arrest In Larkfield posted on Jul Tue 2009
Update on Jenner Case Person of Interest posted on Jul Mon 2009
Two arrested for kidnap and sexual assault posted on Jul Fri 2009
Robbery at the Fast and Easy Market posted on Jul Thu 2009
National Night Out - Sonoma Plaza posted on Jul Wed 2009
Latest Arrest in the Murder of Michael van Tinteren posted on Jul Fri 2009
Henry 1 helicopter - Salmon Creek Beach rescue posted on Jul Fri 2009
Sheriff's helicopter aids in woman's rescue posted on Jul Sat 2009
Windsor Murder Update - Preliminary Autopsy Results posted on Jul Fri 2009
Arrest in Windsor Homicide Investigation posted on Jul Thu 2009
Death Investigation posted on Jul Thu 2009

Update on Suspect's Name in Guerneville Murder - posted on 3u Wed 2006
Guerneville Murder Update - Preliminary Autopsy Results posted on Jun Tue, 2009
Guerneville Murder Investigation 'Arrest' posted on Jun Mon 2009
Death Investigation on Orchard Avenue, Guerneville posted on Jun Sat 2009
City of Sonoma Police Explorers take first place posted on Jun Fri 2009
Shemman's Three posted on Jun Thu 2009
911 robbery ... stabbing suspect attempted second robbery in the Sonoma valley posted on Jun Thu 2009
911 clerk stabbed in late night robbery posted on Jun Mon 2009
suspect arrested with sawed off shotgun posted on May Thu 2009
Motorcycle strikes skateboarder in Sonoma posted on May Wed 2009
Lost toddler in old female being reunited missing posted on May Sat 2009
National Peace Officers Memorial Week posted on May Mar 2009
Suspected homicide in Sonoma valley posted on May Sun 2009
Marijuana eradication leads to arrests posted on May Mon 2009
Windsor Traffic Division posted on May Fri 2009
Update on April 28th Sexual Assault Arrest posted on Apr Thu 2009
Arrest Made in Cases of Roadside Attacks posted on Apr Wed 2009
Helicopter crew handles medical emergency and rescue at Fort Ross Reef posted on Apr Sun 2009
Family rescued from burning boat posted on Apr Sun 2009
Woman injured accosted on West County roadway posted on Apr Sat 2009
Python Road stabbing UPDATE posted on Apr Fri 2009
Double Stabbing in Fulton posted on Apr Fri 2009
Sonoma ... valley home Invasion Robbery posted on Apr Tue 2009
Deputies find caged cat fish and man in the water posted on Apr Sun 2009
Burglarized home leads to Woman's Arrest posted on Apr Fri 2009
National Public Safety Dispatchers Week posted on Apr Mon 2009
Innocent exposure suspect arrested now arson posted on Apr Mon 2009
Former Sonoma valley soccer coach arrested posted on Apr Sun 2009
Helicopter rescues adults and toddler from sinking boat posted on Apr Thu 2009
Update on North Bay Bank Robbery posted on Apr Thu 2009
Sonoma valley Auto Burglary suspect arrested posted on Apr Thu 2009
Diver rescued and airlifted to hospital in opening day posted on Apr Wed 2009
Valley home Invasion Robbery posted on Mar Tue 2009
Two Arrested in Double Stabbing posted on Mar Sun 2009
Burglary suspect arrested posted on Mar Sun 2009
Double Stabbing posted on Mar 2009
Sheriff's helicopter rescues man on blind bluff posted on Mar Sat 2009
Update on Windsor Bank Robbery posted on Mar Wed 2009
Helicopter crew recovers two hikers stranded on cliff posted on Mar Mon 2009
Marijuana arrest posted on Mar Wed 2009
Windsor Bank Robbery reports posted on Mar Tue 2009
Suspects in knifing released in Calistoga Bar - Winter Creek Bar multiple incidents posted on Mar Tue 2009
9.4 rental, secret compartment in ice chest drugs found posted on Mar Fri 2009
Arson Determines Arrest Made in Sebastopol Medicare Grow Operation posted on Feb Thu 2009
Numerous suspects arrested during one of more fighting operation posted on Mar Fri 2009
Alerted we saw arrested in driver car posted on Mar Fri 2009
Thief arrested in Santa Rosa posted on Mar Thu 2009
Windsor Sheriff's Suspect Identified posted on Mar Tue 2009
Windsor shooting posted on Mar Mon 2009
Men arrested in Burglaries and burglary in Forestville posted on Feb Sat 2009
Two Arrested in Santa Rosa Robbery Update posted on Feb Sat 2009
Falling Tree strikes Forestville residents posted on Feb Sun 2009
System Governor posted on Feb Thu 2009
Fire arrested posted on Feb Wed 2009
Man arrested after bloody and vehicle home posted on Feb Fri 2009
Guerneville assault suspect at large posted on Feb Wed 2009
Residents Autopsy Findings - Juan Chavez Sanchez posted on Jan Wed 2009
Suspects via Press Release Tower posted on Jan Thu 2009
Arrest in Mountain view Assault posted on Jan 2009
Repeat DUI offender posted on Jan 2009

