**HARRY K. JEUNG, CPA**
**90 New Montgomery Street, Suite 750**
**San Francisco, CA 94105**
**Tel: (415) 896-1700**
**Fax: (415) 512-8018**



Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Dear Sirs,

This package was dropped off at our office. The intended recipient is not located at this office.

Sincerely,

Harry K. Jeung, CPA

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

Benjamin Philip Cannon

Plaintiff

v.

City of Petaluma, County of Sonoma, etc.

Defendant

**EMC**

Civil Action No. **CV11 0651**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

See above named defendants.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RICHARD W. WIEKING

CLERK OF COURT

Date: FEB 1 1 2011

Signature of Clerk or Deputy Clerk

ANNA SPRINKLES

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $      1/11

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*                    FEB 11

_____
*Server's address*

Additional information regarding attempted service, etc:

# U.S. District Court Northern California
## ECF Registration Information Handout.

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Local Rule 5-4 and General Order 45. This means that you **must** (check off the boxes ☑ when done):

☐     **1) Serve this** ECF Registration Information Handout on all parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout. Each attorney representing a party must also:

☐     **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again, your registration is valid for life on all ECF cases in this district.

☐     **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐     **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856.**

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE. **All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

# U.S. District Court Northern California

## Submitting Initiating Documents

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled ) to the PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to:
**http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the <u>subject line</u> of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

## Converting Documents to PDF

Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site:
**http://ecf.cand.uscourts.gov,** and click on **[FAQ]**.

## Email Guidelines

When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.
**Examples:**
The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:
**Type of Document**
**Email Subject Line Text**

Complaint Only
03-09999 CRB Complaint

Complaint and
Notice of Related Case
03-09999 CRB Complaint, Related Case

Complaint and Motion for
Temporary Restraining Order
03-09999 CRB Complaint, TRO

**Questions**
Almost all questions can be answered in our **FAQs** at
**http://ecf.cand.uscourts.gov**, please check them first.
You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.
The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN PHILIP CANNON,

Plaintiff (s),

v.

CITY OF PETALUMA,
Defendant(s).

No. C 11-00651 EMC

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

IT IS HEREBY ORDERED that this action is assigned to the Honorable Edward M. Chen. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California," additional copies of which can be downloaded from the following Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 2/11/2011 | Complaint filed | |
| 5/4/2011 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |

| 5/18/2011 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1)<br>Civil L.R . 16-9 |
| --- | --- | --- |
| 5/25/2011 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Courtroom C,15th Floor,SF at 1:30 PM | Civil L.R. 16-10 |

\*If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## STANDING ORDER FOR CIVIL PRACTICE IN CASES ASSIGNED FOR ALL PURPOSES TO MAGISTRATE JUDGE EDWARD M. CHEN

The parties shall follow the General Orders of the Court for the Northern District of California, the Local Rules, and the Federal Rules of Civil Procedure, except as expressly modified herein. Failure to comply with any of the rules and orders may be deemed sufficient grounds for monetary sanctions, dismissal, entry of default judgment, or other appropriate sanctions. The rules and orders are supplemented and modified as follows:

### A.    STANDING ORDER RE MOTIONS AND CONFERENCES

1.    Criminal Law and Motion is heard on Wednesdays at 10:00 a.m. Civil Law and Motion is heard on Wednesdays at 10:30 a.m. Counsel need not reserve a hearing date in advance for civil motions. However, noticed dates may be reset as the Court's calendar requires.

2.    Case Management Conferences are heard on Wednesdays at 1:30 p.m. Pretrial Conferences are heard on Wednesdays at 3:00 p.m.

3.    In cases that are randomly assigned to Judge Chen for all purposes, the parties are requested to file their written consent to the assignment of a U.S. Magistrate Judge for all purposes, or their written declination of consent, as soon as possible.

4.    All scheduling questions should be addressed to Judge Chen's courtroom deputy, Betty Lee, at (415) 522-2034.

5.    Law and motion matters may be submitted without argument upon stipulation of the parties and notification of the Court no later than two (2) court days before the hearing.

6.    In all "E-Filing" cases, when filing papers that require the Court to take any action (e.g. motions, meet and confer letters, administrative requests), the parties shall, in addition to filing papers electronically, lodge with chambers a printed copy of the papers on three-hole punch paper (including all exhibits) by the close of the next court day following the day the papers are filed electronically. These printed copies shall be marked "EMC Chambers Copy" and shall be submitted to the Clerk's Office in an envelope clearly marked with the case number, "Magistrate Judge Edward M. Chen," and "E-Filing Chambers Copy." Parties shall not file a paper copy of any document with the Clerk's

Office that has already been filed electronically. A proposed order in an E-Filing case must be emailed to emcpo@cand.uscourts.gov in word processing format as an attachment on the same day that it is E-Filed. With permission, Chambers' copes of documents may be submitted on CD-ROM with hypertext links to exhibits.

## B.     STANDING ORDER RE DISCOVERY DISPUTES

This Standing Order applies to all disclosures and discovery motions assigned to Judge Chen and is intended to supplement the Civil Local Rules of this District regarding motion practice (Civil L. R. 7-1 et seq.) and the resolution of disclosure or discovery disputes (Civil L. R. 37-1 et seq.).

7.     Discovery motions may be addressed to the Court in three ways. A motion may be noticed on not less than thirty-five (35) days notice pursuant to Civil L. R. 7-2. Alternatively, any party may seek an order shortening time under Civil L. R. 6-3 if the circumstances justify that relief. In emergencies during discovery events (such as depositions), the Court is available pursuant to Civil L. R. 37-1(b). In the event a discovery dispute arises, counsel for the party seeking discovery shall in good faith confer in person with counsel for the party failing to make the discovery in an effort to resolve the dispute without court action, as required by Fed. R. Civ. P. 37 and Civil L. R. 37-1(a). The meeting must be in person, except where good cause is shown why a telephone meeting is adequate. A declaration setting forth these meet and confer efforts, and the final positions of each party, shall be included in the moving papers. The Court will not consider discovery motions unless the moving party has complied with Fed. R. Civ. P. 37 and Civil L. R. 37-1(a).

8.     Motions for sanctions shall be filed by separate motion in accordance with the Fed. R. Civ. P. 37 and Civil L. R. 37-3. The parties shall comply with their meet and confer obligations pursuant to Civil L. R. 37-1(a). Parties who refuse to meet and confer will be subject to sanctions pursuant to Civil L. R. 37-3.

9.     Any party filing an Emergency or Ex Parte Application must contact Judge Chen's courtroom deputy clerk, Betty Lee, at 415/522-2034.

## PRODUCTION OF DOCUMENTS

10.     In responding to requests for documents and materials under Fed. R. Civ. P. 34, all parties shall affirmatively state in a written response served on all other parties the full extent to which they will produce materials and shall, promptly after the production, confirm in writing that they have produced all such materials so described that are locatable after a diligent search of

all locations at which such materials might plausibly exist. It shall not be sufficient to object and/or to state that "responsive" materials will be or have been produced.

11. In searching for responsive materials in connection with a request under Fed. R. Civ. P. 34, parties must search computerized files, emails, voicemails, work files, desk files, calendars and diaries, and any other locations and sources if materials of the type to be produced might plausibly be expected to be found there.

12. Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. See Fed. R. Civ. P. 26(b)(5). No generalized claims of privilege or work product protection shall be permitted. With respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time of its assertion identify: (a) all persons making and receiving the privileged or protected communication; (b) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication; (c) the date of the communication; and (d) the subject matter of the communication. Failure to furnish this information at the time of the assertion may be deemed a waiver of the privilege or protection.

13. To the maximum extent feasible, all party files and records should be retained and produced in their original form and sequence, including file folders, and the originals should remain available for inspection by any counsel on reasonable notice.

14. As soon as a party has notice of this order, the party shall take such reasonable steps as are necessary to preserve evidence related to the issues presented by the action, including, without limitation, interdiction of any document destruction programs and any ongoing erasures of emails, voicemails, and other electronically recorded material to the extent necessary to preserve information relevant to the issues presented by the action.

15. Except for good cause, no item will be received in evidence if the proponent failed to produce it in the face of a reasonable and proper discovery request covering the item, regardless of whether a motion to overrule any objection thereto was made.

## DEPOSITIONS

16. Absent extraordinary circumstances, counsel shall consult in advance with opposing counsel and unrepresented proposed deponents to schedule depositions at mutually convenient times and places. Where an agreement cannot be reached as to any party deponent or a deponent represented by counsel of record, the following procedure may be invoked by the party seeking any such deposition. The party seeking such a deposition may notice it at least thirty (30) days in advance. If the noticed date and place is unacceptable to the deponent or the deponent's counsel, then within ten (10) days or receipt of the notice, the deponent or counsel for

the deponent must reply and counter-propose in writing an alternative date and place falling within thirty (30) days of the date noticed by the party seeking the deposition.

17. Counsel and parties shall comply with Fed. R. Civ. P. 30(d)(1). Deposition objections must be as to privilege or form only. Speaking objections are prohibited. When a privilege is claimed, the witness should nevertheless answer questions relevant to the existence, extent or waiver of the privilege, such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement, unless such information itself is itself privileged. Private conferences between deponents and attorneys in the course of interrogation, including a line of related questions, are improper and prohibited except for the sole purpose of determining whether a privilege should be asserted.

## SANCTIONS

18. Failure to comply with this Order or the Local Rules of this Court may result in sanctions. See Fed. R. Civ. P. 16(f), Civil L. R. 1-4.

copy.

_____
Edward M. Chen
United States Magistrate Judge

Revised: September 22, 2010

## STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.     Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.     Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.     Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.     Motions: All prior and pending motions, their current status, and any anticipated motions.

5.     Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.     Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.     Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.     Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.     Class Actions: If a class action, a proposal for how and when the class will be certified.

10.     Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.     Relief: All relief sought through complaint or counterclaim, including the amount of any

-1-

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.  Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.  Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.  Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.  Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.  Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.  Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.  Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.  Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.  Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

1

Benjamin P Cannon

2  Attorney in Propia Persona
   1083 Vine St #215
3  Healdsburg, CA 95448
   Ben@geovario.com
4

5

6

7

8

9

EMC

10  IN THE UNITED STATES DISTRICT COURT

11  NORTHERN DISTRICT OF CALIFORNIA

12  **CV11      0651**

13  BENJAMIN PHILIP CANNON, an individual,    | Case No:

14                      Plaintiff,

15          vs.                                | **COMPLAINT,**
                                               | **REQUEST FOR RELIEF,**
16  CITY OF PETALUMA, a municipal entity,      | **AND DEMAND FOR JURY TRIAL**

17  COUNTY OF SONOMA, a municipal entity,      | 42 U.S.C. §§ 1983, 1988
    CITY OF SONOMA, a municipal entity,
18  PETALUMA POLICE DEPARTMENT,
    SONOMA POLICE DEPARTMENT,
19  SONOMA COUNTY SHERRIF'S
    DEPARTMENT, SONOMA COUNTY
20  DISTRICT ATTORNEY'S OFFICE.

21

22  DAN FISH,
    BILL COGBILL, JIM NAUGLE, CHRIS
23  SPALLINO

24  JAMES CASEY, STEPHEN PASSALACQUA.

25
    SORINNE ARDELANU, BRAD JOHNSON,
26  CHRISTINE BARNETT individuals.
    THE SONOMA SUN, a newspaper.
27

28  DOES 1-10, individuals or municipalities.

Defendants.

## COMPLAINT

COME NOW Plaintiff, BENJAMIN PHILIP CANNON, by and through their undersigned counsel, requests a jury trial and complains of Defendants as follows:

## THE PARTIES

1. Plaintiff BENJAMIN PHILIP CANNON is a natural person and a citizen and at all times relevant was a resident of the City of Petaluma, County of Sonoma, State of California, and a citizen of the United States of America.

2. Defendant CITY OF PETALUMA is, at all times relevant, a municipality duly organized under the laws of the State of California. At all relevant times, the DEFENDANT PETALUMA POLICE DEPARTMENT was a branch or agency of the City.

3. Defendant CITY OF SONOMA is, at all times relevant, a municipality duly organized under the laws of the State of California. At all relevant times, the Defendant SONOMA POLICE DEPARTMENT was a branch or agency of the City.

4. Defendant COUNTY OF SONOMA is, at all times relevant, a municipality duly organized under the laws of the State of California. At all relevant times, the Defendant SONOMA COUNTY SHERRIFF'S DEPARTMENT and SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE branches or agents of the County.

5. Defendant DAN FISH is the Chief of Police for the City of Petaluma, and as such, he is responsible for formulating, executing, and administering the City of Petaluma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiff. Defendant FISH is sued in both his individual

1    and official capacities.

2    6.  Defendant BILL COGBILL is the Sherriff for the county of County of Sonoma, and as such,

3        he is responsible for formulating, executing, and administering the County of Sonoma's laws,

4        customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws,

5        customs, and practices against plaintiff, and is in fact presently enforcing the challenged

6        laws, customs, and practices against Plaintiff.  Defendant COGBILL is sued in both his

7        individual and official capacities.

8    7.  Defendant JAMES NAUGLE, is a Detective with the County of Sonoma's Sherriff's

9        Department, and as such, he is responsible for executing and administering the County of

10       Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the

11       challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing

12       the challenged laws, customs, and practices against plaintiff. Defendant NAUGLE is sued in

13       both his individual and official capacities.

14   8.  Defendant CHRIS SPALLINO, is a Lieutenant with the County of Sonoma's Sherriff's

15       Department, and as such, he is responsible for executing and administering the County of

16       Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the

17       challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing

18       the challenged laws, customs, and practices against plaintiff. Defendant SPALLINO is sued

19       in both his individual and official capacities.

20   9.  Defendant JAMES CASEY, is a Deputy District Attorney with the County of Sonoma, and

21       as such, he is responsible for executing and administering the County of  laws, customs,

22       practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and

23       practices against plaintiff, and is in fact presently enforcing the challenged laws, customs,

24       and practices against plaintiff. Defendant CASEY is sued in both his individual and official

25       capacities.

26   10. Defendant STEPHEN PASSALACQUA, is the District Attorney with the County of

27       Sonoma, and as such, he is responsible for executing and administering the County of  laws,

28       customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws,

1    customs, and practices against plaintiff, and is in fact presently enforcing the challenged

2    laws, customs, and practices against plaintiff. Defendant PASSALACQUA is sued in both

3    his individual and official capacities.

4  11. Defendants SORINNE ARDELANU, BRAD JOHNSON, and CHRISTINE BARNETT were

5    agents, servants and employees of each other, or of the other named Defendants, and were

6    acting at all times with full knowledge and consent, either expressed or implied, of their

7    principal and/or employer and each of the other named Defendants and each of the

8    Defendants had approved or ratified the actions of the other Defendants thereby making the

9    currently named defendants herein liable for the acts and/or omissions of their agents,

10    servants and/or employees.

11  12. These Defendants, and DOES 1-10, were agents, servants and employees of each other, of

12    the other named Defendants, and were acting at all times within the full course and scope of

13    their agency and employment, with the full knowledge and consent, either expressed or

14    implied, of their principal and/or employer and each of the other named Defendants and each

15    of the Defendants had approved or ratified the actions of the other Defendants thereby

16    making the currently named defendants herein liable for the acts and/or omissions of their

17    agents, servants and/or employees.

18                 **JURISDICTION AND VENUE**

19  13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

20    1343, 2201, 2202 and 42 U.S.C. § 1983.

21  14. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

22                  **STATEMENT OF FACTS**

23  15. Defendant SORINNE ARDELANU works or worked for the owner of Cannon's primary

24    business competitor, and was previously attempting to contact Cannon regarding his

25    business. (see Exhibit "A" Facebook Messages.) Later, Defendant attempted to destroy

26    evidence of these contacts by changing her profile name and then deleting and re-creating her

27    Facebook account.

28  16. On or about February 8, 2010, Defendant Petaluma Police Department circulated a memo

1      accusing Cannon of being a Police Impersonator. ARDELANU, in collaboration with

2      Defendant BRAD JOHNSON, and Defendant UNIDENTIFIED OFFICER obtained and

3      distributed that memo to all of Cannon's Facebook friends, despite being advised that it was

4      untrue. Defendants later admitted in email to Canon's counsel Art Chambers to illegally

5      accessing law enforcement records to do this and to 'run background checks', as well as

6      colluding with Defendant JIM NAUGLE of the Sonoma County Sherriff's Department.

7 17. On or about February 12, 2010, Cannon was traveling in his vehicle when he was stopped by

8      Defendant(s) UNIDENTIFIED SHERRIF'S DEPUTIES 1 and 2. Defendant was

9      immediately arrested for "PC236" and told nothing further while PETALUMA POLICE

10      DEPARTMENT and SONOMA COUNTY SHERRIF'S DEPARTMENT searched his

11      automobiles and residence. Nothing found in the searches was present in the Complaint.

12 18. Defendant was transported to Sonoma County Sherriff's Office, where he was interrogated.

13      Cannon advised the officers that he "Wanted a letter of apology, this arrest canceled, my

14      record expunged, and to be released immediately. Failing that, I wish to speak with my

15      attorney."

16 19. Despite Cannon's profession of innocence, and his possession of evidence exonerating him,

17      NAUGLE transported Cannon to the Jail where he Cannon was booked and charged with

18      Violation of Penal Code section 236. Cannon was requited to post $10,000 Bail.

19 20. Cannon's attorney Art Chambers immediately contacted Sonoma County Sherriff's deputies

20      and requested to view all evidence in the case. During the meeting, Deputies deliberately

21      and knowingly withheld the phone records exonerating Cannon.

22 21. On or about April 14, 2010, as part of an Affirmative Defense, Cannon obtained a copy of

23      the complaint that included a date of the alleged incident, and Chambers attempted to

24      Subpoena his phone records, which would prove he was in Sacramento at the time. AT&T

25      informed Chambers that the records had already been delivered via sealed confidential court

26      order to Sonoma County Sherriff.

