**United States District Court**
For the Northern District of California

1

2

3

4                            UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7

8    BENJAMIN PHILIP CANNON,

9              Plaintiff,                      No. C 11-0651 PJH

10             v.                              **ORDER RE MOTIONS TO DISMISS**

11   CITY OF PETALUMA, et al.,

12             Defendants.

     _____/

13

14         Before the court are the motions of defendants County of Sonoma, City of Sonoma

15   (including Sonoma Police Department), former Sonoma County Sheriff-Coroner William

16   Cogbill, and Sonoma County Sheriff's Deputies James Naugle, Christopher Spallino, Eric

17   Haufler, Jesse Hanshew, Shawn Murphy, and Perry Sparkman ("Sonoma defendants"),

18   and defendants City of Petaluma (including Petaluma Police Department), Petaluma Police

19   Chief Dan Fish, and Petaluma Police Officers John Silva, Bert Walker, and Jason Jucutan

20   ("Petaluma defendants") for an order dismissing the second amended complaint ("SAC") for

21   failure to state a claim.  Having read the parties' papers and carefully considered their

22   arguments and the relevant legal authority, the court hereby GRANTS the Petaluma

23   defendants' motion, and GRANTS the Sonoma defendants' motion in part and DENIES it in

24   part.

25                                    **BACKGROUND**

26         On January 27, 2010, while driving his BMW sedan, plaintiff Benjamin P. Cannon

27   ("Cannon" or "plaintiff") was stopped by officers of the Petaluma Police Department, for

28   equipment violations.  During the stop, defendant Officers John Silva, Bert Walker, and

United States District Court
For the Northern District of California

1   Jason Jucutan searched the vehicle and discovered a firearm in the trunk, plus a HAM

2   radio, yellow LED strobe lights on all four corners of the vehicle – which Cannon claims

3   were necessary for his civil engineering business – and a power inverter for remote

4   operation of laptop computers.  At the conclusion of the stop, the officers returned all of

5   Cannon's equipment to him.  The officers arrested Cannon based on an outstanding bench

6   warrant for failure to appear.

7         Cannon asserts that following this stop, Officer Silva "created and published" a

8   memo describing him as a "police impersonator" and describing the items the officers had

9   found in Cannon's car as "police equipment."

10        On February 4, 2010, at approximately 11:00 p.m., Christina Burnett (or Barnett)

11  was driving from Napa to Santa Rosa, when she was pulled over by what she thought was

12  an unmarked police vehicle.  After she stopped, she was approached by a man in plain

13  clothes wearing a hooded sweatshirt.  He flashed what appeared to be a badge, and asked

14  her for identification.  She stated that she would do so if he would summon a marked police

15  car to the scene.  The man returned to his vehicle and drove off.  Ms. Burnett reported the

16  incident to the police.

17        Defendant Sonoma County Sheriff's Deputy Eric Haufler had the Sheriff's

18  Department issue a "be on lookout" and "false imprisonment" alert for the vehicle.  Deputy

19  Haufler later received information about the January 27, 2010 stop of Cannon's BMW

20  vehicle by officers of the Petaluma Police Department, and their discovery that the BMW

21  was set up with police equipment.  Deputy Haufler also received information that Cannon

22  had a prior arrest for impersonating a police officer in 1999 (although the charge was

23  subsequently dismissed upon conviction of another charge).

24        Cannon alleges that on February 8, 2010, Officers Silva, Walker, and Jucutan again

25  pulled him over while he was driving, and that he was "placed on the side of the road

26  shivering for 4 hours."  He asserts that this stop was without probable cause, and that

27  during the stop, the defendant officers "aggressively and repeatedly grilled" him about items

28  in his vehicle.  He claims that he later "discovered thru DMV" that the officers had issued

2

United States District Court

For the Northern District of California

1  citations.  He asserts that they did not give him any citations to sign, and did not give him

2  copies, and that their purpose in doing this was to prevent him from contesting the

3  citations.

4       On February 11, 2010, defendant Sonoma County Sheriff's Deputy James Naugle

5  received a flyer from the Petaluma Police Department, providing information on Cannon as

6  a possible police impersonator, and stating that Cannon had been stopped by Officer Silva

7  on January 27, 2010 for an equipment violation (and had been arrested for prior warrants).

8  The flyer also stated that at the time he was stopped, Cannon was discovered to be

9  carrying police-type equipment such as a loudspeaker in the front grill, strobe lights in the

10  headlights, a scanner, handcuffs, and a siren – none of which were observable upon casual

11  inspection.

12       Defendant Sheriff's Deputy Jesse Hanshew went to Ms. Burnett's workplace and

13  showed her a photo lineup.  Ms. Burnett picked Cannon out as the police impersonator,

14  stating that she was 80% certain that the impersonator had been Cannon.

15       Deputy Naugle prepared an application for a search warrant for Cannon's residence.

16  Cannon asserts that the warrant was signed by a judge at 11:35 a.m. on February 11,

17  2010; and that at approximately 10:00 p.m., he was stopped by defendant Sonoma County

18  Sheriff's Deputies Sparkman and DOE as he arrived at his residence, and was arrested.

19  The search warrant was allegedly served at the residence by defendant Deputies Naugle,

20  Sparkman, Murphy, Hanshew, and "some DOES," and the search continued into the early

21  hours of February 12, 2010.  Cannon claims the search was unlawful because the warrant

22  prohibited a "night search."

23       During the search, the officers discovered numerous firearms, as well as ammunition

24  and magazines.  A fingerprint kit and dashboard-mounted strobe light were also found.  In

25  Cannon's pick-up truck, officers also found a dark hooded sweatshirt.  Cannon claims that

26  the officers damaged his property during the search, smashing his plasma TV, and

27  ransacking his house.

28       At the Sheriff's Office, Deputy Naugle started to question Cannon, but stopped when

1    Cannon said he wanted an attorney.  Cannon was booked at approximately 5:00 a.m.  He

2    was charged in connection with the Burnett incident with a felony count of impersonating a

3    police officer, Cal. Penal Code § 146a(b), and a count of false imprisonment, Cal. Penal

4    Code § 236.

5          Cannon alleges that on February 13, 2010, defendant Sheriff's Deputy Chris

6    Spallino "published a press release" (under the name of the Sheriff's Department), which

7    was "engineered to express and imply Cannon's guilt, including publishing his home

8    address," and that defendant Sonoma Valley Sun then "published it as factual."  The press

9    release stated that Cannon had been arrested for impersonating a police officer.  Cannon

10   complains that defendants "failed to publish a retraction" even after his attorney told them

11   he (Cannon) was innocent.

12         Cannon asserts that because of this publicity, he was forced to resign from his

13   position on the board of Calguns Foundation, which he describes as a "nonprofit

14   corporation devoted to civil rights and education."

15         Cannon alleges that on February 18, 2010, the Sonoma County Sheriff's

16   Department and Deputy Naugle obtained "exculpatory cellphone records" of his cell phone,

17   showing that he had been in Sacramento on the evening of February 4, 2010, at the time

18   Ms. Burnett was pulled over by the police impersonator.  Cannon asserts that these

19   records were obtained without a warrant and without probable cause.  He contends that

20   defendants failed to disclose these "exculpatory records" to him, and that they intended to

21   "bury" the records.

22         On March 10, 2010, Cannon's attorney attempted to subpoena Cannon's cell phone

23   records, and was told by AT&T that the records had already been delivered to the Sonoma

24   County Sheriff.  Cannon claims that Deputy Naugle admitted that he "possessed and

25   withheld" the phone records, and stated that they proved only that Cannon's phone had

26   been in Sacramento.

27         Based on Cannon's alibi evidence, the District Attorney moved to dismiss the

28   charges before the preliminary hearing was held.  The court granted the motion on March

4

1   16, 2010.

2       Cannon asserts that because of the "delay in determining whether to file any

3   charges," and "the delay in issuing a factual finding of innocence," he lost a contract with

4   gunbroker.com, and other investors, which resulted in the near collapse of his business.

5       Cannon filed the present action on February 11, 2011, alleging various constitutional

6   claims under 42 U.S.C. § 1983, and a state law claim of defamation per se, against 17

7   defendants.  On April 15, 2011, Cannon filed the first amended complaint ("FAC"),

8   asserting seven causes of action against 24 defendants, including claims under § 1983 for

9   unlawful search and seizure, false arrest, failure to properly train and supervise, and

10   "withholding evidence," plus state law claims for malicious prosecution, defamation per se,

11   and false light invasion of privacy.

12       In addition to the Sonoma defendants and the Petaluma defendants, Cannon named

13   as defendants the Sonoma County District Attorney's Office, the former Sonoma County

14   District Attorney, and two Deputy District Attorneys (the "District Attorney defendants"); the

15   Sonoma Valley Sun, a local weekly newspaper; and two individuals – Ms. Burnett, and

16   Sorinne Ardeleanu.

17       On July 29, 2011, the court denied Cannon's motion for default judgment against the

18   Sonoma Valley Sun, finding that the substantive claims lacked merit, and that Cannon had

19   failed to prove up his damages.  On August 29, 2011, the court dismissed Ms. Burnett and

20   Ms. Ardeleanu from the case pursuant to Federal Rule of Civil Procedure 4(m), for failure to

21   effectuate proper service of the summons and complaint.

