United States District Court

For the Northern District of California

1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                           NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12   BENJAMIN P. CANNON,

13              Plaintiff,                           No. C 11-0651 PJH

14        v.                                         **ORDER DENYING PLAINTIFF'S**
                                                     **MOTIONS FOR LEAVE TO FILE**
15   CITY OF PETALUMA, et al.,                       **MOTIONS FOR RECONSIDERATION**

16              Defendants.
     _____/

17

18        Before the court are the motions of plaintiff Benjamin P. Cannon for leave to file

19   motions for reconsideration of four orders issued by the court – the order dismissing

20   defendant Sorinne Ardeleanu from the case, the order denying the motion for default

21   judgment against defendant Sonoma Valley Sun, the order dismissing defendant City of

22   Sonoma from the case, and the order dismissing the § 1983 claim based on the Sonoma

23   County defendants' alleged nighttime service of the search warrant.

24        Under Civil Local Rule 7-9, a party seeking leave to file a motion for reconsideration

25   must specifically show

26        (1) That at the time of the motion for leave, a material difference in fact or law
          exists from that which was presented to the Court before entry of the
27        interlocutory order for which reconsideration is sought. The party also must
          show that in the exercise of reasonable diligence the party applying for
28        reconsideration did not know such fact or law at the time of the interlocutory
          order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).

The court has reviewed plaintiff's motions and finds that they must be DENIED because they do not meet the requirements of Rule 7-9(b).

1.      Motion re dismissal of Sorinne Ardeleanu

On June 23, 2011, the court received a letter by certified mail from the offices of Harry K. Jeung, CPA, in San Francisco, California. The letter stated that "[t]his package was dropped off at our office. The intended recipient is not located at this office." Attached to the letter was a copy of the summons and complaint in the above-entitled action. The summons is addressed to "See above named defendants." Listed "above" as defendants are "City of Petaluma, County of Sonoma, etc."

On June 28, 2011, plaintiff filed a proof of service, asserting that Ms. Ardeleanu had been served on May 24, 2011, by leaving a copy of the summons and complaint at Ms. Ardeleanu's ususal place of employment, with "Harry Jung/Owner."

Also on June 28, 2011, plaintiff filed a request for entry of default. With that request, plaintiff submitted a declaration stating that he had been unable to serve Ms. Ardeleanu at the address he believed was her residence (based on an address provided for Ms. Ardeleanu by a party to a legal proceeding in the San Francisco County Superior Court), and that on May 24, 2011, the process server had left a copy of the summons and complaint at her "usual place of business," which plaintiff claimed was the office of Harry Jeung, CPA.

Plaintiff claimed that he had obtained information regarding Ms. Ardeleanu's "usual place of business" from entries on two social networking sites – Linkedin.com and Viadeo.com – and also based on a telephone conversation with an unidentified person at the office of Harry Jeung, who allegedly told plaintiff that Ms. Ardeleanu worked there.

2

1    On June 30, 2011, the clerk declined the default.  On July 26, 2011, plaintiff

2  submitted a letter to the court stating that Ms. Ardeleanu had been evading service, and

3  requesting that the court enter the default.  On August 5, 2011, the court issued an order

4  directing plaintiff to complete service on Ms. Ardeleanu and to file a proof of service no later

5  than August 19, 2011.  Otherwise, the court stated, Ms. Ardeleanu would be dismissed

6  from the case pursuant to Federal Rule of Civil Procedure 4(m).

7    On August 16, 2011, plaintiff filed a request for entry of default against Ms.

8  Ardeleanu, which was accompanied by a declaration in substantially the same form as the

9  declaration previously filed with the June 28, 2011 request to enter default.  In addition,

10  plaintiff also asserted that Ms. Ardeleanu had "actual notice" of the lawsuit because she

11  had moved, through counsel, to quash a subpoena for her telephone records that plaintiff

12  had served on AT&T (but not on Ms. Ardeleanu, who had been notified about the subpoena

13  by AT&T).

