UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PHILIP CANNON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PETALUMA, et al.,<br><br>    Defendants. | Case No. 11-cv-00651-JST<br><br>**ORDER DISMISSING ACTION FOR FAILURE TO COMPLY WITH COURT ORDERS**<br><br>Re: ECF Nos. 154, 156 |

Defendants move to dismiss this action with prejudice under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's orders and for failure to prosecute. Plaintiff Cannon opposes the motion. As the motion is suitable for determination without oral argument, the hearing scheduled for July 11, 2013, is VACATED. See Civil L.R. 7-1(b). For the reasons set forth below, the motion is GRANTED.

## I.  BACKGROUND

**A.  Factual Bases for Cannon's Claims**[1]

This action arises out of three police stops of Plaintiff Cannon and the execution of a search warrant on Cannon's home by the Petaluma Police Department and the Sonoma County Sheriff's Department.

Cannon alleges that on January 28, 2010, Officer John Silva of the Petaluma Police Department "circulated a memo" accusing Cannon of being a police impersonator and that Sorinne Ardelanu, a person who works for one of Cannon's "business competitor[s]," distributed that memo to "many of Cannon's Facebook friends despite being advised that it was untrue." SAC ¶¶ 16-24.

---
[1] The following allegations are from Cannon's second amended complaint. ECF No. 85.

1   Cannon believes that Petaluma police officers "bear a deep animosity" toward him.
2   Between 2006 and 2010, these officers allegedly issued "over two dozen parking tickets" to
3   Cannon on this basis. Id. ¶¶ 25-31.
4   On January 27, 2010, officers of the Petaluma Police Department stopped Cannon while he
5   was driving his vehicle on the ground that his windshield was cracked. During the stop, Officers
6   John Silva, Bert Walker, and Jason Jucutan searched the vehicle and discovered a firearm in the
7   trunk, a HAM radio, yellow LED strobe lights on all four corners of the vehicle, and a power
8   inverter for remote operation of laptop computers. The officers returned this equipment to Cannon
9   but arrested him on the basis of an outstanding bench warrant for failure to appear for a minor
10  traffic offense. Cannon alleges that Petaluma police officers "almost never" make arrests for
11  minor traffic violations and that this arrest was motivated by "animosity" toward him. After the
12  arrest, Officer Silva allegedly "created and published" a memo describing Cannon as a "police
13  impersonator" and describing the items he had found in Cannon's vehicle as "police equipment."
14  Id. ¶¶ 32-49.
15  A "report compiled" by Officer Haufler shows that, on February 4, 2010, Christina Burnett
16  was pulled over by what she thought was an unmarked police vehicle. That day, Cannon was in
17  "Sacramento for the entire evening thru the next morning visting a friend" and he used his cell
18  phone to make calls from Sacramento shortly before Burnett's incident occurred. Cannon alleges
19  that Defendants have not produced to Cannon any facts pertaining to the Burnett incident. Id. ¶¶
20  54-65.
21  On February 8, 2010, Officers Silva, Walker, and Jucutan again pulled Cannon over while
22  he was driving and placed him "on the side of the road shivering for 4 hours." Cannon avers that
23  the officers lacked probable cause to execute the stop and that during the stop, the officers
24  "aggressively and repeatedly grilled" him about the equipment in his vehicle before letting him go
25  with a warning. He alleges that he later "discovered thru DMV" that the officers had issued him
26  "unfounded" citations even though the officers never asked him to sign any citations or gave him
27  copies of any citations on the night they stopped him. Id. ¶¶ 50-53.
28  //

Deputy Naugle obtained a warrant to search Cannon's residence on February 11, 2010. The warrant "expressly" prohibited a night search. That night, at approximately 10:00 p.m., Deputies Sparkman and DOE of the Sonoma County's Sheriff's Department arrested Cannon as he arrived at his residence and transported him to the Sonoma County Jail. Deputies Naugle, Sparkman, Murphy, Hanshew, and "some DOES" then executed the search warrant, which continued into the early hours of February 12, 2010. Id. ¶¶ 66-82.

Cannon alleges that Deputy Chris Spallino of the Sonoma County Sheriff's Department "published a press release" on February 13, 2010, stating that Cannon had been arrested for impersonating a police officer. Cannon avers that this press release, which the Sonoma Sun later "published [] as factual," was designed to imply Cannon's guilt and improperly contained Cannon's home address. Defendants allegedly "failed to publish a retraction" after Cannon was released from jail. Cannon asserts that because of this negative publicity, he was forced to resign from his position on the board of Calguns Foundation, which is a "nonprofit corporation devoted to civil rights and education." Id. ¶¶ 110-115.