## SONOMA COUNTY SHERIFF'S OFFICE IN THE NEWS

EXHIBITS incorporated into COMPLAINT Page 40 of 62

Home

| ABOUT US | PUBLIC RESOURCES | COMMUNITY OUTREACH | STAFF VOLUNTEERS | LINKS | CONTACT |
|---|---|---|---|---|---|
| Overview | 911 | Law Industries & Aid | Volunteers in Policing | County Departments and Resources | Locations |
| History & Info | Crime Prevention | Starting Point | Explorer Programs | State and Federal Resources | Phone Directory |
| Sheriff Bill Cogbill | Crime Analysis | Courage to Live | If Chaplaincy | Local Law Enforcement Agencies | Citizen's Concerns |
| Command Staff | Sex Registrants | Citizens Academy | Search & Rescue | | |
| Law Enforcement DIV | Business Contact Form | Emerg | Interns | State & Federal Law Enforcement Agencies | |
| Detention Div | City Watch | Special Olympics | | Crime Stoppers | |
| Administration DIV | Domestic Violence | Tip-a-Cop | | Drugfreeworld.org | |
| Contract Cities | Report Request | Torch Run | | | |
| Family 1 | To Report a Crime | License Private Run | | | |
| Civil Bureau | Site Map | Baker to Vegas Run | | | |
| Central Information | About This Site | Sheriff's 25 | | | |

EXHIBITS incorporated into COMPLAINT Page 41 of 62

1 **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 San Francisco, CA 94109
(415) 775-2144
3
Attorney for Defendant Benjamin Cannon
4

5

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF SONOMA**

10 **THE PEOPLE OF THE STATE OF**      Case No. SCR578412
**CALIFORNIA**
11      DECLARATION OF GRANT EARLY IN
Plaintiffs,      SUPPORT OF PETITION FOR FINDING
12      OF FACTUAL INNOCENCE
v.
13      DATE
**BENJAMIN CANNON,**      TIME
14      DEPT
Defendant.
15

16

17 I, Grant Early, declare that the following is true and correct under the laws of the State of

18 California.

19      1. I am an individual residing in Sacramento, California, where I reside with my wife. I

20 am a business associate and friend of defendant in this matter, and this declaration is made from

21 my own personal knowledge, and if called as a witness, I would be competent to testify to those

22 facts contained herein.

23      2. I was to meet with Mr. Cannon on February 4th, 2010 to discuss business. We had

24 planned that meeting for several days prior to that meeting. I have reviewed the text messages

25 attached to Mr. Cannon's declaration and they are an accurate copy of our text messages. The

26 times contained on them is accurate according to my recollection.

27      3. I was with Mr. Cannon from approximately 9:15 am on February 4, 2010 until after

28
EARLY DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT      1

1  11:00 pm while we had drinks and dinner in Sacramento. Mr. Cannon paid for our meal and
2  drinks.

3      4. After dinner, Mr. Cannon came to my house and spent the evening there, since he did
4  not wish to drive home.

5      5. I am prepared to appear in court and testify as to the above facts.

6  Dated: March 17, 2010

7

8                                                          Grant Early

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   EARLY DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
   DEFENDANT                                           2

1 **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 San Francisco, CA 94109
(415) 775-2144
3
Attorney for Defendant Benjaimin Cannon
4

RECEIVED

5 SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA
6
**MAR 2 3 2010**
7
By_____
8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF SONOMA**

10 **THE PEOPLE OF THE STATE OF**          Case No. SCR 578412
**CALIFORNIA**
11                                      PETITION FOR FINDING OF FACTUAL
     Plaintiffs,                        INNOCENCE
12
   v.                                   DATE:
13                                      TIME:
   **Benjamin CANNON,**                  DEPT:
14
       Defendant.
15

16

17 TO THE DISTRICT ATTORNEY OF THE COUNTY OF SONOMA:

18        TAKE NOTE that on April   , 2010, defendant Benjamin Cannon will Petition under

19 Penal Code § 851.8 for an finding of factual innocence of the charges of violation of Penal Code

20 § 146a(b) and Penal Code § 236 set forth in the Felony Complaint filed herein.