27 22. Defendants' prosecuted Cannon, and Cannon subpoenaed' witnesses, provided the phone

28      records exonerating himself, as well as signed credit card charge receipts proving he was in

1     Sacramento.

2 23. NAUGLE admitted over the phone to Chambers that he knowingly possessed and withheld

3     the phone records, stating that they only proved Cannons' phone was in Sacramento.

4     However, when asked what NAUGLE did with his duty to investigate further, NAUGLE

5     admitted he did nothing.   When asked why he did not turn over the evidence exonerating

6     Cannon as exculpatory as was his duty, he said nothing.

7 24. On or about March 16, 2010 Charges against Mr. Cannon were dismissed.

8 25. Cannon filed for and obtained a Factual Finding of Innocence. (see **Exhibit "D" Factual**

9     **Innocence.**)

10 26. On or about February 4, 2010, which is the date of the complaint against Cannon, Cannon

11     received a letter of termination of his corporate bank accounts from Comerica Bank. These

12     accounts have not been restored despite the factual finding.

13 27. Defendant JAMES PATRICK CASEY of the District Attorney's office, not only knowingly

14     prosecuted Cannon despite the presence of evidence exonerating him, but further proceeded

15     to oppose his factual finding even after the evidence and proof of it's concealment was

16     entered into the record by Plaintiff and Plaintiff's witnesses.

17 28. At all times material hereto, Defendants were acting under the color of state law.

18 29. At all times material hereto, the officers were acting as police officers for the Petaluma

19     Police Department, the Sonoma Police Department, and the Sonoma County Sherriff's office,

20     the Sonoma County District Attorney's office, the City of Petaluma, the City of Sonoma, and

21     the County of Sonoma.

22 30. At all times material hereto, Defendants were acting in concert with each other.

23 31. As a direct result of Defendants' conduct, Cannon incurred legal fees and costs and lost pre-

24     existing contractual business opportunities with Gunbroker.com, his stock offering, and other

25     investors.

26 32. Defendants were made aware of (or were already aware of) Cannon' business opportunities,

27     but failed to resolve the underlying false arrest arrest in a timely manner, causing Cannon to

28     lose his opportunities with Gunbroker.com, his stock offering, and other investors.

33. On or about February 13, 2010, without opportunity to comment, and in a clear attempt to destroy Cannon's reputation, personal life, and business, Defendant CHRIS SPALLINO published a press release (See **EXHIBIT "A" Press Release**) engineered to express and imply Cannon's guilt, including publishing his home address.  Over 50 press agencies picked up the story, and Defendant SONOMA SUN published it as factual (See **Exhibit "B" Sonoma Sun Release**.) and failed to publish a retraction even after Chambers notified them in email of the factual innocence.

34. Due to the false arrest, Cannon was forced to resign from his position as Treasurer of The Calguns Foundation, a 501(c)3 nonprofit corporation dedicated to civil rights and education.

35. Due to the publishing of his home address, and Defendant's actions and threats, Cannon's residence became unsafe and he was forced to move. (See **Exhibit "C" Threats.**)

36. Due to the false arrest, the delay in determining whether to file any charges, and the delay in issuing a factual finding of innocence, Cannon lost his contract with gunbroker.com and other investors, nearly resulting in the near total collapse of his business.

## COUNTS I – IV
**Unlawful Arrest, Unreasonable Search and Seizure, Malicious Prosecution, Conspiracy Against All Defendants.**
**Brought under 42 U.S.C. §1983**

37. Paragraphs 1 through 36 are incorporated as though fully stated herein.

38. During the encounter with Plaintiff, and without probable cause, Defendants seized Plaintiff, searched Plaintiff, handcuffed him, disarmed him, harassed him, transported him to the Sonoma County Jail, and held him until Cannon paid his bail.

39. During the encounter with Plaintiff, Defendants searched Plaintiff without reasonable suspicion of a crime having taken place and without probable cause to justify the search or seizure.

40. Defendants deliberately and knowingly conspired to withhold evidence proving Plaintiff's innocence, with the intent to harm Plaintiff and his business.

41. Defendants deliberately and knowingly conspired to prosecute Plaintiff, even knowing or being informed he was innocent.

42. Defendants conspired to distribute a press release engineered to destroy Plaintiff's reputation, business, and home life.

43. Defendants' actions during the encounter violated Plaintiff's rights protected by the United States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

44. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

45. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

### COUNT V
### Defamation Per Se Against All Defendants

46. Paragraphs 1 through 36 are incorporated as though fully stated herein.

47. The Defendants have made and endorsed the making of statements that Benjamin Cannon committed the crimes alleged. These statements are false and defamatory *per se*.

48. The Defendants' statements harmed Plaintiff's reputation in the public, excited derogatory opinions against him, and caused the public and others to hold Plaintiff in contempt. They also impute the commission of a crime and call into question Cannon's fitness to perform his business, and profession. Cannon was forced to move as a result of these statements.

49. Defendants statements were made to reporters, law enforcement agencies, newspapers and other public outlets and wire services (among other places and persons). These statements were not privileged in any way.

50. Given cannon's Factual Innocence, and given a judge's determination that evidence exonerating him was deliberately withheld, Defendants issues these statements with actual

1     knowledge that such statements were false and in reckless disregard for their falsity. In

2     either case, Defendants issued these statements intending to harm Plaintiff.

3   51. Defendants' actions during the encounter violated Plaintiff's rights protected by the United

4     States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

5   52. Defendants' actions during the encounter violated Plaintiff's rights, including those protected

6     by Article 1, Sections 1, 2, and 13 of the California Constitution.

7   53. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

8     be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

9     was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

10     punitive damages.

11

12

13 **PRAYER**

14     WHEREFORE, Plaintiff requests that judgment be entered in his favor and against

15 Defendants as follows:

16   1. Declaratory relief consistent with the injunction, including a declaration that Defendants

17     violated Plaintiff's Constitutional rights, including his First, Fourth, Eighth, and Fourteenth

18     Amendment rights, by detaining him and seizing his person and his firearms without

19     probable cause to believe that he had committed a crime;

20   2. General and special damages in an amount to be proven at trial;

21   3. Presumed damages based on, among other things, harm to Plaintiff's reputation, business,

22     stock offering and price, emotional health, pain and suffering, and personal life;

23   4. Putative damages;

24   5. Award Plaintiff costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

25     and

26   6. Any other further relief as the Court deems just and appropriate to protect the peaceable

27     exercise or enjoyment of the right or rights secured.

28

1   Date: February 11, 2011            Respectfully submitted,

2

3                                     Benjamin P Cannon
                                      Attorney In Propia Persona

4                                       1083 Vine St #215
                                      Healdsburg, CA 95448

5                                       Email: Ben@geovario.com

6

7                                       By: _____
                                      Benjamin P Cannon,

8                                       Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "A" Press Release

2

3 **Petaluma man arrested for impersonating officer**
Saturday, February 13, 2010

4
PETALUMA, CA -- A Petaluma man was arrested Thursday on suspicion of impersonating a
5 police officer after he allegedly pulled over a female driver near Sonoma, the Sonoma
County Sheriff's Office said.

6
The 22-year-old woman was driving on Napa Road around 11 p.m. Feb. 2 when she was
7 pulled over by an unmarked vehicle with a red light, Lt. Chris Spallino said.

8 A man not wearing a uniform then flashed what appeared to be a badge and asked her for
identification, Spallino said.
9

10 The woman became uncomfortable and asked the man to have a marked vehicle respond.
The man then became uncomfortable and drove away and the woman called police, Spallino
11 said.

12 Detectives from the sheriff's office's violent crimes unit identified 29-year-old **Benjamin
Philip Cannon** as a suspect. After the woman identified him as the man who pulled her
13 over, Cannon was placed under surveillance, Spallino said.

14 Cannon was arrested Thursday at his residence in the 1100 block of East Sunnyslope Road
for impersonating a police officer and false imprisonment, Spallino said.
15

16 Detectives seized Cannon's silver 2001 BMW and found a police scanner, strobe light,
handcuffs and a siren inside, Spallino said. Cannon was booked into the Sonoma County jail
17 and has since posted $10,000 bail.

18 Spallino said the woman's request for a marked car may have deterred the suspect and
prevented a more serious incident. He said motorists in a similar situation should consider
19 acknowledging the police vehicle and pull over in a safe location.

20 Anyone who may have has a similar encounter is asked to call detective James Naugle at
(707) 565-2185.

21

22

23

24

25

26

27

28

1

**Exhibit "B" Sonoma Sun Release and emails.**

2
http://3hmm.com/thesun/?p=15914
News | February 18, 2010

3
**Fake cop busted for false imprisonment**
Staff Report

4

**A man who terrified a female driver by impersonating a police officer was arrested**

5
**last week on charges including false imprisonment.** Benjamin Cannon, 29, of
Petaluma, was identified by the 22-year-old victim as the man who subjected her to a late-

6
night ordeal just east of Sonoma.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "C" Threats**

Brad Johnson. February 12, 2010 at 1:58pm Report
I don't believe we've been formerly introduced but I thought now would be an appropriate time to say hello.

As you may know, I'm Sorinne's boyfriend. I normally don't get involved in her relationships with others in her life, she's her own person, but I'm a bit concerned about some of the things I've heard you purportedly say about her. Now, I'm not going to start throwing around threats and/or begin insulting you but I'm aware of the situation surrounding your recent run in with the law on 1/28.

I'm writing to either a) give you the opportunity to explain yourself and justify the threats you've levied against her or b) to serve notice that I will not stand by and let you drag her name through the mud for the actions you've taken.

If you'd like to discuss this either via phone or face to face, let me know and we'll make arrangements.

Regards,

Brad

**Ben Cannon** February 12, 2010 at 2:50pm
Brad – I have absolutely no ill will towards you or Sorinne, however I have served her with a Cease and Desist after she began emailing friends of mine with some very serious and unfounded accusations. Please consider that to apply to you as well.

I find the tone and content of your message threatening and feel it best for you to communicate through my attorney:

Allyson M Glasscock
Glasscock, Glasscock, and Mullins
260 White Cap Lane
Newport Coast, CA 92657
949.689.9228

I have absolutely no interest in meting you or Sorinne "face to face" – and will regard any attempt to do so as a threat to my safety. Indeed I have no wish for any contact of any sort from either of you, ever again.

Sincerely,
Benjamin P Cannon.

1                **EXHIBIT "D" Factual Innocence**

2

3              (this page intentionally left blank)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Arthur Chambers, SBN: 53282
   2095 Van Ness Avenue
2  San Francisco, CA 94109
   (415) 775-2144
3
   Attorney for Defendant Benjamin Cannon
4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SONOMA

10  THE PEOPLE OF THE STATE OF            Case No. SCR578412
    CALIFORNIA
11                                        ORDER ON PETITION FOR FINDING
        Plaintiffs,                       OF FACTUAL INNOCENCE
12
    v.                                    DATE: April 19th, 2010
13
    BENJAMIN CANNON,                      TIME: 1:30 pm
14
        Defendant.                        DEPT: 9
15  _____/

16       This matter came upon Calendar pursuant to noticed motion and serve thereon pursuant

17  to statute, and a transfer from Department 4 of the above entitled court. Arthur Chambers

18  appeared on behalf of moving party, Benjamin Cannon, and James Casey appeared on behalf of

19  the People.

20       The court, after considering the evidence, and the oral argument presented, and find good

21  cause, finds:

22       1. The motion for a factual finding of innocence by defendant Benjamin Cannon is

23  granted.

24       2. The law enforcement agency (Sheriff of Sonoma County) and the department of

25  justice are to request the destruction of any records of the arrest which they have given to any

26  local, state, or federal agency, person or entity.

27  //

28

    ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

ENDORSED
FILED

MAY 18 2010

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

1  Dated:

2  **MAY 18 2010**

3  _____
   Renee Chouteau, Judge of
4  the Superior Court of the State of California
   Judge of the Superior Court
5

6  Approved as to form:

7

8  _____
9  James Casey, Deputy District Attorney
   County of Sonoma
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

ORIGINAL
FILED

2011 APR 15 P 4 10

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

No. CV 11 0651 EMC

Cannum

Plaintiff(s),

v.

City of Petaluma, et al.

Defendant(s).

**DECLINATION TO PROCEED BEFORE A MAGISTRATE JUDGE AND REQUEST FOR REASSIGNMENT TO A UNITED STATES DISTRICT JUDGE**

## REQUEST FOR REASSIGNMENT TO A UNITED STATES DISTRICT JUDGE

The undersigned party hereby declines to consent to the assignment of this case to a United States Magistrate Judge for trial and disposition and hereby requests the reassignment of this case to a United States District Judge.

Dated: 04. 13. 2011

Signature

Counsel for pro se
(Plaintiff, Defendant, or indicate "pro se")

1  Benjamin P Cannon
2  Attorney in Propia Persona
   1083 Vine St #215
3  Healdsburg, CA 95448
   discovery@42usc1983.net
4

RECEIVED
2011 APR 15 P 4 09
RICHARD W. WIEKING
DISTRICT COURT
CALIFORNIA

ORIGINAL FILED

APR 15 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5          IN THE UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7  BENJAMIN PHILIP CANNON, an individual,     Case No: CV11 0651

8            Plaintiff,

9      vs.                                     FIRST AMMENDED COMPLAINT
                                               FOR DAMAGES,
10 COUNTY OF SONOMA, a municipal entity,       REQUEST FOR RELIEF,
11 CITY OF PETALUMA, a municipal entity,       AND DEMAND FOR JURY TRIAL
   CITY OF SONOMA, a municipal entity,
12 PETALUMA POLICE DEPARTMENT,                 42 U.S.C. §§ 1983, 1988
13 SONOMA POLICE DEPARTMENT,
   SONOMA COUNTY SHERRIF'S
14 DEPARTMENT, SONOMA COUNTY
   DISTRICT ATTORNEY'S OFFICE.
15
16 DAN FISH, JOHN SILVA, BERT WALKER,
   JASON JUCUTAN
17
18 BILL COGBILL, JIM NAUGLE, CHRIS
   SPALLINO, ERIC HAUFLER, JESSE
19 HANSHEW, SHAWN MURPHY, PERRY
   SPARKMAN,
20
21 JAMES CASEY, BOB WANER, STEPHEN
   PASSALACQUA.
22
23 SORINNE ARDELANU, CHRISTINE
   BARNETT individuals.
24 THE SONOMA SUN, a newspaper.
25 DOES 1-10, individuals or municipalities.
26            Defendants.
27
28

          First Amended Complaint For Damages - Page 1 of 1

1   Benjamin P Cannon
2   Attorney in Propia Persona
    1083 Vine St #215
3   Healdsburg, CA 95448
4   discovery@42usc1983.net

5            **IN THE UNITED STATES DISTRICT COURT**

6            **NORTHERN DISTRICT OF CALIFORNIA**

7   BENJAMIN PHILIP CANNON, an individual,        Case No:

8                    Plaintiff,                   **FIRST AMMENDED COMPLAINT**
9            vs.                                   **FOR DAMAGES,**
                                                   **REQUEST FOR RELIEF,**
10  COUNTY OF SONOMA, a municipal entity,          **AND DEMAND FOR JURY TRIAL**
11  CITY OF PETALUMA, a municipal entity,
    CITY OF SONOMA, a municipal entity,            42 U.S.C. §§ 1983, 1988
12  PETALUMA POLICE DEPARTMENT,
13  SONOMA POLICE DEPARTMENT,
    SONOMA COUNTY SHERRIF'S
14  DEPARTMENT, SONOMA COUNTY
    DISTRICT ATTORNEY'S OFFICE.
15
16  DAN FISH, JOHN SILVA, BERT WALKER,
    JASON JUCUTAN
17
18  BILL COGBILL, JIM NAUGLE, CHRIS
    SPALLINO, ERIC HAUFLER, JESSE
19  HANSHEW, SHAWN MURPHY, PERRY
    SPARKMAN,
20
21  JAMES CASEY, BOB WANER, STEPHEN
    PASSALACQUA.
22
    SORINNE ARDELANU, CHRISTINE
23  BARNETT individuals.
24  THE SONOMA SUN, a newspaper.

25  DOES 1-10, individuals or municipalities.

26                   Defendants.

27

28

            First Amended Complaint For Damages - Page 1 of 15

1  **COMPLAINT**

2  COME NOW Plaintiff, BENJAMIN PHILIP CANNON, by and through their

3  undersigned counsel, requests a jury trial and complains of Defendants as follows:

4

5  **THE PARTIES**

6

7  1. The following is true at all times relevant.

8  2. Plaintiff BENJAMIN PHILIP CANNON is a natural person and a resident of the City of

9  Petaluma, County of Sonoma, State of California, and a citizen of the United States of

10  America.

11  3. Defendant CITY OF PETALUMA is a municipality duly organized under the laws of the

12  State of California. Defendant PETALUMA POLICE DEPARTMENT was a branch or

13  agency of the City.

14  4. Defendant CITY OF SONOMA is a municipality duly organized under the laws of the State

15  of California. Defendant SONOMA POLICE DEPARTMENT was a branch or agency of the

16  City.

17  5. Defendant COUNTY OF SONOMA is a municipality duly organized under the laws of the

18  State of California. Defendant SONOMA COUNTY SHERRIFF'S DEPARTMENT and

19  SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE are branches or agents of the

20  County.

21  6. Defendant DAN FISH is the Chief of Police for the City of Petaluma, and as such, he is

22  responsible for formulating, executing, and administering the City of Petaluma's laws,

23  customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws,

24  customs, and practices against plaintiff, and is in fact presently enforcing the challenged

25  laws, customs, and practices against Plaintiff. Defendant FISH is sued in both his individual

26  and official capacities.