22       The Sonoma defendants (including the District Attorney defendants) and the

23   Petaluma defendants moved to dismiss the FAC for failure to state a claim.  The court

24   issued a written order on September 15, 2011, granting the motions to dismiss

25   ("September 15, 2011 Order").  The court dismissed the District Attorney defendants with

26   prejudice, and also dismissed the "official capacity" claims against the Sonoma County

27   Sheriff and the Sheriff's Deputies, and the state law claims, with prejudice.

28       The § 1983 claims were dismissed with leave to amend.  However, the court advised

United States District Court

For the Northern District of California

1  Cannon that no new defendants or claims could be added without leave of court, that he

2  could not re-allege any claims that had been dismissed with prejudice, and that any claim

3  based on or purporting to allege a <u>Brady</u> violation, whether asserted under federal or state

4  law, was dismissed with prejudice.

5       Cannon filed the SAC on October 12, 2011, asserting nine causes of action.  First,

6  he alleges a § 1983 claim of unreasonable search and seizure, excessive force, deprivation

7  of due process, and violation of equal protection rights against the Petaluma defendants,

8  based on the January 27, 2010 traffic stop; and a § 1983 claim of "failure to train," against

9  the City of Petaluma, the Petaluma Police Department, and Chief of Police Fish, also based

10  on the January 27, 2010 traffic stop.

11       Second, he alleges a § 1983 claim of unreasonable search and seizure, excessive

12  force, deprivation of due process, and violation of equal protection rights against the

13  Petaluma defendants, based on the newly alleged claim regarding the February 8, 2010

14  traffic stop; and a § 1983 claim of "failure to train and supervise" against the City of

15  Petaluma, the Petaluma Police Department, and Chief of Police Fish, also based on the

16  February 8, 2010 traffic stop,.

17       Third, he alleges a § 1983 claim of false arrest, unreasonable search, deprivation of

18  due process, and violation of equal protection rights against the Sonoma defendants,

19  based on his February 11, 2010 arrest and the search of his home; a § 1983 claim of

20  deprivation of due process and violation of equal protection rights in connection with the

21  "investigation," against the City of Sonoma, the County of Sonoma, Sheriff Cogbill, and

22  Deputy Naugle, based on alleged failure to turn over exculpatory evidence; and a § 1983

23  claim of "failure to properly train and supervise," against the City of Sonoma, the County of

24  Sonoma, Sheriff Cogbill, and Deputy Naugle, based on the February 11, 2010 arrest and

25  search, and also based on the alleged failure to turn over exculpatory evidence.

26       Fourth, he alleges a state law claim of defamation per se, against Ms. Ardeleanu

27  (who has been dismissed from the case); and a state law claim of false light invasion of

28  privacy, against the <u>Sonoma Valley Sun</u>.

1    The Sonoma defendants and the Petaluma defendants now seek an order

2    dismissing the claims asserted against them.

3                                    **DISCUSSION**

4    A.    Legal Standard

5          A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

6    alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

7    Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

8    Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for

9    failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

10   requirements of Federal Rule of Civil Procedure 8.

11         Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

12   the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific

13   facts are unnecessary – the statement need only give the defendant "fair notice of the claim

14   and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing

15   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

16         All allegations of material fact are taken as true.  Id. at 94.  However, legally

17   conclusory statements, not supported by actual factual allegations, need not be accepted.

18   See Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949-50 (2009).  A plaintiff's

19   obligation to provide the grounds of his entitlement to relief "requires more than labels and

20   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

21   Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the

22   complaint "must be enough to raise a right to relief above the speculative level."  Id.

23         A motion to dismiss should be granted if the complaint does not proffer enough facts

24   to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the

25   well-pleaded facts do not permit the court to infer more than the mere possibility of

26   misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

27   entitled to relief.'"  Iqbal, 129 S.Ct. at 1950.

28         In addition, when resolving a motion to dismiss for failure to state a claim, the court

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  may not generally consider materials outside the pleadings, although the court may

2  consider a matter that is properly the subject of judicial notice.  Lee v. City of Los Angeles,

3  250 F.3d 668, 688-89 (9th Cir. 2001); see also Mack v. South Bay Beer Distributors, Inc.,

4  798 F.2d 1279, 1282 (9th Cir. 1986).  Additionally, the court may consider exhibits attached

5  to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542,

6  1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all

7  parties as authentic.  See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th

8  Cir. 2002).

9  B.      Sonoma Defendants' Motion

10         1.      Claims against individual Sonoma defendants relating to February 11, 2010

11                 search and arrest

12         In the fifth cause of action, Cannon alleges that the issuance of the search warrant,

13  the resulting search of his home, and his arrest on February 11, 2010 violated his Fourth

14  and Fourteenth Amendment rights to be free from unreasonable searches and seizures, to

15  be free from excessive force, to not be deprived of liberty or property without due process

16  of law, to equal protection, and to just compensation for taking of or damage to property.

17  See SAC ¶¶ 151-155.  The Sonoma defendants argue that this cause of action must be

18  dismissed because it fails to state a claim.

19         Cannon alleges that he was arrested by Deputy Sparkman and a Deputy "DOE" at

20  approximately 10:00 p.m. on February 11, 2010, while he was parking his vehicle on a

21  public road near his residence; that he was "aggressively ripped out of his vehicle, and

22  placed in handcuffs;" and that the arrest was without a warrant.  SAC ¶¶ 69, 71.  He

23  asserts that he was "forced to wait approximately 1 hour," while Deputies Sparkman and

24  DOE attempted to interrogate him, and that Deputy Naugle arrived "some time later," after

25  which Cannon was placed in a squad car and transported to Sonoma County Jail.  SAC

26  ¶ 72-74.

27         Cannon alleges further that Deputy Naugle had earlier obtained a warrant

28  authorizing a search of his residence, which indicated that a "night search" was not

United States District Court
For the Northern District of California

1  approved; and that the affidavit for the warrant "contained no facts at all," and the warrant

2  was issued without probable cause.  SAC ¶¶ 66-68.  Cannon asserts that at approximately

3  10:30 p.m., Deputies Naugle, Sparkman, Murphy, Hanshew, and "some DOES" detained

4  his family while they executed the search warrant, and that during the course of the search,

5  his plasma TV was smashed and his house was "ransacked."  SAC ¶¶ 76, 79.  All items

6  seized during the search were eventually released to him.  SAC ¶ 83.

7      Finally, Cannon asserts that despite his profession of innocence, and the lack of

8  probable cause, Deputy Naugle "elected to charge" him, that Deputy Naugle and other

9  "DOES" continued to "pursue and recommend prosecution," and that he was booked at

10  approximately 5:00 a.m. on February 12, 2010.  SAC ¶ 84-85, 93.

11      As a general matter, defendants argue that Cannon does not indicate which claims

12  he is making against which of the Deputy defendants, and that it is therefore impossible for

13  defendants to respond to his multiple claims.  In addition, they assert that the SAC alleges

14  no specific acts of wrongdoing by Sheriff Cogbill in connection with the issuance of the

15  search warrant, or in the search and arrest, and that he makes no attempt to allege a claim

16  of supervisorial liability against Sheriff Cogbill.

17      In opposition, Cannon argues that all claims have been adequately pled, and that

18  "[f]urther discovery is necessary to determine who actually did what," as he "was not

19  exactly able to take notes while he was kidnapped and in handcuffs."

20      In the September 15, 2011 order, the court found that the first amended complaint

21  was deficient because it "fail[ed] to plead facts connecting any particular defendant with any

22  particular constitutional violation, or alleging the necessary elements of each such claim,"

23  and granted leave to amend "to plead facts sufficient to show which particular defendant is

24  alleged to have committed which particular action, and which particular constitutional right

25  was violated by such action and such defendant."  Id.

26      Under 42 U.S.C. § 1983, an individual may sue "[e]very person, who, under color of

27  [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the

28  Constitution and laws."  Individual capacity suits "seek to impose individual liability upon a

9

United States District Court

For the Northern District of California

1  government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21,

2  25 (1991).  To survive a motion to dismiss, the complaint must state a claim that is

3  "plausible on its face" – that is, the facts pled must "allow the court to draw the reasonable

4  inference that the [particular] defendant is liable for the misconduct alleged." Iqbal, 129

5  S.Ct. at 1949 (citation and quotation omitted).  While the claim need not be "probable,"

6  there must be "more than a sheer possibility that a defendant has acted unlawfully."  Id.

7      Cannon argues that he requires discovery in order to satisfy Rule 8's pleading

8  requirements.  However, "[a] party may not seek discovery from any source before the

9  parties have conferred as required by Rule 26(f)," except when otherwise authorized by the

10  federal rules, or permitted pursuant to stipulation or court order.  Fed. R. Civ. P. 26(d)(1).