14    On August 29, 2011, the court issued an order dismissing Ms. Ardeleanu from the

15  action, pursuant to Rule 4(m), on the basis that plaintiff had failed to file a proof of service

16  by the deadline set in the August 5, 2011 order.  The court also denied plaintiff's motion for

17  entry of default.

18    On September 15, 2011, the court issued an order granting in part and denying in

19  part defendants' motions to dismiss the FAC.  On October 12, 2011, plaintiff filed a second

20  amended complaint ("SAC"), in which, among other things, he asserted claims against Ms.

21  Ardeleanu.  Defendants moved to dismiss, and on April 6, 2012, the court issued an order

22  granting the motions in part and denying them in part.  In that order, the court noted that all

23  claims against Ms. Ardeleanu had previously been dismissed.

24    On April 18, 2012, plaintiff filed a motion for leave to file a motion for reconsideration

25  of what he claimed was the April 6, 2012 order dismissing Ms. Ardeleanu from the case for

26  failure to effectuate proper service.  In that motion, plaintiff again argued that Ms.

27  Ardeleanu had "actual knowledge" of the lawsuit, based on her counsel's having filed a

28  motion to quash the subpoena for her cell phone records.  He also repeated the assertions

3

1   from the declarations previously filed in support of the June 28, 2011 and August 16, 2011

2   requests to enter default (detailed above).  On April 20, 2012, the court issued an order

3   denying the motion, noting that Ms. Ardeleanu had been dismissed from the case on

4   August 29, 2011, not in the April 6, 2012 order as plaintiff had asserted.  The court also

5   noted that Rule 4(m) dismissals are not dismissals with prejudice, and that following the

6   August 29, 2011 dismissal, plaintiff was free to file another complaint against Ms.

7   Ardeleanu.

8           On May 29, 2012, plaintiff filed the present motion for leave to file a motion for

9   reconsideration of the order dismissing Ms. Ardeleanu from the case.  In his "amended

10  motion," plaintiff makes essentially the same argument that he previously made – that Ms.

11  Ardeleanu was served "in a timely manner under relevant Federal and State law."  He

12  repeated the assertions from the declarations filed in support of the June 18, 2011 and

13  August 16, 2011 requests to enter default, as well as the April 18, 2012 request for leave to

14  file a motion for reconsideration.  In addition, he now suggests that Mr. Jeung is "aiding and

15  abetting" Ms. Ardeleanu's attempt to "evade lawful service," and argues that Mr. Jeung

16  should have provided a declaration under penalty of perjury.

17          The court finds that the motion must be DENIED.  Civil Local Rule 7-9 prohibits a

18  party seeking leave to file a motion for reconsideration from repeating the arguments that

19  party previously made to the court prior to entry of the interlocutory order as to which

20  reconsideration is sought.  See Civil L.R. 7-9(c).  Plaintiff previously made almost identical

21  arguments regarding why, in his opinion, service on Ms. Ardeleanu was sufficient.

22          The court previously denied the motion, and does so again, because plaintiff's

23  arguments are without merit.  Federal courts cannot exercise personal jurisdiction over a

24  defendant without proper service of process.  Omni Capital Int'l, Ltd. v. Wolff & Co., 484

25  U.S. 97, 104 (1987); see also SEC v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007) ("Service

26  of process is the means by which a court asserts its jurisdiction over the person.").

27          As an initial matter, actual notice is not a substitute for service of process.  See

28  Slaughter v. Legal Process & Courier Service, 162 Cal. App. 3d 1236, 1251 (1984)

1   (requirement of notice – e.g. service of process – is not satisfied by actual knowledge

2   without notification conforming to the statutory requirements); <u>MJS Enterprises, Inc. v.</u>

3   <u>Superior Court</u>, 153 Cal. App. 3d 555, 557 (1984) (notice of litigation does not confer

4   personal jurisdiction absent substantial compliance with the statutory requirements for

5   service of summons").