On February 18, 2010, the Sonoma County Sheriff's Department and Deputy Naugle allegedly obtained "exculpatory cellphone records" showing that Cannon had been in Sacramento on the evening of February 4, 2010, which is the night on which Burnett was pulled over by a police impersonator. Cannon avers that the Sheriff's Department obtained these records without a warrant and without probable cause and that Defendants failed to disclose the existence of the records to Cannon. Id. ¶¶ 86-95.

On March 10, 2010, Cannon's attorney attempted to obtain Cannon's cell phone records via subpoena and was told that the records had previously been delivered to the Sonoma County Sheriff's Department. Id. ¶¶ 96-97.

On March 16, 2010, Cannon brought exculpatory evidence to his preliminary hearing and the presiding judge dismissed the charges against him. Id. ¶ 100.

Cannon claims that the "delay in determining whether to file any charges" and "the delay in issuing a factual finding of innocence" caused him to lose a contract with gunbroker.com and other investors, which resulted in the near collapse of his business. Id. ¶ 117.

**B. Procedural History**[2]

Cannon brings this action against the City of Petaluma, the Petaluma Police Department, and several of their employees; the City and County of Sonoma and several of their employees; and the Sonoma Sun; for claims arising out of the incidents described above.

Cannon filed this action on February 11, 2011. ECF No. 1. Cannon filed his second amended complaint ("SAC"), which is the last operative complaint, on October 12, 2011, after the Court granted in part and denied in part Defendants' motions to dismiss. See ECF Nos. 82, 85.

Cannon asserts the following claims: (1) unreasonable search and seizure in violation of 42 U.S.C. § 1983 in connection with the January 27, 2010, traffic stop; (2) failure to train in violation of 42 U.S.C. § 1983 in connection with the January 27, 2010, traffic stop; (3) unreasonable search and seizure in violation of 42 U.S.C. § 1983 in connection with the February 8, 2010, traffic stop; (4) failure to train in violation of 42 U.S.C. § 1983 in connection with the February 8, 2010, traffic stop; (5) false arrest and unreasonable search and seizure in violation of 42 U.S.C. § 1983 in connection with the February 11, 2011, arrest and search warrant; (6) denial of equal protection in violation of 42 U.S.C. § 1983 in connection with Defendants' failure to turn over Cannon's telephone records; (7) failure to train and supervise in violation of 42 U.S.C. § 1983 in connection with Defendants' purported ignorance as to Cannon's constitutional rights; (8) defamation per se; and (9) "false light." ECF No. 85.

On April 6, 2012, the Court granted in part and denied in part Defendants' motions to dismiss the SAC. ECF No. 102. The Court dismissed several of Cannon's claims with prejudice, namely his claims against the City and County of Sonoma and the Sonoma Police Department; his § 1983 due process and equal protection claims pertaining to the February 11, 2010, arrest and search warrant; his § 1983 equal protection claims in connection with Defendants' failure to turn over Cannon's telephone records; his § 1983 claims in connection with the January 27, 2010, traffic stop; his § 1983 due process and equal protection claims in connection with the February 8, 2010, traffic stop; and all claims against Sorinne Ardeleanu. Id.; see also ECF No. 138. The

---

[2] A more detailed procedural history is contained in the Court's order of April 6, 2012. See ECF No. 102.

4

Court expressly noted that these claims "may not be re-alleged in any amended complaint." Id. at 35.

### C. Cannon's Failure to Comply with the Court's Orders

On April 6, 2012, the Court granted Cannon leave to file a proposed third amended complaint ("TAC") by May 7, 2012, to reassert his § 1983 claim for violations of his Fourth Amendment rights in connection with the February 11, 2010, arrest, as well as amended versions of the remaining claims, which the Court dismissed with leave to amend. ECF No. 102 at 35.

On May 7, 2012, Cannon filed his first motion for leave to file a third amended complaint ("TAC"). ECF No. 110. The Court denied it without prejudice because Cannon failed to attach the proposed TAC to his motion. ECF No. 111.

Cannon filed his second motion for leave to file a TAC on May 16, 2012. ECF No. 113. Before the Court ruled on the motion, Cannon filed a third motion for leave to file a TAC on June 26, 2012. ECF No. 132.