21        After Defendant's arrest an accusatory pleading was filed in the above-entitled criminal

22 action, but the criminal proceedings were dismissed without conviction. Petitioner requests that

23 the court hold a hearing pursuant to Penal Code §851.8 to find that no reasonable cause exists to

24 believe that petitioner committed the offences for which the arrest was made and that petition is

25 factually innocent of those charges.

26        This Petition will be based upon the declarations filed herewith, the evidence to be

27 introduced at the time of the hearing, and such other and further evidence and law as the court

28 may consider at the time of the hearing.

   PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1  Wherefore Petitioner prays for:

2  1. an order that finds that Petitioner is factually innocent of the charges for which the arrest was

3  made an d the court issue a written declaration, pursuant to Penal Code § 851.8 to petitioner

4  which states that it is the determination of this court that petitioner is factually innocent of those

5  charges and petition is exonerated.

6  2. That the Sonoma County Sheriff's office, a law enforcement agency having jurisdiction over

7  the offense, the Department of Justice, and any other law enforcement Agency which participated

8  in petitioner's arrest shall seal the records of petitioner's arrest for 3 years from the date of the

9  arrest, subject to any legal process which may arise from any subsequent civil action, and

10  thereafter destroy these records.

11  3. The law enforcement agency having jurisdiction over this offense and the Department of

12  Justice shall request the destruction of any records of the arrest which they have given to any

13  local, state or federal agency, person or entity.

14  4. Any documentation of these arrest records contained to investigative police reports shall bear

15  the notation "EXONERATED" whenever reference is made to the Petitioner/

16  Dated: _5/7 3_____, 2010

17

18                                                    _____
                                                     Attorney for Defendant

19

20                    **MEMORANDUM OF POINTS AND AUTHORITIES**

21         The information contained in this case was gleaned from the Felony Complaint filed in this

22  matter, police report. That Complaint alleged that defendant Benjamin Cannon, on February 4th,

23  2010 violated the personal liberty of Christine Burnett by falsely representing himself to be a police

24  officer. The alleged acts were alleged to have been committed in Sonoma County at 11:00 pm on that

25  date.

26  **STATEMENT OF FACTS**

27         These facts were gleaned from a review of the Felony Complaint and discussions with the

28

PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1   arresting officer in addition to reviewing the Sonoma County Sheriff's press release in this matter.

2          The people alleged that defendant Benjamin Cannon, on the 4th of February of 2010 arrested,
3   detained and threatened to arrest and detained a person and intimidated a person and searched a
4   person, building and other property of a person and obtained money, property and another thing of
5   value. The people further alleged that defendant Benjamin Cannon violated the personal liberty of
6   Christine Burnett, and that violation was effected by violence, menace, fraud and deceit.

7          However, the defendant was not present in the County of Sonoma at the particular time the
8   alleged violations were alleged to have occurred. Defendant is informed and believes and thereon
9   alleges that the agents of the prosecuting entity, the Sonoma County Sheriff was well aware that
10  Plaintiff was not within the County of Sonoma at the time of the alleged acts took place. Plaintiff
11  was located in Sacramento County having dinner with a friend at the time of the alleged incident,
12  and his cellular telephone records, his credit card receipts, and the friend all substantiated his
13  location at the time of the alleged acts. Indeed, The Sonoma County Sheriff had subpoenaed the
14  cellular records, and knew that he was in route to Sacramento County the evening of the 4th, yet took
15  no actions necessary to verify the story of the alleged victim, who accurately described defendant's
16  vehicle. In short, it appears that a crime was indeed committed, i.e., the alleged victim told a false
17  story to the Sheriff's personnel, and they, although they knew that defendant was not present in
18  Sonoma County at the alleged time, arrested him, took possession of his property, put out a press
19  release on their website, and provided false information to various news sources, which ended up
20  being published, all to Mr. Cannon's detriment.

21         The above facts are supported by the Declarations of Benjamin Cannon, Arthur Chambers,
22  and Grant Farly, and the exhibit attached there in support of this petition.

23  **ARGUMENT**

24  In any case where a person has been arrested, and an accusatory pleading filed, but where no
25  conviction has occurred, the defendant may, at any time after dismissal of the action, petition the
26  court that dismissed the action for a finding that the defendant is factually innocent of the charges
27  for which the arrest was made. Penal Code § 581.8(c). In this instance, it is clear that there is no way
28  that the defendant could have committed a crime since he was having dinner at a restaurant in

PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1  Sacramento some 12 minutes before the alleged act occurred in Sonoma. Unless he had discovered
2  the Star Trek version of a transporter, it would be physically impossible for him to have been in the
3  area to commit the acts alleged.

4      More importantly, because the alleged victim described his car, it appears that this was some
5  sort of set up by either her alone, or by her and the Sheriff's department. It is interesting to note that
6  she has not been charged with any crime in this instance, where it is apparent that she provided false
7  information to the charging authorities.