27  7. Defendants JOHN SILVA, BERT WALKER, and JASON JUCUTAN are Officers for the

28  City of Petaluma, and as such, are responsible for formulating, executing, and administering

First Amended Complaint For Damages - Page 2 of 15

the City of Petaluma's laws, customs, practices, and policies at issue in this lawsuit; has

enforced the challenged laws, customs, and practices against plaintiff, and are in fact

presently enforcing the challenged laws, customs, and practices against Plaintiff. Defendants

SILVA, WALKER, and JUCUTAN are sued in both their individual and official capacities.

8. Defendant BILL COGBILL is the Sherriff for the county of County of Sonoma, and as such,

he is responsible for formulating, executing, and administering the County of Sonoma's laws,

customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws,

customs, and practices against plaintiff, and is in fact presently enforcing the challenged

laws, customs, and practices against Plaintiff. Defendant COGBILL is sued in both his

individual and official capacities.

9. Defendants JAMES NAUGLE, CHRIS SPALLINO, ERIC HAUFLER, JESSE HANSHEW,

SHAWN MURPHY, and PERRY SPARKMAN, are Detectives with the County of

Sonoma's Sherriff's Department, and as such, are responsible for executing and

administering the County of Sonoma's laws, customs, practices, and policies at issue in this

lawsuit; has enforced the challenged laws, customs, and practices against plaintiff, and are in

fact presently enforcing the challenged laws, customs, and practices against plaintiff.

Defendants NAUGLE, SPALLINO, HAUFLER, HANSHEW, MURPHY, SPARKMAN and

are sued in both their individual and official capacities.

10. Defendant JAMES CASEY, and BOB WANER, are Deputy District Attorneys with the

County of Sonoma, and as such, are responsible for executing and administering the County

of Sonoma's laws, customs, practices, and policies at issue in this lawsuit; have enforced the

challenged laws, customs, and practices against plaintiff, and are in fact presently enforcing

the challenged laws, customs, and practices against plaintiff. Defendants CASEY and

WANER are sued in both their individual and official capacities.

11. Defendant STEPHEN PASSALACQUA, is the District Attorney with the County of

Sonoma, and as such, he is responsible for executing and administering the County of

Sonoma's laws, customs, practices, and policies at issue in this lawsuit; has enforced the

challenged laws, customs, and practices against plaintiff, and is in fact presently enforcing

First Amended Complaint For Damages - Page 3 of 15

1  the challenged laws, customs, and practices against plaintiff. Defendant PASSALACQUA is
2  sued in both his individual and official capacity.
3  12. Defendants SORINNE ARDELANU, is a resident of California, and was an agent, servant
4  and/or employees of the other named Defendants, and was acting at all times with full
5  knowledge and consent, either expressed or implied, of their principal and/or employer and
6  each of the other named Defendants and each of the Defendants had approved or ratified the
7  actions of the other Defendants thereby making the currently named defendants herein liable
8  for the acts and/or omissions of their agents, servants and/or employees.
9  13. These Defendants, and DOES 1-10, were agents, servants and employees of each other, of
10  the other named Defendants, and were acting at all times within the full course and scope of
11  their agency and employment, with the full knowledge and consent, either expressed or
12  implied, of their principal and/or employer and each of the other named Defendants and each
13  of the Defendants had approved or ratified the actions of the other Defendants thereby
14  making the currently named defendants herein liable for the acts and/or omissions of their
15  agents, servants and/or employees.
16  14. Defendant CHRISTINE BARNETT is a resident of California.
17
18  **JURISDICTION AND VENUE**
19  15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,
20  1343, 2201, 2202 and 42 U.S.C. § 1983.
21  16. Venue lies in this Court pursuant to 28 U.S.C. § 1391.
22  **STATEMENT OF FACTS**
23  17. Defendant SORINNE ARDELANU works or worked for the owner of Plaintiff Benjamin P
24  Cannon's primary business competitor, and was previously attempting to contact Cannon
25  regarding both his business. Later, Defendant attempted to destroy evidence of these
26  contacts by changing her profile name and then deleting and re-creating her Facebook
27  account as "Anna Kara".
28  18. On or about January 6, 2010, ARDELANU sent Cannon a "Facebook Comment" on January

First Amended Complaint For Damages - Page 4 of 15

1     6, 2010 stating "Where's my invite? I want to play :(" (See **Exhibit A-1 "Facebook**

2     **Comment")**

3    19. On or about February 1, 2010, ARDELANU contacted Rachel Francis, a friend of Cannon's.

4     In this Message, ARDELANU claims "I got this email from a very close friend and client of

5     mine about Ben Cannon" that friend is "My cop friend" (and JOHN DOE 1 in this

6     Complaint.) ARDELANU subsequently accused Cannon of stalking her "*for years now*", of

7     possession of an illegal Assault Rifle, and stated that she feared Cannon would pull a woman

8     over under the guise of being a Law Enforcement Officer. ARDELANU postulates: "The

9     typical situation is a single woman driving at night on a lonely stretch of road." (See **Exhibit**

10     **A-2 "1st email.)**

11    20. On or about February 9, 2010, Cannon sent a Cease and Desist letter to ARDELANU,

12     requesting that she refrain from further defamatory statements.

13    *21.* Undeterred, On or about February 14, 2010, ARDELANU sent an e-mail to Allyson

14     Glasscock and an unspecified number of other third-parties stating: "*He actually pulled*

15     *someone over this time.*" (See Exhibit **A-3 "OMG Guys"**)

16    *22.* On or about Feb 19, ARDELANU admits "I have several friends in law

17     enforcement/investigation that do background/criminal checks for me" (See **Exhibit A-**

18     **4 "Email to Counsel"**)

19    23. On or about April 23, ARDELANU admits "I physically went to the Petaluma police

20     department" and "I have had access to the detective [NAUGLE] that worked on this latest

21     case [The Feb 11 Arrest] It was explained to me that the victim was solid..." (See **Exhibit A-**

22     **5 "Email to Art Chambers"**)

23    24.

24    *25.* On or about January 28, 2010, Defendant JOHN SILVA of the PETALUMA POLICE

25     DEPARTMENT circulated a memo accusing Cannon of being a Police Impersonator.

26     ARDELANU, in collaboration with Defendant JOHN DOE 1, a Police Officer in an

27     unknown agency, obtained and distributed that memo to many of Cannon's Facebook friends

28     despite being advised that it was untrue. ARDELANU later admitted in email dated April 23

First Amended Complaint For Damages - Page 5 of 15

1    to illegally accessing law enforcement records to do this and to 'run background checks' (See

2    **Exhibit A-4 "Email to Counsel"**) as well as colluding with Defendant NAUGLE of the

3    Sonoma County Sherriff's Department.

4

5    26. On or about January 27, 2010, Cannon was stopped by Petaluma Police Department Officers

6        for an alleged equipment violation.

7    27. During the traffic stop, Petaluma Police Officers SILVA, WALKER, and JUCUTAN

8        searched Cannon's BMW 750iL Sedan and found a legally stored firearm in the trunk, a

9        HAM radio, Yellow LED strobe lights on all 4 corners required for his construction business,

10       and other lawful items including a power inverter for remote operation of laptop computers.

11   28. Following this stop, Defendant SILVA created and published a memo describing Cannon

12       factually as a "police impersonator" and describing the legal items found in his car as "police

13       equipment" during the January 27th stop. (See **Exhibit A-3 "OMG guys"**)

14   29. On February 4, 2010, it is alleged in a report compiled by defendant HAUFLER that

15       Christine Barnett, a resident of the town of Santa Rosa, was <u>a single woman driving at night</u>

16       <u>on remote Napa Road</u>, (note the similarity to Ardelanu's postulation, stated 3 days *prior* to

17       the alleged incident) when she was stopped by a man posing as a police officer driving a car

18       with a single solid red light in its windscreen with a "darker colored" hood.  Barnett was able

19       to leave the scene of the alleged stop and contacted Defendant SONOMA POLICE

20       DEPARTMENT law enforcement.

21   30. On February 4, 2010, Cannon was in Sacramento for the entire evening thru the next

22       morning visiting a friend, Grant Early.  During that evening, Cannon used his credit card and

23       to pay for a meal in Sacramento within 20 minutes of the time Ms. Barnett alleges to have

24       been stopped in Sonoma.  Cannon also used his AT&T cellphone to make calls from the

25       Sacramento area.

26   31. On February 11, Defendant JESSE HANSHAW claims to have interviewed Ms. Barnett,

27       where she allegedly identified Cannon with "80 percent" certainty.

28   32. At 11:35 AM on February 11, 2010, Defendant Nagle obtained a search warrant  expressly

First Amended Complaint For Damages - Page 6 of 15

1     prohibiting a "night search" of Cannon's residence. (See **Exhibit "B" Warrant**)

2 33. On February 11, 2010, at approximately 10:30 PM Cannon was parking his vehicle on a

3     public road near his residence when he was stopped by Defendant(s) DOES 2 and 3, who

4     identified themselves as Sherriff's Deputies.  Defendant was immediately arrested for

5     "PC236". The deputies transported hauled Cannon off in handcuffs infront of his family, then

6     Cannon to Sonoma County Jail, where he was kept awake until 4am, interviewed by

7     NAUGLE, and then jailed until he could post a $10,000 bail.

8 34. Meanwhile, On the same night, commencing approximately 11PM and into the early

9     morning hours of February 12th, Sonoma County Sheriff's Deputies NAUGLE,

    SPARKMAN, MURPHY, and HANSHEW forced Cannon's family to wait outside shivering

10     in their pajamas while he raided and searched the house, in spite of the fact the search

11     warrant prohibited a "night search."

12 35. On or about February 12, 2011, immediately following the search, Sheriff's deputies left a

13     "notice of service" admitting the search was performed at Cannon's residence pursuant to the

14     warrant.

15 36. Nothing found in the searches was present in the Complaint against Cannon.

16 37. Defendant was transported to Sonoma County Sherriff's Office, where he was interrogated.

17     Cannon advised the officers that he "Wanted a letter of apology, this arrest canceled, my

18     record expunged, and to be released immediately.  Failing that, I wish to speak with my

19     attorney."

20 38. Despite Cannon's profession of innocence, NAUGLE elected to charge Cannon and he was

21     booked at approximately 5am.

22 39. On February 18th, under sealed court order reviewed by Defendant SONOMA COUNTY

23     DISTRICT ATTORNEY'S OFFICE, the Sonoma County Sheriff's Department obtained

24     exculpatory cellphone records of Cannon's AT&T phone showing he was in Sacramento the

25     evening of February 4th, 2010.

26 40. On February 23rd, Cannon's counsel sent a Discovery letter to defendant SONOMA

27     COUNTY DISTRICT ATTORNEY'S OFFICE, and was directed to appear March 09 for a

28     viewing. (see **Exhibit "C" Letter to DA"**)

41. On March 09, 2010, Cannon's counsel asked for, and was denied access to, the alleged video lineup used to incriminate Cannon. Defendant NAUGLE never disclosed his possession of any exculpatory cell records showing Cannon was in Sacramento.

42. On or about March 10, 2010, as part of an Affirmative Defense, Cannon obtained a copy of the complaint that included a date of the alleged incident, and Cannon's counsel attempted to Subpoena his phone records, which would prove he was in Sacramento at the time. AT&T informed Cannon's counsel that the records had already been delivered to Sonoma County Sherriff. (See **Exhibit D "Letter to NAUGLE"**) NAUGLE admitted over the phone to Chambers that he knowingly possessed and withheld the phone records, stating that they only proved Cannons' phone was in Sacramento. However, when asked what NAUGLE did with his duty to investigate further, NAUGLE admitted he did nothing. When asked why he did not turn over the evidence exonerating Cannon as exculpatory as was his duty, he said nothing.

43. Defendants' prosecuted Cannon, and Cannon subpoenaed' witnesses, provided the phone records exonerating himself, as well as signed credit card charge receipts proving he was in Sacramento.

44. On or about March 16, 2010 Charges against Mr. Cannon were dismissed.

45. Cannon filed a Petition for and obtained a Factual Finding of Innocence. (see **Exhibit E "Factual Innocence."**)

46. On April 6, 2010, Defendant JAMES PATRICK CASEY file a response in the form of an Opposition to Cannons petition, admitting Cannon's residence was search pursuant to the warrant issue by Judge, and falsely claiming it was obtained at 11:35PM, The April 6, 2010 Opposition filed by prosecutors is based on Defendants NAGLE and HAUFLER.

47. The opposition describes the eye-witness identification procedures of Cannon by Christine Burnett used by Sheriff's Deputies.

48. The Opposition also falsely claims Defendant Naugle authored the search warrant at "11:35 pm" the night of February 11, 2010, which would imply night-time searches were permissible. In-fact, the Warrant explicitly states twice that night search is barred. The time

1     stamp explicitly states "11:35AM" and the letters "AM" are circled, and PM is crossed-thru.

2  49. The April 6, 2010 Opposition admits "The search warrant was served" on Cannon's

3     residence. (for all of the above, see **Exhibit E "Factual Innocence."**)

4

5  50. Defendant JAMES PATRICK CASEY of the District Attorney's office, not only knowingly

6     prosecuted Cannon despite the presence of evidence exonerating him, but further proceeded

7     to oppose his factual finding even after the evidence and proof of it's concealment was

8     entered into the record by Plaintiff and Plaintiff's witnesses.

9  51. At all times material hereto, Defendants were acting under the color of state law.

10 52. At all times material hereto, the Defendants were acting as police officers for the Petaluma

11    Police Department, the Sonoma Police Department, and the Sonoma County Sherriff's office,

12    the Sonoma County District Attorney's office, the City of Petaluma, the City of Sonoma, and

13    the County of Sonoma, or as agents thereof.

14 53. At all times material hereto, Defendants were acting in concert with each other.

15 54. Defendants were made aware of (or were already aware of) Cannon' business opportunities,

16    but failed to resolve the underlying false arrest arrest in a timely manner, causing Cannon to

17    lose his company's business opportunities with Gunbroker.com, his company's stock

18    offering, and other investors.

19

20 55. On or about February 13, 2010, without opportunity to comment, and in a clear attempt to

21    destroy Cannon's reputation, personal life, and business, Defendant CHRIS SPALLINO

22    published a press release (See **EXHIBIT F "Sherriff's Press Release")** engineered to

23    express and imply Cannon's guilt, including publishing his home address.  Over 50 press

24    agencies picked up the story, and Defendant SONOMA SUN published it as factual (See

25    **Exhibit G "Sonoma Sun Release.")** and failed to publish a retraction even after Chambers

26    notified them in email of the factual innocence.  These releases were read by hundreds of

27    thousands of viewers, and to this day continue to poison Plaintiff's name.

28 56. Due to the false arrest, Cannon was forced to resign from his position as Treasurer of The

1     Calguns Foundation, a 501(c)3 nonprofit corporation dedicated to civil rights and education.

2 57. Due to the publishing of his home address, and Defendant's actions and threats, Cannon's

3     residence became unsafe and he was forced to move. (See **Exhibit "H" Threats**.)

4 58. Due to the false arrest, the delay in determining whether to file any charges, and the delay in

5     issuing a factual finding of innocence, Cannon lost his contract with gunbroker.com and

6     other investors, nearly resulting in the near total collapse of his business.

7 59. On or about January 12, 2007, Sonoma County District Attorney BROOKE POWELL

8     HALSEY JR. [#142330] was found guilty in the Bar Association Courts of "violate(ing)

9     California law by withholding, prior to trial, impeaching evidence and evidence favorable to

10     the defense, committing acts of moral turpitude, and he improperly suppressed evidence,

11     made multiple misrepresentations to the court and sought to mislead a judge." (see:

12     http://members.calbar.ca.gov/fal/Member/Detail/142330 )

13 60. All exhibits are incorporated as though fully stated herein.

14

15                **COUNT I**
        **Unlawful Unreasonable Search and Seizure**

16            **Brought under 42 U.S.C. §1983**

17

18 61. Paragraphs 1 through 52 are incorporated as though fully stated herein.

19 62. Defendants searched Plaintiff's home at night, in clear violation of the terms of the Search

20     Warrant.

21 63. Defendants acted with deliberate indifference to Plaintiff's rights, Search Warrant terms and

22     conditions, and without Probable Cause.

23 64. Defendants' actions violated Plaintiff's rights protected by the United States Constitution,

24     including the First, Fourth, Eighth, and Fourteenth Amendments.

25 65. Defendants' actions during the encounter violated Plaintiff's rights, including those protected

26     by Article 1, Sections 1, 2, and 13 of the California Constitution.

27

28                **COUNT II**
             **False Arrest**

**Brought under 42 U.S.C. §1983**

66. Paragraphs 1 through 52 are incorporated as though fully stated herein.

67. Acting without probable cause, Defendants seized Plaintiff, arrested Plaintiff absent a Warrant, searched Plaintiff, handcuffed him, disarmed him, harassed him, transported him to the Sonoma County Jail, and held him until he posted his bail.

68. Defendants acted with deliberate indifference to Plaintiff's rights, their duties as investigators, and without Probable Cause.

69. Defendants' actions violated Plaintiff's rights protected by the United States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

70. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

71. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

**COUNT III**
**Failure to Properly Train & Supervise**
**Brought under 42 U.S.C. §1983**

72. Paragraphs 1 through 52 are incorporated as though fully stated herein.

73. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of defendants, to prevent the consistent and systematic use of improper searches, and to prevent the improper searches by officers.

74. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of defendants, to prevent the  systematic withholding of evidence from criminal defendants' counsel.

75. Defendants failed to provide adequate training to police officers that hold the power,

First Amended Complaint For Damages - Page 11 of 15

1    authority, insignia, equipment and arms entrusted to them.

2    76. Said custom, practice, and policy included a failure to adequately investigate, supervise, and

3        discipline offending officers, which fostered the custom, practice, and policy within the

4        Sonoma County Sheriffs which resulted in the above pled facts.

5    77. Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the

6        public from official misconduct.