11  The Rule 26(f) conference is held "at least 21 days before a scheduling conference is to

12  held . . . ." Fed. R. Civ. P. 26(f)(1).  In this district, a "scheduling conference" under Rules

13  16 or 26 is designated a "case management conference."  Civ. L. R. 16-1.  The court does

14  not conduct an initial case management conference in any case until the pleadings are

15  settled.  Here, the pleadings are not settled because the court dismissed the first amended

16  complaint for failure to state a claim, and defendants have now moved to dismiss the SAC.

17      In the SAC, Cannon alleges that he was arrested by Deputy Sparkman and a

18  Deputy DOE; that the was interrogated by Deputies Sparkman and DOE (and possibly by

19  Deputy Naugle); that Deputies Naugle, Sparkman, Murphy, Hanshew, and DOES executed

20  the search warrant; and that Deputy Naugle "recommended prosecution."  Although the

21  allegations are somewhat thin, the court finds that the fifth cause of action adequately

22  states a Fourth Amendment claim against Deputies Sparkman, Naugle, Murphy, and

23  Hanshew (and possibly the DOES), with the exception of the allegation that Deputy Naugle

24  "recommended prosecution."  Accordingly, the motion is DENIED as to those defendants

25  insofar as it pertains to the Fourth Amendment claims, as set forth below.

26      However, there are no allegations pled against Sheriff Cogbill, Deputy Spallino, or

27  Deputy Haufler in connection with the February 11, 2010 arrest and search.  Cannon does

28  not mention Sheriff Cogbill in the SAC, except to allege in the introductory section that the

United States District Court

For the Northern District of California

1   Sheriff is "responsible for formulating, executing, and administering the County of

2   Sonoma's laws, customs, practices, and policies at issue in this lawsuit," SAC ¶ 8; does not

3   mention Deputy Spallino, except to allege that he "published a press release" on February

4   13, 2010, which was "engineered to express and imply Cannon's guilt" (regarding the

5   February 4, 2010 incident), SAC ¶ 110; and does not mention Deputy Haufler, except to

6   allege that he "compiled" a "report" regarding the February 4, 2010 incident involving the

7   police impersonator, and that because no evidence regarding the incident has been

8   produced to plaintiff, Deputy Haufler's assertions "are hearsay" and "do not constitute

9   probable cause to arrest" plaintiff, SAC ¶¶ 54-60.

10      Because Cannon fails to plead facts showing how Sheriff Cogbill, Deputy Spallino,

11   or Deputy Haufler personally participated in the alleged constitutional violations, the court

12   finds that the Fourth Amendment claim alleged in the fifth cause of action against those

13   defendants must be DISMISSED.  See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

14   Cannon's vague and conclusory assertions of wrongdoing as to "defendants" are

15   insufficient to support the allegation that Sheriff Cogbill, Deputy Spallino, or Deputy Haufler

16   personally violated his constitutional rights.

17      In addition to arguing that the fifth cause of action should be dismissed because it

18   fails to allege facts showing which defendant is alleged to have committed which

19   constitutional violation, the Sonoma defendants also assert that Cannon fails to state a

20   claim as to any of the specific constitutional violations alleged.

21               a.      Claim of unlawful arrest

22      With regard to the allegation that the February 11, 2010 arrest was made "absent a

23   Warrant" and without probable cause, see SAC ¶ 151, the Sonoma defendants argue that

24   the Sheriff's Deputies were not required to obtain a warrant for Cannon's arrest, as an

25   officer may arrest a suspect without a warrant so long as probable cause exists, and they

26   also assert that the SAC pleads no facts to support Cannon's belief that the Deputies

27   lacked probable cause to arrest him.

28      Defendants note, as alleged in the SAC, that Cannon matched the description of the

11

United States District Court

For the Northern District of California

1    perpetrator provided by the victim, Ms. Burnett, who also identified him with 80% certainty

2    in a line-up; that Cannon was carrying law-enforcement-type equipment in his vehicle; and

3    that his alibi came to light only after the charges were filed against him.  Defendants

4    contend that, notwithstanding some of Cannon's arguments about the facts the Deputies

5    relied on to arrest him, the fact that the victim identified him with 80% certainty as the

6    perpetrator provides sufficient probable cause in itself to justify the arrest.

7        In opposition, Cannon argues that "there is nothing at the crime scene to connect

8    [h]im or his vehicle to the alleged incident."  He asserts that he drives "a sports car not a

9    police style car" (although he alleges in the SAC that he drives a BMW that he describes as

10   "a high-performance luxury sedan").  He also argues that he was 100 miles away at the

11   time of the incident.  He also contends that Ms. Burnett's identification of him as the

12   suspect was not worthy of credence, and that "[n]o rational person could possibly conclude

13   that [he] could have or did commit the offenses described."

14       The Fourth Amendment requires that an arrest be supported by probable cause.

15   Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  "[A] warrantless arrest by a law

16   officer is reasonable under the Fourth Amendment where there is probable cause to

17   believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543

18   U.S. 146, 152 (2004) (citations omitted).

19       An arrest is supported by probable cause if, under the totality of the circumstances

20   known to the arresting officer, a prudent person would have concluded that there was a fair

21   probability that the defendant had committed a crime.  Luchtel v. Hagemann, 623 F.3d 975,

22   980 (9th Cir. 2010); see also Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir.

23   2009).  The inquiry is not whether the suspect actually committed the offense, but rather

24   whether a reasonable officer, based on information known to him/her at the time, had

25   probable cause to think that the suspect could have committed the offense.  See

26   Blankenhorn v. City of Orange, 485 F.3d 463, 475 (9th Cir. 2007).

27       Nevertheless, for purposes of the present motion, the court need not decide whether

28   probable cause, in fact, existed, but whether Cannon has alleged facts sufficient to support

United States District Court

For the Northern District of California

1    his claim that there was no probable cause.  The court finds that factual disputes exist

2    which are not appropriate for decision on a Rule 12(b)(6) motion, with regard to whether

3    Deputies Sparkman, Naugle, and DOE lacked probable cause to arrest Cannon for

4    impersonating a police officer.  Accordingly, the motion is DENIED.

5              b.    Claim of excessive force

6         With regard to the allegation that Deputies Sparkman, Naugle, and DOE used

7    excessive force in the course of the traffic stop and arrest, see SAC ¶ 151, the Sonoma

8    defendants assert that the SAC alleges no objective facts showing that the Deputies used

9    excessive force.  A § 1983 claim based on an allegation that law enforcement used

10   excessive force is, like in other Fourth Amendment contexts, subject to an objective

11   reasonableness inquiry – "the question is whether the officers' actions are 'objectively

12   reasonable' in light of the facts and circumstances confronting them . . . ."  Graham v.

13   Connor, 490 U.S. 386, 397 (1989).

14        Determining whether the force used to effect a particular seizure is "reasonable"

15   under the Fourth Amendment thus requires a careful balancing of "the nature and quality of

16   the intrusion on the individual's Fourth Amendment interests" against the countervailing

17   governmental interests at stake.  Id. at 396 (citations and quotations omitted).  Accordingly,

18   the Supreme Court has "long recognized that the right to make an arrest or investigatory

19   stop necessarily carries with it the right to use some degree of physical coercion or threat

20   thereof to effect it."  Id.  In other words, "[n]ot every push or shove, even if it may later seem

21   unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment."  Id.

22   (quotations and citations omitted).

23        While it is true that the act of placing an arrested suspect in handcuffs is not

24   inherently unreasonable and does not in and of itself constitute excessive force, see

25   Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002), it is also true that the

26   Fourth Amendment test for reasonableness is inherently fact-specific, see Ohio v.

27   Robinette, 519 U.S. 33, 39 (1996).  The court finds that while the allegation that Cannon

28   was "aggressively ripped out of his vehicle [and] placed in handcuffs" may ultimately be

United States District Court

For the Northern District of California

1    insufficient to prove that excessive force was used, it is sufficient to state a claim that the

2    seizure was unreasonable.  Accordingly, the motion is DENIED.

3         c.    Claim that search warrant was invalid

4         With regard to the allegation that the warrant for the search of Cannon's residence

5    was defective because it was issued without probable cause, see SAC ¶ 152, defendants

6    argue that an affidavit supporting a search warrant is presumed valid, and that plaintiff's

7    allegation that the Superior Court issued the search warrant "with no facts" is conclusory

8    and fails to state a claim.

9         In opposition, Cannon asserts that there was no probable cause affidavit underlying

10   the search warrant, but also appears to be arguing that he cannot be certain whether there

11   was an affidavit – he claims that the affidavit "does not appear to exist" – or whether it

12   supported issuance of the warrant, because he has never been given a copy of the

13   supporting affidavit.  He asserts in addition that there was "nothing at the crime scene" to

14   connect him or his vehicle to the incident involving the police impersonator, as the lights on

15   his car are yellow, not red, and he drives a sports car, not a police-type vehicle" (although

16   he alleges in the SAC that he drives a 2001 BMW 750il, which he describes as a "high-

17   performance luxury sedan").  He also contends that an "80% identification" is not an

18   identification, and that "no rational person could possibly conclude" that he committed the

19   offenses described.

20        The Fourth Amendment provides that "no Warrants shall issue, but upon probable

21   cause, supported by Oath or affirmation, and particularly describing the place to be

22   searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In this context,

23   probable cause exists when the affidavit supporting the warrant states facts showing "a fair

24   probability that contraband or evidence of a crime will be found in a particular place."