6          In addition, it is plaintiff's burden to establish that the court has jurisdiction over a

7   defendant, which, in this case, requires a showing that Ardeleanu was properly served.

8   <u>See</u> <u>U.S. v. Panter</u>, 2012 WL 1245669 at *3 (D. Or. March 14, 2012) (for entry of default to

9   be proper under Rule 55, the moving party has the burden of showing that the party against

10  whom default is sought has been properly served; the court has proper subject matter

11  jurisdiction; and the defaulting party has failed to plead or otherwise defend).  Plaintiff has

12  not done so here, with regard to Ardeleanu, because he failed to provide documentation

13  showing that Ms. Ardeleanu was served by substitute service at her "usual place of

14  business."

15         Information obtained from social networking sites is inherently unreliable, as are

16  reports of conversations with unidentified third parties, and for that reason are insufficient to

17  establish an individual's "usual place of business."  In addition, the fact that the court

18  received a letter from Mr. Jeung's office stating that plaintiff was not at that address – while

19  not determinative – also suggests that Mr. Jeung's office was not Ms. Ardeleanu's usual

20  place of business at the time that plaintiff attempted to serve her at that address.

21         Moreover, as the court previously indicated, the dismissal was without prejudice, and

22  plaintiff was free to file another lawsuit against Ardeleanu, which he has evidently chosen

23  not to do.

24         2.     Motion re denial of motion for default judgment against <u>Sonoma Valley Sun</u>

25         On June 29, 2011, the clerk entered the default of defendant <u>Sonoma Valley Sun</u>.

26  On July 26, 2011, plaintiff filed a motion for default judgment against defendant <u>Sonoma</u>

27  <u>Valley Sun</u>.  On July 29, 2011, the court denied the motion for default judgment, finding that

28  plaintiff had failed to satisfy the factors set forth in <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72

United States District Court

For the Northern District of California

1   (9th Cir. 1986).  In particular, the court found that plaintiff had failed to state a viable claim

2   against the <u>Sonoma Valley Sun</u>, and had failed to prove up his damages.

3         On August 16, 2011, plaintiff filed a motion for leave to file a motion for

4   reconsideration of the order denying the motion for default judgment against the <u>Sonoma</u>

5   <u>Valley Sun</u>.  He asserted that he had new material facts that had previously been unknown

6   to him, and which were relevant to the matter.  These "new facts" were contained in

7   e-mails to the <u>Sonoma Valley Sun</u> from a friend of plaintiff's and from plaintiff's attorney.

8   On August 22, 2011, the court issued an order denying the request for leave to file a motion

9   for reconsideration, finding that the additional information did not qualify as "new material

10  facts," and that in any event, plaintiff had failed to explain how the e-mails warranted

11  reconsideration.

12        On April 18, 2012, plaintiff filed the present request for leave to file a motion for

13  reconsideration of the order denying the motion for default judgment as to the <u>Sonoma</u>

14  <u>Valley Sun</u>.  This time, plaintiff asserts that reconsideration is warranted because the court

15  committed a manifest error of law in finding the statements in the press release to be non-

16  defamatory, and that the court failed to consider the material fact that the <u>Sonoma Valley</u>

17  <u>Sun</u> re-wrote the press release to make a defamatory publication.  Plaintiff previously made

18  this argument – that the defamation claim was based on the assertion that the <u>Sonoma</u>

19  <u>Valley Sun</u> had re-written the press release – in his prior request for leave to file a motion

20  for reconsideration.