On October 4, 2012, the Court denied Cannon's third motion to file a proposed TAC, as the pleading he attached to the motion contained claims that the Court dismissed with prejudice on April 6, 2012. ECF No. 139. The Court, however, granted Cannon leave to file another proposed TAC by November 6, 2012, and it explicitly ordered that any proposed TAC "shall not include any allegations regarding (1) the January 27, 2010 traffic stop; (2) plaintiff's dispute with Sorinne Ardeleanu; (3) the alleged obtaining and/or withholding of 'exculpatory' cell phone records; (4) the fact of, and circumstances relating to, the factual finding of innocence; (5) the claim that the alleged 'night-time' execution of the search warrant and search of plaintiff's residence violated Penal Code § 1533; or any other claim (or defendant) that has been dismissed with prejudice." Id. at 6. Finally, the Court warned that it would "approve the filing of the revised proposed third amended complaint – *but only if the amended complaint complies with this order*." Id. at 7 (emphasis added).

Cannon filed a fourth motion for leave to file a proposed TAC on November 7, 2012. ECF No. 140. On January 7, 2013, the Court denied Cannon's motion, finding that the proposed TAC failed to comply with the Court's order of October 4, 2012, which specifically barred him from

1  reasserting certain claims and allegations that the Court previously dismissed with prejudice. ECF
2  No. 142. These impermissible allegations included ones pertaining to alleged "exculpatory"
3  phone records. Id. at 3. The Court granted Cannon leave to file a fifth proposed TAC by
4  February 8, 2013. Id.

5  In lieu of filing a proposed amended complaint, on February 8, 2013, Cannon filed a
6  motion for administrative clarification as to whether he could include allegations in his proposed
7  TAC pertaining to Defendants' alleged failure to disclose "exculpatory evidence" to him. ECF
8  No. 143. On February 11, 2013, the Court stated that its previous orders were clear as to the
9  allegations that Cannon could and could not assert in any proposed TAC and noted that its prior
10 rejections of Cannon's proposed TACs were based in part on his improper inclusion of allegations
11 regarding the "exculpatory" records at issue. ECF No. 145. The Court reiterated that "the
12 allegations regarding the factual finding of innocence and the purported withholding of
13 exculpatory evidence must not be asserted in any amended complaint" and granted Cannon leave
14 to file a proposed TAC by February 25, 2013. Id. at 2.

15 Cannon did not file a proposed TAC by February 25, 2013. Instead, two days after the
16 deadline for filing the TAC had passed, Cannon filed a "second motion for administrative
17 clarification" in which Cannon again sought leave to include allegations in a proposed TAC
18 pertaining to Defendants' alleged failure to produce exculpatory evidence. ECF No. 148. In
19 response, the Court noted on March 7, 2013, that it had "already clarified its prior orders" and
20 ordered Cannon "to follow the directives in the Court's prior orders." ECF No. 152.
21 Additionally, the Court advised Cannon to seek the aid of the Legal Help Center in amending his
22 complaint. Id.

23 Then, on May 30, 2013, Cannon filed third amended complaint that yet again contains
24 impermissible allegations pertaining to exculpatory evidence in violation of the Court's orders of
25 April 6, 2012; October 4, 2012; January 7, 2013; February 11, 2013; and March 7, 2013. See
26 TAC, ECF No. 161 ¶¶ 55, 65, 66, 89, 90, 93, 94, 95, 97, 98, 99, 100, 101, 164; see also Orders,
27 ECF Nos. 102, 139, 142, 145, 152.
28 //

**D.     Jurisdiction**

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343 and 1367.

## II.     LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court." Eldridge v. Block, 832 F.2d 1132, 1136 (9th Cir. 1987). "[I]n order for a court to dismiss a case as a sanction, the district court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999) (citation and internal quotation marks omitted). Dismissal is appropriate "where at least four factors support dismissal . . . or where at least three factors strongly support dismissal." Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998) (citation and internal quotation marks omitted).

## III.     DISCUSSION

The Court concludes that four of the five factors discussed above strongly support the dismissal of this action for failure to comply with the Court's orders.

**A.     Expeditious Resolution of Litigation and the Court's Need to Manage Its Docket**

The first two factors, namely the public's interest in expeditious resolution of litigation and the court's need to manage its docket, relate to "the efficient administration of judicial business for the benefit of all litigants with cases pending." Nealey v. Transportacion Maritima Mexicana, S. A., 662 F.2d 1275, 1279 (9th Cir. 1980).

Here, both of these factors weigh strongly in favor of dismissal. See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002) ("The public's interest in expeditious resolution of litigation always favors dismissal . . . [and] [i]t is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants . . ."). Though this action has been pending for more than two years, the action is not yet past the pleadings stage. Over the last fifteen months, Cannon has repeatedly failed to file a complaint that complies with the Court's orders, notwithstanding numerous opportunities to do so and extensions of the Court's deadlines. These

1  failures have brought the action to a standstill and deprived the Court of the ability to control its
2  docket.