8  **CONCLUSION**

9      Defendant should be found factually innocent in this matter. Pursuant to the above quoted
10 section, defendant requests that the court order the law enforcement agency and the department of
11 justice to request the destruction of any records of the arrest which they have given to any local,
12 state, or federal agency, person or entity. Because defendant intends to pursue various civil remedies
13 for these acts, he does not request that the Sheriff's records of his arrest be destroyed, rather that they
14 be sealed, subject to discovery in the civil actions which will be filed.

15
16 Dated: _____ 2. 23 _____ , 2010
17
18                                          _____
19                                          Attorney for Defendant
20
21
22
23
24
25
26
27
28
   PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1 | **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 | San Francisco, CA 94109
(415) 775-2144
3 |
Attorney for Defendant Benjamin Cannon
4 |
5 |
6 |
7 |
8 | ### SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | ### COUNTY OF SONOMA
10 | **THE PEOPLE OF THE STATE OF CALIFORNIA**      Case No. SCR 578412
11 |
12 |      Plaintiffs,      REPLY BRIEF IN SUPPORT OF PETITION FOR FINDING OF FACTUAL INNOCENCE
13 | v.
14 | **BENJAMIN CANNON,**      DATE: April 19, 2010<br>TIME: 1:30 PM<br>DEPT: 4
15 |      Defendant.
                /
16 |
17 | Comes now moving party, Defendant Benjamin Cannon, and responds to the People's opposition
18 | to Petition for a finding of Factual Innocence Pursuant to Penal Code 851.8.
19 | **PROCEDURAL ISSUES**
20 | 1. **The "Opposition to Petition" contains no facts.**
21 |      The opposition filed by the District Attorney contains not a single fact upon which they
22 | base their opposition. The Opposition contains no declaration under penalty of perjury, contains
23 | no request for Judicial Notice, nor any other accepted means of providing the court with any
24 | factual basis for their allegations. Based upon those facts, the Opposition should be stricken from
25 | the record. California Rules of Court, 3.1306(a) provides:
26 | "Evidence received at a law and motion hearing must be by declaration for request for judicial
27 | notice without testimony or cross examination, unless the court orders otherwise for good cause
28 | shown."

REPLY                           1

**2. Even if you take the Opposition's "facts" at face value, it does not provide a basis for denying the motion.**

The gist of the opposition is that sometime in the past, they contend that Mr. Cannon did something similar to the crime that they arrested him, but declined to prosecute, that Mr. Cannon had perfectly legal material in his car which might have been similar to the items alleged in the complaint, and that he could have been in Sonoma at the time of the occurrence.

The District Attorney, in it's opposition, provide no facts to show that Mr. Cannon did indeed commit any of the acts alleged in the criminal complaint filed against him. To review the alleged facts in which they contend the petition should not be granted: A statement that he was arrested sometime in 1999 and charged with a similar act. Mr. Cannon had perfectly legal materials within his home and vehicle when arrested.. Beyond those two contentions they provide no facts or evidence that he did indeed commit the alleged crime, other than saying that he could have been in Sonoma County. In their opposition, the District Attorney admits Mr. Cannon was not convicted of the prior alleged similar crime, they admit they found no further evidence of any commission of such crime, and they admit that whatever materials they found with their search were legally owned by him. Indeed they returned all the materials they took from him. In short, they provide not a scintilla of facts to show that indeed Mr. Cannon did any of those things. Had they asked him, before they arrested and handcuffed him, he would have provided a cogent and valid explanation for each and every item they contend shows that he the alleged perpetrator of this act (if indeed those acts occurred).

The District Attorney admits that their "witness" was unable to affirmatively identify Mr. Cannon as the person who allegedly committed that crime. The alleged victim allegedly was 80% sure it was Mr. Cannon, after being shown a photo line up, the quality of which has not been disclosed to defense counsel. Despite a request to review the evidence defense counsel was never supplied with any information regarding the photo lineup. The District Attorney, perhaps unknowing admitted that the vehicle description made by the witness was not that of Mr. Cannon's vehicle (his car does not have the hood of his vehicle painted another color as described in the alleged opposition to the motion. The car will be present at the hearing for the

REPLY                                                    2

1   Petition, and the court may observe or have a court employee observe the car at that time). In

2   short, this Opposition appears to be flawed in more respects than just procedurally in that it

3   utterly fails to provide any basis to contend that Mr. Cannon had anything to do with this

4   incident, if indeed the incident had occurred.