7    78. The failure to promulgate or maintain constitutionally adequate policies regarding training

8        was done with deliberate indifference to the right of Plaintiff and others in his position.

9    79. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

10       be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

11       was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

12       punitive damages.

13

14                                        **COUNT IV**

15                                   **Withholding Evidence**
                                   **Brought under 42 U.S.C. §1983**
16

17   80. Paragraphs 1 through 52 are incorporated as though fully stated herein.

18   81. Defendants deliberately and knowingly conspired to withhold evidence proving Plaintiff's

19       innocence, with the intent to harm Plaintiff and his business.

20   82. Defendants deliberately and knowingly conspired to prosecute Plaintiff, even knowing or

21       being informed he was innocent.

22   83. Defendants' actions violated Plaintiff's rights protected by the United States Constitution,

23       including the First, Fourth, Eighth, and Fourteenth Amendments.

24   84. Defendants' actions during the encounter violated Plaintiff's rights, including those protected

25       by Article 1, Sections 1, 2, and 13 of the California Constitution.

26   85. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

27       be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

28       was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

1     punitive damages.

2   86. Defendants' actions during the encounter violated Plaintiff's rights protected by the United

3     States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

4   87. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to

5     be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct

6     was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to

7     punitive damages.

8

9                      **COUNT V**
                   **Defamation Per Se**

10

11   88. Paragraphs 1 through 52 are incorporated as though fully stated herein.

12   89. Defendants conspired to distribute a press release engineered to destroy Plaintiff's reputation,

13     business, and home life.

14   90. The Defendants have made and endorsed the making of statements to others that Benjamin

15     Cannon committed the crimes alleged.  These statements are false and defamatory *per se.*

16   91. The Defendants' statements harmed Plaintiff's reputation in the public, excited derogatory

17     opinions against him, and caused the public and others to hold Plaintiff in contempt.  They

18     also impute the commission of a crime and call into question Cannon's fitness to perform his

19     business, and profession.

20   92. Defendants statements were made to reporters, law enforcement agencies, newspapers and

21     other public outlets and wire services (among other places and persons).  These statements

22     were not privileged in any way.

23   93. Given cannon's Factual Innocence, and given a judge's determination that evidence

24     exonerating him was deliberately withheld, Defendants issued these statements with actual

25     knowledge that such statements were false and in reckless disregard for their falsity.  In

26     either case, Defendants issued these statements intending to harm Plaintiff.

27   94. Defendants' actions during the encounter violated Plaintiff's rights protected by the United

28     States Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments.

95. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

96. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

PRAYER

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. Declaratory relief consistent with the injunction, including a declaration that Defendants violated Plaintiff's Constitutional rights, including his First, Fourth, Eighth, and Fourteenth Amendment rights, by (a) detaining him and seizing his person and his property without probable cause to believe that he had committed a crime and (b) Searching his residence without probable cause and without a warrant;

2. General, Compensatory, and Special damages in an amount to be proven at trial not under $2,000,000;

3. Presumed damages based on, among other things, harm to Plaintiff's reputation, business, stock offering and price, emotional health, pain and suffering, and personal life;

4. Punitive damages;

5. Award Plaintiff costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. Any other further relief as the Court deems just and appropriate to protect the peaceable exercise or enjoyment of the right or rights secured.

First Amended Complaint For Damages - Page 14 of 15

7. For Defendant CHRISTINE BERNETTE only – Plaintiff seeks only an apology at this time, excluding her of any other damages, and extends his wishes that the Authorities find the real perpetrator who accosted her.

Date: April 13, 2011                    Respectfully submitted, with apologies for lack of brevity.

                                          Benjamin P Cannon
                                          Attorney In Propia Persona
                                          1083 Vine St #215
                                          Healdsburg, CA 95448
                                          Email: discovery@42usc1983.net

                                          By: _____
                                          Benjamin P Cannon,
                                          Attorney in pro-per

First Amended Complaint For Damages - Page 15 of 15

**Exhibits Table of Contents**

**Exhibit "A" Publications by Sorinne Ardelanu - Pages 1-4**

**Exhibit "B" Warrant - Pages 8-11**

**Exhibit "C" Letter to DA" - Page 12**

**Exhibit D "Letter to NAUGLE" - Page 13**

**Exhibit E "Factual Innocence" – Pages 14-62**

**Exhibit F "Sherrif's Press Release" – Pages 5**

**Exhibit G "Sonoma Sun Release" – Pages 6**

**Exhibit H "Threats" – Pages 7**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## A-1 "Facebook Comment"

Sorinne Ardeleanu commented on your photo:

"Where was my invite? I want to play. :( "

## A-2 "1st Email"

Rachel sent you a message.

--------------------

Subject: from sorrinne

Message:

I got this email from a very close friend and client of mine about Ben Cannon. We have him as a mutual friend so I want to make sure that you look out for yourself and any other friends that may know him. This is for real and it's scary. :( One of my very close friends and clients emailed me this a couple days ago as he knows Ben has been stalking me for a few years now.

"He was arrested for impersonating a Law Enforcement Officer. His BMW contained many of the items that a cop car has, including flashing lights, bull horn, scanner, etc. Also, he has a secret compartment in the car for an automatic assault rifle. According to the police flyer, he has a long criminal record. I would stay far, very far away from this guy.

My cop friend said that there have been many instances of civilians pulling over other civilians under the guise of being a LEO. The typical situation is a single woman driving at night on a lonely stretch of road…."

What's scarier to me is that he just launched GunPal which gives him access to a lot of personal information pertaining to people buying and selling guns. Be safe please.

«close-delete»
--------------------

## A-3 "OMG Guys"

Date: Sun, 14 Feb 2010 22:25:43 -0800
From: sorinne@yahoo.com
Subject: OMG Guys!
To: sorinne@yahoo.com

Please Please be careful. This is his 2nd arrest in just over 2 weeks. He actually pulled someone over this time. A 22 year old woman. If you have any female

1 | friends that know him, please warn them to be cautious.

2 | http://abclocal.go.com/kgo/story?section=news/local/north_bay&id=7276282

3 | Looks like he's posted bail. http://fugitive.com/archives/18598

4

5

6



7

8

9

10

11

12

13

14

15

16

17

18

19

20

21 | **A-4 "Email to Allyson Glasscock"**
Date: Fri, 19 Feb 2010 18:25:45 -0800
22 | From: sorinne@yahoo.com
23 | Subject: Re: Cease & Desist
To: allysonglasscock@glasscockglasscockandmullins.com
24

25 | Hi Allyson,

26 | Thanks for the note and clarification. As I mentioned in my note on FB to you, I was only
27 | looking out for you, because I thought we clicked on L4P and FB. I considered you a
"virtual friend" and I was trying to look out for you. I hope you realize now after Ben's 2nd
28 | arrest involving an actual person, and not just equipment, that my intentions were 100%

sincere. Maybe my approach wasn't the best, but hey, you live and you learn. One of my faults is that I'm always honest. Some times people don't believe me, but in the end it's their loss.

I'm not familiar with anyone with the last name of Baine, nor did I ask anybody to contact you on my behalf. I did have 1 friend run a background check on you, but he's my mentor and I trust him 100%. Can you please forward any communications with this person concerning me to me? I have several friends in law enforcement/investigation that do background/criminal checks for me and I want to make sure that I have no reason to be alarmed. I'd like to run a check on this individual.

Since all this news has come out about Ben, I have had friends forward me emails from him, contacting them over the years asking about me and how to get closer to me. I'm a bit afraid of him now as I consider him highly unstable. I'm actually heading out of town for a while till all of this settles.

I definitely will not contact you again as I was mistaken in thinking that we could be friends in real life when I come down to SoCal. Oh well. I apologize for disturbing you.

Respectfully,
Sorinne

ps. I'm attaching the ranger rover I saw in case you're curious, since you're an RR fan like me. I've never seen one like this before.

### A-4 "Email to Art Chambers"
--- On **Fri, 4/23/10, Sorinne Ardeleanu <_sorinne@yahoo.com_>** wrote:

From: Sorinne Ardeleanu <sorinne@yahoo.com>
Subject: Re: Ben Cannon
To: art@artchambers.com
Date: Friday, April 23, 2010, 1:05 PM

Good Afternoon Art,

Thanks for the message. I hope all is well with you. It's been a while. Not sure if you remember me, but I believe we met when I was BMC a few years ago as well as possibly on some exotic car drives.

You may be mistaken with the information provided to you by Ben. I forwarded a copy of a flier from the Petaluma PD from an arrest that Ben had in January, to warn our mutual friends to be careful of Ben since this was not his first time being arrested for impersonating an officer (as per the flier created by the arresting officer). I physically went to the Petuluma police department to verify this arrest as well as to the Santa Rosa Courthouse to get a print out of Ben's full criminal history in that county. You are welcome to do the same if you have

1   not already. I highly doubt the information that these 2 public institutions have provided me
2   are false. This is all public information and available to anyone who wants it at no cost. I
    have referred some people to Google Ben Cannon after his 2nd arrest less than 3 weeks
3   later, but alas I cannot control what information is available on Google, especially with his
4   arrest in February that did make various news sources. I have had access to the detective that
    worked on this latest case in which you represented him at the Santa Rosa Courthouse. It
5   was explained to me that the victim was solid, but that Ben produced a restaurant receipt
6   that showed his signature; dated/timed in Sacramento when the crime allegedly took place
    and Ben also produced cell phone records showing he was in the Sacramento area. Since the
7   case was a misdemeanor the DA dropped it as there was not enough evidence to create
    reasonable doubt in the jury's mind. I also understand that Ben 'lawyered up' and did not
8   give a statement when asked about the equipment in his car. This information from the
9   detective I have not shared with anyone except for my boyfriend and you as I do not wish to
    be involved in whatever trouble Ben gets into.

10
    I have not shared anything that is not public information about Ben Cannon. My only goal
11  with sharing this public information is to protect our mutual friends from possible injury
12  from Ben Cannon. This is an individual, due to his most recent run ins with the law coming
    to light, I deem mentally unstable. I am requesting that he does not contact me anymore
13  with these intimidating legal threats. I feel that he is harassing me and if it doesn't stop I will
14  notify the authorities. I am also fearful for my life because I do not know if this man knows
    what is acceptable and legal behavior, as my boyfriend travels a lot for work and I am
15  frequently home alone. I understand he is concerned about his reputation for business
16  reasons, but I currently hold in my possession 5 of his arrest records.  Who knows what
    other ones exist in other counties/states. I'm not a lawyer and it's not my area of expertise to
17  research criminals.. I truly have no further interest in hearing or seeing his name ever again. I
18  simply cannot imagine a person being wrongfully arrested so many times. There has to be
    validity to the arrests, especially considering they were made by different officers at different
19  locations. I have never been arrested in my life and we are the same age.

20  I imagine you are doing this as a favor for Ben, as it appears your specialty is labor &
21  personal injury. On that note, I'd like to present you with a great business opportunity. My
    boyfriend is a broker for a company that buys structured settlements. On average they pay
22  out about 20% higher than their closest competitors. Let me know if you'd like to learn
23  more. You would get a referral fee as well as commissions. I'm looking to partner with as
    many personal injury attorneys as possible, so if you have other colleagues that are interested
24  in learning more, I'll gladly put you in touch with my boyfriend. You might already be
25  acquainted as he was one of the investors in Club Sportiva and a fellow Ferrari owner as
    well.

26
    Regards,
27
    Sorinne
28

1

**EXHIBIT "F" Sherrif's Press Release**

2

3

4

5

6
*Petaluma man arrested for impersonating officer*
7
*Saturday, February 13, 2010*

8
*PETALUMA, CA -- A Petaluma man was arrested Thursday on suspicion of impersonating a police officer after he allegedly pulled over a female driver near Sonoma, the Sonoma*
9
*County Sheriff's Office said.*

10
*The 22-year-old woman was driving on Napa Road around 11 p.m. Feb. 2 when she was pulled over by an unmarked vehicle with a red light, Lt. Chris Spallino said.*
11

12
*A man not wearing a uniform then flashed what appeared to be a badge and asked her for identification, Spallino said.*

13
*The woman became uncomfortable and asked the man to have a marked vehicle respond.*
14
*The man then became uncomfortable and drove away and the woman called police, Spallino said.*

15
*Detectives from the sheriff's office's violent crimes unit identified 29-year-old **Benjamin***
16
***Philip Cannon** as a suspect. After the woman identified him as the man who pulled her over, Cannon was placed under surveillance, Spallino said.*

17
*Cannon was arrested Thursday at his residence in the 1100 block of East Sunnyslope Road*
18
*for impersonating a police officer and false imprisonment, Spallino said.*

19
*Detectives seized Cannon's silver 2001 BMW and found a police scanner, strobe light,*
20
*handcuffs and a siren inside, Spallino said. Cannon was booked into the Sonoma County jail and has since posted $10,000 bail.*

21
*Spallino said the woman's request for a marked car may have deterred the suspect and*
22
*prevented a more serious incident. He said motorists in a similar situation should consider acknowledging the police vehicle and pull over in a safe location.*

23
*Anyone who may have has a similar encounter is asked to call detective James Naugle at*
24
*(707) 565-2185.*

25

26

27

28

EXHIBITS incorporated into COMPLAINT  Page 5 of 62

Exhibit "G" Sonoma Sun Release.

Is this interesting?         More News | Share | Comment | Close

 **Compare your opinion with people in Sonoma County!**
Finish the survey to compare and share opinions with your neighbors.

Sports Classifieds Obituaries | Directory

Archives ⌄ _____

- El Sol de Sonoma
- Sun Open Houses
- KSVY 91.3 Sonoma
- Sonoma Now
- SVTV 27

## Most Popular Stories

- Academy Awards party
- Sonoma Film Festival announces 2010 lineup
- Travel notes – recalling high school friendships
- Newly spayed pup in pain
- Seeing is believing
- UPDATED – Mother and daughter found dead in apartment
- Contact Us
- Local artist selected for public art project
- Paradigm shift
- How did it all go "Sideways"?

News | February 18, 2010 📧 Email This Post

# Fake cop busted for false imprisonment

**Staff Report**

A man who terrified a female driver by impersonating a police officer was arrested last week on charges including false imprisonment. Benjamin Cannon, 29, of Petaluma, was identified by the 22-year-old victim as the man who subjected her to a late-night ordeal just east of Sonoma.

The woman told police she driving westbound on Napa Road on Feb. 22. At about 11 p.m., she was pulled over by what she believed to be an unmarked police vehicle – a darkly-painted car displaying a single red light. A man, dressed in dark clothes, approached her window and quickly flashed what appeared to be a badge. He asked to see her identification.

Unnerved by the suspicious circumstances, the woman refused to hand over her identification, and insisted a marked police car show up to confirm the validity of the stop. According to the victim, the man became uncomfortable, returned to his vehicle and drove away.

Cannon emerged as a suspect during the investigation by detectives from the violent crimes investigations unit. After the victim positively identified Cannon, Lt. Chris Spallino reported, Cannon was located and arrested at his residence in the 1100 block of East Sunnyslope Road.

**Exhibit "H" Threats**

Brad Johnson. February 12, 2010 at 1:58pm Report

I don't believe we've been formerly introduced but I thought now would be an appropriate time to say hello.

As you may know, I'm Sorinne's boyfriend. I normally don't get involved in her relationships with others in her life, she's her own person, but I'm a bit concerned about some of the things I've heard you purportedly say about her. Now, I'm not going to start throwing around threats and/or begin insulting you but I'm aware of the situation surrounding your recent run in with the law on 1/28.

I'm writing to either a) give you the opportunity to explain yourself and justify the threats you've levied against her or b) to serve notice that I will not stand by and let you drag her name through the mud for the actions you've taken.

If you'd like to discuss this either via phone or face to face, let me know and we'll make arrangements.

Regards,

Brad


Between You and Tom Baine

February 14, 2010 at 10:10pm Report
Listen asswipe – If I EVER see you or your BMW anywhere near any woman I know, you're going to have more to worry about than a goddamn pillow fight. And go ahead and sick your fake ass lawyer on me... what's she going to do, review my lease?

Exhibit "B" Warrant

SW No.

STATE OF CALIFORNIA - COUNTY OF SONOMA

# SEARCH WARRANT AND AFFIDAVIT

## (AFFIDAVIT)

COPY

DETECTIVE JAMES NAUGLE, SONOMA COUNTY SHERIFF'S DEPARTMENT,
swears under oath that the facts expressed by him/her in this Search Warrant and Affidavit and the
attached and incorporated Statement of Probable Cause are true and that based thereon he/she has
probable cause to believe and does believe that the property and/or persons described below is lawfully
seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set
forth below. Wherefore, affiant requests that this Search Warrant be issued.

#1357

(Signature of Affiant)                          NIGHT SEARCH REQUESTED: YES ( )  NO (X)

Prepared with the assistance of or reviewed by:

REVISED ELECTRONICALLY  By BOB WANER
Deputy District Attorney

# (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF,
POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SONOMA. Proof by Affidavit having
been made before me by DETECTIVE JAMES NAUGLE, that there is Probable Cause to believe that
the property and/or persons described herein may be found at the locations set forth herein and is
lawfully seizable pursuant to Penal Code Section 1524, as indicated below by "X"(s) in that it:

_____   was stolen or embezzled

___X___   was used as the means of committing a felony

___X___   is possessed by a person with the intent to use it as a means of committing a public offense or
          is possessed by another to whom he/she may have delivered it for the purpose of concealing
          it or preventing its discovery

___X___   is evidence which tends to show that a felony has been committed or that a particular person
          has committed a felony

_____   tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3,
          has occurred or is occurring.

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

1.  ██████████████ Petaluma, more particularly described as a two story single family dwelling. The residence is situated on the north side of East Sunnyslope Road and the front door faces south. The house has wood siding and is painted beige with brown trim. The numbers ████ are posted in approximately 4 inch black numerals on the siding of the house to the left of the garage door. The numbers ████ are also posted on the curb in front of the residence, in approximately four inch black numerals on a white painted background. The north and the east sides of the property back up to ██████████.