25   Illinois v. Gates, 462 U.S. 213, 238-39 (1983).  There need not be probable cause to

26   suspect that the owner of the property to be searched committed a crime – only that the

27   "things" (i.e., the evidence) to be searched or seized are located on the property.  United

28   States v. Adjani, 452 F.3d 1140, 1146 (9th Cir. 2006).

                                             14

United States District Court

For the Northern District of California

1    Where the alleged Fourth Amendment violation involves a search or seizure

2    pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest

3    indication that the officers acted in an objectively reasonable manner or in "objective good

4    faith." Messerschmidt v. Millender, 132 S.Ct. 1235, 1245 (2012) (citation omitted).  A

5    search conducted in good-faith reliance on a facially valid warrant is constitutional as long

6    as the officer's reliance on the magistrate's determination that probable cause existed was

7    objectively reasonable, the magistrate did not wholly abandon his judicial role, and the

8    officers did not act in bad faith by misleading the magistrate.  United States v. Huggins, 299

9    F.3d 1039, 1043-44 (9th Cir. 2002) (citations omitted).

10    Nevertheless, the Supreme Court has recognized an exception allowing suit when "it

11    is obvious that no reasonably competent officer would have concluded that a warrant

12    should issue." Messerschmidt, 132 S.Ct. at 1245 (quoting Malley v. Briggs, 475 U.S. 335,

13    341 (1986)).  Thus, a claim may be brought under 42 U.S.C. § 1983 where it is alleged that

14    a search warrant was obtained through allegations of deliberate falsehood or reckless

15    disregard for the truth, and when those false allegations are set aside, the remaining

16    allegations are insufficient to support a finding of probable cause.  Lombardi v. City of El

17    Cajon, 117 F.3d 1117, 1118 (9th Cir. 1997).

18    The fact that Cannon has never received a copy of the affidavit supporting the

19    issuance of the search warrant is not relevant to the question whether he has adequately

20    alleged facts showing that the search warrant was issued without probable cause to believe

21    that the items being sought were present at his residence.  Defendants are correct that

22    affidavits are not generally attached to the search warrant, and are generally provided only

23    as part of discovery in criminal cases.  See Cal. Pen. Code §§ 1054.1, et seq.

24    Nevertheless, while the allegations in the SAC are not a model of clarity, the court

25    finds that Cannon has alleged facts sufficient to raise a dispute as to whether the search

26    warrant was issued with probable cause.  Accordingly, the motion is DENIED.

27    d.    Claim that night-time search was unlawful

28    With regard to the allegation that the search of Cannon's residence was unlawful

15

because the warrant was served, and the search executed, "after the time permitted," see SAC ¶ 152, defendants contend that Cannon is confusing the difference between the service of the search warrant and the resulting conduct of the search.  In the SAC, Cannon admits he was not home at the time the search warrant was served, but instead was approached by Sheriff's Deputies immediately upon arriving home, at approximately 10:00 p.m.  However, he alleges no facts regarding service of the search warrant.

In opposition, Cannon asserts that "[i]t is well settled that serving a day warrant at night is a rights violation actionable under [§] 1983," and that "[t]he idea that a night search when not legally authorized is somehow not a gross violation of rights is absurd."

California law provides that unless a night search is authorized, a search warrant must be served between 7:00 a.m. and 10:00 p.m.  Cal. Pen. Code § 1533.  Nevertheless, the time in which the actual search can be conducted is unlimited, and may extend past 10:00 p.m.  Put another way, a search warrant that does not allow for a nighttime search is not invalidly executed pursuant to Penal Code § 1533 where execution of the warrant is part of one continuous transaction that begins before 10 p.m. and continues after that hour. People v. Zepeda, 102 Cal. App. 3d 1, 7-8 (1980).

More importantly, however, Cannon does not allege facts showing that the service of the search warrant, regardless of when it was served, violated his constitutional rights. Section § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  Graham, 490 U.S. at 393-94.

A violation of state law regarding the service of search warrants does not provide a basis for a claim under 42 U.S.C. § 1983 because it does not constitute a violation of the United States Constitution or federal law.  Specifically, California Penal Code § 1533 is a state statute.  It does not confer federal rights.  See People v. McKay, 27 Cal. 4th 601, 609 (2002); see also Martinez-Medina v. Holder, __ F.3d __, 2011 WL 855791 at *7-8 (Mar. 11,

1   2011) (citing Virginia v. Moore, 553 U.S. 164, 173-74 (2008)).  Accordingly, the § 1983

2   claim relating to the time of execution of the search warrant is DISMISSED with prejudice.

3                              e.      Due process claim

4       With regard to the allegation that defendants' actions in arresting and prosecuting

5   Cannon deprived him of due process, see SAC ¶¶ 155, 160-163, the Sonoma defendants

6   contend that whether this claim is intended as a procedural due process claim or a

7   substantive due process claim, it must be dismissed for failure to state a claim.  Cannon

8   does not specifically respond to this argument in his opposition.

9       The Due Process Clause of the Fourteenth Amendment protects individuals against

10  governmental deprivations of "life, liberty or property," as those words have been

11  interpreted and given meaning over the life of our republic, without due process of law.

12  Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Mullins v. Oregon, 57 F.3d 789,

13  795 (9th Cir. 1995).  The Due Process Clause confers both procedural and substantive

14  rights.  Armendariz v. Penman, 75 F.3d 1311, 1318 (9th Cir. 1996) (en banc).

15      To state a procedural due process claim, a plaintiff must allege facts showing a

16  deprivation of a constitutionally protected liberty or property interest, and a denial of

17  adequate procedural protections.  Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716

18  (9th Cir. 2011); Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).  Here, Cannon

19  alleges deprivation of liberty interests – an interest in being free from unlawful arrest – but

20  identifies no procedural protections that he was denied that could form a basis for a claim

21  of denial of procedural due process.  Moreover, courts apply Fourth Amendment, rather

22  than general due process, standards to claims of unconstitutional seizures of the person.

23  See Larson v. Neimi, 9 F.3d 1397, 1400-01 (9th Cir. 1993).

24      Substantive due process refers to certain actions that the government may not

25  engage in, no matter how many procedural safeguards it employs.  County of Sacramento

26  v. Lewis, 523 U.S. 833, 847 (1998); Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir.

27  1988).  The Supreme Court has clearly held, however, that where a particular Amendment

28  provides an explicit textual source of constitutional protection against particular government

17

United States District Court

For the Northern District of California

1 | behavior, that Amendment, not the more generalized notion of "substantive due process,"

2 | must be used to analyze such claims.  Albright v. Oliver, 510 U.S. 266, 273 (1994).

3 |       Because there is no substantive right under the Due Process Clause of the

4 | Fourteenth Amendment to be free from criminal arrest or prosecution except on probable

5 | cause, the constitutionality of an arrest may be challenged only under the Fourth

6 | Amendment.  See id. at 268-75; see also Larson, 9 F.3d at 1400-01.  Accordingly, the due

7 | process claim is DISMISSED with prejudice.

8 |                 f.      Equal protection claim

9 |       With regard to the allegation that defendants violated Cannon's equal protection

10 | rights by obtaining a search warrant for his residence without probable cause, and by

11 | obtaining "without a warrant or probable cause, a [c]ourt order compelling release of his cell

12 | phone location records," SAC ¶¶ 155, 160-163, the Sonoma defendants note that the SAC

13 | is devoid of any allegation that the arrest had a discriminatory effect or that the arresting

14 | officers were motivated by any discriminatory purpose, and no allegation that similarly

15 | situated individuals were not prosecuted.  Cannon does not respond to this argument in his

16 | opposition.

17 |       "The Equal Protection Clause of the Fourteenth Amendment commands that no

18 | State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which

19 | is essentially a direction that all persons similarly situated should be treated alike."  City of

20 | Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  A plaintiff alleging denial of

21 | equal protection under 42 U.S.C. § 1983 based on a suspect classification must plead

22 | intentional unlawful discrimination or allege facts that are at least susceptible of an

23 | inference of discriminatory intent.  Monteiro v. Tempe Union High School Dist., 158 F.3d

24 | 1022, 1026 (9th Cir. 1998).  To state a claim for relief, the plaintiff must allege that the

25 | defendant state actor acted at least in part because of plaintiff's membership in a protected

26 | class.  Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011).

27 |       Where state action does not implicate a fundamental right or a suspect

28 | classification, the plaintiff can establish an equal protection "class of one" claim by

United States District Court

For the Northern District of California

1    demonstrating that the state actor intentionally treated him differently than other similarly

2    situated persons, without a rational basis.  See Village of Willowbrook v. Olech, 528 U.S.

3    562, 564 (2000); Gerhart v. Lake County, Mont., 637 F.3d 1013, 1020 (9th Cir. 2011); see

4    also Solis v. City of Fresno, 2012 WL 868681 at *6-10 (E.D. Cal. Mar. 13, 2012).  The

5    rational basis must exist, not for the government's underlying action, but for treating the

6    plaintiff differently.  Gerhart, 637 F.3d at 1023 (rational basis for denial of permit not

7    relevant; there must also be rational basis for denying permit to plaintiff but not to other

8    similarly situated property owners).