21        The first amended complaint ("FAC"), which is the version of the complaint that was

22  operative at the time the court denied the motion for default judgment, alleges that

23  defendant Deputy Chris Spallino "published a press release . . . engineered to express and

24  imply [plaintiff's] guilt, including publishing his home address[;]" that "[o]ver 50 press

25  agencies picked up the story[;]" and that "[d]efendant Sonoma Sun published it as factual

26  . . . and failed to publish a retraction even after [plaintiff's attorney] notified them in email of

27  [plaintiff's] factual innocence."  FAC ¶ 61.  Nowhere does plaintiff allege that the <u>Sonoma</u>

28  <u>Valley Sun</u> had "re-written" the press release.

United States District Court

For the Northern District of California

1    The court has previously suggested to plaintiff that he read the orders of the court

2    more carefully.  With regard to the order denying the motion for default judgment, the court

3    did not "find the statements in the press release to be non-defamatory."  Rather, the court

4    simply found that plaintiff had failed to allege facts in the first amended complaint sufficient

5    to state a viable claim of any sort against the <u>Sonoma Valley Sun</u>.  In particular, with regard

6    to the defamation claim, the court stated that "[t]he press release, on which the <u>Sonoma</u>

7    <u>Valley Sun</u> allegedly based its report, accurately reported that plaintiff had been arrested

8    for impersonating a police officer."  The court added that "[t]he FAC alleges no facts

9    showing that the Sonoma Valley Sun intentionally published a statement of fact that was

10   false and that was also unprivileged."  Finally, as a further basis for denying the motion, the

11   court found that plaintiff had failed to prove up his damages.

12   Plaintiff has articulated no reason for the court to revisit these findings.  To date,

13   plaintiff has not alleged a viable claim against the <u>Sonoma Valley Sun</u>, and has made no

14   further attempt to prove up his damages.  Accordingly, the request for leave to file a motion

15   for reconsideration is DENIED.

16   3.    Motion re dismissal of City of Sonoma

17   In the September 15, 2011, order granting defendants' motions to dismiss the FAC,

18   the court dismissed the state law claims against the City of Sonoma with prejudice, and

19   dismissed the § 1983 claims with leave to amend to allege facts showing municipal liability,

20   and to plead facts sufficient to support a claim of constitutional violations.  Both in the order

21   and at the September 14, 2011 hearing, the court advised plaintiff that the allegations were

22   insufficient because plaintiff had failed to plead facts connecting any particular defendant

23   with any particular constitutional violation, or alleging the necessary elements of each such

24   claim.

25   Plaintiff filed the second amended complaint ("SAC"), and both the Petaluma

26   defendants and the Sonoma defendants (including the City of Sonoma) again moved to

27   dismiss.  On April 6, 2012, the court issued an order granting the Petaluma defendants'

28   motion, and granting the Sonoma defendants' motion in part and denying it in part.  With

United States District Court
For the Northern District of California

1  regard to the City of Sonoma, the court noted that there were no facts pled that could be

2  interpreted as supporting a claim of municipal liability against the City, as required under

3  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978), or a claim of constitutional violations

4  against any City of Sonoma police officer.  For this reason, and because plaintiff had

5  previously been granted leave to amend to state a claim against the City of Sonoma, the

6  court dismissed the claims with prejudice.

7       Plaintiff now seeks reconsideration of that order, arguing that "it is an undisupted fact

8  that the City of Sonoma contracts to defendant County of Sonoma, and the Sonoma

9  County Sherriff's [sic] department, for police services."  In support, he cites to the City of

10  Sonoma's website.  He also asserts that "[t]he criminal case that predicated this matter

11  before the court begins with 'SON'" – which he claims indicates a "City of Sonoma case

12  number."  He argues that reconsideration is warranted under Civil Local Rule 7-9(a)(3)

13  because the court failed to "consider material facts or dispositive legal arguments which

14  were presented to the Court in support of or opposition to the interlocutory order" of which

15  he seeks reconsideration.