3  **B.  Prejudice to Defendants**

4  The third factor, the risk of prejudice to the defendant, relates to "the plaintiff's reason for
5  defaulting in failing to timely amend." Yourish, 191 F.3d at 991.

6  Here, Cannon provides no excuse for his repeated failure to file an amended complaint that
7  complies with the Court's orders. Instead, in his response to Defendants' motion, Cannon
8  contends that he has not unreasonably delayed in prosecuting this action because the Court's
9  March 7, 2013, order, which responded to his second motion for clarification, did not set a
10  deadline for filing a proposed TAC. ECF No. 160 at 2. He also argues that "Sonoma Defendants
11  have been the cause of the length of this litigation" because they have "requested" a "[d]iscovery
12  stay." Id.

13  Cannon's arguments are insufficient to justify his repeated failure to comply with the
14  Court's orders. Neither the Court's failure to set a new deadline for filing a proposed TAC on
15  March 7, 2013, nor Defendants' request to stay discovery until the pleadings are resolved, have
16  any bearing on Cannon's ability to file a revised complaint that does not contain impermissible
17  allegations. The Court also finds that Cannon's unjustified and reasonable delay in filing an
18  adequate TAC over the last fifteen months "inherently increases the risk that witnesses' memories
19  will fade and evidence will become stale." Pagtalunan, 291 F.3d at 643 (citation omitted). For
20  these reasons, this factor weighs strongly in favor of dismissal.

21  **C.  Public Policy Favoring Disposition of Cases on their Merits**

22  The fourth factor concerns the public policy favoring disposition of cases on their merits,
23  which "strongly counsels against dismissal." In re Phenylpropanolamine (PPA) Prods. Liab.
24  Litig., 460 F.3d 1217, 1228 (9th Cir. 2006). Nevertheless, the Ninth Circuit has recognized that "a
25  case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and
26  discovery obligations cannot move forward toward resolution on the merits." Id. at 1228. For this
27  reason, "this factor lends little support to a party whose responsibility it is to move a case toward
28  disposition on the merits but whose conduct impedes progress in that direction." Id. (citations and

internal quotation marks omitted).

Here, Cannon has had the responsibility to move this case forward since the Court granted him leave to file a proposed TAC more than fifteen months ago on April 6, 2012. See ECF No. 102. This case is in precisely where it was on April 6, 2012, as a result of Cannon's repeated failure to comply with the Court's orders. Because Cannon's actions have impeded the progression of this action toward disposition on the merits, this factor is neutral at best.

**D.     Less Drastic Sanctions**

Finally, the fifth factor pertains to the availability of less drastic sanctions. "These less drastic alternatives include allowing further amended complaints, allowing additional time, or insisting that appellant associate experienced counsel." Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981). "Though there are a wide variety of sanctions short of dismissal available, the district court need not exhaust them all before finally dismissing a case." Id.

Here, the Court has considered and implemented several alternatives to dismissal. Indeed, over the last fifteen months, the Court has given Cannon at least five opportunities to file a TAC that does not contain claims or allegations that have been dismissed with prejudice. See ECF Nos. 102, 139, 142, 145, 152. Each time that Cannon has filed a proposed TAC that contains impermissible claims or allegations, the Court has given Cannon additional time to cure the deficiencies. The Court also has advised Cannon to seek the assistance of the Legal Help Center in amending his complaint. Yet Cannon has continued to disregard the Court's orders without justification. Cannon's most recent proposed TAC, which he filed on May 30, 2013, continues to suffer from the same defects as the proposed complaint he filed more than one year ago. See TAC, ECF No. 161 ¶¶ 55, 65, 66, 89, 90, 93, 94, 95, 97, 98, 99, 100, 101, 164. Given that the Court has explained to Cannon numerous times how to cure the defects in the TAC, and has exhausted all reasonable alternatives to dismissal, the Court concludes that dismissal at this juncture is appropriate.[3]

/ / /

---

[3] The Court finds that monetary sanctions would be ineffective given Cannon's pro se status.

## IV. CONCLUSION

Defendants' motion to dismiss this action with prejudice under Rule 41(b) for failure to comply with several court orders is GRANTED. The Clerk shall terminate this action.

**IT IS SO ORDERED**.

Dated: July 8, 2013

_____
JON S. TIGAR
United States District Judge