5          The final defect in the Opposition is that it fails to account for the witness (Grant Early)

6   who was present with Mr. Cannon at the time the acts allegedly occurred and who filed a

7   declaration under penalty of perjury stating exactly that. They had dinner together in Sacramento,

8   Mr. Cannon spent the night at Mr. Early's residence. Indeed the District Attorney, prior to filing

9   the opposition, knew that Mr. Cannon was in Sacramento the morning after the alleged incident

10  because they had subpoenaed the ATT records showing he made calls from his phone early in the

11  am the following day from Sacramento.

12         In short, the People knew Mr. Cannon was not present in Sonoma at the time of the

13  alleged acts, they knew he was having dinner at a restaurant in Sacramento at the time of the

14  alleged incident, they knew their alleged witness could not identify him (80% provides for a

15  reasonable doubt with just about any jury), knew that he used his telephone at a time in

16  Sacramento that made it almost impossible for him to have gotten back to Sonoma, and knew

17  that the vehicle description of the alleged perpetrator wasn't the same as Mr. Cannon's vehicle.

18  Based upon the above, the court is urged to grant the petition.

19         I, Arthur Chambers declare that the factual statements contained herein are true under

20  penalty of perjury, under the laws of the State of California, and that if called as a witness I could

21  be competent to testify thereto.

22  Dated: April 12, 2010

23

24                                                          Attorney for Defendant

25

26

27

28

REPLY                                      3

STEPHAN R. PASSALACQUA, SBN 138293
District Attorney, County of Sonoma
2  Hall of Justice, Room 212-J
600 Administration Drive
3  Santa Rosa, CA  95403
(707) 565-2311
4
JAMES PATRICK CASEY, SBN 95727
5  Deputy District Attorney

6  Attorney for the People

**ENDORSED FILED**

APR 0 8 2010

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

7

8  ### SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA

9  THE PEOPLE OF THE STATE OF
CALIFORNIA,

10              Plaintiff,

11
                    v.
12

13  BENJAMIN PHILIP CANNON,

14
                Defendant.
15
16

Court No.: SCR-578412

D.A. No.: DAR-614233

Courtroom No.: 4

PEOPLE'S OPPOSITION TO
PETITION FOR A FINDING
OF FACTUAL INNOCENCE
PURSUANT TO PENAL CODE
SECTION 851.8

Hrg: Apr. 19, 2010 at 1:30 p.m.

17                              I.

18                  ### STATEMENT OF THE CASE

19       Defendant BENJAMIN PHILIP CANNON (hereinafter "Defendant") was

20  charged by way of Felony Complaint in SCR-521521 with violation of Penal

21  Code § 146a(b), unlawful impersonation of a peace officer (Count I), and

22  violation of Penal Code § 236, false imprisonment (Count II).  The alleged

23  offenses occurred on February 4, 2010.

24       On March 16, 2010, the case against Defendant was dismissed on the

25  People's motion pursuant to Penal Code § 1385.

26       Defendant now moves the court for a finding of factual innocence

27  pursuant to Penal Code § 851.8.  The People oppose Defendant's motion in

28  its entirety and request that it be denied.

1

## II.

2

## STATEMENT OF THE FACTS

3      The following facts are informed from the Incident/Investigation
4   Reports of Officer Eric Haufler and Detective James Naugle of the Sonoma
5   Police Department.

6      On February 4, 2010, at approximately 11:00 p.m., Christina Burnett
7   was traveling westbound on Napa Road about five minutes east of the City of
8   Sonoma. As she was traveling towards Santa Rosa from Napa, she was
9   pulled over on Napa Road by what she thought was an unmarked police
10  vehicle. The vehicle displayed a single red light, but it was not a really dark
11  red light - Ms. Burnett stated that it was clear or faded. After she pulled
12  over, she was contacted by a man in plain clothes wearing a hooded
13  sweatshirt/jacket. The man quickly flashed what looked like a badge, and
14  asked for her identification. Ms. Burnett said the man refused to tell her the
15  reason for the stop. She told the man she did not feel comfortable giving
16  her ID to him and told him she would do so if he could have a marked unit
17  arrive on scene. The man became uncomfortable and walked back to his
18  car. As Ms. Burnett watched him walk back to his car, she noticed the hood
19  of the vehicle was a darker color than the rest of the vehicle. She then
20  observed the vehicle reversing away from her. The driver made a U-turn
21  and left the scene behind her. Ms. Burnett then drove to her home in Santa
22  Rosa, and told her boyfriend about the incident. He advised her to call the
23  police and report the incident.

24      Ms. Burnett said the red light appeared to be mounted in the upper left
25  hand corner of the vehicle. The lights did not flicker at all.

26      Ms. Burnett described the man as a white male, unknown age with
27  facial stubble and dark eyebrows. He was approximately 6'1" with a medium
28  build.