Said search to include all rooms, attics, basements and other parts located within the aforementioned residence; the surrounding grounds and any storage areas, trash containers and outbuildings of any kind located thereon and specifically designated for the sole use of said residence.

2.  Any and all vehicles under the dominion or control of any and all tenants of the aforementioned residence or located on the cartilage of the property to include, but not be limited to the following:

A.  A silver 2001 BMW, bearing California license plate ██████, and VIN ████████████████████

**FOR THE FOLLOWING PROPERTY:**

1.  Any and all police style equipment, to include but not be limited to, scanners, badges, handcuffs, ID's, lights, sirens, radios, decals, firearms, holsters and clothing with police logos or identification;

2.  A dark colored hooded sweatshirt or jacket;

3.  Articles of personal property tending to establish the identity of persons in control of any premises, storage areas or containers being searched, such as utility company receipts, rent receipts, charge card receipts, tax receipts, airplane tickets and other receipts, checks, deposit slips, savings account passbooks, passports, drivers licenses, vehicle registrations/titles, land titles, escrow papers, legal documents, Social Security cards, Food Stamps, Medi-Cal cards, insurance bills and/or policies, medical records, prescriptions and prescription bottles, doctor bills, hospital bills, canceled mail, addressed envelopes, photographs, weapons with serial numbers, keys and safes;

4.  Computer equipment including processors, monitors, keyboards, terminals, hard disk drives, floppy disk drives, tape drives, floppy disks (diskettes), modems, cartridges, tapes, computer disks (CD-ROM's), compact disks (CD's), laser disks, video cassettes,

recording devices and players for any such recording media, and any information or data stored in a media capable of being read by a computer or other electronic data storage device;

5. Any and all electronic day planners located within said residence for any and all evidence pertaining to the impersonation of a police officer.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. Any item seized during the lawful service of the search warrant shall be disposed of in accordance with law by the Sonoma County Sheriff's Department upon adjudication of the case. The officers serving the search warrant are hereby authorized, without necessity of further court order, to return seized items to any known victim(s) if such items have been photographically documented.

This Search Warrant and incorporated Affidavit were sworn to and subscribed before me this 11^tr day of FEBRUARY, 2010, at 11:35 (A.M./P.M.). Wherefore, I find Probable Cause for the issuance of this Search Warrant and do issue it.

_____, **NIGHT SEARCH APPROVED: YES ( )  NO (✓)**
(Signature of Magistrate)
Judge of the Superior Court, County of Sonoma
State of California

//
//
//
//
//
//
//
//
//
//
//
//
//
//



# Sonoma County
# Sheriff's Department

**BILL COGBILL**
Sheriff-Coroner

**GARY A. ZANOLINI**
Assistant Sheriff
Law Enforcement Division

**MICHAEL M. COSTA**
Assistant Sheriff
Detention Division

## SEARCH WARRANT: NOTICE OF SERVICE

CR#: _10- 0000189_

**TO WHOM IT MAY CONCERN:**

1.  THE PREMISES AT ███████████████████████
    HAVE BEEN SEARCHED BY PEACE OFFICERS WITH THE **SONOMA
    COUNTY SHERIFF'S DEPARTMENT** PURSUANT TO A SEARCH
    WARRANT ISSUED ON _2/11/10_, SIGNED BY THE HONORABLE
    _MARK TANSIL_, JUDGE OF THE SUPERIOR COURT.

2.  THE SEARCH WAS CONDUCTED ON _2/11/10_. A LIST OF THE
    PROPERTY SEIZED PURSUANT TO THE SEARCH WARRANT IS
    ATTACHED.

2.  PURSUANT TO CALIFORNIA PENAL CODE SECTIONS 1539 AND 1540,
    YOU MAY FILE A WRITTEN MOTION IN THE COURT OF THE
    AFOREMENTIONED JUDGE WHO ISSUED THE WARRANT, SEEKING
    THE RETURN OF PROPERTY SEIZED PURSUANT TO THIS WARRANT.

3.  IF YOU WISH FURTHER INFORMATION, YOU MAY CONTACT
    DETECTIVE _NAUGLE_ AT ███████████████.

PAGE 1 OF _1_

INV-006

**Administration Division**
2796 Ventura Avenue
Santa Rosa, CA 95403
707.565.2781

**Law Enforcement Division**
2796 Ventura Avenue
Santa Rosa, CA 95403
707.565.2511

**Detention Division**
2777 Ventura Avenue
Santa Rosa, CA 95403
707.565.1422

**Coroner**
3336 Chanate Road
Santa Rosa, CA 95404
707.565.5070

Exhibit "C" Letter to DA"

# LAW OFFICES OF ARTHUR CHAMBERS
2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

VIA FAX ONLY

February 23, 2010

District Attorney, Sonoma County
600 Administration Drive, Room 212-3
Santa Rosa, California 95403

Re: People v. Cannon, Action number: SCR578412

Dear District Attorney:

Please be advised that I represent Mr. Cannon and will be appearing at the Preliminary Hearing, currently set for March 16, 2010, at 8:30 am. In order to prepare for that hearing please consider this letter my informal request for discovery in this matter.

1. The above-named defendant hereby requests that you provide to this office at the address indicated above, copies of any and all relevant written or recorded statements of witnesses, including any statement, diagrams, or drawings made by the investigating and or arresting officer on any piece of paper or other medium of information storage.

2. The above-named defendant hereby also requests that you provide to this office at the address indicated above, investigating officer's qualifications.

3. The above-named defendant hereby also requests that you provide to this office at the address indicated above, all records of any identification procedures pertaining to the identification of the above named defendant.

4. The preliminary hearing on this matter is set August 18, 2006. Please advise, prior to March 1, 2010, if you will provide these items.

ARTHUR C. CHAMBERS
Attorney for Defendant

**Exhibit D "Letter to NAUGLE"**

# LAW OFFICES OF ARTHUR CHAMBERS
2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

### VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office. I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know, those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message. I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010, your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have discovered that Mr. Cannon's phone was being used in Sacramento at or about the time the alleged victim claimed the incident occurred. I've got to tell you that this information leaves a very bad taste in my mouth, because you had exculpating information which was not provided at the informal discovery. Indeed, his cell phone contained virtually the same information, which you had immediately when the search warrant was served. If there is any other such information I would like to have it as soon as possible.

I've left you my cell phone number. Please call me before the preliminary hearing, or have the individual at the District Attorney's office give me a call.

Very truly yours,

Arthur Chambers
acc/hms

## Exhibit E "Factual Innocence"

Arthur Chambers, SBN: 53282
2095 Van Ness Avenue
San Francisco, CA 94109
(415) 775-2144

**ENDORSED**
**FILED**

**MAY 18 2010**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

Attorney for Defendant Benjamin Cannon

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SONOMA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | Case No. SCR578412 |
| Plaintiffs, | ORDER ON PETITION FOR FINDING OF FACTUAL INNOCENCE |
| v. | DATE: April 19th, 2010 |
| BENJAMIN CANNON, | TIME: 1:30 pm |
| Defendant. | DEPT: 9 |

This matter came upon Calendar pursuant to noticed motion and serve thereon pursuant to statute, and a transfer from Department 4 of the above entitled court. Arthur Chambers appeared on behalf of moving party, Benjamin Cannon, and James Cusey appeared on behalf of the People.

The court, after considering the evidence, and the oral argument presented, and find good cause, finds:

1. The motion for a factual finding of innocence by defendant Benjamin Cannon is granted.

2. The law enforcement agency (Sheriff of Sonoma County) and the department of justice are to request the destruction of any records of the arrest which they have given to any local, state, or federal agency, person or entity.

//

ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1  Dated:

2     MAY 1 8 2010

3                              _____
                                   Renee Chouteau, Judge of
4                          the Superior Court of the State of California
                                  Judge of the Superior Court
5

6  Approved as to form:

7

8     _____
9  James Casey, Deputy District Attorney
   County of Sonoma

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

EXHIBITS incorporated into COMPLAINT  Page 15 of 62

1  **Arthur Chambers, SBN: 53282**
   2095 Van Ness Avenue
2  San Francisco, CA 94100
   (415) 775-2144
3
   Attorney for Defendant Benjamin Cannon
4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SONOMA

10 THE PEOPLE OF THE STATE OF          Case No. SCR578412
   CALIFORNIA
11                                      DECLARATION OF ARTHUR
          Plaintiffs.                   CHAMBERS IN SUPPORT OF PETITION
12                                      FOR FINDING OF FACTUAL
                                        INNOCENCE
13 v.

   BENJAMIN CANNON.                     DATE
14                                      TIME
          Defendant.                    DEPT
15

16

17 I, Arthur Chambers declare that the following is true and correct under the laws of the State of

18 California.

19      1. I am the counsel for defendant in this matter, and this declaration is made from my own

20 personal knowledge, and if called as a witness, I would be competent to testify to those facts

21 contained herein.

22      2. I was retained to assist Mr. Cannon with this matter. To that end, I investigated the

23 charges against him. During the course of my research, I subpoenaed the telephone records for

24 my client from AT&T. I then received a telephone call from an individual at AT&T regarding

25 that subpoena. During the course of that conversation I was advised that the Sonoma County

26 Sheriff's office had subpoenaed those records in February of this year.

27      3. After that telephone call, I wrote Jim Naugle, a detective at the Sonoma County

28
   CHAMBERS DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
   DEFENDANT                                    1

1    Sheriff's Office. A true copy of that letter is attached hereto, labeled Exhibit 1 and incorporated

2    as though fully set forth herein.

3        4. After I sent that letter to Detective Naugle, we had a telephone conversation. In that

4    conversation, Detective Naugle admitted to me that he had obtained those records, and that the

5    records indicated that Mr. Cannon was in Sacramento at 9 pm on the date of the incident, and

6    that the records also indicated Mr. Cannon was also within Sacramento on the morning of

7    February 5, the day after the incident.

8        5. After that conversation, Detective Naugle requested that we provide him with a copy of

9    the receipt for dinner for Mr. Cannon. My office FAX'd that document to him on March 11,

10    2010. During the course of that conversation, I questioned Detective Naugle about the alleged

11    victim's description of Mr. Cannon's vehicle. He advised me that she had generally described a

12    similar car to Mr. Cannon. He drives a Silver 2001 BMW 7 series car.

13        6. Given the relative scarcity of that particular model of vehicle and color, I find it very

14    difficult to imagine that anyone who had committed this alleged crime would have driven a

15    similar car to Mr. Cannon. Based on the above, I have come to the conclusion that the alleged

16    victim was not telling the truth to Detective Naugle. I advised the detective of that and asked

17    him what he intended to do about this, but did not receive a response.

18    Dated: _3-23_ , 2010

19

20                               Arthur Chambers

21

22

23

24

25

26

27

28

CHAMBERS DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                            2

# EXHIBIT 1

# LAW OFFICES OF ARTHUR CHAMBERS
2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

### VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office. I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know, those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message, I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010, your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have discovered that Mr. Cannon's phone was being used in Sacramento at or about the time the alleged victim claimed the incident occurred. I've got to tell you that this information leaves a very bad taste in my mouth, because you had exculpating information which was not provided at the informal discovery. Indeed, his cell phone contained virtually the same information, which you had immediately when the search warrant was served. If there is any other such information I would like to have it as soon as possible.

I've left you my cell phone number. Please call me before the preliminary hearing, or have the individual at the District Attorney's office give me a call.

Very truly yours,

*Arthur Chambers*

Arthur Chambers
acc/hms

```
┌──────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT    │
└──────────────────────────────────────┘
```

```
                          TIME  : 03/10/2010 18:34
                          NAME  : LAW OFFICES
                          FAX   : 4157751308
                          TEL   : 4157752144
                          SER.# : BROL7J724486
```

```
┌────────────────────────────────────────────────────────────┐
│   DATE,TIME            03/10  18:34                          │
│   FAX NO./NAME         17075652414                          │
│   DURATION             00:00:17                             │
│   PAGE(S)              01                                   │
│   RESULT               OK                                   │
│   MODE                 STANDARD                             │
│                        ECM                                  │
└────────────────────────────────────────────────────────────┘
```

# LAW OFFICES OF ARTHUR CHAMBERS

2095 Van Ness Avenue
San Francisco, CA 94109
Voice: 415-775-2144, Fax: 415-775-1308

VIA FAX ONLY

March 10, 2010

Jim Naugle, Detective
Sonoma County Sheriff's Office
2796 Ventura Avenue
Santa Rosa, CA 95403

Re: People v. Cannon

Dear Detective Naugle:

I left you a voice mail regarding Mr. Cannon and the witness who was with him on the evening in which it is claimed that he committed the crime he is charged with. When I inspected the evidence at the informal discovery at the Sheriff's office, I had shown you a photocopy of the credit card receipt which Mr. Cannon signed and when he purchased dinner in Sacramento, some 12 minutes before the alleged incident. As you know, those facts would make it impossible for him to have had any connection to the incident.

After I left you the voice message, I called AT&T to confirm that they would be producing the cellular records for his phone, specifically the location of various calls and text messages that he made while in route to Sacramento and while he was there. What I discovered is that on February 18, 2010, your office had subpoenaed those records.

The bottom line is that if anyone had bothered to look at those records, they would have

1    **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2    San Francisco, CA 94109
(415) 775-2144
3

   Attorney for Defendant Benjamin Cannon
4

5

6

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **COUNTY OF SONOMA**

10    **THE PEOPLE OF THE STATE OF**      Case No. SCR578412
     **CALIFORNIA**
11                              DECLARATION OF ARTHUR
                               CHAMBERS IN SUPPORT OF EX PARTE
12          Plaintiffs,              MOTION TO SET DATE AND TIME FOR
                               PETITION FOR FINDING OF FACTUAL
13    v.                                   INNOCENCE

14    **BENJAMIN CANNON,**
                                DATE:
15          Defendant.               TIME:
   _____/      DEPT:

16

17    I, Arthur Chambers declare that the following is true and correct under the laws of the State of

18    California.

19         1. I am the counsel for defendant in this matter, and this declaration is made from my own

20    personal knowledge, and if called as a witness, I would be competent to testify to those facts

21    contained herein.

22         2. Attached hereto, labeled exhibit 1 is a true and correct copy of the Petition for Finding

23    of Factual innocence.

24         3. I attempted to file that motion today for a hearing on April 12, 2010 in this department.

25    The procedure for setting these motions, I was told, is that we could appear on April 12, 2010

26    and have the date for the hearing set.

27         4. The charges against my client have been dismissed by the District Attorney because he

28

   CHAMBERS DECLARATION IN SUPPORT OF MOTION EX PATE TO SET THE DATE OF HEARING ON
   THE PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1     didn't commit the crime. A quick review of the motion should convice the court of Mr. Cannon's

2     innocence of the charges. He wasn't anywhere near the scene of the crime and has both

3     documentary and testimony to prove that contention.

4             5. Mr. Cannon had just set up a new business prior to his arrest. That business is called

5     "Paypal" and it provides banking services for individuals who desire to purchase things on the

6     internet.

7             6. As can be seen from the motion, the arrest of Mr. Cannon and subsequent publicity

8     were extensive. I am informed and believe that the publicity had gravely damaged Mr. Cannon's

9     new enterprise.

10            7. Unless this matter can be hear as soon as possible, Mr. Cannon runs the risk of losing

11    his entire enterprise. I am advised that the publicity has affected his banking connections, and

12    that, if he loses that connection would cause the immediate cessation of his business.

13           8. Mr. Cannon has invested most of his savings into that new business.

14           9. It is therefore requested that this court set the hearing for his motion at the earlier date

15    possible, but no later than April 12, 2010.

16           10. On this date, I advised the District Attorney of Sonoma County that I would be

17    making this motion, ex-parte. A copy of the letter I faxed to them is attached hereto, labeled

18    Exhibit 2 to this declaration.

19    Dated: ___3/23___ , 2010

20

21                                            **Arthur Chambers**

22

23

24

25

26

27

28

**CHAMBERS DECLARATION IN SUPPORT OF MOTION EX PATE TO SET THE DATE OF HEARING ON
THE PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT**

1 | **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 | San Francisco, CA 94109
(415) 775-2144
3 |
Attorney for Defendant Benjamin Cannon
4 |
5 |
6 |
7 |
8 | ### SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | ### COUNTY OF SONOMA
10 | THE PEOPLE OF THE STATE OF        Case No. SCR578412
CALIFORNIA
11 |                                   DECLARATION OF BENJAMIN
Plaintiffs.                       CANNON IN SUPPORT OF PETITION
12 |                                   FOR FINDING OF FACTUAL
v.                                INNOCENCE
13 |
BENJAMIN CANNON,                  DATE:
14 |                                   TIME:
Defendant.                        DEPT:
15 |
16 |
17 | I, Benjamin Cannon declare that the following is true and correct under the laws of the State of
18 | California.
19 |     1. I am the defendant in this matter, and this declaration is made from my own personal
20 | knowledge, and if called as a witness, I would be competent to testify to those facts contained
21 | herein. I am a resident of the County of Sonoma, and of the age of majority. I am in the business
22 | of providing various internet services to individuals and businesses, and I was formally in the
23 | contracting business.
24 |     2. On February 4, 2010, I was scheduled to meet with Grant Early, a friend and potential
25 | business associate. That meeting had been set prior to that date. Mr. Early lives in Sacramento,
26 | and I planned on having dinner with him on that date
27 |     3. Attached hereto, labeled Exhibit 1 is a true and correct copy of the text messages that I
28 |

CANNON'S DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                                                  1

1 exchanged with Mr. Early regarding meeting for dinner.