9           The court finds no facts pled in the SAC that could be interpreted as sufficient to

10   state a claim of an equal protection violation.  Cannon does not allege that the defendants'

11   actions implicated a fundamental right or a suspect classification.  As for any "class of one"

12   claim, Cannon does not assert that any other similarly situated individuals were treated

13   differently than he was by the Sonoma County defendants.  Moreover, by failing to oppose

14   the motion on that basis, Cannon has apparently conceded that he cannot state such a

15   claim.  Accordingly, the equal protection claim is DISMISSED with prejudice.

16                  g.    Claim of unlawful taking caused by delay in investigation

17          With regard to the allegation that the Sonoma defendants failed to "resolve the

18   underlying arrest in a timely manner," thereby causing Cannon to lose "business

19   opportunities," which resulted in an unlawful taking without just compensation, see SAC

20   ¶¶ 109, 155, defendants argue that it is the District Attorney – not the Sheriff or the Sheriff's

21   Deputies – who makes the decision to charge or not to charge, and that since the court has

22   already dismissed the District Attorney defendants with prejudice, this claim cannot stand.

23   Defendants also note that the Takings Clause prohibits the government from taking private

24   property "for public use, without just compensation," see U.S. Const. amend. V, but assert

25   that there is no allegation that any of plaintiff's private property was taken for public use.

26   Cannon does not respond to these arguments in his opposition.

27          The court finds no facts pled in the SAC that could possibly be interpreted as

28   sufficient to state a claim of an unlawful taking without just compensation.  Moreover,

United States District Court

For the Northern District of California

1  Cannon appears to have conceded that he cannot state such a claim.  Accordingly, the

2  claim of unlawful taking without just compensation caused by the delay in the investigation

3  is DISMISSED with prejudice.

4          2.      Claims against the County and the City relating to February 11, 2010 search

5                  and arrest

6          The Sonoma defendants assert that no claims are made against the County of

7  Sonoma or the City of Sonoma (including the Sonoma Police Department) in the fifth cause

8  of action, other than those that are based on the actions of the Sheriff defendants acting as

9  "arms of the state" in investigating and enforcing state laws.  Thus, defendants argue, these

10  municipal defendants are entitled to Eleventh Amendment immunity.  Cannon does not

11  respond to this argument.

12          States and arms of the state possess immunity from suits authorized by federal law.

13  Alden v. Maine, 527 U.S. 706, 740 (1999).  However, sovereign immunity is not as a

14  general matter extended to political subdivisions of states, such as counties and

15  municipalities.  See, e.g., Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440

16  U.S. 391, 401 & n.19 (1979).

17          The court acknowledges that "[a]cting upon a warrant is a law enforcement function"

18  with which a county Sheriff "is tasked under California law."  Streit v. County of Los

19  Angeles, 236 F.3d 552, 564 (9th Cir. 2001) (citing Cal. Gov't Code § 12560).  Nonetheless,

20  while it is possible that the fifth cause of action may be interpreted as asserting claims

21  against the City of Sonoma and Sonoma County based solely on the actions of the Sheriff's

22  Deputies, the court finds an analysis as to whether the City or County was acting as a final

23  policymaker for local government, or instead was acting as a representative of the state, in

24  connection with the February 11, 2010 arrest and search, to be beyond the scope of the

25  present Rule 12(b)(6) motion.  Moreover, it requires a more thorough arm-of-the state

26  analysis than defendants have presented to the court here.  See, e.g., Streit, 236 F.3d at

27  566-67.

28          The court also notes, however, that Cannon alleges no facts in the fifth cause of

United States District Court

For the Northern District of California

1   action that could support any claim against the City or the County, and that the claim of

2   municipal liability appears to be included within the seventh cause of action.

3          In addition, as for the City of Sonoma (and the Sonoma Police Department), the

4   court has carefully reviewed the SAC and has been unable to locate a single factual

5   allegation that mentions the City of Sonoma or the Sonoma Police Department, with <u>one</u>

6   exception.  Cannon alleges in the "Statement of Facts" that after Christina Burnett was

7   stopped on February 4, 2010 by the police impersonator, she "contacted [d]efendant

8   Sonoma Police Department law enforcement."  SAC ¶ 54.

9          The fifth, sixth, and seventh causes of action, which are alleged against Sonoma

10  County, are also alleged against the City of Sonoma.  But apart from the allegation

11  regarding Ms. Burnett in ¶ 54, there is not a mention of a single City of Sonoma police

12  officer or other employee in any of those three causes of action, or elsewhere in the

13  "Statement of Facts."  And no police officer employed by the Sonoma Police Department is

14  named as a defendant in the SAC – nor are there any allegations as to DOE defendants

15  that could be construed as referring to Sonoma Police Department officers.

16         Plaintiff was previously directed in the September 15, 2011 order that he was

17  required to "plead facts sufficient to show which defendant is alleged to have committed

18  which particular action."  The SAC includes no allegations regarding the City of Sonoma (or

19  the Sonoma Police Department).  Based on this, and the absence of any argument by

20  Cannon, the court finds that the City of Sonoma (and the Sonoma Police Department) must

21  be DISMISSED from the case, with prejudice.

22         3.     Claim of failure to release exculpatory evidence

23         In the sixth cause of action Cannon alleges that defendants City of Sonoma, County

24  of Sonoma, former Sheriff Cogbill, and Sheriff's Deputy Naugle "applied for and obtained,

25  without a warrant or probable cause, a [c]ourt order compelling release of his [c]ell [p]hone

26  location records, and subsequently concealed the existence of those records once he

27  found them to be exculpatory."  SAC ¶ 161.  He alleges further that defendants "breached

28  their continuing duty to turn over exculpatory evidence . . ." and in so doing, deprived him of

21

1   his rights under the Fourth and Fourteenth Amendments.  Id. ¶¶ 162-163.

2          The Sonoma defendants argue that the basis of this claim is the same as the prior

3   Brady claim that was dismissed by the court, except that this claim is asserted against the

4   Sheriff entities, while the prior claim was asserted against the District Attorney defendants.

5   Defendants contend that this cause of action fails to state a claim and should be dismissed

6   for the same reason that the prior claim was dismissed, and also because it is a new claim,

7   which the court prohibited in the prior dismissal order.  In his opposition, Cannon argues

8   that he is not presenting a Brady claim, and that the claim "is not new."

9          In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the

10  suppression by the prosecution of evidence favorable to an accused upon request violates

11  due process where the evidence is material either to guilt or to punishment, irrespective of

12  the good faith or bad faith of the prosecution."  Id. at 87.   Brady requires both prosecutors

13  and police to disclose exculpatory evidence to criminal defendants.  Smith v. Almada, 640

14  F.3d 931, 939 (9th Cir. 2011).

15         To state a claim under Brady, a plaintiff must allege that the withheld evidence was

16  favorable, because it was exculpatory or because it could be used to impeach; that the

17  evidence was suppressed by the government; and that the plaintiff was prejudiced thereby.

18  Id.  Strictly speaking, there can never be a Brady violation unless the nondisclosure was so

19  serious that there is a reasonable probability that the suppressed evidence would have

20  produced a different verdict.  Id.

21         A criminal defendant (or here, a plaintiff) alleging a Brady violation must plead facts

22  showing that there is a reasonable probability that the outcome of the trial would have been

23  different had the evidence been disclosed.  Strickler v. Greene, 527 U.S. 263, 281-82

24  (1999); United States v. Kojayan, 8 F.3d 1315, 1322 (9th Cir. 1993).  But the ultimate

25  question is not whether the defendant would more likely than not have received a different

26  verdict with the evidence; rather, it is whether, in its absence, he received a fair trial.

27  United States v. Golb, 69 F.3d 1417, 1430 (9th Cir. 1995).  That is, prejudice will be found

28  only if the suppressed evidence was "material" under state law to the accused's guilt or

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    punishment.  Anderson v. Calderon, 232 F.3d 1053, 1062, 1066 (9th Cir. 2000).

2           Delay in disclosure does not deprive an accused of due process where disclosure is

3    made at the pretrial conference, see Reiger v. Christensen, 789 F.2d 1425, 1432 (9th Cir.

4    1986), or during trial where the disclosure, though tardy, is still of value to the accused, see

5    United States v. Vgeri, 51 F.3d 876, 880 (9th Cir. 1995).  Due process requires only the

6    disclosure of exculpatory material in sufficient time to permit defendant to make effective

7    use of the material.  See LaMere v. Risley, 827 F.2d 622, 625 (9th Cir. 1987).

8           In his opposition, Cannon argues that his claim regarding the County's alleged

9    failure to provide the "exculpatory" cell phone records is not a claim of a Brady violation.

10   Rather, he contends it is a "due process claim surrounding both the obtainment, and the

11   subsequent concealment of his cell records."  He argues that concealing information that

12   would have affected a decision to go to trial is distinct from a Brady claim.