16       Regardless of whether the fact of the contractual relationship between the City of

17  Sonoma and the Sonoma County Sheriff's Department can or cannot be considered to

18  constitute a material fact, it is not true that plaintiff previously presented this fact to the court

19  in opposition to the Sonoma defendants' motion to dismiss.  Nowhere in his opposition to

20  the Sonoma defendants' motion to dismiss did he argue that the City of Sonoma was liable

21  for violating his constitutional rights because the Sheriff's Department was acting on the

22  City's behalf.  Indeed, nowhere in the SAC's factual allegations or causes of action (with

23  one minor exception, not relevant to the prior motions) does plaintiff even mention the City

24  of Sonoma.

25       Accordingly, as plaintiff has provided no bases for reconsideration of the order

26  dismissing the City of Sonoma, the court finds that the motion must be DENIED.

27       4.    Motion re dismissal of claim alleging nighttime service of search warrant

28       In the SAC, plaintiff alleged that he arrived at his residence at approximately 10:00

1    p.m. on February 11, 2010, and that as he was parking his vehicle on the street, he was

2    arrested by Sonoma County Sheriff's Deputies Sparkman and DOE, who were later joined

3    by Deputy Naugle.  SAC ¶ 69, 73.  He asserted that he was held near his vehicle for more

4    than an hour, and that he was then transported to the Sonoma County Jail, where he

5    remained until he posted bail "the next day."  SAC ¶¶ 72-74.  He alleged further that

6    "commencing approximately" 10:30 p.m., Deputies Naugle, Sparkman, Murphy, and

7    Hanshew served a search warrant at this residence.  SAC ¶ 76.  He asserted that service

8    of the search warrant was unlawful under California Penal Code § 1533, which prohibits

9    searches between 10:00 p.m. and 7:00 a.m. unless a nighttime search has been

10   authorized.  SAC ¶ 76 & n.2.

11       In the April 6, 2012 order re defendants motions to dismiss the SAC, the court noted

12   that plaintiff conceded that he was not at his residence at the time the warrant was served,

13   and stated that he "alleges no facts regarding service of the search warrant."  April 6, 2012

14   Order at 16.  The court also found that plaintiff could not state a claim under § 1983 for

15   violation of a state criminal statute, because "[a] violation of state law regarding service of

16   search warrants does not . . . constitute a violation of the United States Constitution or

17   federal law."  Id.

18       In the present motion, plaintiff argues that reconsideration is warranted under Civil

19   Local Rule 7-9(a)(3) because the court failed to "consider material facts or dispositive legal

20   arguments which were presented to the Court in support of or opposition to the

21   interlocutory order" of which he seeks reconsideration.  He contends that the "[d]ismissal of

22   claims related to night service of a warrant was due to plain and manifest error."  In

23   particular, plaintiff takes issue with the statement in the April 6, 2012 order that the SAC

24   "alleges no facts regarding service of the search warrant."  He argues that the SAC does

25   allege facts in support of this claim, because it alleges that the search warrant was served

26   at 10:30 p.m. (referring to allegations in SAC ¶ 76).

27       The court has reviewed plaintiff's motion, as well as the SAC and the papers filed in

28   connection with the prior motions to dismiss, and finds that the motion must be DENIED,

United States District Court

For the Northern District of California

1    because plaintiff has not shown that the court failed to consider material facts or dispositive

2    legal arguments.

3        It is true that plaintiff alleges in the SAC that the warrant was served at

4    "approximately 10:30 p.m."  However, under Ashcroft v. Iqbal, 556 U.S. 662 (2009), legally

5    conclusory statements that are not supported by actual factual allegations are insufficient to

6    state a claim.  Id. at 678.  Here, beyond alleging that the search commenced at 10:30 p.m.,

7    when the warrant was served on unidentified occupants of the residence, plaintiff provides

8    no facts relating to the service or execution of the warrant.  (Indeed, it is evident from the

9    allegations that he has no personal knowledge of the circumstances under which the

10   warrant was served or executed.)

11       Moreover, as the court explained in the April 6, 2012 Order, the entire operation

12   commenced at 10:00 p.m. when plaintiff was stopped on the street outside his residence,

13   and the search of the residence pursuant to the search warrant can be viewed as part of

14   that single operation.