1    Officer Haufler had the Sonoma County Dispatch Center place a "Be On
2    Lookout/stop" and "False Imprisonment" on the vehicle and driver, to
3    surrounding agencies. Haufler later received information that a Petaluma
4    Police Officer stopped a BMW (CA Lic. No. USCA01) for equipment violation.
5    Upon inspecting the vehicle, it was found the BMW was set up with police
6    equipment. Petaluma Police also stated the driver (Defendant, Benjamin
7    Cannon) had a previous arrest for impersonating a Peace Officer on
8    September 3, 1999. This charge was dismissed upon conviction of another
9    charge. Detective Naugle attempted to obtain a copy of the 1999 case from
10   the Highway Patrol, but they advised that the case had been purged.

11   On February 11, 2010, Detective Naugle received a flier from the
12   Petaluma Police Department. This flier was providing information on a
13   possible police impersonator, identified as Defendant, Benjamin Cannon.
14   During a traffic stop, Petaluma Police Department Officer John Silva arrested
15   Defendant for outstanding warrants for his arrest. Officer Silva found that
16   Defendant's vehicle, a 2001, silver BMW with paper plates, was equipped
17   with various police type equipment. The vehicle had a loudspeaker in the
18   front grill, strobe lights in the headlights, a scanner, handcuffs, and a siren.
19   These modifications were not noticeable upon casual inspection.

20   The flier described Defendant as a white male, 6'2" tall and 185
21   pounds. The photo showed that he also had dark eyebrows. Because
22   Defendant's physical description matched that of the one reported by Ms.
23   Burnett, Detective Naugle decided to show her a photo line-up containing
24   Defendant's photo with five similar photos.

25   Detective Hanshew responded to Ms. Burnett's workplace and showed
26   her the photo line-up. After viewing the photos, Ms. Burnett pointed to the
27   photo of Defendant and told Detective Hanshew that was him. Ms. Burnett
28   said she was 80 percent sure it was Defendant.

1      Defendant listed two addresses on his driver's license. The mailing
2  address is listed as 1083 Vine Street, #215, Healdsburg, CA. This is post
3  office box type mail drop. The other address listed is 1117 East Sunnyslope
4  Road, Petaluma, CA. This is the same address Defendant listed for his
5  parents, and emergency contact, when he was arrested and booked by
6  Officer Silva on January 27, 2010.

7      Detective Naugle authored a search warrant for the 1117 East
8  Sunnyslope Road address. The warrant was signed by the Honorable Judge
9  Mark Tansil at approximately 11:35 p.m., on February 11, 2010. At
10  approximately 10:30 p.m., on February 11, 2010, Defendant was taken into
11  custody by Sonoma County Sheriff's Department Detectives.

12      The search warrant was served on the residence. Numerous firearms,
13  ammunition, and magazines were located. A finger print kit and dash-
14  mounted strobe light were found in Defendant's bedroom of the residence.
15  In Defendant's pickup truck (Lic. # CAL002) a dark hooded jacket was
16  found. In Defendant's BMW a scanner, strobe light, handcuffs, and a siren
17  were found.

18      Detective Naugle contacted Defendant at the Sheriff's Department
19  main office and advised him of his *Miranda* rights, which Defendant invoked.
20  Detective Naugle terminated the interview. Detective Naugle noted that
21  Defendant became upset with the charge of false imprisonment. Defendant
22  would look at the booking sheet and tap the charge with his finger.
23  Defendant told Detective Naugle that if it was false imprisonment, someone
24  would have to be imprisoned. Defendant never complained about or argued
25  the impersonating an officer charge.

26  //
27  //
28  //

## III.

## ARGUMENT

### A. DEFENDANT IS NOT ENTITLED TO A FINDING OF FACTUAL INNOCENCE.

California Penal Code § 851.8(c) allows a criminal defendant to petition the court for a factual innocence finding where an accusatory pleading has been filed but no conviction occurred. However, the fact that no conviction has occurred is not itself sufficient grounds for a factual innocence finding, and the former defendant bears the burden of demonstrating that no reasonable cause exists to believe the defendant committed the charged offenses. (*People v. Adair* (2003) 29 Cal.4th 895, 906.)

In *Adair* the jury found the defendant not guilty of the charged offenses. The defendant then petitioned the court for a finding of factual innocence, which the trial court granted. The People appealed, and the Court of Appeal reversed, holding that the trial court abused its discretion. The California Supreme Court affirmed, stating that, "The arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged. [Citation.]" (*Id.* at 904.) The Court emphasized that, "a finding of factual innocence '*shall not be made unless* the court finds that no reasonable cause exists to believe' the defendant committed the offense charged." (*Id.* at p. 906, original italics.)

The Court stated, "To be entitled to relief under section 851.8, '[t]he arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged." (*People v. Adair, supra,* 29

1 | Cal.4th at p. 904, citation omitted.)