2     4. The times stated on the text messages accurate show my progress in getting to
3 Sacramento. I arrived in Sacramento at approximately 9 pm on the evening of February 4th,
4 2010. The trip from Sonoma to Sacramento took in excess of 1 and ½ hours.

5     5. Mr. Early and I planned on having dinner in Sacramento, and we did have dinner at
6 Restaurant Brewhouse, which is located in Sacramento. Attached hereto, labeled Exhibit 2 is a
7 true and correct copy of the receipt for dinner, which I paid for with my credit card. It should be
8 noted that the receipt indicates we finished dinner at 10:46 pm that evening. We remained in the
9 restaurant for a few minutes after my signing of the check.

10     6. After dinner, I spent the night at Mr. Early's house, and didn't leave until the morning
11 at which time I drove back to Sonoma County.

12     7. I did not accost the alleged victim. I did not stop the alleged victim. I do not know the
13 alleged victim. I did not do any of the acts alleged in the complaint on file herein.

14     8. After my arrest, the local newspaper printed an article about the allegations. Attached
15 hereto, labeled Exhibit 3 is a true and correct copy of the article that has appeared about my
16 arrest. Attached hereto, labeled Exhibit 4 is a true and correct copy of the Sonoma County
17 Sheriff's department's press release regarding my arrest. This press release is still on their
18 website as of March 17, 2010 days after they decided not to prosecute me for these alleged acts.

19     9. To this day I have been harassed, people have stopped doing business with me, and
20 various defamatory statements are being made about me by people on the internet. Despite the
21 dismissal of the charges, the Sonoma County Sheriff continues to post the allegations and
22 statements about me on their website, long after the District Attorney has decided that they did
23 not wish to prosecute me for this matter, probably because they realized that I didn't do the crime
24 I was accused of.

25     9. I am prepared to testify to the above at any hearing of this matter.

26     10. I am informed and believe, and thereon allege that Mr. Early is also prepared to testify
27 to the above facts, and that he will sign a declaration to that effect. Additionally, I am informed

28

CANNON DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT         2

1  and believe that the Sheriff's department has admitted that they subpoenaed my telephone

2  records which substantiated the fact that I was in Sacramento at the time of the alleged

3  occurrence.

4  Dated: *March 17*, 2010

5

6                                                                      Benjamin Cannon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CANNON DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                                                3

# EXHIBIT 1

 

Dude I hate to do this but could I reschegule for tomorow? Still jb the middle of something here

Tomorrow works fine. Bonnie gets home around 7:30 so we can go out after that.

Sounds great man, sorry again.

Is everything still looking good for your trip up?

Yen huit how ahout vu?




tomorrow if you need me to

No tonite works, I'll call you when Im on the road - gonna be a bit though.

Cool.

ETA?

Only left 30min ago, address?

3848 Bilsted way, Sacramento, CA

Over an hour I'm fine to

 

3848 Bilsted way,
Sacramento, CA

Over an hour I'm fine to
drive but if you want to
meet in the middle lmk

Where are you now?

80 past 12

You are hauling ass!  It
would be easier for you to
just come here. We have
a guest room if you would
like to crash and head out
tomorrow morning.

 

You are hauling ass! It would be easier for you to just come here. We have a guest room if you would like to crash and head out tomorrow morning.

Sounds like a plan sir!

You get lost?

Almost there

Hey add your grant.early@GUNPAL.net address to your gp account so we can make it

# EXHIBIT 2

Feb 23 2010 12:26AM  F  S Natomas              91' 570-1334              p. 1

Da e 02.04.10
Time: 22:46
CCAuth
Swped POS
Trans ID: 337
Berch #: 477
Sequence #: 337
Processor: Paymertech CreditCard
User C287
Ca d type visa
Ca d #: xxxxxxxxxxu5737
Approval: 080690
Amount: 54.92
Tip 8.00
Tota) 62.92

0613
Server: CHRISTY 26 R 002372          Reg:409
02/04/10 22:48. Suimed   T: 312 Term: 1

2J's RESTAURANT BREWHOUSE
2531 N. FREEWAY BLVD.
SACRAMENTO, CA 95834
(916)570-1327
MERCHANT #:

CARD TYPE        ACCOUNT NUMBER
VISA             X000000000005737
Name: BENJAMIN P CANNON
CC TRANSACTION APPROVED
AUTHORIZATION #: 080690
Reference: 02040100006 3
TRANS TYPE: Credit Card SALE  A

CHECK:           54.92
TIP:          __ 8.00
TOTAL:        __62.92

CARDHOLDER WILL PAY CARD ISSUER ABOVE
AMOUNT PURSUANT TO CARDHOLDER AGREEMENT
PLEASE LEAVE SIGNED COPY FOR SERVER

# EXHIBIT 3



**Search:**

GO

- 

|

- 
- 
- 
- 

## Most Popular Stories

- 
- 
- 
- 
- 
- 
- 
- 

February 18, 2010

# Fake cop busted for false imprisonment

**Staff Report**

A man who terrified a female driver by impersonating a police officer was arrested last week on charges including false imprisonment. Benjamin Cannon, 29, of Petaluma, was identified by the 22-year-old victim as the man who subjected her to a late-night ordeal just east of Sonoma.

The woman told police she driving westbound on Napa Road on Feb. 22. At about 11 p.m., she was pulled over by what she believed to be an unmarked police vehicle – a darkly-painted car displaying a single red light. A man, dressed in dark clothes, approached her window and quickly flashed what appeared to be a badge. He asked to see her identification.

Unnerved by the suspicious circumstances, the woman refused to hand over her identification, and insisted a marked police car show up to confirm the validity of the stop. According to the victim, the man became uncomfortable, returned to his vehicle and drove away.

EXHIBITS incorporated into COMPLAINT  Page 34 of 62

Cannon emerged as a suspect during the investigation by detectives from the violent crimes investigations unit. After the victim positively identified Cannon, Lt. Chris Spallino reported. Cannon was located and arrested at his residence in the 1100 block of East Sunnyslope Road.

A warranted search of Cannon's vehicle – a silver 2001 BMW. revealed a police scanner, strobe light, handcuffs and a siren.
Cannon was booked into the Sonoma County Main Adult Detention Facility. His bail was set at $10,000.
The victim's request for a marked police vehicle may have deterred the suspect and prevented a more serious incident. Spallino stated. He advises motorists in similar circumstances consider acknowledging the police vehicle and proceeding to a safe area to pull over.

Detectives are asking anyone who may have had a similar encounter or anyone with information regarding this case to please contact Detective James Naugle at 565.2185

**Share and Enjoy:**

318 views





www.sonomavalleybank.com

the **red** grape

529 First Street West
Sonoma, CA 95476

Lunch and Dinner
Open 11:30 am Daily

Dine-in or Carry out          996 4103

EXHIBITS incorporated into COMPLAINT  Page 35 of 62

Case3:11-cv-00651-JST   Document33   Filed06/23/11   Page84 of 112



SONOMA VALLEY HOSPITAL

VISIT
our new website
MEET
our new doctors

www.svh.com



SONOMA CHEVROLET
SONOMA, CALIFORNIA

687 West Napa Street, Sonoma
707.996.2141
www.sonomachevy.com

Copyright © 2008

EXHIBITS incorporated into COMPLAINT  Page 36 of 62

# EXHIBIT 4

Home     Multi-media     Reports&Stats     Recruitment     SCSO News

## SHERIFF'S OFFICE PRESS RELEASES AND NEWS MEDIA COVERAGE

SUBSCRIBE TO OUR FEED



**What is RSS?**

RSS content can be read using software called an "RSS reader" "feed reader" or an "aggregator". The user subscribes to a feed by entering the feed's link into the reader or by clicking an RSS icon in a browser that initiates the subscription process. The reader checks the user's subscribed feeds regularly for new content, downloading any updates that it finds.

Click here to learn more about RSS

**Thoughts or Comments?**
Do you have comments on a press review or news story concerning the Sonoma County Sheriff's Department

Quick Links

Sonoma County Sheriff's Office Press Releases
Sonoma County Sheriff's Office in the News

## SONOMA COUNTY SHERIFF'S PRESS RELEASES

**Petaluma Man Arrested For Impersonating a Peace Officer**



**Sheriff's Office
County of Sonoma**
2756 Ventura Avenue
Santa Rosa, CA 95403
(707) 565-2511
www.sonomasheriff.org

**Bill Cogbill**
Sheriff/Coroner

### Press Release

On February 11, 2010, detectives from the Sonoma County Sheriff's Office arrested Benjamin Philip Cannon, age 29 of Petaluma, for impersonating a peace officer and false imprisonment.

On February 2, 2010, the Sheriff's Office was contacted by the 22 year-old victim. The victim reported that at about 11:00 P.M., she was traveling westbound Napa Road, just east of Sonoma. The victim said she was pulled over by what she believed to be an unmarked police vehicle that was displaying a red light. After she pulled over, she was contacted by a man wearing plain clothes. The man quickly flashed what appeared to be a badge and asked her for her identification.

The victim felt uncomfortable giving the man her identification, so she asked him to have a marked police vehicle respond. According to the victim, the man became uncomfortable, returned to his vehicle and drove away. The victim then contacted law enforcement.

Detectives from the Violent Crimes Investigations Unit developed Cannon as a possible suspect. After the victim positively identified Cannon as the suspect, detectives began a surveillance of him. Cannon was located and arrested at his residence in the 1100 block of East Sunnyslope Road.

Detectives conducted search of his residence and vehicle pursuant to a search warrant. When detectives searched Cannon's vehicle, a silver 2001 BMW, they located a police scanner, strobe light, handcuffs, and a siren.

Cannon was booked into the Sonoma County Main Adult Detention Facility. His bail was set at $10,000.

The victim's request for a marked police vehicle may have deterred the suspect and prevented a more serious incident. Motorists who find themselves in similar circumstances should consider acknowledging the police vehicle and proceeding to a safe area to pull over.

Detectives are asking anyone who may have had a similar encounter, or anyone with information regarding this case to please contact Detective James Naugle at 707-565-2185.

For further information please contact Lt. Chris Spallino at 707-565-2185.

Prepared by:

EXHIBITS incorporated into COMPLAINT  Page 38 of 62

Lt. Chris Spallino
Investigations Bureau
Case #SO 10-0000189

*Posted on Feb Fri 2010*

📷 *SOSO News Home Page*

**HEADLINES**

Six arrested during probation search, posted on Mar Sat 2010
Home Invasion robbery attempt, victim stabbed, posted on Mar Fri 2010
Gang Fight in Roseland Area, posted on Mar Fri 2010
Theft of Aircraft, posted on Mar Fri 2010
Suspect Flees Deputy and Leaves Children Behind, posted on Mar Thu 2010
Home Invasion Robbery, posted on Mar Thu 2010
Burglary suspect caught in Graton, posted on Feb Thu 2010
Update-Sonoma Murder/Suicide, posted on Feb Mon 2010
Fisherman drowns after fall into ocean, friend rescued from rocks, posted on Feb Sat 2010
Suspicious Death in Sonoma, posted on Feb Fri 2010
Missing person in Healdsburg found, posted on Feb Thu 2010
Missing person in Healdsburg, posted on Feb Thu 2010
Suspect dies in vehicle accident during pursuit, posted on Feb Wed 2010
PRELIMINARY AUTOPSY RESULTS FOR TAKU SAKASHITA, posted on Feb Tue 2010
Henry 1 rescue, posted on Feb Sun 2010
Santa Rosa Man Arrested for Multiple Sex Crimes, posted on Feb Sat 2010
.... ... ... ... ... ... ... ... ... ... , posted on Feb Fri 2010
Detectives Arrest Suspected Child Molester , posted on Feb Thu 2010
Farolere at large arrested - SWAT deployment, posted on Feb Sat 2010
Armed Robbery on Santa Rosa Avenue, posted on Feb Wed 2010
Van car Pursuit in Santa Rosa, posted on Jan Thu 2010
FEMALE FOUND DECEASED IN CAZADERO CREEK, posted on Jan Wed 2010
Inmate Death at Sonoma County Detention Facility, posted on Jan Fri 2010
UPDATE ON MISSING PERSON / BRYAN SCOBEY, posted on Jan Thu 2010
Petaluma Murder Update, posted on Jan Tue 2010
Subject wielding a pole subdued by deputies, posted on Jan Thu 2010
Sonoma County Escapee Back in Custody, posted on Dec Mon 2009
Winalson Death Investigation, posted on Dec Mon 2009
Sonoma Valley Concentrated Cannabis Lab Investigation, posted on Dec Thu 2009
Two suspects arrested in Sonoma burglary, vehicle recovered, posted on Dec Wed 2009
Residential Burglary in Sonoma, posted on Dec Tue 2009
Names of Thursday's Fatal Boat accident released, posted on Nov Sat 2009
Man Murdered in South Santa Rosa, posted on Nov Sat 2009
Three Youths rescued from cliff on the Sonoma Coast, posted on Nov Fri 2009
Methamphetamine Dealer Arrested in Santa Rosa, posted on Nov Wed 2009
Sheriff's helicopter crew recovered a diver's body from the surf then rescued two men from being swept into
ocean, posted on Nov Sun 2009
Ab diver rescued from surf by Sheriff's helicopter Henry 1." posted on Nov Sat 2009
WEST COUNTY SEXUAL ASSAULT, posted on Nov Tue 2009
Sonoma Police Catch 3 Suspects in Stolen vehicle, posted on Nov Tue 2009
Windsor Traffic Collision posted on Nov Thu 2009
Man Arrested after Bizarre Behavior on Greyhound Bus, posted on Nov Fri 2009
Suspect Identified in Cloverdale Murder, posted on Oct Sat 2009
Man and dog rescued by Henry-1 helicopter crew at Bodega Head, posted on Oct Sat 2009
Homicide investigation north of Cloverdale, posted on Oct Fri 2009
Fourth Arrest Made In Home Invasion Robbery, posted on Oct Thu 2009
Traffic stop leads to arrest for concealed pistol, posted on Oct Thu 2009
Lost Runner-Search Lasts All Night, posted on Oct Sun 2009
Injured Lost Hiker and his Dog Found, posted on Oct Sun 2009
Home Invasion Robbery, posted on Oct Fri 2009
Injured Annadel mountain biker rescued by Sheriff's helicopter crew , posted on Sep Mon 2009
Inmate Jon Moore's Preliminary Autopsy Results posted on Sep Mon 2009
Inmate Death at North County Detention Facility, posted on Sep Fri 2009
Prostitution Sting, posted on Sep Fri 2009
Two arrested for theft of marijuana, posted on Sep Fri 2009
Lake Sonoma DUI/DL Checkpoint Results, posted on Sep Sun 2009
Windsor Juvenile arrested for explosive devices, posted on Sep Thu 2009
Suspicious Fires in Sonoma, posted on Sep Wed 2009
Windsor Arrest, posted on Aug Thu 2009
Sheriff Marine Unit Recovers Stolen Boat or the Sonoma Coast, posted on Aug Thu 2009
Drowning at Dubreva Beach, posted on Aug Sun 2009
Bie hood Shooting Suspect Arrested After Standoff, posted on Aug Sun 2009
Deputy Attacked by Pit bull, posted on Aug Fri 2009
Bank Robbery at Exchange Bank in Santa Rosa, posted on Aug Thu 2009
Attempted Kidnapping in Forestville , posted on Aug Thu 2009
Stabbing in Roseland, posted on Jul Fri 2009
National Night Out, posted on Jul Fri 2009
Update on Evidence in the 2004 Jenner Double Murder Case , posted on Jul Thu 2009
Marijuana eradication leads to arrests , posted on Jul Wed 2009
Parental abduction, posted on Jul Tue 2009
Attempted Rape Arrest In Larkfield, posted on Jul Tue 2009
Update on Jenner Case Person of Interest, posted on Jul Mon 2009
Two arrested for kidnap and sexual assault, posted on Jul Fri 2009
Robbery at the Fast and Easy Market, posted on Jul Thu 2009
National Night Out - Sonoma Plaza, posted on Jul Wed 2009
Latest Arrest in the Murder of Michael van Tulman, posted on Jul Fri 2009
Henry-1 helicopter - Salmon Creek Beach rescue, posted on Jul Fri 2009
Sheriff's helicopter aids in woman's rescue, posted on Jul Sat 2009
Windsor Murder Update - Preliminary Autopsy Results , posted on Jul Fri 2009
Arrest in Windsor Homicide Investigation, posted on Jul Thu 2009
Death Investigation, posted on Jul Thu 2009