13          In support, Cannon cites "Bielanski" – which the court interprets as a reference to

14   Bielanski v. County of Kane, 550 F.3d 632 (7th Cir. 2008).  In Bielanski, an individual who

15   had been charged with sexual assault of a child, and who had been tried and acquitted,

16   subsequently brought a § 1983 action against county and state employees who had

17   conducted the investigation, alleging that defendants had failed to disclose information that

18   was materially favorable to her defense to the criminal charges.  The question presented on

19   appeal was whether the evidence that was withheld would have affected the prosecution's

20   decision to proceed to trial.  Id. at 643-45.

21          Cannon does not explain, and the court is unable to discern, what relevance the

22   Bielanski decision might have to the present case.  While it is true that Cannon was

23   arrested and charged, the matter was never set for trial, and was dismissed prior to the

24   preliminary hearing.  Since there was no preliminary hearing, no trial, and no verdict,

25   Cannon cannot show that any withholding of evidence was material or prejudicial under the

26   above-described standard.  Moreover, a Brady claim alleging withholding of exculpatory

27   evidence is a due process claim.

28          The court previously dismissed the Brady claim alleged in the FAC for failure to

United States District Court
For the Northern District of California

state a claim.  The dismissal was with prejudice.  Although the court did not fully explain the basis for the dismissal in the order or at the hearing on the motions to dismiss, it is clear from the cited authority that there can be no <u>Brady</u> claim in the absence of some prejudice.  And, where criminal charges are dismissed prior to the preliminary hearing, there can be no prejudice.  Thus, Cannon cannot state a claim for violation of his due process rights based on the alleged withholding of the cell phone records.  Accordingly, the court finds that the sixth cause of action must be DISMISSED.  The dismissal is with prejudice.

As for plaintiff's new argument that his constitutional rights were violated by "the obtainment" of the cell phone records without a warrant, that claim is also dismissed for the reason that it was not previously alleged in the FAC.  Plaintiff's previous position as reflected in the documents attached to the FAC was that the Sonoma County defendants had subpoenaed the cell phone records from AT&T on February 18, 2010, not that defendants violated his constitutional rights because they did not first obtain a warrant.[1]  Moreover, plaintiff has not alleged any injury that resulted from defendants' acquisition of the cell phone records.

4.      Claim of supervisory and municipal liability alleging failure to train

In the seventh cause of action, Cannon asserts a § 1983 claim of failure to properly train and supervise, against the City of Sonoma, the County of Sonoma, Sheriff Cogbill, and Deputy Naugle.  He alleges that the acts of "[d]efendants" deprived him of his constitutional rights, "namely the failure to educate the Police Officers as to the Constitutional rights of defendants, to prevent the consistent and systematic use of improper searches, unlawful arrests, defective warrants, and unlawfully obtained court orders, and ultimately to allow concealment of exculpatory evidence."  SAC ¶ 168.

He alleges further that "[d]efendants" in so doing "acted in accordance with a policy,

---

[1]   In any event, Cannon has not cited any authority in support of the proposition that California law requires investigators to obtain a search warrant, rather than a subpoena, in order to obtain a suspect's cell phone records (as opposed to the contents of cell phone conversations).

United States District Court

For the Northern District of California

or practice so pervasive as to constitute a rule of law," and that "[d]efendants" have shown "a pattern of abuse similar in nature to the above offenses."  SAC ¶¶ 169-170.  He asserts that the training policies of "the defendant" were not adequate to train its employees to handle "the usual and recurring situations with which they must deal[,]" and that "defendants" were "deliberately indifferent to the obvious consequences of their failure to train their employees adequately."  Id. ¶¶ 172-173.

The court interprets this claim as alleging § 1983 supervisory liability based on a failure to train, against former Sheriff Cogbill and Sheriff's Deputy Naugle, in their individual capacities, and as alleging § 1983 municipal liability claims under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), against the City of Sonoma and the County of Sonoma, based on asserted unlawful policies or practices.  For the reasons stated above, the claims against the City of Sonoma are dismissed.

Defendants contend that the SAC fails to allege plausible facts sufficient to support a § 1983 claim based on failure to train against the supervisory defendants (Sheriff Cogbill and Deputy Naugle).  In a § 1983 action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Iqbal, 129 S.Ct. at 1948.

Rather, an individual may be liable for deprivation of constitutional rights within the meaning of § 1983, only if "he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).

That is, a supervisor can be liable for constitutional violations of subordinates only if the supervisor either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v. Black, 885 F.2d

25

United States District Court

For the Northern District of California

1    642, 646 (9th Cir. 1989) (citation and quotation omitted); see also Taylor v. List, 880 F.2d

2    1040, 1045 (9th Cir. 1989).  Thus, a plaintiff cannot demonstrate that an individual officer is

3    liable "without a showing of individual participation in the unlawful conduct." Jones v.

4    Williams, 297 F.3d 930, 935 (9th Cir. 2002); see also Blankenhorn, 485 F.3d at 481 n.12.

5          Here, plaintiff has not alleged any facts showing personal involvement by either

6    former Sheriff Cogbill or Deputy Naugle.  While it is true, as Cannon argues, that the court

7    is required to construe the pleadings of pro se litigants "liberally," and to afford pro se

8    plaintiffs the benefit of the doubt, see, e.g., Hebbe v. Pliler, 611 F.3d 1202, 1205 (9th Cir.

9    2010); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002), the court is nonetheless not

10   required – nor even permitted – to "supply essential elements of the claim that were not

11   initially pled." Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.

12   1982).  Thus, vague and conclusory allegations of official participation in civil rights

13   violations cannot withstand a motion to dismiss, id., because an essential element of a

14   § 1983 claim is that the government official personally participated in the violation.

15         Moreover, the tenet that a court must accept a complaint's allegations as true is

16   inapplicable to legal conclusions unsupported by factual allegations.  Iqbal, 129 S.Ct. at

17   1949-50 (assumption of truth does not apply to legal conclusions couched as factual

18   allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by

19   mere conclusory statements") (citing Twombly, 550 U.S. at 555).

20         As for the Monell claim, defendants contend that the SAC fails to state a claim for

21   three reasons – because Cannon has not alleged facts sufficient to support a claim that any

22   of the Sonoma defendants violated any of his constitutional rights, and therefore cannot

23   show that a policy, practice, or custom of the County is the moving force behind the

24   constitutional violations; because he has failed to allege any specific policy, custom, or

25   practice that resulted in constitutional violations; and because he alleges no facts showing

26   that there was a pattern or practice of constitutional violations, as he asserts constitutional

27   violations only as to himself.

28         In his opposition, Cannon contends that "[m]aking arrests without warrant or

United States District Court

For the Northern District of California

1   [probable cause] and obtaining search warrants without [probable cause] are clearly

2   defined rights violations[,]" that "[t]raining in [probable cause] and powers of arrest is

3   supposed to address this[,]" and that the officers here were "willfully indifferent to a clearly

4   established right."  He also argues that the "rights deprived" were "4th amendment freedom

5   of movement[;]" that the policies at issue were the policies of "arresting without a warrant

6   and without probable cause" (and failure to train regarding probable cause for arrest) and

7   "[o]btaining search warrants that lack probable cause."  These assertions appear to be

8   directed towards the first and second parts of defendants' argument.  However, he does not

9   address defendants' third argument.

10      Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where

11  official policy or custom causes a constitutional tort.  See Monell, 436 U.S. at 690.

12  However, a city or county may not be held vicariously liable for the unconstitutional acts of

13  its employees under the theory of respondeat superior.  Board of Cty. Comm'rs. of Bryan

14  Cty. v. Brown, 520 U.S. 397, 403 (1997); Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th

15  Cir. 1995).

16      To state a claim for municipal liability under § 1983 for a violation of constitutional

17  rights, a plaintiff must allege facts showing (1) that he possessed a constitutional right of

18  which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to

19  deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the

20  moving force behind the constitutional violation.  Plumeau v. School Dist. #40 County of

21  Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).  There can be no municipal liability without an

22  underlying constitutional violation.  Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).

23      While the SAC alleges in conclusory terms that the County has a policy of arresting

24  without a warrant or probable cause, and a policy of obtaining search warrants without

25  probable cause, the SAC pleads no facts supporting the assertion that the County

26  maintains such a policy or that the policy amounts to deliberate indifference.  Cannon

27  simply alleges that he was arrested without probable cause, and that a search warrant was

28  issued for the search of his home without probable cause, and that that translates into a

27

United States District Court
For the Northern District of California

1    "policy."

2         Prior to the U.S. Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u>, a claim of

3    municipal liability based on nothing more than a bare allegation that the individual officers'

4    conduct conformed to official policy, custom, or practice was sufficient to state a claim. <u>See</u>,

5    <u>e.g.</u>, <u>Whitaker v. Garcetti</u>, 486 F.3d 572, 581 (9th Cir. 2007).  However, the Supreme Court

6    has now made clear that conclusory, "threadbare" allegations that merely recite the

7    elements of a cause of action will not withstand a motion to dismiss.  <u>Iqbal</u>, 129 S.Ct. at

8    1949-50.