15       Plaintiff also argues in the present motion that a nighttime search is per se

16   unreasonable under the Fourth Amendment.  The restriction that limits the time for service

17   of the warrant to the hours between 7:00 a.m. and 10:00 p.m. is a statutory restriction on

18   the manner of service of a warrant imposed by California law.  To the extent that it was

19   plaintiff's intent to assert that the alleged nighttime search was unreasonable in violation of

20   the Fourth Amendment – as opposed to simply attempting to allege a constitutional claim

21   based on violation of Penal Code § 1533 – the SAC still fails to allege facts sufficient to

22   state a plausible claim.

23       As the court previously noted, violation of a state statute, standing alone, is not

24   sufficient to provide a basis for a constitutional claim under § 1983.  The United States

25   Supreme Court has yet to decide whether violation of a state-law restriction on nighttime

26   service of a search warrant is, like a violation of the knock-notice rules, subject to the

27   reasonableness inquiry under the Fourth Amendment – and if so, what hours reasonably

28   constitute "nighttime."  Assuming for the sake of argument, however, that service of the

United States District Court

For the Northern District of California

1   warrant at 10:30 p.m. can be analyzed under the Fourth Amendment's reasonableness

2   inquiry, the court finds that the SAC alleges no facts supporting a claim of a Fourth

3   Amendment violation, apart from the bare conclusory allegation regarding the purported

4   time of service.

5          To state a claim for an unreasonable search or for unreasonable execution of a

6   warrant under the Fourth Amendment, the plaintiff must allege facts sufficient to show that

7   the officers' actions were objectively unreasonable.  See Samson v. California, 547 U.S.

8   843, 848 (2006); Mena v. City of Simi Valley, 226 F.3d 1031, 1038-39 (9th Cir. 2000).

9   While a plaintiff is not required, at the pleading stage, to prove these claims, he cannot rely

10  on legally conclusory statements, not supported by actual factual allegations, Iqbal, 556

11  U.S. at 678, and the facts that are pled in the complaint "must be enough to raise a right to

12  relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

13  (2007).  Here, apart from the allegations regarding the time of service, the SAC pleads no

14  facts that can be construed as supporting a claim that showing that search of his residence

15  or the execution of the warrant was unreasonable under the totality of the circumstances.

16         Further, "Fourth Amendment rights are personal rights that may not be asserted

17  vicariously."  Rakas v. Illinois, 439 U.S. 128, 133 (1978).  An individual whose reasonable

18  expectation of privacy has not been infringed lacks Fourth Amendment standing.  U.S. v.

19  Taketa, 923 F.2d 665, 669-70 (9th Cir. 1991).  Here, plaintiff concedes that he was arrested

20  at 10:00 p.m., on the street outside his residence, and that he was not present in the

21  residence when the search warrant was executed.  Thus, he arguably lacks what has been

22  referred to as standing under the Fourth Amendment to challenge the nighttime service.

23  See Mena, 226 F.3d at 1035 n.2 (criminal defendant who was not present during warrant's

24  service and execution lacked standing to challenge officer's compliance with knock-and-

25  announce requirements).  Nor is plaintiff a criminal defendant who is seeking to exclude

26  evidence seized during a nighttime search pursuant to a warrant that did not authorize

27  nighttime searches.

28         Finally, plaintiff has not alleged an affirmative link between any injury and the

conduct of a specific defendant.  Indeed, the only allegation of injury in the SAC is plaintiff's

claim that his TV was "smashed," and that the officers left a mess, which required "weeks

of cleanup."  If this allegation is true, any damage to plaintiff's property was not caused by

the execution of the warrant at 10:30 p.m., as it could just as easily have occurred had the

warrant been executed before 10:00 p.m.

**IT IS SO ORDERED.**

Dated:  July 31, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California