2      "In determining at a court hearing whether factual innocence exists,
3 | the arrestee bears the preliminary burden of establishing that 'no reasonable
4 | cause exists to believe that [he] committed the offense. (Citation.)" (*People*
5 | *v. Matthews* (1992) 7 Cal.App.4th 1052, 1056.)

6      In the present case Defendant had numerous law enforcement items in
7 | his vehicle and residence including strobe lights, scanner, finger print kit,
8 | siren and handcuffs. A hooded sweatshirt was found in Defendant's pickup
9 | truck. This is the type of garment the impersonator was wearing when he
10 | stopped the Ms. Burnett. She described the impersonator as having dark
11 | eyebrows. Defendant also has dark eyebrows. Ms. Burnett described the
12 | man as being about 6'1" and medium build. Defendant is 6'2" and 185
13 | pounds.

14      Detective Naugle showed Ms. Burnett a photo lineup containing six
15 | photos, one of which was Defendant. Ms. Burnett picked out Defendant's
16 | picture from the lineup and said she was about 80 percent sure it was the
17 | man that stopped her on February 4, 2010.

18      Defendant has presented evidence of his cell phone and credit card
19 | records showing they were used in Sacramento at the same time Ms. Burnett
20 | was being stopped. But this only shows that the cell phone and credit card
21 | were in Sacramento. It does not prove Defendant was in Sacramento.

22      Furthermore, the signature at the bottom of Defendant's "Declaration
23 | of Benjamin Cannon in Support of Petition for Finding of Factual Innocence"
24 | and the signature on the credit card receipt from BJ's Restaurant Brewhouse
25 | do not match. (See Exhibit A attached.)

26      Additionally, Defendant made comments about the false imprisonment
27 | when viewing the booking sheet to the effect that a person would have to be
28 | imprisoned to be charged with that offense. Defendant never complained

1    about the charge for impersonating a peace officer.

2        Defendant has a prior arrest for impersonating a peace officer on

3    September 3, 1999.

4        Based on the above, there was sufficient cause to arrest Defendant for

5    the two offenses. Therefore, Defendant is not entitled to a finding of factual

6    innocence.

7                              **IV.**

8                     **CONCLUSION**

9        On the basis of the foregoing facts, statutes, and case law, the People

10    respectfully request that Petitioner's motion be denied at this time.

11

12    DATED: _41/06/10_            Respectfully submitted,

13                          STEPHAN R. PASSALACQUA, District Attorney
                                   County of Sonoma, State of California

14

15                          BY:

16                              JAMES PATRICK CASEY
                             Deputy District Attorney

17

18             Prepared by: Andrew Quinn, Certified Law Clerk

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT A**

1   and believe that the Sheriff's department has admitted that they subpoenaed my telephone

2   records which substantiated the fact that I was in Sacramento at the time of the alleged

3   occurrence.

4   Dated: _March 1 7_, 2010

5

6                                                    Benjamin Cannon

7

8

0613
Server: CHRISTY 28 R 00287)        Rac:403
02/04/10 22:48, Swiped   1: 312 Term: 1

B.J's RESTAURANT BREWHOUSE
3691 N. FREEWAY BLVD.
SACRAMENTO, CA 95834
(916)570-1927
MERCHANT #:

CARD TYPE        ACCOUNT NUMBER
VISA             XXXXXXXXXXXX5737
Name: BENJAMIN P CANNON
00 TRANSACTION APPROVED
AUTHORIZATION #: 060880
Reference: 0204010000613
TRANS TYPE: Credit Card SALE  ∧

CHECK:              54.82

TIP:                 8.00

TOTAL:             62.92

CARDHOLDER WILL PAY CARD ISSUER ABOVE
AMOUNT PURSUANT TO CARDHOLDER AGREEMENT
PLEASE LEAVE SIGNED COPY FOR SERVER.

1  **Arthur Chambers, SBN: 53282**
   2095 Van Ness Avenue
2  San Francisco, CA 94109
   (415) 775-2144
3
   Attorney for Defendant Benjamin Cannon
4

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF SONOMA**

10 **THE PEOPLE OF THE STATE OF**              Case No. SCR 578412
    **CALIFORNIA**
11                                              REPLY BRIEF IN SUPPORT OF
            Plaintiffs,                         PETITION FOR FINDING OF FACTUAL
12                                              INNOCENCE
      v.
13                                              DATE: April 19, 2010
      **BENJAMIN CANNON,**                      TIME: 1:30 PM
14                                              DEPT: 4
            Defendant.
15  _____/

16

17  Comes now moving party, Defendant Benjamin Cannon, and responds to the People's opposition

18  to Petition for a finding of Factual Innocence Pursuant to Penal Code 851.8.