EXHIBITS incorporated into COMPLAINT Page 39 of 62

Sonoma County Sheriff's Department | Pressroom

Update on Suspect's Name in Guerneville Murder , posted on Jul Wed 2009
Guerneville Murder Update : Preliminary Autopsy Results , posted on Jun Tue 2009
Guerneville Murder Investigation/Arrest , posted on Jun Mon 2009
Death Investigation on Orchard Avenue, Guerneville, posted on Jun Sat 2009
City of Sonoma Police Explorers take first place, posted on Jun Fri 2009
Sheriff's K-9 Trials , posted on Jun Thu 2009
7-11 robbery , stabbing suspect attempted second robbery in the Sonoma Valley  posted on Jun Thu 2009
7-11 clerk stabbed in late night robbery, posted on Jun Mon 2009
Suspect arrested with sawed off shotgun, posted on May Thu 2009
Motorcycle strikes skateboarder in Sonoma  posted on May Wed 2009
Lost toddler found before being reported missing , posted on May Sat 2009
National Peace Officer's Memorial Week, posted on May Mon 2009
Suspected homicide in Sonoma Valley  posted on May Sun 2009
Marijuana eradication leads to arrests, posted on May Mon 2009
Windsor Traffic Collision, posted on May Fri 2009
Update on April 28th Sexual Assault Arrest, posted on Apr Thu 2009
Arrest Made in Cases of Roadside Attacks, posted on Apr Wed 2009
Deputies find capsized boat and man in the water  posted on Apr Sat 2009
Family rescued from burning boat, posted on Apr Sun 2009
Woman motorist accosted on West County roadway, posted on Apr Sat 2009
Fulton Road stabbing - UPDATE , posted on Apr Fri 2009
Double Stabbing in Fulton  posted on Apr Fri 2009
Sonoma Valley Home Invasion Robbery, posted on Apr Tue 2009
Burglarized Home Leads to Woman's Arrest, posted on Apr Fri 2009
National Public Safety Dispatcher Week  posted on Apr Fri 2009
Indecent exposure suspect arrested in Windsor  posted on Apr Mon 2009
Former Sonoma Valley soccer coach arrested, posted on Apr Sun 2009
Helicopter rescues adults and toddler from sinking boat, posted on Apr Thu 2009
Update on North Bay Bank Robberies, posted on Apr Thu 2009
Sonoma Valley Auto Burglary Suspect Arrested, posted on Apr Thu 2009
Diver rescued and airlifted to hospital on opening day , posted on Apr Wed 2009
Valley Home Invasion Robbery, posted on Mar Tue 2009
Two Arrested in Double Stabbing  posted on Mar Sun 2009
Burglary suspects arrested  posted on Mar Sun 2009
Double Stabbing  posted on Mar Sun 2009
Sheriff's helicopter rescues man clinging to cliff  posted on Mar Sat 2009
Update on Windsor Bank Robbery  posted on Mar Wed 2009
Helicopter crew rescues two hikers stranded on cliff  posted on Mar Mon 2009
Marijuana arrest  posted on Mar Wed 2009
Windsor Bank Robbery  report, posted on Mar Tue 2009
Composite sketch released in Calistoga Rd. - Porter Creek Rd. motorist incidents  posted on Mar Tue 2009
K-9 alert to secret compartment in ice chest, drugs found  posted on Mar Fri 2009
Sheriff Detectives Arrest Man and Seize Illegal Marijuana Grow Operations in Two Counties, posted on Mar Fri 2009
Numerous subjects arrested during raid of cock fighting operation posted on Mar Fri 2009
Wanted parolee arrested in stolen car  posted on Mar Fri 2009
Guerneville bow & arrow assault suspect in custody, posted on Mar Thu 2009
Windsor Stabbing Suspect Identified - Photo Attached, posted on Mar Tue 2009
Windsor stabbing  posted on Mar Mon 2009
Man Arrested for Auto Theft and Burglary in Bodega Bay, posted on Feb Sat 2009
Two Arrested in Santa Rosa Robbery  Update, posted on Feb Sat 2009
Falling Tree strikes Freestone resident, posted on Feb Sun 2009
Safety Bulletin  posted on Feb Thu 2009
Four arrested in a stolen vehicle  posted on Feb Wed 2009
Man arrested after displaying irrational behavior vandalizing home  posted on Feb Fri 2009
Guerneville assault suspect still sought, posted on Feb Wed 2009
Preliminary Autopsy Findings - Jose Chevez-Sanchez  posted on Jan Fri 2009
Supplemental Press Release Case#090127-010, posted on Jan Thu 2009
Arrest in Mountain View Avenue Murder, posted on Jan Thu 2009
Repeat child molester sentenced to 160 years in prison  posted on Jan Wed 2009

## SONOMA COUNTY SHERIFF'S OFFICE IN THE NEWS

⌐ Home

| ABOUT US | PUBLIC RESOURCES | COMMUNITY OUTREACH | STAFF VOLUNTEERS | LINKS | CONTACT |
|---|---|---|---|---|---|
| Overview | 911 | Salt Industries & AG | Volunteers In Policing | County Departments and Resources | Locations |
| History & Info | Crime Prevention | Starting Point | Explorer Programs | | Phone Directory |
| Sheriff Jail Center | Crime Analysis | Courage to Live | LE Chaplaincy | State and Federal Resources | Citizen's Concerns |
| Command Staff | Sex Registrants | Citizens Academy | Search & Rescue | Local Law Enforcement Agencies | |
| Law Enforcement DIV | Business Contact Form | E-scoop | Interns | | |
| Detention DIV | City Watch | Special Olympics | | State & Federal Law Enforcement Agencies | |
| Administration DIV | Domestic Violence | Tip-A-Cop | | Crime Crushers | |
| Contract Cities | Report Request | Torch Run | | Drugfreeworld.org | |
| Agency 1 | To Report a Crime | License Plate Run | | | |
| Civil Bureau | Site Map | Baker to Vegas Run | | | |
| Central Information | About This Site | Alive at 25 | | | |

[illegible small print line]

EXHIBITS incorporated into COMPLAINT Page 41 of 62

1  **Arthur Chambers, SBN: 53282**
   2095 Van Ness Avenue
2  San Francisco, CA 94109
   (415) 775-2144
3
   Attorney for Defendant Benjamin Cannon
4

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF SONOMA**

10 **THE PEOPLE OF THE STATE OF**              Case No. SCR578412
   **CALIFORNIA**
11                                             DECLARATION OF GRANT EARLY IN
          Plaintiffs.                          SUPPORT OF PETITION FOR FINDING
12                                             OF FACTUAL INNOCENCE
   v.
13                                             DATE
   **BENJAMIN CANNON.**                        TIME
14                                             DEPT
          Defendant.
15

16

17  I, Grant Early declare that the following is true and correct under the laws of the State of

18  California.

19         1. I am an individual residing in Sacramento, California, where I reside with my wife. I

20  am a business associate and friend of defendant in this matter, and this declaration is made from

21  my own personal knowledge, and if called as a witness, I would be competent to testify to those

22  facts contained herein.

23         2. I was to meet with Mr. Cannon on February 4th, 2010 to discuss business. We had

24  planned that meeting for several days prior to that meeting. I have reviewed the text messages

25  attached to Mr. Cannon's declaration and they are an accurate copy of our text messages. The

26  times contained on them is accurate according to my recollection.

27         3. I was with Mr. Cannon from approximately 9:15 pm on February 4, 2010 until after

28
   EARLY DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
   DEFENDANT                                    1

EXHIBITS incorporated into COMPLAINT Page 42 of 62

1   11:00 pm while we had drinks and dinner in Sacramento. Mr. Cannon paid for our meal and

2   drinks.

3        4. After dinner. Mr. Cannon came to my house and spent the evening there, since he did

4   not wish to drive home.

5        5. I am prepared to appear in court and testify as to the above facts.

6   Dated: March 17 . 2010

7

8                                                           Grant Early

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EARLY DECLARATION IN SUPPORT OF PETITION FOR FACTUAL FINDING OF INNOCENCE OF
DEFENDANT                              2

1  **Arthur Chambers, SBN: 53282**
   2095 Van Ness Avenue
2  San Francisco, CA 94109
   (415) 775-2144
3
   Attorney for Defendant Benjaimin Cannon
4
                    RECEIVED
5                  NOT FILED
             SUPERIOR COURT OF CALIFORNIA
6               COUNTY OF SONOMA

                    MAR 2 3 2010
7

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF SONOMA**

10  **THE PEOPLE OF THE STATE OF**       Case No. SCR 578412
    **CALIFORNIA**
11                                       PETITION FOR FINDING OF FACTUAL
         Plaintiffs.                     INNOCENCE
12
    v.                                   DATE:
13                                       TIME:
    **Benjamin CANNON,**                 DEPT:
14
         Defendant.
15  _____

16

17  TO THE DISTRICT ATTORNEY OF THE COUNTY OF SONOMA:

18      TAKE NOTE that on April   . 2010, defendant Benjamin Cannon will Petition under

19  Penal Code § 851.8 for an finding of factual innocence of the charges of violation of Penal Code

20  § 146a(b) and Penal Code § 236 set forth in the Felony Complaint filed herein.

21      After Defendant's arrest an accusatory pleading was filed in the above-entitled criminal

22  action. but the criminal proceedings were dismissed without conviction. Petitioner requests that

23  the court hold a hearing pursuant to Penal Code §851.8 to find that no reasonable cause exists to

24  believe that petitioner committed the offences for which the arrest was made and that petition is

25  factually innocent of those charges.

26      This Petition will be based upon the declarations filed herewith. the evidence to be

27  introduced at the time of the hearing. and such other and further evidence and law as the court

28  may consider at the time of the hearing.

    PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

Wherefore Petitioner prays for:

1. an order that finds that Petitioner is factually innocent of the charges for which the arrest was made an d the court issue a written declaration, pursuant to Penal Code § 851.8 to petitioner which states that it is the determination of this court that petitioner is factually innocent of those charges and petition is exonerated.

2. That the Sonoma County Sheriff's office, a law enforcement agency having jurisdiction over the offense, the Department of Justice, and any other law enforcement Agency which participated in petitioner's arrest shall seal the records of petitioner's arrest for 3 years from the date of the arrest, subject to any legal process which may arise from any subsequent civil action, and thereafter destroy these records.

3. The law enforcement agency having jurisdiction over this offense and the Department of Justice shall request the destruction of any records of the arrest which they have given to any local, state or federal agency, person or entity.

4. Any documentation of these arrest records contained to investigative police reports shall bear the notation "EXONERATED" whenever reference is made to the Petitioner/

Dated: 3/73 . 2010

_____
Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

The information contained in this case was gleaned from the Felony Complaint filed in this matter. police report. That Complaint alleged that defendant Benjamin Cannon, on February 4th, 2010 violated the personal liberty of Christine Burnett by falsely representing himself to be a police officer. The alleged acts were alleged to have been committed in Sonoma County at 11:00 pm on that date.

## STATEMENT OF FACTS

These facts were gleaned from a review of the Felony Complaint and discussions with the

PETITION FOR FACTUAL FINDING OF INNOCENCE2OF DEFENDANT

1  arresting officer in addition to reviewing the Sonoma County Sheriff's press release in this matter.

2  The people alleged that defendant Benjamin Cannon, on the 4th of February of 2010 arrested,

3  detained and threatened to arrest and detained a person and intimidated a person and searched a

4  person, building and other property of a person and obtained money, property and another thing of

5  value. The people further alleged that defendant Benjamin Cannon violated the personal liberty of

6  Christine Burnett, and that violation was effected by violence, menace, fraud and deceit.

7  However, the defendant was not present in the County of Sonoma at the particular time the

8  alleged violations were alleged to have occurred. Defendant is informed and believes and thereon

9  alleges that the agents of the prosecuting entity, the Sonoma County Sheriff was well aware that

10  Plaintiff was not within the County of Sonoma at the time of the alleged acts took place. Plaintiff

11  was located in Sacramento County having dinner with a friend at the time of the alleged incident,

12  and his cellular telephone records, his credit card receipts, and the friend all substantiated his

13  location at the time of the alleged acts. Indeed, The Sonoma County Sheriff had subpoenaed the

14  cellular records, and knew that he was in route to Sacramento County the evening of the 4th, yet took

15  no actions necessary to verify the story of the alleged victim, who accurately described defendant's

16  vehicle. In short, it appears that a crime was indeed committed, i.e., the alleged victim told a false

17  story to the Sheriff's personnel, and they, although they knew that defendant was not present in

18  Sonoma County at the alleged time, arrested him, took possession of his property, put out a press

19  release on their website, and provided false information to various news sources, which ended up

20  being published, all to Mr. Cannon's detriment.

21  The above facts are supported by the Declarations of Benjamin Cannon, Arthur Chambers,

22  and Grant Early, and the exhibit attached there in support of this petition.

23  **ARGUMENT**

24  In any case where a person has been arrested, and an accusatory pleading filed, but where no

25  conviction has occurred, the defendant may, at any time after dismissal of the action, petition the

26  court that dismissed the action for a finding that the defendant is factually innocent of the charges

27  for which the arrest was made. Penal Code § 581.8(c). In this instance, it is clear that there is no way

28  that the defendant could have committed a crime since he was having dinner at a restaurant in

PETITION FOR FACTUAL FINDING OF INNOCENCE3OF DEFENDANT

1 | Sacramento some 12 minutes before the alleged act occurred in Sonoma.  Unless he had discovered
2 | the Star Trek version of a transporter, it would be physically impossible for him to have been in the
3 | area to commit the acts alleged.

4 | More importantly, because the alleged victim described his car, it appears that this was some
5 | sort of set up by either her alone, or by her and the Sheriff's department. It is interesting to note that
6 | she has not been charged with any crime in this instance, where it is apparent that she provided false
7 | information to the charging authorities.

8 | **CONCLUSION**

9 | Defendant should be found factually innocent in this matter. Pursuant to the above quoted
10 | section, defendant requests that the court order the law enforcement agency and the department of
11 | justice to request the destruction of any records of the arrest which they have given to any local,
12 | state, or federal agency, person or entity. Because defendant intends to pursue various civil remedies
13 | for these acts, he does not request that the Sheriff's records of his arrest be destroyed, rather that they
14 | be sealed, subject to discovery in the civil actions which will be filed.

16 | Dated: _3 - 23_____, 2010

18 |
19 | _____
 | **Attorney for Defendant**

PETITION FOR FACTUAL FINDING OF INNOCENCE OF DEFENDANT

1 | **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 | San Francisco, CA 94109
(415) 775-2144
3
Attorney for Defendant Benjamin Cannon
4

5

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SONOMA**

10 | **THE PEOPLE OF THE STATE OF**      Case No. SCR 578412
**CALIFORNIA**
11 |      **REPLY BRIEF IN SUPPORT OF**
     **PETITION FOR FINDING OF FACTUAL**
12 |        Plaintiffs,      **INNOCENCE**

13 | v.
     DATE: April 19, 2010
14 | **BENJAMIN CANNON,**      TIME: 1:30 PM
     DEPT: 4
15 |        Defendant. _____/

16

17 | Comes now moving party, Defendant Benjamin Cannon, and responds to the People's opposition

18 | to Petition for a finding of Factual Innocence Pursuant to Penal Code 851.8.

19 | **PROCEDURAL ISSUES**

20 | 1. The **"Opposition to Petition"** contains no facts.

21 |      The opposition filed by the District Attorney contains not a single fact upon which they

22 | base their opposition. The Opposition contains no declaration under penalty of perjury, contains

23 | no request for Judicial Notice, nor any other accepted means of providing the court with any

24 | factual basis for their allegations. Based upon those facts, the Opposition should be stricken from

25 | the record. California Rules of Court, 3.1306(a) provides:

26 | "Evidence received at a law and motion hearing must be by declaration for request for judicial

27 | notice without testimony or cross examination, unless the court orders otherwise for good cause

28 | shown."

REPLY            1

2. **Even if you take the Opposition's "facts" at face value, it does not provide a basis for denying the motion.**

The gist of the opposition is that sometime in the past, they contend that Mr. Cannon did something similar to the crime that they arrested him, but declined to prosecute, that Mr. Cannon had perfectly legal material in his car which might have been similar to the items alleged in the complaint, and that he could have been in Sonoma at the time of the occurrence.

The District Attorney, in it's opposition, provide no facts to show that Mr. Cannon did indeed commit any of the acts alleged in the criminal complaint filed against him. To review the alleged facts in which they contend the petition should not be granted: A statement that he was arrested sometime in 1999 and charged with a similar act. Mr. Cannon had perfectly legal materials within his home and vehicle when arrested.. Beyond those two contentions they provide no facts or evidence that he did indeed commit the alleged crime, other than saying that he could have been in Sonoma County. In their opposition, the District Attorney admits Mr. Cannon was not convicted of the prior alleged similar crime, they admit they found no further evidence of any commission of such crime, and admit that whatever materials they found with their search were legally owned by him. Indeed they returned all the materials they took from him. In short, they provide not a scintilla of facts to show that indeed Mr. Cannon did any of those things. Had they asked him, before they arrested and handcuffed him, he would have provided a cogent and valid explanation for each and every item they contend shows that he the alleged perpetrator of this act (if indeed those acts occurred).

The District Attorney admits that their "witness" was unable to affirmatively identify Mr. Cannon as the person who allegedly committed that crime. The alleged victim allegedly was 80% sure it was Mr. Cannon, after being shown a photo line up, the quality of which has not been disclosed to defense counsel. Despite a request to review the evidence defense counsel was never supplied with any information regarding the photo lineup. The District Attorney, perhaps unknowing admitted that the vehicle description made by the witness was not that of Mr. Cannon's vehicle (his car does not have the hood of his vehicle painted another color as described in the alleged opposition to the motion. The car will be present at the hearing for the

REPLY                                                         2

1   Petition, and the court may observe or have a court employee observe the car at that time). In

2   short, this Opposition appears to be flawed in more respects than just procedurally in that it

3   utterly fails to provide any basis to contend that Mr. Cannon had anything to do with this

4   incident, if indeed the incident had occurred.

5        The final defect in the Opposition is that it fails to account for the witness (Grant Early)

6   who was present with Mr. Cannon at the time the acts allegedly occurred and who filed a

7   declaration under penalty of perjury stating exactly that. They had dinner together in Sacramento,

8   Mr. Cannon spent the night at Mr. Early's residence. Indeed the District Attorney, prior to filing

9   the opposition, knew that Mr. Cannon was in Sacramento the morning after the alleged incident

10  because they had subpoenaed the ATT records showing he made calls from his phone early in the

11  am the following day from Sacramento.

12       In short, the People knew Mr. Cannon was not present in Sonoma at the time of the

13  alleged acts, they knew he was having dinner at a restaurant in Sacramento at the time of the

14  alleged incident, they knew their alleged witness could not identify him (80% provides for a

15  reasonable doubt with just about any jury), knew that he used his telephone at a time in

16  Sacramento that made it almost impossible for him to have gotten back to Sonoma, and knew

17  that the vehicle description of the alleged perpetrator wasn't the same as Mr. Cannon's vehicle.