9         In light of <u>Iqbal</u>, it appears that the prior Ninth Circuit pleading standard for <u>Monell</u>

10   claims – "bare allegations" – is no longer viable.  <u>See</u>, <u>e.g.</u>, <u>Mong Kim Tran v. City of</u>

11   <u>Garden Grove</u>, 2012 WL 405088 at *4 (C.D. Cal. Feb. 7, 2012); <u>Canas v. City of</u>

12   <u>Sunnyvale</u>, 2011 WL 1743910 at *5-6 (N.D. Cal. Jan. 19, 2011); <u>Young v. City of Visalia</u>,

13   687 F.Supp. 2d 1141, 1149 (E.D. Cal. 2009).  Thus, conclusory statements such as those

14   alleged here are insufficient to support a claim for municipal liability.

15        Finally, to the extent that the SAC asserts a claim of municipal liability based on an

16   alleged failure by the County to train its employees, Cannon must allege facts showing a

17   pattern and practice of "deliberate indifference" to violations of constitutional rights,

18   including allegations that "a municipal actor disregarded a known or obvious consequence

19   of his action." <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359 (2011).

20        To proceed with such a claim, the plaintiff must allege facts showing that the

21   responsible government actor was placed "on notice that specific training was necessary to

22   avoid the constitutional violation." <u>Id.</u> at 1360.  Where, however, there is only a single

23   constitutional violation alleged, such an allegation is insufficient to show a pattern and

24   practice of misconduct necessary to proceed with the <u>Monell</u> claim. <u>Id.</u> at 1358.  Cannon's

25   allegations in the SAC relate solely to his own, isolated experiences, which cannot support

26   a <u>Monell</u> claim for failure to train or supervise.

27        The claims for supervisory liability and <u>Monell</u> liability alleged in the seventh cause of

28   action are DISMISSED.  Because the court did not address these claims in any detail in the

United States District Court

For the Northern District of California

1   September 15, 2011 order, the court will grant leave to amend this cause of action.

2   C.      Petaluma Defendants' Motion

3           1.      Claims against individual Petaluma defendants relating to January 27, 2010

4                   traffic stop

5           In the first cause of action, Cannon alleges that the Petaluma defendants violated

6   his Fourth and Fourteenth Amendment rights during the January 27, 2010 traffic stop.  He

7   claims that "defendants" stopped his vehicle without probable cause or suspicion, that they

8   "singled him out from others similarly situated," and that they arrested him "out of spite" and

9   towed his vehicle.  SAC ¶ 120.  He further asserts that they unlawfully seized his vehicle

10  and firearms and other personal property.  Id.  He alleges that in so doing, they deprived

11  him of his right to be free from unlawful searches and seizures, his right not to be deprived

12  of liberty or property without due process of law, his right to be free from excessive use of

13  force, and his right to just compensation for taking of or damage to property.  Id. ¶ 121.

14          As a general matter, the Petaluma defendants argue that the first cause of action is

15  deficient because, while Cannon mentions Officers Silva, Walker, and Jucutan by name, he

16  does not plead facts showing which officer committed which alleged constitutional violation.

17  Defendants also note that Cannon identifies Chief Fish as the person "responsible for

18  formulating, executing, and administering the City of Petaluma's laws, customs, practices,

19  and policies at issue in the lawsuit;" and asserts that Chief Fish "has or are [sic] in fact

20  presently enforcing the challenged laws, customs, and practices against Plaintiff."  SAC ¶ 6.

21  They contend, however, that outside of these general allegations, the SAC pleads no facts

22  showing that Chief Fish personally engaged in any wrongdoing or took any kind of action

23  that could form the basis for a claim under § 1983, and no facts in support of a claim

24  against Chief Fish for supervisory liability.  Accordingly, they argue that the first cause of

25  action should be dismissed as against Chief Fish.

26          In addition to arguing that the first cause of action should be dismissed because it

27  fails to allege facts showing which defendant is alleged to have committed which

28  constitutional violation, the Petaluma defendants also assert that Cannon fails to state a

United States District Court
For the Northern District of California

1    claim as to any of the specific constitutional violations alleged.

2         2.       Claims relating to the lawfulness of the stop

3         With regard to the allegation that the Petaluma police officers deprived Cannon of

4    his constitutional rights when they stopped and detained him on January 27, 2010, for

5    alleged equipment violations, seized and searched his vehicle, and arrested him based on

6    an outstanding bench warrant, see SAC ¶¶ 32, 35, 40-42, defendants argue that the

7    allegation that Cannon was stopped for equipment violations – a cracked windshield and

8    some problem with the "license plate area" of the vehicle – shows that there was probable

9    cause for the stop, as a stop for equipment violations is objectively reasonable and justified

10   by the specific facts confronting the officers.  They assert that any officer who spotted those

11   equipment violations in the same circumstances would have initiated a traffic stop.

12        They also contend that because Cannon was arrested on an outstanding bench

13   warrant for failure to appear, the arrest was not warrantless, and probable cause existed

14   under California law, which authorizes law enforcement officers to arrest a person with a

15   California bench warrant and bring him/her directly to court.  Finally, defendants note that

16   Cannon concedes that his property was returned to him, which they argue contradicts his

17   allegation that the property was unlawfully seized.

18        In opposition, Cannon contends that the alleged equipment violation – a cracked

19   windshield – did not exist.  Thus, he asserts that there was no probable cause for the stop,

20   and that it was therefore unlawful.  He also asserts that the Petaluma Police Department

21   has a "written policy to cite-out minor traffic FTAs," and that he will "seek in discovery

22   exactly how many traffic FTAs were cited out versus arrested."  Finally, he contends that

23   the search of the vehicle was unlawful because the officers lacked probable cause to stop

24   his vehicle in the first place.

25        The officers' investigatory stop of Cannon's vehicle implicates the Fourth

26   Amendment because stopping an automobile and detaining its occupant(s) constitutes a

27   seizure, even where the purpose of the stop is limited and the resulting detention is brief.

28   Delaware v. Prouse, 440 U.S. 648, 653 (1979).  Investigatory traffic stops are akin to the

United States District Court

For the Northern District of California

1  on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968). Accordingly, the

2  same objective standard applies – a police officer may conduct an investigatory traffic stop

3  if the officer has "reasonable suspicion" that a particular person "has committed, is

4  committing, or is about to commit a crime." U.S. v. Choudhry, 461 F.3d 1097, 1100 (9th

5  Cir. 2006) (citing U.S. v. Lopez-Soto, 205 F.3d 1101, 1104 (9th Cir. 2000)).

6      Officers have reasonable suspicion when "specific, articulable facts . . . together with

7  objective and reasonable inferences, form the basis for suspecting that the particular

8  person detained is engaged in criminal activity." Id. at 1105 (quotations omitted). The

9  reasonable suspicion analysis takes into account the totality of the circumstances. Id. A

10  traffic violation alone is sufficient to establish reasonable suspicion, see Whren v. United

11  States, 517 U.S. 806, 810 (1996); United States v. Willis, 431 F.3d 709, 714-17 (9th Cir.

12  2005); and "reasonable suspicion" is enough to support an investigative traffic stop, see

13  Lopez-Soto, 205 F.3d at 1104-05.

14      In the SAC, Cannon asserts that the police officers allegedly stopped him for driving

15  with a cracked windshield, but that the windshield was not in fact cracked. He also asserts

16  that he was stopped based on some irregularity with the license plate on his vehicle, and

17  appears to be suggesting that the officers could not have seen his license plate from where

18  they were parked. He does not allege, however, that there was no irregularity with his

19  license plate (nor does he make that argument in his opposition to defendants' motion).

20      The court finds that Cannon has failed to plead facts sufficient to support the

21  allegation that the officers lacked reasonable suspicion to stop him for a traffic violation.

22  Cannon's failure to deny that there was any irregularity with the license plate, coupled with

23  his speculation as to what the officers could in fact see, is sufficient to warrant dismissal of

24  the claim that the traffic stop was unlawful.

25      Moreover, having lawfully stopped Cannon's vehicle and ascertained his identity,

26  and having discovered that there was a bench warrant for his arrest, defendants were

27  entitled to arrest him. A bench warrant issued for failure to appear in a pending criminal

28  matter is a valid warrant and provides authority for police officers to arrest the person

31

United States District Court

For the Northern District of California

1   identified in the warrant.  See United States v. Gooch, 506 F.3d 1156, 1158-59 (9th Cir.

2   2007); see also Beck v. Ohio, 379 U.S. 89, 91 (1964); Cal. Pen. Code § 978.5 (bench

3   warrant "may be issued whenever a defendant fails to appear in court as required by law[,]"

4   including when defendant has been ordered by judge or magistrate to personally appear at

5   specific time/place, or when defendant is released from custody on bail or on his/her own

6   recognizance, and promises to personally appear in court at specific time/place); id. § 983

7   (bench warrant "may be served in any county in the same manner as a warrant of arrest").

8        On the facts alleged, Cannon's arrest was not an unreasonable seizure under the

9   Fourth Amendment because the officers had probable cause to believe that a bench

10  warrant had issued for his arrest.  At that point, the officers were entitled to conduct a

11  search incident to a lawful arrest.  When making a lawful arrest, "police may conduct a

12  warrantless search of the area within the arrestee's immediate control, that is, the area

13  from within which he might gain possession of a weapon or destructible evidence."  United

14  States v. Turner, 926 F.2d 883, 887 (9th Cir. 1991) (citations and quotations omitted).

15       Accordingly, the claim of unreasonable search and seizure in connection with the

16  January 27, 2010 traffic stop is DISMISSED.  The due process and equal protection claims

17  are also dismissed, for the reasons stated above in connection with the claims asserted

18  against the Sonoma County defendants.  The dismissal is with prejudice.