19  **PROCEDURAL ISSUES**

20  **1. The "Opposition to Petition" contains no facts.**

21       The opposition filed by the District Attorney contains not a single fact upon which they

22  base their opposition. The Opposition contains no declaration under penalty of perjury, contains

23  no request for Judicial Notice, nor any other accepted means of providing the court with any

24  factual basis for their allegations. Based upon those facts, the Opposition should be stricken from

25  the record. California Rules of Court, 3.1306(a) provides:

26  "Evidence received at a law and motion hearing must be by declaration for request for judicial

27  notice without testimony or cross examination, unless the court orders otherwise for good cause

28  shown."

    REPLY    EXHIBITS incorporated into COMPLAINT Page 60 of 62

1  2. **Even if you take the Opposition's "facts" at face value, it does not provide a basis for**
2  **denying the motion.**

3      The gist of the opposition is that sometime in the past, they contend that Mr. Cannon did
4  something similar to the crime that they arrested him, but declined to prosecute, that Mr. Cannon
5  had perfectly legal material in his car which might have been similar to the items alleged in the
6  complaint, and that he could have been in Sonoma at the time of the occurrence.

7      The District Attorney, in it's opposition, provide no facts to show that Mr. Cannon did
8  indeed commit any of the acts alleged in the criminal complaint filed against him. To review the
9  alleged facts in which they contend the petition should not be granted: A statement that he was
10  arrested sometime in 1999 and charged with a similar act. Mr. Cannon had perfectly legal
11  materials within his home and vehicle when arrested.. Beyond those two contentions they
12  provide no facts or evidence that he did indeed commit the alleged crime, other than saying that
13  he could have been in Sonoma County. In their opposition, the District Attorney admits Mr.
14  Cannon was not convicted of the prior alleged similar crime, they admit they found no further
15  evidence of any commission of such crime, and they admit that whatever materials they found
16  with their search were legally owned by him. Indeed they returned all the materials they took
17  from him. In short, they provide not a scintilla of facts to show that indeed Mr. Cannon did any
18  of those things. Had they asked him, before they arrested and handcuffed him, he would have
19  provided a cogent and valid explanation for each and every item they contend shows that he the
20  alleged perpetrator of this act (if indeed those acts occurred).

21      The District Attorney admits that their "witness" was unable to affirmatively identify Mr.
22  Cannon as the person who allegedly committed that crime. The alleged victim allegedly was 80%
23  sure it was Mr. Cannon, after being shown a photo line up, the quality of which has not been
24  disclosed to defense counsel. Despite a request to review the evidence defense counsel was
25  never supplied with any information regarding the photo lineup. The District Attorney, perhaps
26  unknowing admitted that the vehicle description made by the witness was not that of Mr.
27  Cannon's vehicle (his car does not have the hood of his vehicle painted another color as
28  described in the alleged opposition to the motion. The car will be present at the hearing for the

REPLY  EXHIBITS incorporated into COMPLAINT  Page 61 of 62

1  Petition, and the court may observe or have a court employee observe the car at that time). In
2  short, this Opposition appears to be flawed in more respects than just procedurally in that it
3  utterly fails to provide any basis to contend that Mr. Cannon had anything to do with this
4  incident, if indeed the incident had occurred.

5      The final defect in the Opposition is that it fails to account for the witness (Grant Early)
6  who was present with Mr. Cannon at the time the acts allegedly occurred and who filed a
7  declaration under penalty of perjury stating exactly that. They had dinner together in Sacramento,
8  Mr. Cannon spent the night at Mr. Early's residence. Indeed the District Attorney, prior to filing
9  the opposition, knew that Mr. Cannon was in Sacramento the morning after the alleged incident
10  because they had subpoenaed the ATT records showing he made calls from his phone early in the
11  am the following day from Sacramento.

12      In short, the People knew Mr. Cannon was not present in Sonoma at the time of the
13  alleged acts, they knew he was having dinner at a restaurant in Sacramento at the time of the
14  alleged incident, they knew their alleged witness could not identify him (80% provides for a
15  reasonable doubt with just about any jury), knew that he used his telephone at a time in
16  Sacramento that made it almost impossible for him to have gotten back to Sonoma, and knew
17  that the vehicle description of the alleged perpetrator wasn't the same as Mr. Cannon's vehicle.
18  Based upon the above, the court is urged to grant the petition.

19      I, Arthur Chambers declare that the factual statements contained herein are true under
20  penalty of perjury, under the laws of the State of California, and that if called as a witness I could
21  be competent to testify thereto.

22  Dated: April 12, 2010

23
24                                    Attorney for Defendant
25
26
27
28