18  Based upon the above, the court is urged to grant the petition.

19       I, Arthur Chambers declare that the factual statements contained herein are true under

20  penalty of perjury, under the laws of the State of California, and that if called as a witness I could

21  be competent to testify thereto.

22  Dated: April 12, 2010

23

24                                                 _____
                                                   Attorney for Defendant
25

26

27

28

REPLY                            3

STEPHAN R. PASSALACQUA, SBN 138293
District Attorney, County of Sonoma
Hall of Justice, Room 212-J
600 Administration Drive
Santa Rosa, CA  95403
(707) 565-2311

JAMES PATRICK CASEY, SBN 95727
Deputy District Attorney

Attorney for the People

**ENDORSED
FILED**

**APR 0 6 2010**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | Court No.: SCR-578412 |
| | D.A. No.:  DAR-614233 |
| Plaintiff, | Courtroom No.: 4 |
| v. | PEOPLE'S OPPOSITION TO PETITION FOR A FINDING OF FACTUAL INNOCENCE PURSUANT TO PENAL CODE SECTION 851.8 |
| BENJAMIN PHILIP CANNON, | |
| Defendant. | |
| | Hrg: Apr. 19, 2010 at 1:30 p.m. |

### I.

### STATEMENT OF THE CASE

Defendant BENJAMIN PHILIP CANNON (hereinafter "Defendant") was charged by way of Felony Complaint in SCR-521521 with violation of Penal Code § 146a(b), unlawful impersonation of a peace officer (Count I), and violation of Penal Code § 236, false imprisonment (Count II). The alleged offenses occurred on February 4, 2010.

On March 16, 2010, the case against Defendant was dismissed on the People's motion pursuant to Penal Code § 1385.

Defendant now moves the court for a finding of factual innocence pursuant to Penal Code § 851.8. The People oppose Defendant's motion in its entirety and request that it be denied.

## II.

## STATEMENT OF THE FACTS

The following facts are informed from the Incident/Investigation Reports of Officer Eric Haufler and Detective James Naugle of the Sonoma Police Department.

On February 4, 2010, at approximately 11:00 p.m., Christina Burnett was traveling westbound on Napa Road about five minutes east of the City of Sonoma. As she was traveling towards Santa Rosa from Napa, she was pulled over on Napa Road by what she thought was an unmarked police vehicle. The vehicle displayed a single red light, but it was not a really dark red light - Ms. Burnett stated that it was clear or faded. After she pulled over, she was contacted by a man in plain clothes wearing a hooded sweatshirt/jacket. The man quickly flashed what looked like a badge, and asked for her identification. Ms. Burnett said the man refused to tell her the reason for the stop. She told the man she did not feel comfortable giving her ID to him and told him she would do so if he could have a marked unit arrive on scene. The man became uncomfortable and walked back to his car. As Ms. Burnett watched him walk back to his car, she noticed the hood of the vehicle was a darker color than the rest of the vehicle. She then observed the vehicle reversing away from her. The driver made a U-turn and left the scene behind her. Ms. Burnett then drove to her home in Santa Rosa, and told her boyfriend about the incident. He advised her to call the police and report the incident.

Ms. Burnett said the red light appeared to be mounted in the upper left hand corner of the vehicle. The lights did not flicker at all.

Ms. Burnett described the man as a white male, unknown age with facial stubble and dark eyebrows. He was approximately 6'1" with a medium build.

1    Officer Haufler had the Sonoma County Dispatch Center place a "Be On
2    Lookout/stop" and "False Imprisonment" on the vehicle and driver, to
3    surrounding agencies. Haufler later received information that a Petaluma
4    Police Officer stopped a BMW (CA Lic. No. USCA01) for equipment violation.
5    Upon inspecting the vehicle, it was found the BMW was set up with police
6    equipment. Petaluma Police also stated the driver (Defendant, Benjamin
7    Cannon) had a previous arrest for impersonating a Peace Officer on
8    September 3, 1999. This charge was dismissed upon conviction of another
9    charge. Detective Naugle attempted to obtain a copy of the 1999 case from
10   the Highway Patrol, but they advised that the case had been purged.

11   On February 11, 2010, Detective Naugle received a flier from the
12   Petaluma Police Department. This flier was providing information on a
13   possible police impersonator, identified as Defendant, Benjamin Cannon.
14   During a traffic stop, Petaluma Police Department Officer John Silva arrested
15   Defendant for outstanding warrants for his arrest. Officer Silva found that
16   Defendant's vehicle, a 2001, silver BMW with paper plates, was equipped
17   with various police type equipment. The vehicle had a loudspeaker in the
18   front grill, strobe lights in the headlights, a scanner, handcuffs, and a siren.
19   These modifications were not noticeable upon casual inspection.

20   The flier described Defendant as a white male, 6'2" tall and 185
21   pounds. The photo showed that he also had dark eyebrows. Because
22   Defendant's physical description matched that of the one reported by Ms.
23   Burnett, Detective Naugle decided to show her a photo line-up containing
24   Defendant's photo with five similar photos.

25   Detective Hanshew responded to Ms. Burnett's workplace and showed
26   her the photo line-up. After viewing the photos, Ms. Burnett pointed to the
27   photo of Defendant and told Detective Hanshew that was him. Ms. Burnett
28   said she was 80 percent sure it was Defendant.

1    Defendant listed two addresses on his driver's license. The mailing

2  address is listed as 1083 Vine Street, #215, Healdsburg, CA. This is post

3  office box type mail drop. The other address listed is 1117 East Sunnyslope

4  Road, Petaluma, CA. This is the same address Defendant listed for his

5  parents, and emergency contact, when he was arrested and booked by

6  Officer Silva on January 27, 2010.

7    Detective Naugle authored a search warrant for the 1117 East

8  Sunnyslope Road address. The warrant was signed by the Honorable Judge

9  Mark Tansil at approximately 11:35 p.m., on February 11, 2010. At

10  approximately 10:30 p.m., on February 11, 2010, Defendant was taken into

11  custody by Sonoma County Sheriff's Department Detectives.

12    The search warrant was served on the residence. Numerous firearms,

13  ammunition, and magazines were located. A finger print kit and dash-

14  mounted strobe light were found in Defendant's bedroom of the residence.

15  In Defendant's pickup truck (Lic. # CAL002) a dark hooded jacket was

16  found. In Defendant's BMW a scanner, strobe light, handcuffs, and a siren

17  were found.

18    Detective Naugle contacted Defendant at the Sheriff's Department

19  main office and advised him of his *Miranda* rights, which Defendant invoked.

20  Detective Naugle terminated the interview. Detective Naugle noted that

21  Defendant became upset with the charge of false imprisonment. Defendant

22  would look at the booking sheet and tap the charge with his finger.

23  Defendant told Detective Naugle that if it was false imprisonment, someone

24  would have to be imprisoned. Defendant never complained about or argued

25  the impersonating an officer charge.

26  //

27  //

28  //

EXHIBIT'S incorporated into COMPLAINT OPPOSITION TO PETITION FOR WRIT OF ACTUAL INNOCENCE
- 4 -

# III.

## ARGUMENT

### A. DEFENDANT IS NOT ENTITLED TO A FINDING OF FACTUAL INNOCENCE.

California Penal Code § 851.8(c) allows a criminal defendant to petition the court for a factual innocence finding where an accusatory pleading has been filed but no conviction occurred. However, the fact that no conviction has occurred is not itself sufficient grounds for a factual innocence finding, and the former defendant bears the burden of demonstrating that no reasonable cause exists to believe the defendant committed the charged offenses. (*People v. Adair* (2003) 29 Cal.4th 895, 906.)

In *Adair* the jury found the defendant not guilty of the charged offenses. The defendant then petitioned the court for a finding of factual innocence, which the trial court granted. The People appealed, and the Court of Appeal reversed, holding that the trial court abused its discretion. The California Supreme Court affirmed, stating that, "The arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged. [Citation.]" (*Id.* at 904.) The Court emphasized that, "a finding of factual innocence '*shall not be made unless* the court finds that no reasonable cause exists to believe' the defendant committed the offense charged." (*Id.* at p. 906, original italics.)

The Court stated, "To be entitled to relief under section 851.8, '[t]he arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged." (*People v. Adair, supra,* 29

1 Cal.4th at p. 904, citation omitted.)

2       "In determining at a court hearing whether factual innocence exists,
3 the arrestee bears the preliminary burden of establishing that 'no reasonable
4 cause exists to believe that [he] committed the offense. (Citation.)" (*People*
5 *v. Matthews* (1992) 7 Cal.App.4th 1052, 1056.)

6       In the present case Defendant had numerous law enforcement items in
7 his vehicle and residence including strobe lights, scanner, finger print kit,
8 siren and handcuffs. A hooded sweatshirt was found in Defendant's pickup
9 truck. This is the type of garment the impersonator was wearing when he
10 stopped the Ms. Burnett. She described the impersonator as having dark
11 eyebrows. Defendant also has dark eyebrows. Ms. Burnett described the
12 man as being about 6'1" and medium build. Defendant is 6'2" and 185
13 pounds.

14       Detective Naugle showed Ms. Burnett a photo lineup containing six
15 photos, one of which was Defendant. Ms. Burnett picked out Defendant's
16 picture from the lineup and said she was about 80 percent sure it was the
17 man that stopped her on February 4, 2010.

18       Defendant has presented evidence of his cell phone and credit card
19 records showing they were used in Sacramento at the same time Ms. Burnett
20 was being stopped. But this only shows that the cell phone and credit card
21 were in Sacramento. It does not prove Defendant was in Sacramento.

22       Furthermore, the signature at the bottom of Defendant's "Declaration
23 of Benjamin Cannon in Support of Petition for Finding of Factual Innocence"
24 and the signature on the credit card receipt from BJ's Restaurant Brewhouse
25 do not match. (See Exhibit A attached.)

26       Additionally, Defendant made comments about the false imprisonment
27 when viewing the booking sheet to the effect that a person would have to be
28 imprisoned to be charged with that offense. Defendant never complained

1   about the charge for impersonating a peace officer.

2      Defendant has a prior arrest for impersonating a peace officer on

3   September 3, 1999.

4      Based on the above, there was sufficient cause to arrest Defendant for

5   the two offenses.  Therefore, Defendant is not entitled to a finding of factual

6   innocence.

7                              **IV.**

8                          **CONCLUSION**

9      On the basis of the foregoing facts, statutes, and case law, the People

10  respectfully request that Petitioner's motion be denied at this time.

11

12  DATED: 6/06/10          Respectfully submitted,

13                          STEPHAN R. PASSALACQUA, District Attorney
                            County of Sonoma, State of California
14

15                          BY: _____

16                              JAMES PATRICK CASEY
                                Deputy District Attorney
17

18                          Prepared by: Andrew Quinn, Certified Law Clerk

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1 and believe that the Sheriff's department has admitted that they subpoenaed my telephone

2 records which substantiated the fact that I was in Sacramento at the time of the alleged

3 occurrence.

4 Dated: March 17, 2010

5

6 Benjamin Cannon

7

8

```
Q613
Server: CHRISTY 25 R 00287)        Rac:403
02/04/10 22:48, Swiped   T: 312 Term: 1

BJ's RESTAURANT BREWHOUSE
2591 N. FREEWAY BLVD.
SACRAMENTO, CA 95834
(916)570-1927
MERCHANT #:

CARD TYPE        ACCOUNT NUMBER
VISA             XXXXXXXXXXXX3737
Name: BENJAMIN P CANNON
00 TRANSACTION APPROVED
AUTHORIZATION #: 060A90
Reference: 020401000612
TRANS TYPE: Credit Card SALE  A

CHECK:                54.92
TIP:                   8.00
TOTAL:                62.92
```

CARDHOLDER WILL PAY CARD ISSUER ABOVE
AMOUNT PURSUANT TO CARDHOLDER AGREEMENT
PLEASE LEAVE SIGNED COPY FOR SERVER.

1 | **Arthur Chambers, SBN: 53282**
2095 Van Ness Avenue
2 | San Francisco, CA 94109
(415) 775-2144
3
Attorney for Defendant Benjamin Cannon
4

5

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SONOMA**

10 | **THE PEOPLE OF THE STATE OF CALIFORNIA**          Case No. SCR 578412

11 |                                                  REPLY BRIEF IN SUPPORT OF
    Plaintiffs,                            PETITION FOR FINDING OF FACTUAL
12 |                                                 INNOCENCE
   v.
13 |                                                 DATE: April 19, 2010
   **BENJAMIN CANNON,**                        TIME: 1:30 PM
14 |                                                 DEPT: 4
   Defendant.
15 | _____/

16

17 | Comes now moving party, Defendant Benjamin Cannon, and responds to the People's opposition

18 | to Petition for a finding of Factual Innocence Pursuant to Penal Code 851.8.

19 | **PROCEDURAL ISSUES**

20 | **1. The "Opposition to Petition" contains no facts.**

21 |     The opposition filed by the District Attorney contains not a single fact upon which they

22 | base their opposition. The Opposition contains no declaration under penalty of perjury, contains

23 | no request for Judicial Notice, nor any other accepted means of providing the court with any

24 | factual basis for their allegations. Based upon those facts, the Opposition should be stricken from

25 | the record. California Rules of Court, 3.1306(a) provides:

26 | "Evidence received at a law and motion hearing must be by declaration for request for judicial

27 | notice without testimony or cross examination, unless the court orders otherwise for good cause

28 | shown."

REPLY    EXHIBITS incorporated into COMPLAINT Page 60 of 62

**2. Even if you take the Opposition's "facts" at face value, it does not provide a basis for denying the motion.**

The gist of the opposition is that sometime in the past, they contend that Mr. Cannon did something similar to the crime that they arrested him, but declined to prosecute, that Mr. Cannon had perfectly legal material in his car which might have been similar to the items alleged in the complaint, and that he could have been in Sonoma at the time of the occurrence.

The District Attorney, in it's opposition, provide no facts to show that Mr. Cannon did indeed commit any of the acts alleged in the criminal complaint filed against him. To review the alleged facts in which they contend the petition should not be granted: A statement that he was arrested sometime in 1999 and charged with a similar act. Mr. Cannon had perfectly legal materials within his home and vehicle when arrested.. Beyond those two contentions they provide no facts or evidence that he did indeed commit the alleged crime, other than saying that he could have been in Sonoma County. In their opposition, the District Attorney admits Mr. Cannon was not convicted of the prior alleged similar crime, they admit they found no further evidence of any commission of such crime, and they admit that whatever materials they found with their search were legally owned by him. Indeed they returned all the materials they took from him. In short, they provide not a scintilla of facts to show that indeed Mr. Cannon did any of those things. Had they asked him, before they arrested and handcuffed him, he would have provided a cogent and valid explanation for each and every item they contend shows that he the alleged perpetrator of this act (if indeed those acts occurred).

The District Attorney admits that their "witness" was unable to affirmatively identify Mr. Cannon as the person who allegedly committed that crime. The alleged victim allegedly was 80% sure it was Mr. Cannon, after being shown a photo line up, the quality of which has not been disclosed to defense counsel. Despite a request to review the evidence defense counsel was never supplied with any information regarding the photo lineup. The District Attorney, perhaps unknowing admitted that the vehicle description made by the witness was not that of Mr. Cannon's vehicle (his car does not have the hood of his vehicle painted another color as described in the alleged opposition to the motion. The car will be present at the hearing for the

1  Petition, and the court may observe or have a court employee observe the car at that time). In

2  short, this Opposition appears to be flawed in more respects than just procedurally in that it

3  utterly fails to provide any basis to contend that Mr. Cannon had anything to do with this

4  incident, if indeed the incident had occurred.

5    The final defect in the Opposition is that it fails to account for the witness (Grant Early)

6  who was present with Mr. Cannon at the time the acts allegedly occurred and who filed a

7  declaration under penalty of perjury stating exactly that. They had dinner together in Sacramento,

8  Mr. Cannon spent the night at Mr. Early's residence. Indeed the District Attorney, prior to filing

9  the opposition, knew that Mr. Cannon was in Sacramento the morning after the alleged incident

10  because they had subpoenaed the ATT records showing he made calls from his phone early in the

11  am the following day from Sacramento.

12    In short, the People knew Mr. Cannon was not present in Sonoma at the time of the

13  alleged acts, they knew he was having dinner at a restaurant in Sacramento at the time of the

14  alleged incident, they knew their alleged witness could not identify him (80% provides for a

15  reasonable doubt with just about any jury), knew that he used his telephone at a time in

16  Sacramento that made it almost impossible for him to have gotten back to Sonoma, and knew

17  that the vehicle description of the alleged perpetrator wasn't the same as Mr. Cannon's vehicle.

18  Based upon the above, the court is urged to grant the petition.

19    I, Arthur Chambers declare that the factual statements contained herein are true under

20  penalty of perjury, under the laws of the State of California, and that if called as a witness I could

21  be competent to testify thereto.

22  Dated: April 12, 2010

23

24                Attorney for Defendant

25

26

27

28

HARRY K. JEUNG, CPA
90 NEW MONTGOMERY STREET, SUITE 750
SAN FRANCISCO, CA 94105

JUN 2 3 2011

PJH

Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489



062S0006114139

$5.20
US POSTAGE
POSTAGE
PRIORITY
FROM 94105
JUN 21 2011
stamps.com

SUTTER ST. STATION SF CA
JUN
22
2011
USPS

U.S. POSTAGE
PAID
SAN FRANCISCO, CA
94104
JUN 22. 11
AMOUNT
$5.15
0006S941-02

94102

UNITED STATES
POSTAL SERVICE

1005

CERTIFIED MAIL™

7003 2260 0002 1054 5421

FIRST CLASS

FIRST CLASS

FIRST CLASS

FIRST CLASS

PRIORITY
MAIL
UNITED STATES POSTAL SERVICE
www.usps.com
Label 107, February 2006

# FIRST CLASS MAIL

RETURN RECEIPT
REQUESTED