19       3.   Claim of supervisory liability

20       In the second cause of action, Cannon alleges that the City of Petaluma, the

21  Petaluma Police Department (part of the City of Petaluma), and Petaluma Police Chief Fish

22  failed to properly train and educate the arresting officers who were involved in the January

23  27, 2010 traffic stop, "as to the Constitutional rights of defendants, to prevent the consistent

24  and systematic use of improper searches, fabrication of probable cause, and arresting out

25  of spite."  SAC ¶ 126.  He claims that "the training policies of the defendant were not

26  adequate to train it's [sic] employees to handle the usual and recurring situations with which

27  they must deal[.]"  Id. ¶ 130.  Cannon asserts that "defendants" acted in accordance with "a

28  policy or practice that was so pervasive it had the rule of law," and that "defendants" have

United States District Court

For the Northern District of California

1   shown a "pattern of abuse similar in nature" to the above-described offenses.  Id. ¶ 127-

2   128.  He asserts that the "defendants" were "deliberately indifferent to the obvious

3   consequences of their failure to train their employees adequately[.]"  Id. ¶ 131.

4          Defendants argue that the SAC fails to establish a claim of municipal liability against

5   the City and Chief Fish under any theory.  They contend that a general allegation that a

6   policy exists, without more, is not sufficient to state a claim for municipal liability.  They also

7   assert that in the absence of a viable claim of constitutional violations, Cannon cannot

8   allege a claim of municipal liability.

9          As explained in more detail above, a plaintiff asserting a claim under § 1983 against

10  a local government must show that his injury was caused by "action pursuant to official

11  municipal policy," which includes the decisions of a government's lawmakers, the acts of its

12  policymaking officials, and practices so persistent and widespread as to practically have the

13  force of law.  Monell, 436 U.S. at 691; see also Connick, 131 S.Ct. at 1359.

14         Cannon has alleged no such facts here.  That is, there are no facts pled from which

15  it may be inferred that there was both a violation of constitutional rights and that the

16  violation was the result of an official policy, custom, or practice of the Petaluma defendants.

17  Thus, the SAC pleads no independent basis for holding the City or Chief Fish liable under §

18  1983.  Nor are Cannon's generalized conclusions that the City "obviously" failed to train its

19  officers sufficient to withstand a motion to dismiss.  Iqbal, 129 S.Ct. at 1949 (complaint

20  must allege facts sufficient to state a plausible claim for relief).

21         The allegation that the individual officers departed from "firm department policy"

22  when they arrested Cannon for an outstanding bench warrant during the traffic stop on

23  January 27, 2010 does not arise to the level of a "well-settled" or "widespread" practice for

24  § 1983 purposes.  Gillette v. Delmore, 979 F.2d 1342, 1348-49 (9th Cir. 1992).  Nor is that

25  allegation sufficient to show "deliberate indifference" to the rights of persons in Cannon's

26  shoes.  See Canton v. Harris, 489 U.S. 378, 388 (1989); see also Brown, 520 U.S. at 409-

27  10.  If anything, such allegations underscore the absence of municipal liability, as a

28  municipality cannot be held vicariously liable for the acts of its employees under a

33

1   respondeat superior theory. <u>Monell</u>, 436 U.S. at 690-91. Accordingly, the second cause of

2   action is DISMISSED. The dismissal is with prejudice.

3        4.      Claims relating to February 8, 2010 traffic stop

4        In the third cause of action, Cannon alleges that the Petaluma defendants violated

5   his Fourth and Fourteenth Amendment rights during the February 8, 2010 traffic stop, and

6   that in so doing, deprived him of his right to be free from unlawful searches and seizures,

7   his right not to be deprived of liberty or property without due process of law, his right to be

8   free from excessive use of force, and his right to equal protection under the law. <u>Id.</u> ¶ 136.

9        He asserts that "defendants" stopped his vehicle without probable cause, "unlawfully

10  seized his vehicle, person, and firearms and other personal property," and cited him for

11  "violations they knew to be unsupported by fact, out of spite[,]" and that their conduct was

12  "completely unreasonable in light of the surrounding circumstances." SAC ¶ 135. In the

13  fourth cause of action, Cannon alleges that the City of Petaluma, the Petaluma Police

14  Department (part of the City of Petaluma), and Petaluma Police Chief Fish failed to properly

15  train the officers who were involved in the February 8, 2010 traffic stop. <u>See</u> SAC ¶¶ 141-

16  146.

17       Defendants argue that the claims regarding the February 8, 2010 traffic stop should

18  be dismissed because they are entirely new claims that were not alleged in the FAC, and

19  that the inclusion of these claims in the SAC therefore violates the court's September 15,

20  2011 order. In addition, defendants assert that there are no facts alleged in the SAC from

21  which it could be inferred that there was no probable cause for the traffic stop or arrest.

22  Defendants also contend that a general allegation that a policy exists, without more, is not

23  sufficient to state a claim for municipal liability, and that in the absence of a viable claim of

24  constitutional violations, Cannon cannot allege a claim of municipal liability.

25       The court finds that the motion must be GRANTED. Cannon made no mention in

26  the FAC of any alleged unlawful traffic stop on February 8, 2010. Thus, the court finds that

27  the inclusion of these claims exceed what was authorized by the court's order granting

28  leave to amend. Accordingly, the third and fourth causes of action are DISMISSED. If

United States District Court
For the Northern District of California

1 | plaintiff wishes to add them to the complaint, he must file a proper motion for leave to

2 | amend.

3 | **CONCLUSION**

4 | In accordance with the foregoing, the court GRANTS the Sonoma defendants'

5 | motion in part and DENIES it in part, and GRANTS the Petaluma defendants' motion.

6 | 1.    The claims against the City of Sonoma and the Sonoma Police Department

7 | are DISMISSED with prejudice, and may not be re-alleged in any amended complaint.

8 | 2.    The due process and equal protection claims, the claim of unlawful taking

9 | without just compensation, and the claim that the night-time search of plaintiff's residence

10 | violated his constitutional rights, asserted against the Sonoma defendants in the fifth cause

11 | of action, are DISMISSED with prejudice, and may not be re-alleged in any amended

12 | complaint.

13 | 3.    The motion to dismiss the claims in the fifth cause of action that the February

14 | 11, 2010 arrest was unlawful under the Fourth Amendment because it was made absent a

15 | warrant and without probable cause, and because it constituted an unreasonable seizure,

16 | and the claim that the search warrant was invalid, asserted against the Sonoma

17 | defendants, is DENIED.

18 | 4.    The claims of individual liability alleged against Sheriff Cogbill, Deputy

19 | Spallino, and Deputy Haufler in the fifth cause of action are DISMISSED with prejudice, and

20 | may not be re-alleged in any amended complaint.

21 | 5.    The claims of supervisory liability asserted against Sheriff Cogbill and Deputy

22 | Naugle in the seventh cause of action, and the claim of Monell liability asserted against the

23 | County of Sonoma in the seventh cause of action, are DISMISSED with leave to amend.

24 | 6.    The claim relating to cell phone records alleged in the sixth cause of action is

25 | DISMISSED with prejudice.  The allegations and claims relating to the alleged "obtainment"

26 | or "withholding" of plaintiff's cell phone records may not be re-alleged in any amended

27 | complaint.

28 | 7.    The first and second causes of action asserted against the Petaluma

35

United States District Court

For the Northern District of California

1  defendants relating to the January 27, 2010 traffic stop, arrest, and search are DISMISSED

2  with prejudice, and may not be re-alleged in any amended complaint.

3       8.     The third and fourth causes of action asserted against the Petaluma

4  defendants relating to the February 8, 2010 traffic stop are DISMISSED.  The dismissal of

5  the due process and equal protection claims is with prejudice, and those claims may not be

6  re-alleged in any amended complaint.  Plaintiff may file a motion for leave to amend the

7  complaint to re-allege the Fourth Amendment claims only, and the <u>Monell</u> claim and/or

8  supervisory liability claim relating to the Fourth Amendment claims only.

9       9.     The allegations and claims asserted against dismissed defendant Sorinne

10 Ardeleanu may not be re-alleged in any amended complaint.

11      10.    No later than May 7, 2012, plaintiff may either file a third amended complaint,

12 which eliminates the claims that have been dismissed pursuant to this order, and amends

13 only those claims as to which leave to amend has been granted; or, plaintiff may file a

14 motion for leave to file a third amended complaint that includes the dismissed claims

15 against the Petaluma defendants relating to the February 8, 2010 traffic stop (in addition to

16 the claims remaining in the case and any claims as to which leave to amend has been

17 granted).

18

19 **IT IS SO ORDERED.**

20 Dated: April 6, 2012                                      _____

21                                                          PHYLLIS J. HAMILTON
                                                            United States District Judge

22

23

24

25

26

27

28