UNITED STATES DISTRICT COURT **ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

| | |
|---|---|
| BENJAMIN PHILIP CANNON, PLAINTIFF, | PAGES 1 - 59 |
| VS. | NO. C 11-0651 PJH |
| CITY OF PETALUMA, ET AL., DEFENDANTS. | OAKLAND, CALIFORNIA<br>WEDNESDAY, SEPTEMBER 14, 2011 |

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFF: BENJAMIN PHILIP CANNON (PRO SE)
4104 24TH STREET, SUITE 403
SAN FRANCISCO, CALIFORNIA 94114

FOR DEFENDANT CITY OF PETALUMA: MEYERS NAVE RIBACK SILBERG & WILSON
555 12TH STREET, SUITE 1500
OAKLAND, CALIFORNIA 94607
BY: KIMBERLY M. DRAKE

FOR DEFENDANT COUNTY OF SONOMA: COUNTY OF SONOMA
575 ADMINISTRATION DRIVE, ROOM 105A
SANTA ROSA, CALIFORNIA
BY: ANNE L. KECK, ATTORNEY AT LAW

REPORTED BY: RAYNEE H. MERCADO, CSR NO. 8258

PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

WEDNESDAY, SEPTEMBER 14, 2011 9:18 A.M.

P R O C E E D I N G S

**THE CLERK:** CALLING CIVIL CASE NO. 11-651, CANNON VERSUS CITY OF PETALUMA, ET AL.

APPEARANCES.

**MS. KECK:** GOOD MORNING, YOUR HONOR. ANNE KECK, DEPUTY COUNTY COUNSEL, THE COUNTY OF SONOMA I'M REPRESENTING TWO DISTINCT MUNICIPAL ENTITIES, THE COUNTY OF SONOMA AND ITS EMPLOYEES WHO HAVE BEEN NAMED INDIVIDUALLY AS WELL AS THE CITY OF SONOMA.

**THE COURT:** OKAY.

**MS. DRAKE:** GOOD MORNING, YOUR HONOR. KIMBERLY DRAKE. I'M HERE ON BEHALF OF THE CITY OF PETALUMA AND DEFENDANTS.

**THE COURT:** ALL RIGHT.

ALL RIGHT. WELL, WE'VE WAITED 20 MINUTES. MR. CANNON HAS NOT ARRIVED. WE'RE GOING TO GO FORWARD. HE HAS OPPOSED THE MOTION. BUT I'LL CERTAINLY LISTEN TO ANY ADDITIONAL PRESENTATION THAT YOU ALL WOULD LIKE TO MAKE.

**MS. KECK:** THANK YOU.

**THE COURT:** STARTING FIRST WITH YOU, MS. KECK.

**MS. KECK:** THANK YOU, YOUR HONOR.

THEN I'M PRESUMING BY YOUR STATEMENT THAT THE COURT HAS READ THE PAPERS AND I WON'T GO AND REPEAT ARGUMENTS THAT ARE IN THE PAPERS. THERE ARE TWO ADDITIONAL ISSUES, THOUGH, I DID

WANT TO DISCUSS. AND THE FIRST ONE IS THE ABSOLUTE PROSECUTORIAL IMMUNITY ISSUE UNDER 1983.

IN THE ORIGINAL MOTION, WE HAD GROUPED TOGETHER CERTAIN GROUPS OF DEFENDANTS. AND ONE OF THE GROUPS OF DEFENDANTS WE CALLED THE DISTRICT ATTORNEY DEFENDANTS, AND THAT INCLUDED NOT ONLY THE INDIVIDUALLY NAMED PROSECUTORS WHO HAVE BEEN SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES BUT ALSO THE COUNTY OF SONOMA WHO IS SUED ON THE SAME CLAIMS. AND SO WE LUMPED TOGETHER THOSE DEFENDANTS.

IN ANALYZING SUPREME COURT CASES, IT APPEARED THAT THE -- THE PROSECUTORIAL IMMUNITY WAS AVAILABLE TO BOTH THE PERSONS -- THE PROSECUTORS SUED IN THEIR INDIVIDUAL CAPACITIES AS WELL AS OFFICIAL CAPACITIES. SUBSEQUENT RESEARCH HAS MADE ME REALIZE THAT IS NOT CORRECT. AND IN THE REPLY BRIEF, I POINTED OUT THAT THE PROSECUTORIAL IMMUNITY APPLIES ONLY TO THE INDIVIDUAL PROSECUTORS SERVED IN THEIR PERSON CAPACITIES ONLY. IT DIDN'T APPLY TO THE OFFICIAL CAPACITY ALLEGATIONS, I.E., THE COUNTY.

ON THE OTHER HAND, THE NINTH CIRCUIT HAS PREVIOUSLY DETERMINED THAT WHEN THE DISTRICT ATTORNEYS ACT AS PROSECUTORS IN PROSECUTING CRIMINAL ACTIONS, THEY ARE ACTING AS ARMS OF THE STATE OF CALIFORNIA AND THEREFORE ARE IMMUNE FROM 1983 LIABILITY BASED ON THIS SOVEREIGN IMMUNITY PROVIDED BY THE ELEVENTH AMENDMENT.

SO IN THE REPLY BRIEF, I -- I PRESENTED TO THE COURT THAT

WE HAD -- WE NEED TO ACTUALLY SEPARATE OUT THE OFFICIAL CAPACITY AND PERSONAL CAPACITY CLAIMS WITH RESPECT TO THE ALLEGATIONS MADE AGAINST THE DISTRICT ATTORNEY PROSECUTORS GENERALLY. AND THAT TO THE EXTENT SUED IN THEIR INDIVIDUAL CAPACITIES, THE DISTRICT ATTORNEYS ARE ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY. OFFICIAL CAPACITY, THEY'RE ENTITLED TO SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT.

IN HIS REPLY BRIEF, MR. CANNON HAD RAISED THE CONNICK VS. THOMPSON CASE THAT IS A RECENT 2011 SUPREME COURT CASE THAT ANALYZED IN A COMPLETELY DIFFERENT STATE A FAILURE TO TRAIN ALLEGATION WITH RESPECT TO A DISTRICT ATTORNEY. AND I HAD A DIFFICULTY RECONCILING THAT CASE BECAUSE IT DIDN'T DISCUSS IMMUNITIES ON EITHER END. IT DIDN'T DISCUSS PROSECUTORIAL IMMUNITIES, AND IT DIDN'T DISCUSS THE ABSOLUTE IMMUNITY, ALTHOUGH CONNICK WAS CLEARLY MONELL ONLY. IT WAS ONLY ALLEGATIONS MADE AGAINST A MUNICIPALITY, PERIOD.

I HAVE SINCE GONE AND FOUND A CASE THAT ACTUALLY ADDRESSES CONNICK HEAD ON AND SAYS THAT THAT IS NOT A PROSECUTORIAL IMMUNITY CASE. ELEVENTH AMENDMENT ISN'T ADDRESSED. AND THAT IF YOU'RE MAKING CLAIMS AGAINST THE -- A MUNICIPALITY AND THE INDIVIDUAL PROSECUTORS THAT ARE BASED ON THE CORE FUNCTIONS OF A PROSECUTOR, THAT THE INDIVIDUALS ARE ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY IN THEIR INDIVIDUAL CAPACITY. AND THE COUNTY, I.E., OFFICIAL CAPACITY, CLAIMS ARE A ENTITLED TO SOVEREIGN IMMUNITY IN A STATE IN WHICH THE PROSECUTORS ARE

DEEMED ARMS OF THE STATE RATHER THAN ARMS OF THE COUNTY.

SO I HAD COPIES OF THE CASES -- CASE TO PROVIDE YOUR HONOR. IT PREDATES THE BRIEF THAT I FILED, BUT IT'S IN THE HOUSTON DIVISION OF TEXAS, SO IT WAS OUTSIDE OUR JURISDICTION. BUT IT SO PERFECTLY POINTED OUT --

**THE COURT:** IS IT IN THE DISTRICT -- DISTRICT COURT CASE?

**MS. KECK:** IT'S IN THE DISTRICT COURT, YES.

**THE COURT:** OKAY. ALL RIGHT. NOW THAT YOU'VE TAKEN A BREATH, IS THIS MR. CANNON?

**MR. CANNON:** YES, GOOD MORNING, YOUR HONOR. APOLOGIZE FOR MY TARDINESS.

-- TRAFFIC. VERY SORRY.

**THE COURT:** ALL RIGHT. CONTINUE, MS. KECK.

**MS. KECK:** THANK YOU, YOUR HONOR. AS I SAID, THE -- THE CASE THAT I WANTED TO PRESENT TO YOUR HONOR -- I HAVE COPIES I PROVIDED TO COUNSEL, BE HAPPY TO PROVIDE ONE TO MR. CANNON AS WELL; THEY'RE HIGHLIGHTED WITH ISSUES THAT I WANTED TO ADDRESS -- IS CHRISTOPHER RYAN GEORGE VS. HARRIS COUNTY, TEXAS. AGAIN, IT'S IN THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION. IT'S 2011 U.S. DISTRICT LEXIS 55301 FILED MAY 24TH OF 2011.

AGAIN, THIS IS THE -- THIS IS THE SUPPORT OF THE ARGUMENT THAT I PROVIDED IN THE REPLY BRIEF WITH RESPECT TO THE IMMUNITIES PROVIDED FOR ACTIONS ALLEGING THE DISTRICT

ATTORNEY'S OFFICE, SO IF I COULD PRESENT IT TO THE COURT.

MR. CANNON, HERE'S A COPY (HANDING DOCUMENT).

**MR. CANNON:** THANK YOU. GOOD MORNING.

**MS. KECK:** I ALSO HAD NOT PREVIOUSLY -- I WAS NOT ABLE TO OBTAIN A SUPREME COURT DECISION THAT SAID THAT PROSECUTORIAL IMMUNITY APPLIES ONLY TO INDIVIDUAL CAPACITY ALLEGATIONS. AND I FOUND THAT CASE IN DICTA IN A CASE THAT DISCUSSES PERSONAL CAPACITY ALLEGATIONS VERSUS OFFICIAL CAPACITY ALLEGATIONS.

I'LL JUST GIVE THAT TO THE COURT. I HAVE COPIES OF THAT AS WELL, YOUR HONOR. IT'S A CASE OF KENTUCKY VS. GRAHAM, 473 US 159, AND IT'S A JUNE 28, 1985 DECISION.

AGAIN, YOUR HONOR, I FELT THAT I CREATED THE CONFUSION BY SAYING THAT ALL THE -- ALL OF THE DISTRICT ATTORNEY DEFENDANTS WERE ENTITLED TO PROSECUTORIAL IMMUNITY.

THESE CASES, AS WELL AS THE OTHERS I CITED IN THE REPLY BRIEF, DEMONSTRATES THAT THAT'S NOT TRUE. IT'S ONLY INDIVIDUAL CAPACITY. BUT THE COUNTY AND THE -- AND THE PROSECUTORS IN THEIR OFFICIAL CAPACITIES ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY ON ALL OF THE ALLEGATIONS RELATING TO THE ACTIONS OF THE DISTRICT ATTORNEY'S OFFICE.

**THE COURT:** OKAY.

ALL RIGHT. THAT TAKES CARE OF THE PROSECUTORIAL IMMUNITY ARGUMENT. THERE ARE A LOT OF DIFFERENT ARGUMENTS THAT YOU'VE RAISED --

**MS. KECK:** THERE ARE, YOUR HONOR.

**THE COURT:** -- WITH REGARD TO THE 1983 CLAIMS. SPECIFICALLY -- I MEAN, LET'S SEPARATE THOSE FROM THE STATE CLAIMS. DID YOU WISH TO ADDRESS ANY OF THOSE OTHER ARGUMENTS?

**MS. KECK:** YES, YOUR HONOR. I DID WANT TO ADDRESS A SECOND MAIN ARGUMENT THAT WE'RE MAKING WITH ABSOLUTE SOVEREIGN IMMUNITY AND THAT'S THE CLAIMS AGAINST WHAT WE HAVE NOW CALLED THE SHERIFF DEFENDANTS WHICH RELATE TO THE ISSUES OF THE SEARCH AND ARREST ALLEGATIONS.

ONCE AGAIN, ELEVENTH AMENDMENT IMMUNITY IS ONLY PROVIDED TO THE MUNICIPALITY AND TO PUBLIC OFFICIALS SUED IN THEIR OFFICIAL CAPACITY. DOESN'T APPLY TO THE INDIVIDUALS SUED IN THEIR INDIVIDUAL CAPACITY. SO THERE IS -- AS MR. CANNON HAS POINTED OUT, AND HAS -- THERE ARE MANY CASES --

**THE COURT:** BUT IT WOULD APPLY TO THE -- I THINK YOU JUST ARGUED IT WOULD APPLY TO THE DA, THE DISTRICT ATTORNEY DEFENDANTS IN THEIR OFFICIAL CAPACITY.

**MS. KECK:** CORRECT.

NOW, IF WE TURN -- BUT THOSE ARE ONLY AS TO THE ALLEGATIONS REGARDING THE ACTIONS TAKEN BY THE DISTRICT ATTORNEY'S OFFICE. THEY'RE IN --

**THE COURT:** OF COURSE.

**MS. KECK:** SO THAT THEN WE TURN, THE NEXT ONE, IT'S TO THE SHERIFF'S DEFENDANTS, SO THEY'RE ALLEGATIONS WITH RESPECT TO THE SHERIFF'S DEPUTIES WHO BOTH CONDUCTED A SEARCH

AND ARRESTED MR. CANNON. AND THE ALLEGATIONS THAT HE MAKES AGAINST THOSE OFFICERS ALL RELATE TO THE CORE STATE LAW ENFORCEMENT FUNCTIONS THAT THE CALIFORNIA SUPREME COURT IN VENEGAS HAS DETERMINED ARE REALLY FUNCTIONS OF THE STATE OF CALIFORNIA, NOT THE COUNTY OF SONOMA.

AND SO THERE ARE -- IN VENEGAS, THE COURT SAID THAT THE SHERIFF AND HIS DEPUTIES ARE ENTITLED TO ABSOLUTE SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT FROM ALL LIABILITY FOR 1983 CLAIMS TO THE EXTENT THAT THEY ARE ACTING AS LAW ENFORCEMENT OFFICERS IN THE INVESTIGATION, ARREST, PROSECUTION, ET CETERA, OF INDIVIDUALS FOR STATE LAW CRIMINAL LAWS.

**THE COURT:** ALL RIGHT. BUT OBVIOUSLY YOU'RE AWARE THE NINTH CIRCUIT TOOK A CONTRARY POSITION PRE-VENEGAS, AND THE DISTRICT COURTS IN CALIFORNIA ARE SORT OF ALL OVER THE PLACE ON IT, AND CERTAINLY THIS IS AN ISSUE THAT'S BEEN BEFORE ME BEFORE, SO I OBVIOUSLY HAVE MY POINT VIEW ON IT.

SO WHY DON'T YOU EXPLAIN TO ME WHY IT IS THAT I SHOULD IGNORE THE PRE-VENEGAS NINTH CIRCUIT AUTHORITY IN FAVOR OF VENEGAS DECISION.

**MS. KECK:** THE -- WELL, THERE ARE SEVERAL DIFFERENT REASONS FOR THAT, YOUR HONOR. THE FIRST OF WHICH IS THAT THE U.S. SUPREME COURT HAS MADE VERY CLEAR THAT THE DETERMINATION AS TO WHETHER THE SHERIFF IS A STATE OR COUNTY ACTOR IS A MATTER OF STATE LAW. IT'S NOT A DETERMINATION OF FEDERAL LAW.

YOU HAVE TO LOOK AT THE LAWS OF THE STATE.

NOW, THE COURT HAS ALSO SAID WE DON'T HAVE TO LOOK AT JUST WHAT THE STATE LABELS THOSE OFFICERS. JUST A FORMULAIC LABELING OF A OFFICER OF STATE OFFICER IS NOT SUFFICIENT. YOU HAVE TO ACTUALLY LOOK AT THE FUNCTION OF OFFICER IN THE CONTEXT OF THE ALLEGATIONS MADE.

SO IT COULD BE THAT THE SHERIFF IS A COUNTY OFFICER WHEN HE'S ENFORCING A COUNTY ORDINANCE, BUT TO THE EXTENT THAT HE IS ENFORCING STATE LAW, THE VENEGAS COURT SAID WE'RE GOING TO LOOK AT THE CONSTRUCT OF WHAT THE OFFICER DOES AND HOW HIS CONSTITUTIONAL AND STATUTORY AUTHORITY IS SET UP.

OTHER CASES OF THE SUPREME COURT ALSO CLEARLY SAY THAT THE SUPREME COURT OF A STATE IS THE LAW OF THE -- OF THAT STATE. IT IS NOT ONLY TO BE INCLUDED -- GIVEN DEFERENCE, IT'S -- BASICALLY IS THE FINAL ARBITER OF WHAT IS THE STATE LAW.

AND SO THE -- SINCE THE CALIFORNIA SUPREME COURT HAS ADDRESSED THIS VERY ISSUE IN THE CONTEXT OF A LAW ENFORCEMENT ACTIONS OF A SHERIFF AND DID NOT JUST LABEL THE SHERIFF AS A STATE OFFICER -- IT WENT THROUGH THE U.S. SUPREME COURT'S MCMILLAN DECISION ELEMENTS AND ANALYZED WHAT HIS CONSTITUTIONAL BASES ARE, THAT HE'S OVERSEEN BY THE ATTORNEY GENERAL, THAT HIS OBLIGATIONS ARE FOR -- DESCRIBED UNDER STATE LAW, NOT COUNTY LAW, THAT HE'S ONLY OVERSEEN BY STATE OFFICERS SUCH AS THE ATTORNEY GENERAL AND THE GOVERNOR.

THERE IS NO CONTROL OF THE BOARD OF SUPERVISORS OVER HIM

EXCEPT AS TO BUDGET AUTHORITY. THOSE AND SEVERAL OTHERS THAT ARE OUTLINED IN THE BRIEF DEMONSTRATE THAT HIS AUTHORITY, THE SHERIFF'S AUTHORITY IN ENFORCING STATE CRIMINAL LAWS NOT ONLY FLOWS FROM THE STATE OF CALIFORNIA BUT THE ONLY PEOPLE WHO CAN OVERSEE HIM -- THE ONLY PERSON WHO HE'S REALLY RESPONSIBLE TO IS THE EXECUTIVE BRANCH OF THE STATE OF CALIFORNIA, THAT IS, THE ATTORNEY GENERAL AND THE GOVERNOR, IF YOU DON'T ALSO INCLUDE THE PEOPLE OF THE STATE CALIFORNIA BECAUSE HE'S AN ELECTED OFFICIAL WITH HIS OWN POWERS, BOTH CONSTITUTIONAL AND STATUTORY.

SO I URGE THE COURT TO LOOK AT -- WE'VE OUTLINED IT IN THE BRIEF, BUT I URGE TO COURT TO LOOK AT THE ANALYSIS IN VENEGAS BECAUSE WHAT THE SUPREME COURT TELLS US IS THAT EVEN IF THE FEDERAL COURTS DISAGREE WITH THE ULTIMATE CONCLUSION OF THE STATE COURT, IF THEY WENT THROUGH A REASONED ANALYSIS OF THE ISSUE, THIS COURT IS BOUND TO FOLLOW THE CALIFORNIA SUPREME COURT'S DECISION ON A MATTER OF STATE LAW.

THAT ANALYSIS WAS APPLIED BY THE NINTH CIRCUIT IN THE WEINER VS. COUNTY -- PARDON ME -- SAN DIEGO COUNTY CASE, WHICH IS THE 2000 DECISION -- I HAVE THAT CITE RIGHT HERE SOMEWHERE -- IT'S 210 F.3D 1025. IT'S A NINTH CIRCUIT 2000 DECISION IN WHICH THE NINTH CIRCUIT WENT THROUGH THE PROCESS AND ANALYZED CALIFORNIA SUPREME COURT -- PARDON ME -- CALIFORNIA LOWER COURT DECISIONS TO CONCLUDE THAT THE DISTRICT ATTORNEY IS A STATE OFFICER, NOT A COUNTY OFFICER, WHEN

INVOLVED IN PROSECUTION OF STATE CRIMES.

AND THE NINTH CIRCUIT EXPRESSLY SAID THAT WE NEED TO GIVE DUE DEFERENCE TO THESE LOWER COURT OPINIONS IF -- PARTICULARLY SINCE THEY'RE REASONED -- YOU KNOW, WELL-REASONED OPINIONS WITH LEGAL BASES BEHIND THEM. WE SHOULD BE GIVING DEFERENCE TO THEM TO CONCLUDE THAT THE DISTRICT ATTORNEYS ARE STATE OFFICERS WHO ARE IMMUNE FROM 1983 LIABILITY UNDER SOVEREIGN IMMUNITY.

SO THE NINTH CIRCUIT AFTER VENEGAS CAME OUT HAS NOT EVEN HAD THE OPPORTUNITY TO LOOK AT VENEGAS AND SAY, WE HAVE THE CALIFORNIA SUPREME COURT WHO IS THE FINAL ARBITER OF CALIFORNIA LAW, NOT JUST DOING A CURSORY ANALYSIS OF THE ISSUE BUT DOING A SUBSTANTIVE AND IN-DEPTH ANALYSIS BASED ON U.S. SUPREME COURT LAW.

SO THE -- THAT -- THAT ANALYSIS HAS CAUSED TWO OTHER COURTS OF YOUR -- I GUESS YOUR BRETHREN COURTS, YOUR HONOR, BOTH JUDGES, SEEBORG AND JUDGE BREYER, HAVE LOOKED AT VENEGAS AND SAID THAT IT WAS COMPELLED TO AGREE THAT THE -- THAT THEIR UNDERSTANDING OF THE DUTIES AND FUNCTIONS OF THE SHERIFFS IN THE STATE OF CALIFORNIA WERE CONSISTENT WITH WHAT THE CALIFORNIA SUPREME COURT DETERMINED IN VENEGAS, WHICH COMPELLED THEM TO APPLY SOVEREIGN IMMUNITY IN THE 1983 CONTEXT.

SO WE -- YOU KNOW, IT WOULD BE LOVELY IF THE NINTH CIRCUIT WERE TO SAY -- WERE TO CHANGE ITS MIND. BUT PAST U.S.

SUPREME COURT CASES HAVE SAID, THIS -- THAT FEDERAL COURTS ARE BOUND TO EVEN REVERSE THEMSELVES ON MATTERS OF STATE LAW IF THE CALIFORNIA SUPREME COURT, THE FINAL ARBITER OF STATE LAW, HAS CONCLUDED OTHERWISE. AND SO WE WOULD URGE THE COURT TO DO THAT IN THIS CASE.

**THE COURT:** ALL RIGHT. ALL RIGHT. WELL, THOSE AREN'T THE ONLY TWO JUDGES IN THIS COURT THAT HAVE COME OUT THAT WAY.

**MS. KECK:** THOSE ARE THE ONLY TWO OPINIONS THAT I KNOW OF, YOUR HONOR. ACTUALLY, JUDGE SEEBORG HAS ISSUED THE OPINION IN TWO DIFFERENT CASES, BUT I HAVEN'T BEEN ABLE TO FIND ANY OTHER OPINIONS. THERE ARE OPINIONS THAT GO EXACTLY TO THE OPPOSITE ENDS OF THE SPECTRUM.

I WILL SAY THAT EVERY ONE OF THOSE OPINIONS THAT I HAVE REVIEWED HAS BASICALLY SAID, WE'RE JUST GOING TO FOLLOW NINTH CIRCUIT LAW RATHER THAN FOLLOWING OVERARCHING LAW ISSUED BY THE U.S. SUPREME COURT, WHICH IS -- THAT MANDATES THAT WE FOLLOW THE --

**THE COURT:** ALL RIGHT.

**MS. KECK:** -- CALIFORNIA SUPREME COURT.

**THE COURT:** ALL RIGHT.

AS I INDICATED, THERE ARE OTHER JUDGES OF THIS DISTRICT THAT HAVE SIMILARLY FOLLOWED VENEGAS. AND WE DID FIND ONE UNREPORTED NINTH CIRCUIT CASE FROM 2006 IN WHICH THE COURT APPROVED THE DISMISSAL OF THE 1983 CLAIM AGAINST A DEFENDANT

WHO WAS ACTING IN HER OFFICIAL CAPACITY AS A SHERIFF. THIS WAS -- WELL, IT'S AN UNREPORTED DECISION, SO I WON'T GIVE YOU THE CITATION FOR IT. BUT THERE ISN'T -- I MEAN, THERE ISN'T A CLEAR NINTH CIRCUIT AUTHORITY ON IT. BUT THERE CERTAINLY IS A LOT OF PERSUASIVE AUTHORITY OUT THERE.

ALL RIGHT. ANYTHING ELSE WITH REGARD TO THE IMMUNITIES?

**MS. KECK:** YES, YOUR HONOR. ONE FINAL ISSUE, AND THAT IS THAT WITH RESPECT TO THE CLAIMS MADE OTHER THAN THE -- WELL, I GUESS YOU COULD SAY IT'S ALL THE INDIVIDUAL CLAIMS. WE'RE ALSO ASSERTING THE QUALIFIED IMMUNITY AS TO ALL THE INDIVIDUAL SONOMA DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITIES. AND THIS IS THE THEME OF THE MOTION TO DISMISS; ESSENTIALLY, THAT THERE SIMPLY IS NOT A CONSTITUTIONAL VIOLATION ALLEGED IN THIS COMPLAINT SUFFICIENT TO PROCEED ON A CLAIM AGAINST ANY OF THESE INDIVIDUALS.

AND UNDER THE SAUCIER AND OTHER ANALYSIS, THE FIRST THING THAT THE COURT AND THE PARTIES DO IS LOOK TO SEE IF THERE'S AN UNDERLYING CONSTITUTIONAL VIOLATION.

THAT SIMPLY DOES NOT APPEAR FROM THE FACE OF THE COMPLAINT OR THE NUMEROUS DOCUMENTS THAT ARE ATTACHED TO IT. I MEAN, THIS CASE IS A LITTLE BIT DIFFERENT IN THE MOTION TO DISMISS CONTEXT THAN WE NORMALLY HAVE BECAUSE MR. CANNON HAS ATTACHED A SUBSTANTIAL NUMBER OF DOCUMENTS AND INCORPORATED THEM INTO HIS COMPLAINT, SO WE HAVE MORE -- MORE FODDER, IF YOU WILL, TO LOOK AT THE MOTION TO DISMISS ISSUES THAN A COURT NORMALLY

DOES IN THIS CONTEXT. AND EVEN WITH THAT ADDITIONAL INFORMATION, IT DOESN'T APPEAR THAT THERE'S BEEN ANY CONSTITUTIONAL VIOLATION HERE.

AND, AGAIN, THE SECOND STAGE OF THE PROCESS IS EVEN IF THERE WAS, THERE CERTAINLY WAS NO CLEARLY ESTABLISHED LAW ON THIS ISSUE THAT WOULD IMMUNE ALL OF THE INDIVIDUAL DEFENDANTS FROM LIABILITY UNDER QUALIFIED IMMUNITY.

**THE COURT:** ALL RIGHT.

**MS. KECK:** THOSE ARE THE IMMUNITY ISSUES.

WE DO GO OFF ON THE OTHER -- EACH OF THE ALLEGATIONS AND MAKE -- THE DIRECT DISCUSSIONS AS TO WHY EACH OF THE CLAIMS ARE SUFFICIENT ON EACH OF THE FOUR ALLEGATIONS. AND AS YOUR HONOR KNOWS, WE'RE ALSO MOVING TO DISMISS ALL OF THE STATE LAW CLAIMS BASED ON STATUTE OF LIMITATIONS, AND -- AND BASED ON STATE LAW IMMUNITIES AS WELL. SO I DON'T KNOW IF THE COURT -- THE COURT WANTED ME TO GO INTO THAT OR HAVE MR. CANNON MAYBE RESPOND TO THE IMMUNITY ISSUES.

**THE COURT:** I'D LIKE YOU TO MAKE YOUR ARGUMENT IN ITS ENTIRETY, AND THEN I'LL ASK MR. CANNON TO MAKE HIS.

**MS. KECK:** ALL RIGHT. YES, YOUR HONOR.

I THINK THAT -- LET ME GO THROUGH BRIEFLY THE -- THE FOUR ALLEGATIONS THAT ARE MADE. THE -- AND HE CALLS THEM COUNTS, THE CLAIMS FOR RELIEF. AND COUNT ONE IS BASICALLY AN UNREASONABLE SEARCH AND SEIZURE ALLEGATION. THE ONLY THING THAT I CAN DETERMINE THAT IS THE FACTUAL BASIS FOR THE CLAIM

IS THAT HE ALLEGES THAT THE -- THAT THE SEARCH WAS DONE AT 11:00 O'CLOCK AT NIGHT, WHICH HE ALLEGES WAS TOO LATE, WHICH I DON'T THINK AS A MATTER OF LAW IN AND OF ITSELF IS SUFFICIENT FOR A FOURTH AMENDMENT VIOLATION ALLEGATION AND SO THAT'S WHY I DO NOT BELIEVE THERE ARE SUFFICIENT FACTS IN SUPPORT OF THAT CLAIM.

THE SECOND ONE IS THE UNREASONABLE SEARCH AND SEIZURE WITH RESPECT TO HIS ARREST. IT APPEARS THAT MR. CANNON ARGUES THAT HE WAS UNLAWFULLY ARRESTED, NOT ONLY BECAUSE HE WAS INNOCENT, WHICH, OF COURSE, IS NOT SUFFICIENT, BUT BECAUSE THE SHERIFF'S OFFICE COULD NOT HAVE RELIED ON THE VICTIM'S IDENTIFICATION DONE PURSUANT TO A PHOTO LINE-UP BECAUSE VICTIMS ARE IN -- WITNESSES ARE INHERENTLY UNRELIABLE.

THERE IS SUBSTANTIAL AUTHORITY THAT DEMONSTRATES THAT, OF COURSE, PROBABLE CAUSE CAN BE BASED ON A STATEMENT, AN IDENTIFICATION OF A WITNESS OR A VICTIM, SO I DON'T BELIEVE HIS FACTUAL ALLEGATIONS ARE SUFFICIENT TO SUPPORT A CLAIM ON THE ARREST.

THE THIRD CLAIM IS THE FAILURE TO PROPERLY TRAIN. AND, AGAIN, THAT ISSUE IS ADDRESSED IN THE CONTEXT OF THE CONNICK DECISION, AND YOU HAVE TO ALLEGE AN UNDERLYING VIOLATION TO ALLEGE A FAILURE TO TRAIN. THERE'S NOT ONLY AN UNDERLYING VIOLATION HERE BUT THERE'S NO ALLEGATION THAT A FAILURE TO TRAIN ACTUALLY CAUSED ANY DAMAGES OR PREJUDICE IN THIS CASE.

AND THE FOURTH ISSUE IS THAT WITHHOLDING EVIDENCE, WHICH

MR. CANNON CLAIMS THAT HE NEEDED CELL PHONE RECORDS RELEASED TO HIM IMMEDIATELY UPON THE RECEIPT OF THE SHERIFF'S OFFICE, THOUGH HIS CASE WAS DISMISSED BEFORE PRELIMINARY HEARING, SO THERE'S NO VIOLATION OR EVEN CONSIDERATION OF ANY KIND OF A -- OF A FAILURE OF DUE PROCESS OR OTHER CLAIM IN THAT REGARD, SO IT'S SIMPLY INSUFFICIENT AS A MATTER OF LAW.

LET ME MOVE ON TO THE STATE LAW CLAIMS. I DON'T THINK WE EVEN HAVE TO DISCUSS THE STATE LAW IMMUNITIES, YOUR HONOR. THERE'S NOTHING THAT MR. CANNON HAS PRESENTED THAT SHOWS THAT THESE CLAIMS SHOULD SURVIVE THE STATUTE OF LIMITATIONS AS MR. CANNON'S ONLY RESPONSE WAS THAT HE DIDN'T RECEIVE THE COUNTY'S REJECTION OF NOTICE, ALTHOUGH HIS CLAIM WAS SUBMITTED BY HIS ATTORNEY AND THE REJECTION WAS SUBMITTED BY HIS ATTORNEY.

AND THE STATE LAW EXPRESSLY SAYS THAT THE DATE OF STATUTE OF LIMITATIONS RUNS FROM THE DATE OF MAILING, AND THE ACTUAL RECEIPT OF THE REJECTION NOTICE IS IRRELEVANT. SO THE -- THERE'S SOLID AND REALLY UNWAVERING STATE LAW AUTHORITY THAT DETERMINES THAT MR. CANNON'S CLAIMS -- STATE LAW CLAIMS AGAINST BOTH THE COUNTY THE CITY EXPIRED APPROXIMATELY A MONTH OR MORE BEFORE HE FILED HIS COMPLAINT.

AND BECAUSE THE STATUTE OF LIMITATIONS UNDER THE GOVERNMENT TORT CLAIMS ACT IS TO BE STRICTLY CONSTRUED, WE DON'T BELIEVE THE COURT SHOULD EVEN CONSIDER THE SUBSTANTIVE ALLEGATIONS OF THE CLAIMS. THEY'RE BARRED BY THE STATUTE OF

LIMITATIONS OF -- IT'S A GOVERNMENT CODE SECTION 9.546.

SO THOSE ARE THE -- I DON'T -- WE DID ARGUE IMMUNITIES UNDER STATE LAW, YOUR HONOR, WHICH ARE PRETTY SOLID. ACTUALLY, THE CITY OF PETALUMA ARGUED THEM AT MORE LENGTH. THEY APPLY TO BOTH PARTIES IN THIS CONTEXT, BUT I DON'T THINK TAKING THE COURT'S TIME WITH THOSE ISSUES IS EVEN WARRANTED BECAUSE OF THE STATUTE OF LIMITATIONS, THAT IT CATEGORICALLY BARS THE STATE LAW CLAIMS AGAINST BOTH THE CITY OF SONOMA AND THE COUNTY OF SONOMA.

**THE COURT:** ALL RIGHT.

**MS. KECK:** THANK YOU.

**THE COURT:** MR. CANNON?

**MR. CANNON:** YES. GOOD MORNING, YOUR HONOR.

**THE COURT:** GOOD MORNING. DID YOU WISH TO RESPOND?

**MR. CANNON:** YES, I DO.

GOING BACK TO THE IMMUNITIES, YOUR HONOR, I'M A PRO SE, AND I'VE DONE THE BEST LEGAL ANALYSIS ON THIS I COULD. IF THE CITY AND SONOMA DEFENDANTS' MOTION IS TO BE TAKEN ON ITS FACE, THEY'RE SAYING THAT POLICE OFFICERS CAN ARREST AT WILL WITHOUT PROBABLE CAUSE WITHOUT ANY RECOURSE IN THE COURTS.

WE KNOW THAT TO BE FALSE. THERE'S AMPLE WELL-SETTLED LAW THAT BRIGHT-LINE CONSTITUTIONAL VIOLATIONS THAT ARE REASONABLY KNOWN THAT DID OCCUR HAVE REDRESS IN FEDERAL COURT.

QUITE SIMPLY -- I MEAN, THE --

**THE COURT:** WELL, WHY DON'T YOU APPROACH IT AS

MS. KECK DID. SHE DIVIDED THE DISTRICT ATTORNEY DEFENDANTS FROM THE SHERIFF'S DEFENDANTS.

**MR. CANNON:** OKAY. VERY WELL. I'LL START WITH THE DISTRICT ATTORNEY DEFENDANTS.

THE DISTRICT ATTORNEY DEFENDANTS, THIS IS THE MOST INTERESTING AREA OF THIS CASE, AND -- AS IT COMES TO A MATTER OF LAW BECAUSE, LIKE YOU SAID, THE LAW IS IN FLUX. HOWEVER, THE SUPREME COURT IN CONRICK (PHONETIC) FOUND A MECHANISM BY WHICH LIABILITY COULD BE ATTACHED. THE FACT THAT IT WAS IN A DIFFERENT STATE DOESN'T CHANGE THINGS MATERIALLY.

WHETHER THE DISTRICT ATTORNEY'S ARE STATE ACTORS OR NOT WHETHER THEY HAVE ELEVENTH (SIC) IMMUNITY OR NOT, THOSE ISSUES, ALTHOUGH NOT SPECIFICALLY ADDRESSED IN THE CONNICK DECISION, WERE CERTAINLY WAIVED BY THE COURT. AND THE COURT NARROWLY CONFINED ITS RULING TO WHETHER OR NOT THE DISTRICT ATTORNEYS COULD BE HELD LIABLE IN THEIR OFFICIAL CAPACITY, AND THEY DETERMINED A SET OF CIRCUMSTANCES UNDER WHICH THEY COULD.

AND, YOUR HONOR, I'M NOT AWARE IF THEY BROUGHT UP IN ORAL ARGUMENT THE OPPOSITION BASED ON FAILURE TO ALLEGE FACTS THAT A PATTERN OF EVENTS HAD OCCURRED --

(PAUSE IN THE PROCEEDINGS.)

(OFF-THE-RECORD DISCUSSION.)

**THE COURT:** START FROM THERE.

**MR. CANNON:** THANK YOU, YOUR HONOR.

I'M NOT AWARE THEY BROUGHT UP IN ORAL ARGUMENT AN

OPPOSITION BASED ON THE FACTS ALLEGED IN THE COMPLAINT BEING OF SUFFICIENTLY SIMILAR NATURE OF THE BRADY VIOLATIONS.

IN CONRICK, THE COURT SAID THAT A PLAINTIFF MUST ASSERT THAT PROSECUTORS WERE NOT TRAINED ABOUT PARTICULAR BRADY EVIDENCE OR THE SPECIFIC SCENARIO RELATED TO THE VIOLATION IN THIS CASE.

THE COUNTY OF SONOMA IS UNDER A PRACTICE AND RULE OF SECRETLY OBTAINING CELLULAR LOCATION DATA AND THEN NOT DISCLOSING IT TO DEFENSE ATTORNEYS. THIS IS A MATTER OF COURSE. THIS IS WHAT AMOUNTS TO A POLICY AND ESSENTIALLY A RULE OF LAW. THEY DON'T BELIEVE THEY HAVE TO DO IT, EVEN WHEN THAT EVIDENCE IS EXCULPATORY AND CLEARLY PROVES THAT A DEFENDANT WAS HUNDREDS, MAYBE THOUSANDS, OF MILES AWAY FROM THE SCENE OF A CRIME.

THEY OBTAINED IT UNDER CONFIDENTIAL COURT ORDER. MOST DEFENSE ATTORNEYS DON'T KNOW IT HAPPENED TO BEGIN WITH. WE ONLY DISCOVERED IT BECAUSE I ATTEMPTED TO OBTAIN THE SAME EVIDENCE IN AN AFFIRMATIVE DEFENSE. WE DISCOVERED IT QUITE BY ACCIDENT. AT&T REVEALED THE EXISTENCE OF THAT COURT ORDER TO US.

YOUR HONOR, THIS -- THIS SHOULD NOT STAND. PROSECUTORS HAVE A DUTY TO -- AS MUCH AS THEY HAVE A DUTY TO PROSECUTE ACTUAL CRIMES, THEY HAVE A DUTY TO SEEK JUSTICE ABOVE ALL ELSE. HIDING EXCULPATORY EVIDENCE IS NOT SEEKING JUSTICE.

WE CAN GO TO DELIBERATE INDIFFERENCE. THE -- THE -- THE

ACTS SPEAK VOLUMES.

AS TO WHETHER OR NOT WHETHER THE IMMUNITIES APPLY, THEY DON'T APPLY. THE SUPREME COURT HAS ADDRESSED THE IMMUNITIES ISSUE IN CONRICK AND LAID OUT A FOUNDATION BY WHICH ABSOLUTE IMMUNITY EVEN -- ORDINARILY AFFORDED TO PROSECUTORS CAN BE PIERCED. BASICALLY, THEY CAN GET AWAY WITH IT ONCE BUT NOT TWICE. THE COMPLAINT ALLEGES THAT THEY TRIED TO GET AWAY WITH IT TWICE, SO --

MOVING ON TO THE DISTRICT ATTORNEY DEFENDANTS AND THE SHERIFF'S DEFENDANTS UNDER 1983, AS STATED IN MY OPPOSITION, THE NINTH CIRCUIT PRECEDENT UNDER BREWSTER VS. SHASTA COUNTY SAYS THAT IN FEDERAL COURT, THE SHERIFF IS A COUNTY ACTOR.

THEY REVIEWED VENEGAS. THE SMITH COURT IN SMITH VS. COUNTY OF LOS ANGELES REVIEWED VENEGAS AND HELD THAT THE SHERIFF ACTS FOR THE COUNTY WHILE PERFORMING HIS FUNCTIONS AND PROMULGATING AND APPLYING POLICIES. SO WHEN HE'S ENFORCING CRIMES AND PROMOTING AND PROMULGATING POLICIES, HE'S A COUNTY ACTOR AND THUS SUEABLE UNDER 1983 AND A FEW OTHER MEANS.

AGAIN, IF WE'RE TO BELIEVE THE DEFENDANTS, THEN THERE IS NO LIABILITY FOR SHERIFFS OR PROSECUTORS NO MATTER HOW BAD THEIR ACTS. AND THERE'S AMPLE CASE LAW ON POINT THAT AT SOME POINT, THERE IS LIABILITY. AT SOME POINT, EVERYONE MUST BE CALLED TO ANSWER. SO THE QUESTION WE MUST ANSWER, THEN, YOUR HONOR, IS DO THE FACTS I ALLEGE CONSTITUTE SUFFICIENT CAUSE TO BRING THEM TO ANSWER. AND OBVIOUSLY, I BELIEVE THEY DO, AND I

BELIEVE I'VE ADDRESSED THAT.

LET'S SEE. THERE'S ANOTHER CASE, PRUITT VS. COUNTY OF SACRAMENTO. IT'S A DISTRICT COURT CASE ON QUESTIONS OF FEDERAL LAW. THIS COURT IS BOUND BY THE DECISIONS OF THE NINTH CIRCUIT.

(OFF-THE-RECORD DISCUSSION.)

**MR. CANNON:** THE NINTH CIRCUIT HAS NOT DEPARTED FROM ITS ANALYSIS IN BREWSTER SINCE VENEGAS WAS DECIDED. DISTRICT COURTS IN THIS CIRCUIT HAVE UNIFORMLY SINCE VENEGAS CONTINUED TO FOLLOW BREWSTER. GARCIA VS. MERCED, BROCKMEIER VS. SOLANO COUNTY SHERIFF'S DEPARTMENT -- THIS IS ALL IN MY OPPOSITION. THERE'S HALF A PAGE OF CITES ON POINT WITH THIS. AND THE DEFENDANTS COULD ONLY FIND TWO CASES THAT WENT IN A CONTRAVENING DIRECTION.

AND AT THAT POINT, THE WEINER VS. SAN DIEGO COUNTY, THE 2000 CITE THAT YOU GUYS JUST PROPOSED, IS ON POINT TO DISTRICT ATTORNEYS ONLY. IT'S NOT ON POINT TO SHERIFFS. SO FOR THE PURPOSES OF DISTRICT ATTORNEYS, THEN, PERHAPS, WE COULD CONCLUDE THAT THEY ARE STATE ACTORS, EVEN IN TERMS OF A FALSE ARREST CLAIMS, FOR INSTANCE, YOUR HONOR.

BUT THE SHERIFFS OFFICERS ARE NOT. THE FACTS OF WEINER VS. SAN DIEGO COUNTY ARE JUST COMPLETELY NOT ON POINT AS TO SHERIFFS, PERIOD. AND THERE'S AMPLE CASE LAW ON POINT THAT HOLDS SHERIFFS LIABLE.

APOLOGIZE IF I'M BORING YOU. I'M PROBABLY GOING OVER

TERRITORY YOU'VE BEEN OVER MANY TIMES.

TO THAT END -- TO THAT END, WE'LL TURN TO QUALIFIED IMMUNITY AND WAS THERE A VIOLATION ALLEGED. WELL, AN ARREST MADE WITHOUT PROBABLE CAUSE IS A VIOLATION. IT'S A FOURTH AMENDMENT VIOLATION. AGAIN, THERE -- THERE'S AMPLE CASE LAW, MOUNTAINS OF IT, FOR FOURTH AMENDMENT FALSE ARREST 1983 VIOLATIONS. I DON'T FEEL THE NEED TO DRAG THE COURT THROUGH THAT.

AS TO THE COMPLAINT IN MY CASE, DO THE FACTS I ALLEGE CONSTITUTE A VIOLATION? WELL, THEY DO. THE DEFENDANTS, BOTH CITY AND COUNTY DEFENDANTS, LOOK AT MY COMPLAINT AND THEY LOOK AT DOCUMENTS I SUBMITTED IN THE COMPLAINT AS THOUGH I'M ALLEGING FACTS. NO FACTS HAVE BEEN ALLEGED BY THOSE DOCUMENTS OTHER THAN THAT THOSE DOCUMENTS WERE PROMULGATED BY THE DEFENDANTS.

FOR INSTANCE, YOUR HONOR, I'M NOT SUBMITTING THE ACCOUNT OF THE POLICE REPORT AS WRITTEN IN AN OPPOSITION SIGNED BY A DISTRICT ATTORNEY. NO FACTS HAD EVER BEEN ENTERED INTO EVIDENCE ON THIS. I'VE NEVER SEEN THE POLICE REPORT TO THIS DAY. YOUR HONOR, WE DON'T KNOW IF A POLICE REPORT EXISTS AT THIS POINT. THERE ARE NO FACTS.

I WOULD LIKE A DECLARATION UNDER PENALTY OF PERJURY. I'D LIKE TO SEE THE POLICE REPORT. I'D LIKE TO BE ENTITLED TO DISCOVERY. I THINK THE COURT SHOULD EXAMINE THIS AND DETERMINE EXACTLY WHAT HAPPENED. WE DON'T KNOW WHAT HAPPENED.

NOT YET.

DISCOVERY HASN'T HAPPENED, AND THE DISTRICT ATTORNEY'S OFFICE AND THE SHERIFF'S OFFICE AND THE PETALUMA POLICE DEPARTMENT HAVE DONE NOTHING BUT WITHHOLD INFORMATION ON THIS CASE. THERE ARE NO POLICE REPORTS.

ALL WE HAVE, YOUR HONOR, IS A RECORD OF PETALUMA POLICE DEPARTMENT HABITUALLY STOPPING ME FOR ALLEGED TRAFFIC VIOLATIONS. AND THEY'RE DOING THAT, YOUR HONOR, BECAUSE I CONTESTED A NUMBER OF PARKING TICKETS IN THE PAST AND WROTE LETTERS TO THE CHIEF OF POLICE.

SO THAT'S THE ESSENCE OF THE EQUAL PROTECTION CLAIM UNDER THE FOURTEENTH AMENDMENT, WHICH IS BROUGHT UNDER VILLAGE OF WILLOWBROOK VS. OLECH. THAT'S THE SUPREME COURT CASE WHERE AN EQUAL PROTECTION CLASS OF ONE WAS GRANTED FOR VIOLATIONS THAT BASICALLY AMOUNT TO TREATING ANOTHER PERSON DIFFERENTLY, NOT FOR ANY OTHER REASON THAN JUST TO GET HIM, OUT OF PURE SPITE AND ANIMOSITY.

AND IT CAME TO THE POINT WHERE PETALUMA POLICE DEPARTMENT PULLED ME OVER AND ACTUALLY ARRESTED ME, TRANSPORTED ME TO JAIL AND BOOKED ME FOR A SPEEDING TICKET FTA, A COURT DATE THAT I HAD MISSED FOR A SPEEDING TICKET. PETALUMA POLICE DEPARTMENT HAS POLICY TO CITE OUT AND RELEASE THOSE. THEY TREATED ME DIFFERENTLY BECAUSE THEY DIDN'T LIKE ME.

**THE COURT:** I'M SORRY. ARE YOU TALKING ABOUT THE PETALUMA -- WE'RE ON THE --

**MR. CANNON:** YES, I'M TALKING ABOUT CITY OF PETALUMA.

**THE COURT:** WE'RE ON THE SONOMA COUNTY DEFENDANTS.

**MR. CANNON:** OH, OKAY.

**THE COURT:** WE HAVEN'T GOTTEN --

(SIMULTANEOUS COLLOQUY.)

**MR. CANNON:** I'LL CONSTRUE THIS TO SONOMA COUNTY, THEN.

**THE COURT:** ARE YOU SAYING THAT YOU HAVE AN EQUAL PROTECTION CLAIM AS TO SONOMA COUNTY?

**MR. CANNON:** I'M SAYING I BELIEVE THE TWO DEPARTMENTS ACTED TOGETHER.

**THE COURT:** ARE YOU SAYING --

(SIMULTANEOUS COLLOQUY.)

**THE COURT:** -- BRINGING AN EQUAL PROTECTION CLAIM AGAINST SONOMA COUNTY? I DON'T SEE IT IN YOUR COMPLAINT. BUT I WANTED TO KNOW IF THAT'S WHAT YOU'RE ARGUING THAT YOUR COMPLAINT SAYS.

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** AGAINST SONOMA.

**MR. CANNON:** AGAINST SONOMA.

**THE COURT:** ON WHAT BASIS AND AGAINST WHAT DEFENDANTS?

**MR. CANNON:** AGAINST ALL OF THE SONOMA DEFENDANTS BASED ON THEIR COOPERATION WITH PETALUMA POLICE DEPARTMENT.

**THE COURT:** WHERE IN YOUR COMPLAINT WOULD I FIND THAT

ALLEGATION?

(PAUSE IN THE PROCEEDINGS.)

**MR. CANNON:** IN COUNT ONE, YOUR HONOR, UNREASONABLE SEARCH AND SEIZURE UNDER 42 USC --

**THE COURT:** WHAT PAGE NUMBER?

**MR. CANNON:** PAGE NO. 11 OF 17 IN THE FIRST AMENDED COMPLAINT, PARAGRAPH 70.

**THE COURT:** WELL, I SEE THAT YOU'VE GOT THE FOURTEENTH AMENDMENT.

**MR. CANNON:** YES.

**THE COURT:** BUT THERE ARE A NUMBER OF THINGS IN THE FOURTEENTH AMENDMENT. THERE'S A DUE PROCESS CLAUSE, AS WELL AS AN EQUAL PROTECTION CLAUSE.

**MR. CANNON:** THAT'S RIGHT, YOUR HONOR.

**THE COURT:** WHERE DO YOU STATE THAT YOU ARE MAKING AN EQUAL PROTECTION CLAIM AND AGAINST WHICH PARTICULAR DEFENDANTS?

**MR. CANNON:** (REVIEWING DOCUMENTS.)

YOUR HONOR, I DON'T PROPERLY STATE THE PARTICULARITY OF ALL DEFENDANTS IN MY OPINION. I'D ACTUALLY LIKE TO CORRECT THAT OVERSIGHT BY FILING A SECOND AMENDED COMPLAINT.

THE COMPLAINT IS GENERALLY PLED AGAINST ALL DEFENDANTS.

**THE COURT:** AND MAKES IT --

(SIMULTANEOUS COLLOQUY.)

**MR. CANNON:** -- PLEADING ALL COUNTS --

(SIMULTANEOUS COLLOQUY.)

**THE COURT:** EXCUSE ME. WE CAN'T BOTH TALK AT THE SAME TIME, AND I GET PRECEDENCE.

**MR. CANNON:** YES, YOU DO.

**THE COURT:** OKAY.

YOU CAN'T VERY WELL DETERMINE -- THE COURT CAN'T VERY WELL DETERMINE WHETHER OR NOT YOU'VE ALLEGED A CONSTITUTIONAL VIOLATION AS TO ANY PARTICULAR DEFENDANT WHEN YOU HAVEN'T SPELLED OUT WHAT DEFENDANT IS LIABLE FOR WHICH PARTICULAR ACT WHICH GIVES RISE TO A CONSTITUTIONAL VIOLATION.

**MR. CANNON:** THAT'S RIGHT, YOUR HONOR. AND WITH PERMISSION --

**THE COURT:** YEAH.

**MR. CANNON:** -- I WOULD LIKE TO CORRECT THAT OVERSIGHT.

**THE COURT:** ALL RIGHT. ANYTHING ELSE?

**MR. CANNON:** YES, YOUR HONOR.

AS TO THE STATE LAW CLAIMS, AS FOR A STATUTE OF LIMITATIONS, WE FILED A GOVERNMENT CLAIM. WE NEVER RECEIVED A RESPONSE. THE DEFENDANTS HAVE NOT PROVED MAILING; THEREFORE, THE GOVERNMENT CODE APPLIES. AND I BELIEVE THAT SECTION IS 945.6(A)(2), AND THE STATUTE OF LIMITATIONS, THEN, IS TWO YEARS AFTER THE ACCRUAL OF THE CAUSE OF ACTION IF WRITTEN NOTICE IS NOT GIVEN. WRITTEN NOTICE WAS NOT GIVEN.

**THE COURT:** ALL RIGHT. THANK YOU.

YOU GET A BRIEF REBUTTAL.

ARE YOU FINISHED?

**MR. CANNON:** OH, NO, I'M SORRY, YOUR HONOR. AS TO THE REST OF THE STATE LAW CLAIMS AND THE COUNTS, I WISH TO ADDRESS THEM AS WELL.

AS TO THE WITHHOLDING OF THE BRADY EVIDENCE, THAT WAS DONE AT AN EVIDENCE VIEWING, THERE IS AN OBLIGATION TO TURN OVER EXCULPATORY EVIDENCE, AND THAT --

**THE COURT:** AND WHEN DOES THAT OBLIGATION ARISE?

**MR. CANNON:** BELIEVE THAT OBLIGATION ARISES --

**THE COURT:** DURING THE COURSE OF A PROSECUTION?

**MR. CANNON:** YES, DURING THE COURSE OF A PROSECUTION. AND IN SOME CASES, WITHIN 30 DAYS.

**THE COURT:** IN YOUR CASE, WHEN DOES IT ARISE?

**MR. CANNON:** IN MY CASE, I BELIEVE IT AROSE WHEN THE MATTER WAS SET FOR PRELIMINARY HEARING. AND THEN IT WOULD HAVE ARISEN WITHIN 30 DAYS OF THAT.

**THE COURT:** WASN'T YOUR CASE DISMISSED BEFORE PRELIMINARY HEARING?

**MR. CANNON:** IT WAS, YOUR HONOR.

**THE COURT:** SO WHERE --

**MR. CANNON:** BUT THE OBLIGATION --

**THE COURT:** WHERE IS THE BRADY VIOLATION IN YOUR CASE?

**MR. CANNON:** THE BRADY VIOLATION WAS IN THE 30-DAY

PERIOD PRIOR TO WHEN IT WAS SET FOR PRELIMINARY HEARING. AND IT WAS -- THE CASE WAS ESSENTIALLY DISMISSED THE MORNING OF PRELIMINARY HEARING.

**THE COURT:** SO --

**MR. CANNON:** SO IN THE 30 DAYS PRIOR TO THAT.

**THE COURT:** THERE WAS NO HEARING, YOU WEREN'T TRIED, YOU WEREN'T CONVICTED. WHERE'S THE CONSTITUTIONAL -- WHERE'S THE PREJUDICE IN YOUR CASE?

**MR. CANNON:** OH, THE PREJUDICE IS IN THE -- THE FILING OF THE CHARGES AND THE OFFERING OF A PLEA BARGAIN THAT I WOULD SERVE, I BELIEVE, 90 DAYS IN JAIL.

**THE COURT:** DID YOU TAKE THE PLEA BARGAIN.

**MR. CANNON:** NO, YOUR HONOR, I DID NOT.

**THE COURT:** SO WHERE'S THE INJURY?

**MR. CANNON:** THE INJURY IS IN THE COURSE OF THE DISTRESS AND DAMAGE TO ME AS BEING HAULED INTO COURT --

**THE COURT:** OKAY.

**MR. CANNON:** -- AND MADE -- AND MADE TO ANSWER TO A CRIME AND FILING A COMPLAINT AGAINST ME AND SETTING THE MATTER FOR A PRELIMINARY HEARING.

**THE COURT:** OKAY.

**MR. CANNON:** AND PRIOR TO -- WITHIN 30 DAYS -- I'M ARGUING THAT WITHIN 30 DAYS OF THAT DATE, ALL EXCULPATORY EVIDENCE HAD TO BE TURNED OVER, AND IT WASN'T. AND WE REPEATEDLY ASKED FOR IT.

**THE COURT:** OKAY.

**MR. CANNON:** AND THE -- YOU KNOW, THE SHERIFF'S OFFICERS LIED ABOUT IT. THEY WERE ASKED ON POINT DIRECTLY BY MY ATTORNEY, IS THIS EVERYTHING YOU HAVE?

**THE COURT:** FINISH UP, PLEASE.

**MR. CANNON:** VERY WELL, YOUR HONOR.

IN TERMS OF PROBABLE CAUSE, THERE IS NO PROBABLE CAUSE IN THIS CASE, YOUR HONOR. A -- YOU CAN'T SIMPLY SAY, OKAY, STUFF IN SOMEONE'S VEHICLE LOOKS LIKE SOMETHING ELSE THAT RESEMBLES SOMETHING AT A STOP.

THERE WAS NOTHING FOUND AT THE SCENE -- NOTHING ALLEGED AT THE SCENE OF THIS ALLEGED CRIME THAT MATCHED ANYTHING IN MY POSSESSION AT ANY TIME. THERE WAS A SINGLE OLD FADED RED LIGHT AT THE STOP. I HAVE $4,000 WORTH OF LED PERIMETER STROBES FOR FAA. COMPLETELY DIFFERENT THINGS.

AND, YOU KNOW, HOOD -- A CAR WITH A DARK COLOR -- DARKER COLORED HOOD, MAYBE A PRIMER-COLORED HOOD, DOESN'T MATCH A SILVER BMW SEDAN. NOTHING MATCHES, ABSOLUTELY NOTHING.

THE ONLY SHRED OF ANYTHING THAT COULD REMOTELY TIE ME TO THIS WAS AN ALLEGED VIDEO LINEUP THAT HAS NOT BEEN SUBMITTED TO FACTS, THAT WE HAVEN'T SEEN, NO COURT HAS SEEN, AND THERE'S AN ALLEGATION OF AN 80 PERCENT MATCH. YOUR HONOR, 80 PERCENT ISN'T SUFFICIENT FOR PROBABLE CAUSE.

**THE COURT:** IT'S NOT?

**MR. CANNON:** THAT'S MY UNDERSTANDING, IT'S NOT.

**THE COURT:** YOUR UNDERSTANDING FROM WHAT?

**MR. CANNON:** JUST AS A MATTER OF LAW.

**THE COURT:** AS MATTER OF WHAT LAW? WHOSE LAW? COURT-MADE LAW? STATUTORY LAW?

CAN YOU CITE THE LAW THAT SAYS AN 80 -- AN IDENTIFICATION MADE BY A VICTIM IN WHICH THE VICTIM SAYS THAT SHE'S 80 PERCENT SURE OF IDENTIFICATION ISN'T SUFFICIENT FOR -- TO ESTABLISH PROBABLE CAUSE.

IS THERE SOME LAW THAT SAYS THAT? I'D REALLY --

**MR. CANNON:** YOU KNOW, I DON'T KNOW -- I DON'T KNOW THE CITE. I JUST GENERALLY UNDERSTAND IT.

**THE COURT:** WHAT KIND OF LAW? WHAT KIND OF LAW ESTABLISHES THAT?

**MR. CANNON:** I BELIEVE IT WOULD BE CASE LAW. I BELIEVE IT'S BEEN DECIDED UNDER CASE LAW.

**THE COURT:** AND DO YOU -- CAN YOU CITE SUCH A CASE?

**MR. CANNON:** I CANNOT, YOUR HONOR. I DON'T RECALL THE CITE.

**THE COURT:** A FEDERAL CASE? A STATE CASE?

**MR. CANNON:** I DON'T RECALL. IT MIGHT DATE BACK TO COMMON LAW, FOR ALL I KNOW.

AND ANY CASE, YOUR HONOR, THOSE FACTS HAVEN'T BEEN ALLEGED. THEY HAVEN'T BEEN ALLEGED BY THE DEFENSE. THEY HAVEN'T BEEN ALLEGED BY ME. IN THE -- FILING THE OPPOSITION TO MY FINDING OF FACTUAL INNOCENCE, WE HAVE THE ONLY MENTION

OF ANY CIRCUMSTANCES, BUT WE HAVE NO DECLARATIONS UNDER PENALTY OF PERJURY THAT ANY OF THIS ACTUALLY OCCURRED. NOTHING.

SO THERE ARE NO FACTS. THE DEFENDANTS ARE BASING THEIR --

**THE COURT:** NO DECLARATIONS UNDER PENALTY OF PERJURY --

**MR. CANNON:** NO DECLARATIONS --

**THE COURT:** EXCUSE ME. LET ME FINISH MY QUESTION.

NO DECLARATIONS UNDER PENALTY OF PERJURY THAT WHAT ACTUALLY OCCURRED?

**MR. CANNON:** YOUR HONOR, THAT ANYTHING ACTUALLY OCCURRED.

**THE COURT:** I'M HAVING A DIFFICULT TIME FOLLOWING YOU, MR. CANNON. ARE YOU SUGGESTING THAT IN THIS MOTION THE DEFENDANT IS REQUIRED TO SUBMIT DECLARATIONS?

**MR. CANNON:** I'M SUGGESTING THAT THE DEFENDANTS MAY HAVE LIED ABOUT THE EXISTENCE OF THIS VIDEO LINEUP. I'M SUGGESTING THAT THE DEFENDANTS MAY HAVE FABRICATED THE INCIDENT TO BEGIN WITH. I HAVEN'T SEEN A POLICE REPORT.

**THE COURT:** MAY HAVE FABRICATED THE BASIS FOR YOUR ARREST?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT.

**MR. CANNON:** AND I BELIEVE I'M ENTITLED TO DISCOVERY.

**THE COURT:** I CAN GIVE YOU ABOUT FIVE MINUTES MORE --

(SIMULTANEOUS COLLOQUY.)

**MR. CANNON:** OH, NO. I'M SORRY, YOUR HONOR. I'M FINISHED.

**THE COURT:** YOU'RE FINISHED? FINE.

**MR. CANNON:** YES.

**THE COURT:** MS. KECK, YOU GET A FEW MINUTES FOR REBUTTAL. THEN I NEED TO HEAR THE PETALUMA CASE, AND THEN I NEED TO ADJOURN.

**MS. KECK:** YES, YOUR HONOR.

ONLY TWO ISSUES, THE FIRST, I WAS VERY SURPRISED WHEN YOUR HONOR WAS QUESTIONING MR. CANNON TO LEARN THAT HE HAS INTENDED TO FILE AN EQUAL PROTECTION CLAIM AGAINST THE SONOMA DEFENDANTS. I DID NOT READ THAT IN THIS COMPLAINT, NOR WERE THERE ANY PLAUSIBLE ALLEGATIONS MADE THAT COULD SUPPORT SUCH A CLAIM.

AND I THINK IT GOES STRAIGHT TO THE HEART OF THE MOTION FOR MORE DEFINITE STATEMENT THAT WE ALSO MADE IN CONNECTION WITH THE MOTION TO DISMISS BECAUSE IT'S -- WE'VE DONE OUR BEST TO DETERMINE WHAT CLAIMS HE'S MAKING AGAINST WHICH DEFENDANTS, BUT IT'S REALLY A MYSTERY BECAUSE HE HASN'T BEEN SPECIFIC ENOUGH. SO IT -- IF NOTHING ELSE, I DO NOT BELIEVE THAT HE SHOULD BE PERMITTED TO ALLEGE OR TO -- LEAVE TO AMEND ALL OF HIS CLAIMS BECAUSE I BELIEVE MOST OF THEM ARE DISMISSIBLE WITHOUT LEAVE TO AMEND. BUT CERTAINLY TO THE EXTENT THEY ARE, HE MUST AMEND TO PROVIDE MORE SPECIFIC ALLEGATIONS AGAINST

WHICH DEFENDANTS AND WHICH CLAIMS HE'S MAKING.

THE SECOND ISSUE I WANTED TO ADDRESS IS ON THE STATUTE OF LIMITATIONS. WE DID PROVIDE IN OUR REQUEST FOR JUDICIAL NOTICE THE CLAIMS HE MADE AGAINST BOTH THE COUNTY AND CITY AND THE NOTICE OF CLAIM REJECTIONS THAT WERE SENT.

IN HIS OPPOSITION, HE CLAIMED ONLY THAT HE DIDN'T GET THE NOTICE OF CLAIM REJECTION FROM THE COUNTY. BUT IN THE REQUEST FOR JUDICIAL NOTICE, THERE WAS AN AFFIDAVIT MADE UNDER PENALTY OF PERJURY BY THE PERSON WHO MAILED THE NOTICE OF CLAIM REJECTION. AND UNDER THE HIM VS. CITY AND COUNTY OF SAN FRANCISCO CASE THAT WE CITED IN THE REPLY, THE COURT HAS DEEMED THAT THAT IS SUFFICIENT. JUDICIAL NOTICE CAN BE TAKEN OF IT BECAUSE IT IS A PUBLIC RECORD MAINTAINED IN THE ORDINARY COURSE OF BUSINESS AND THAT NO ADDITIONAL DECLARATION OF THAT PERSON IS EVEN NECESSARY.

THE AFFIDAVIT THAT'S ATTACHED TO THE NOTICE IS SUFFICIENT PROOF TO DEMONSTRATE THAT IT WAS MAILED ON THAT DATE. AND IT IS THE MAILING THAT TRIGGERS THE STATUTE OF LIMITATION. RECEIPT IS ACTUALLY NOT AN ISSUE. IT IS ONLY WHETHER AND WHEN THE COUNTY REJECTED IT. AND WE REJECTED THAT FAR PAST THE SIX-MONTH STATUTE OF LIMITATIONS THAT MR. CANNON HAD TO FILE THE CLAIMS.

**THE COURT:** ALL RIGHT. PETALUMA.

**MS. DRAKE:** THANK YOU, YOUR HONOR.

THINK THE ISSUES FOR MY CLIENTS HAVE BEEN PRETTY

ADEQUATELY BRIEFED. THERE WAS AN OPPORTUNITY FOR MR. CANNON TO ACTUALLY SUBMIT A SURREPLY AS WELL, AND -- AND SO I HAVE A FEW POINTS. I'M HAPPY TO ASK (SIC) ANY BURNING QUESTIONS YOUR HONOR MAY HAVE ABOUT THE BRIEFS AND THE BRIEFING THAT'S BEEN SUBMITTED.

I WILL SUBMIT THAT IT'S NECESSARY TO SEPARATE US IN SOME RESPECTS FROM THE OTHER DEFENDANTS BECAUSE I THINK ONE OF THE BIGGEST PROBLEMS HERE WITH THIS COMPLAINT IS THE LUMPING TOGETHER OF VERY DIFFERENT DEFENDANTS BUT ALSO JUST SORT OF COLLECTIVELY SAYING X, Y, Z AGAINST THE DEFENDANTS WITHOUT SEPARATING OUT THE ACTUAL CLAIMS AGAINST THEM.

WITH RESPECT TO MY CLIENTS, THE ONLY HINT OF -- OF FACTUAL ALLEGATIONS WITH RESPECT TO MY CLIENTS REALLY IS CENTERED ON THE JANUARY -- WELL, THE -- THE NOTION THAT THERE WAS AN ARREST ON JANUARY 27TH, 2010, A TRAFFIC STOP, AND -- AND -- AND THEN IN THE COURSE OF AN INVESTIGATION IN PROTECTING THE PUBLIC SAFETY AND NOTIFYING OTHER ENFORCEMENT AGENCY -- SURROUNDING ENFORCEMENT AGENCIES, THE PREPARATION OF A CRIME ALERT IN -- IN THE COURSE OF THE INVESTIGATION. THAT'S REALLY, IF I'M GOING TO READ THE FACE OF THE PLEADINGS, THE GRAVAMEN OF THE -- OF THE ALLEGATIONS AGAINST MY CLIENT.

BUT AFTER ALL OF THIS BRIEFING, I THINK IT'S BEEN CONCEDED BY THE PLAINTIFF THAT THERE ISN'T -- THAT THERE AREN'T ANY CLAIMS AGAINST MY CLIENT EXCEPT -- AND THIS IS WHAT I WANTED TO ADDRESS -- ON SEPTEMBER 9TH, I RECEIVED A -- I DON'T

THINK -- I'VE RECEIVED BY MAIL A MOTION FOR LEAVE TO AMEND THE COMPLAINT, AND IT'S IMPROPER AND I WOULD SUBMIT THAT IT'S -- I MEAN, IT'S IMPROPER FOR PURPOSES OF TODAY, AND I WOULD SUBMIT THAT IT'S NOT AT ISSUE EXCEPT FOR THE FACT THAT I WOULD LIKE TO IN ADVANCE, SO WE'RE NOT WASTING ANY FURTHER TIME AND -- ADDRESS THIS ISSUE ON THE HEAD.

WHAT HE IS ASKING IS SOLELY TO ALLEGE WITH RESPECT TO MY CLIENTS THAT THIS JANUARY 27TH TRAFFIC STOP WAS CONDUCTED WITHOUT PROBABLE CAUSE. AND I WANT TO ADDRESS THAT BECAUSE -- FOR A COUPLE OF REASONS. NUMBER ONE, HE ADMITS THAT THERE WAS PROBABLE CAUSE OR HE AT LEAST ACKNOWLEDGES THAT THERE WAS. AND HE DOES SO IN HIS COMPLAINT AT PARAGRAPH 26 AND 28, WHEN HE MENTIONS ONLY THAT HE WAS STOPPED FOR AN ALLEGED EQUIPMENT VIOLATION, THAT HIS VEHICLE WAS SEARCHED AND THAT HIS EQUIPMENT WAS RETURNED TO HIM DURING THE STOP.

I SUBMIT THAT HE CANNOT CHANGE HIS PLEADING TO CONTRADICT WHAT IS IN THE ORIGINAL COMPLAINT, WHICH IS THAT, YES, THIS TRAFFIC STOP HAPPENED BUT THAT'S NOT THE ISSUE. MY REAL ISSUE IS THAT I WAS ARRESTED ON FEBRUARY 11TH. I WOULD SUBMIT HE CAN'T CHANGE HIS PLEADINGS TO CONTRADICT THOSE ALLEGATIONS.

THE OTHER THING IS IT'S NOT A PLAUSIBLE CLAIM THAT THERE WASN'T PROBABLE CAUSE. THE COURT CAN DECIDE QUALIFIED IMMUNITY AT THE EARLIEST POSSIBLE MOMENT, EVEN ON A MOTION TO DISMISS, BECAUSE EVEN IF WE ALL AGREE THAT THE FACTS ARE UNDISPUTED, ASSUMING THE TRUTH OF THE MATTERS ASSERTED BY THE

PLAINTIFF, EVEN IF HE WERE TO SAY THERE WAS NO PROBABLE CAUSE, THE -- THERE'S -- THE CONDUCT WAS -- WAS OBJECTIVELY REASONABLE AND LAWFUL UNDER EXISTING LAW FOR THE REASONS I CITED IN MY -- IN MY REPLY, WHICH IS THAT THE LAW AUTHORIZES -- THE PENAL CODE THAT I CITED AUTHORIZES THE OFFICERS -- ANY OFFICER, ANY REASONABLE OFFICER, WHO'S LOOKING AT THE OBJECTIVE CIRCUMSTANCES OF THE FAILURE TO APPEAR WARRANT, AN OUTSTANDING WARRANT, HAS -- IS AUTHORIZED TO EXECUTE A BENCH WARRANT THEN AND THERE. AND THAT IS ALL THAT HE'S ALLEGED THAT THEY DID OR HAS ARGUED THAT THEY DID IN THE PAPERS, IN THE BRIEFING THAT'S BEEN SUBMITTED.

SO EVEN IF WE ASSUME THAT THEY HAULED HIM IN BASED ON A FAILURE TO APPEAR BENCH WARRANT, THAT CONDUCT IS OBJECTIVELY REASONABLE UNDER CLEARLY ESTABLISHED LAW. IT WAS OBJECTIVELY REASONABLE AND LAWFUL CONDUCT FOR THEM TO DO SO. HE CANNOT NOW CLAIM THAT THEY SOMEHOW LACKED PROBABLE CAUSE.

AND AS -- I THINK THAT I WANTED TO ADDRESS THAT JUST BECAUSE THERE IS THIS PROSPECT OF THAT'S ALL HE WANTS TO DO WITH RESPECT TO AN AMENDMENT, IS -- IS ALLEGE THAT THE STOP, THE TRAFFIC STOP ON JANUARY 27TH, THAT THERE'S SOME -- THEY LACKED PROBABLE CAUSE.

AND -- AND OF COURSE, I MAY BE MISTAKEN, BUT BASED ON EVERYTHING THAT WE'VE BRIEFED AND THEN THIS BELATED OR -- THIS RECENTLY RECEIVED, YOU KNOW, MOTION FOR LEAVE TO AMEND, THAT'S THE ONLY THING, AFTER ALL OF THIS IS SORT OF EXHAUSTED AND

LOOKED AT, THAT I THINK HE WANTS TO PIN ON OR, YOU KNOW, IMPUTE LIABILITY TO THE CITY DEFENDANTS FOR.

WITH RESPECT TO THE STATE LAW CLAIMS, I THINK THAT THAT'S BEEN ADEQUATELY BRIEFED. I MEAN, THERE'S THE EQUIVALENT OF NO CLAIM TO MY CLIENTS APPRISING THEM OF THE NATURE OF THE CLAIM AGAINST THEM. AND YOU'RE REQUIRED TO DO THAT. AND ACTUALLY COMPLAINTS CAN BE DISMISSED IF THE -- THEY EXCEED THE SCOPE OF THE -- IN THEORIES AND IN DAMAGES SOUGHT, IF IT EXCEEDS THE SCOPE OF THE CLAIM THAT WAS PRESENTED TO THE PUBLIC ENTITY UNDER THE GOVERNMENT CLAIMS ACT. AND THAT'S EXACTLY WHAT HAPPENED HERE.

THEY'VE NEVER BEEN APPRISED ON A TIMELY BASIS OF WHAT HIS CLAIMS WERE. HE NEEDED TO DO IT WITHIN SIX MONTHS OF ACCRUAL OF THE CAUSE OF ACTION. AND THAT DIDN'T HAPPEN HERE.

AND THEN THERE'S THE OTHER ISSUES THAT I RAISED IN THE BRIEFING. IN -- IN ADDITION TO GOVERNMENT CODE 945.4, THERE'S THE IMMUNITIES THAT APPLY TO EACH OF THE -- THE ALLEGED -- THE CAUSES OF ACTION THAT HE'S ALLEGED AGAINST THE CITY DEFENDANTS.

WITH RESPECT TO THE EQUAL PROTECTION CLAIM, I THINK AGAIN, THIS HAS BEEN ADDRESSED, BUT EVEN ASSUMING THE FACTS THAT HE HAS STATED TO THE COURT TODAY BUT ALSO IN HIS BRIEF, EVEN IF WE ASSUME THAT, HE HASN'T ALLEGED A CLAIM AGAINST MY CLIENTS THAT HE WAS IN A PROTECTED CLASS OR THAT HE WAS ENGAGED IN A PROTECTED ACTIVITY, AND THAT -- AND THE REQUISITE

DISCRIMINATORY INTENT AND -- AT THE PLEADING STAGE, YOU KNOW, IT'S NOT ENOUGH TO JUST SORT OF SPECULATE THAT EVERY -- THAT ALL THE DEFENDANTS ARE WORKING TOGETHER AND THERE'S SOME CONSPIRACY AGAINST HIM.

THAT'S BEEN REJECTED TIME AND TIME AGAIN, EVEN ON A MOTION TO DISMISS. AND THE TWOMBLY AND IQBAL CASES ARE -- ARE -- STAND FOR THAT PROPOSITION, THAT DESPITE LIBERAL PLEADING STANDARDS, YOU STILL HAVE TO -- THERE'S A PLAUSIBILITY STANDARD, AND IT ASKED FOR MORE THAN A SHEER POSSIBILITY THAT A DEFENDANT HAS ACTED UNLAWFULLY. AND I'VE SUBMITTED -- SUBMIT THAT THE PLAINTIFF HASN'T DONE THAT AGAINST MY CLIENTS IN THIS CASE.

UNLESS YOUR HONOR HAS ANY OTHER SPECIFIC QUESTIONS, I THINK I WILL SUBMIT.

**THE COURT:** RESPONSE?

**MS. DRAKE:** WITH PERMISSION TO PERHAPS REBUT ANYTHING THAT --

**THE COURT:** SURE.

RESPONSE?

**MR. CANNON:** YES, YOUR HONOR.

AS TO THE JANUARY 27TH TRAFFIC STOP, IT IS ALLEGED IN MY COMPLAINT THAT I WAS STOPPED FOR AN ALLEGED EQUIPMENT VIOLATION. THERE'S ALSO A FALSE ARREST CLAIM PLED. I MAY NOT HAVE PROPERLY SET FORTH THE FACTS TO SAY THAT THAT PARTICULAR STOP WAS DONE WITHOUT PROBABLE CAUSE, BUT I SAID THAT THE

FALSE ARREST WAS BROUGHT ABOUT WITHOUT PROBABLE CAUSE.

THERE ARE TWO FALSE ARRESTS HERE, YOUR HONOR. THE FIRST ONE FOR THE FAILURE TO APPEAR TRAFFIC STOP MADE WITHOUT PROBABLE CAUSE. AND THEN THE SUBSEQUENT --

**THE COURT:** I THOUGHT THE --

**MR. CANNON:** -- ARREST WITHOUT A WARRANT.

**THE COURT:** I THOUGHT THE TRAFFIC STOP WAS MADE PURSUANT TO AN EQUIPMENT VIOLATION --

**MR. CANNON:** NO, YOUR HONOR.

**THE COURT:** -- NOT --

**MR. CANNON:** ALLEGED EQUIPMENT VIOLATION.

**THE COURT:** ALL RIGHT.

**MR. CANNON:** THAT'S WHAT --

**THE COURT:** ALL RIGHT. THE ALLEGED EQUIPMENT -- LET ME FINISH MY QUESTIONS.

WITH REGARD TO THE TRAFFIC STOP, THE COMPLAINT SUGGESTS THAT THE TRAFFIC STOP -- YOUR -- YOUR WORDS -- WAS BASED UPON AN ALLEGED EQUIPMENT VIOLATION. AND THAT IT WAS AFTER THE TRAFFIC STOP THAT THEY DISCOVERED THAT YOU HAD AN OUTSTANDING WARRANT.

ARE YOU SAYING THAT THEY STOPPED YOU KNOWING THAT YOU -- THAT YOU HAD AN -- WHO YOU WERE IN ADVANCE AND THAT YOU HAD AN OUTSTANDING WARRANT?

**MR. CANNON:** I DON'T -- I'M NOT SURE THAT I COULD PROVE EITHER WAY THAT THAT OCCURRED.

**THE COURT:** OKAY.

**MR. CANNON:** I AM --

**THE COURT:** SO -- SO THEN I'M JUST TRYING TO UNDERSTAND -- MAKE SENSE -- YOUR COMPLAINT IS FAIRLY INCOMPREHENSIBLE, AND I'M TRYING TO MAKE SENSE OF IT.

SO THERE ARE TWO SEPARATE VIOLATIONS THAT YOU ARE CLAIMING WITH RESPECT TO THE CITY AND THE JANUARY 27TH INCIDENT. ONE IS THAT YOU WERE STOPPED FOR A TRAFFIC -- OR AN EQUIPMENT VIOLATION, WHICH WAS FALSE?

**MR. CANNON:** YES.

**THE COURT:** OKAY. THERE WAS NO EQUIPMENT VIOLATION.

**MR. CANNON:** CORRECT.

**THE COURT:** WERE YOU ISSUED A CITATION FOR THE EQUIPMENT VIOLATION, OR WERE YOU VERBALLY WARNED ABOUT IT?

**MR. CANNON:** I BELIEVE I WAS VERBALLY WARNED ABOUT IT.

**THE COURT:** AND WHAT WAS THE ALLEGED VIOLATION?

**MR. CANNON:** HE SAID SOMETHING ABOUT A WINDSHIELD.

**THE COURT:** WHAT ABOUT A WINDSHIELD?

**MR. CANNON:** HE SAID YOU HAVE A OBSTRUCTION IN YOUR WINDSHIELD.

**THE COURT:** OKAY. BUT YOU WERE NOT GIVEN A TICKET.

**MR. CANNON:** NO.

**THE COURT:** OKAY.

AND THEN WHAT IS YOUR CLAIM WITH REGARD TO THAT ASPECT OF

THE STOP?

**MR. CANNON:** MY CLAIM WITH REGARD TO THAT ASPECT OF THE STOP IS THAT EVEN IF THERE WAS AN OBSTRUCTION TO THE WINDSHIELD, WHICH THERE WASN'T, THEN THE POLICE OFFICER COULDN'T POSSIBLY HAVE SEEN IT FROM THE DISTANCE HE WAS AWAY. HE WAS OVER A HUNDRED FEET AWAY.

**THE COURT:** OKAY. DID YOU AT ALL --

**MR. CANNON:** I WAS FACING THE --

**THE COURT:** EXCUSE ME.

**MR. CANNON:** I'M SORRY.

**THE COURT:** ALL RIGHT. SO YOUR CLAIM, THEN, IS THAT THAT THE TRAFFIC STOP WAS MADE WITHOUT REASONABLE SUSPICION THAT A TRAFFIC VIOLATION HAD ACTUALLY OCCURRED.

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** OKAY.

THEN SUBSEQUENT TO THAT, THERE WAS SOME INQUIRY AS TO YOUR IDENTITY?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** YOU PRODUCED A DRIVER'S LICENSE.

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** THEY DID A RECORDS CHECK AND DISCOVERED AN OUTSTANDING FAILURE TO APPEAR WARRANT; IS THAT CORRECT?

**MR. CANNON:** THAT'S MY UNDERSTANDING.

**THE COURT:** ALL RIGHT. AND THEN YOU WERE ARRESTED.

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** OKAY. WHAT IS YOUR ALLEGATION ABOUT THAT?

**MR. CANNON:** THAT THE ARREST WAS A VIOLATION OF MY RIGHTS UNDER EQUAL PROTECTION IN THAT I WAS SINGLED OUT ONCE THEY DETERMINED WHO I WAS BECAUSE OF MY OPPOSITION TO PARKING TICKETS AND THE LETTERS TO THE CHIEF IN THE PAST.

**THE COURT:** ALL RIGHT.

**MR. CANNON:** AND THAT IT WAS MADE --

**THE COURT:** AND YOUR VIEW IS THAT YOU WERE ARRESTED ON A FAILURE TO APPEAR WARRANT. ARE YOU CHALLENGING THE VALIDITY OF THE WARRANT ISSUED BY --

**MR. CANNON:** NO, YOUR HONOR.

**THE COURT:** NO.

ALL RIGHT. BUT YOU'RE CHALLENGING THE ABILITY OF THE POLICE DEPARTMENT TO ARREST YOU ON A VALID WARRANT?

**MR. CANNON:** NOT THE ABILITY BUT, RATHER, THEIR DISCRETION IN A MATTER IN WHICH THEY DID NOT EXERCISE DISCRETION BUT DID SO OUT OF MALICE. THE CASE OF WILLOWBROOK VS. OLECH WAS --

**THE COURT:** ALL RIGHT. AND ARE YOU ALLEGING, THEN, THAT THE POLICE HAD A VALID WARRANT, WHICH WOULD JUSTIFY ARRESTING YOU?

**MR. CANNON:** YES.

**THE COURT:** BUT THAT THEY -- BUT YOUR ALLEGATION IS THAT FOR OTHER PEOPLE, THEY WOULD LET THEM GO. THEY WOULDN'T

ARREST THEM ON A WARRANT, BUT FOR YOU, THEY DECIDED TO ARREST YOU.

**MR. CANNON:** FOR A $1500 TRAFFIC FTA WARRANT, YOUR HONOR, YES, THAT IS A POLICY OF PETALUMA POLICE DEPARTMENT, TO CITE AND RELEASE.

**THE COURT:** I'M JUST TRYING TO UNDERSTAND WHAT YOUR ALLEGATION IS.

**MR. CANNON:** OF COURSE.

**THE COURT:** THERE'S A VALID WARRANT FOR ARREST AND THE POLICE CAN ARREST YOU.

**MR. CANNON:** YES.

**THE COURT:** AND THERE'S NO QUESTION. YOU DON'T DISPUTE THAT IN ANY WAY.

**MR. CANNON:** NO.

**THE COURT:** THE POLICE HAVE THE RIGHT TO ARREST YOU.

**MR. CANNON:** CORRECT.

**THE COURT:** YOUR CLAIM IS THAT THEY VIOLATED YOUR EQUAL PROTECTION RIGHTS BY ARRESTING YOU PURSUANT TO A VALID WARRANT WHEN THEY COULD HAVE EXERCISED THEIR DISCRETION NOT TO ARREST YOU?

**MR. CANNON:** AND MORE TO THE POINT, WHEN THEY ORDINARILY DO FOR PERSONS SIMILARLY SITUATED --

**THE COURT:** OKAY.

**MR. CANNON:** -- EXERCISE THAT DISCRETION.

**THE COURT:** HAVE YOU MADE ANY ALLEGATIONS OF WHO THE

SIMILARLY SITUATED PEOPLE ARE THAT HAVE NOT BEEN ARRESTED PURSUANT TO VALID WARRANTS?

**MR. CANNON:** I COULD MORE ACCURATELY SET THAT FORTH.

**THE COURT:** ALL RIGHT. AND --

**MR. CANNON:** I WOULD NEED -- I WOULD NEED SOME DISCOVERY.

**THE COURT:** WELL, YOU CAN'T HAVE DISCOVERY BEFORE YOU SETTLE YOUR PLEADINGS. YOU HAVE TO -- YOU'RE THE ONE THAT HAS MADE A ALLEGATION THAT THEY HAVE VIOLATED THE FOURTEENTH AMENDMENT AS TO YOU. I'M SIMPLY TRYING TO UNDERSTAND WHAT CLAIM YOU'RE MAKING.

IF YOUR CLAIM IS EQUAL PROTECTION, THE HALLMARK OF EQUAL PROTECTION IS AN INTENT TO DISCRIMINATE AGAINST YOU BECAUSE OF SOME IMMUTABLE CHARACTERISTICS.

**MR. CANNON:** YES.

**THE COURT:** AND WHAT WOULD THAT BE? WHAT WOULD THAT IMMUTABLE CHARACTERISTIC BE FOR YOU? I DON'T KNOW ANYTHING ABOUT YOU.

**MR. CANNON:** WELL, UNDER -- UNDER CLASS OF ONE DOCTRINE, THE IMMUTABLE CHARACTERISTIC COULD SIMPLY BE THAT THE POLICE DEPARTMENT DOESN'T LIKE ME, THAT THEY WERE LITERALLY OUT TO GET ME.

**THE COURT:** THE POLICE DEPARTMENT DOESN'T LIKE YOU.

**MR. CANNON:** AND YOU SET FORTH FACTS --

**THE COURT:** WHY WOULDN'T THE POLICE DEPARTMENT LIKE

YOU?

**MR. CANNON:** BECAUSE I'VE WRITTEN NASTY LETTERS TO THE CHIEF OF POLICE ABOUT UNLAWFULLY WRITTEN PARKING TICKETS.

**THE COURT:** OKAY. ALL RIGHT.

AND IS THAT WHAT YOUR FIRST AMENDMENT VIOLATION IS BASED ON? YOU'VE ALLEGED THE FIRST AMENDMENT, AND I DON'T SEE ANYTHING IN YOUR COMPLAINT THAT EVEN --

**MR. CANNON:** THE FIRST AMENDMENT --

**THE COURT:** WOULD YOU LET ME FINISH MY QUESTIONS.

**MR. CANNON:** I THOUGHT YOU WERE FINISHED. I'M SORRY, YOUR HONOR.

**THE COURT:** THERE'S NOTHING IN THE COMPLAINT THAT EVEN REFERS TO ANYTHING RELATED TO -- TO SPEECH. WHAT IS -- WHAT IS YOUR FIRST AMENDMENT CLAIM AS TO ALL OF THESE DEFENDANTS IN YOUR FOUR 1983 CLAIMS?

**MR. CANNON:** YOUR HONOR, THE FIRST AMENDMENT CLAIM IS IN THE REGARDS TO THE EQUIPMENT ON MY VEHICLE, WHICH WAS LAWFUL AND SIMPLY AN EXPRESSION OF SPEECH.

**THE COURT:** OKAY. ALL RIGHT. YOU KNOW, I DON'T REALLY WANT TO HEAR ANY MORE. I'M PREPARED TO RULE.

**MR. CANNON:** VERY WELL, YOUR HONOR.

**THE COURT:** IT'S BEEN MORE THAN AN HOUR. I'VE HEARD ENOUGH. I'M GOING TO RULE ON THIS.

YOUR COMPLAINT IS SO INCOMPREHENSIBLE, IT SURPRISES ME THAT THE DEFENSE WAS EVEN ABLE TO WRITE ANY MOTIONS TO

DISMISS. I'M NOT EVEN SURE IF I UNDERSTAND HOW THEY WERE ABLE TO GLEAN THE PARTICULAR CAUSES OF ACTION FROM THIS POORLY DRAFTED COMPLAINT.

I UNDERSTAND YOU'RE PRO SE. YOU'LL BE GIVEN ANOTHER OPPORTUNITY, BUT I'M GOING TO RULE ON THOSE THINGS WHICH YOU MAY NOT INCLUDE IN ANY AMENDED COMPLAINT, SO LET'S START AT THE TOP.

LET'S START -- ACTUALLY, IT'S EASIER TO START WITH THE SONOMA COUNTY DEFENDANTS THAN IT IS WITH THE PETALUMA DEFENDANTS BECAUSE THERE'S SOME SPILLOVER.

ALL RIGHT. LET'S START AT THE TOP. WITH REGARD TO THE PROSECUTORIAL IMMUNITY, YES, THERE IS ABSOLUTE IMMUNITY FOR ACTS ASSOCIATED WITH THE JUDICIAL PHASE OF CRIMINAL PROCEEDINGS. PROSECUTORS ENJOY THAT IMMUNITY. BUT, YES, YOU ARE CORRECT, THERE ARE SOME EXCEPTIONS TO ABSOLUTE IMMUNITY. AND OBVIOUSLY COMMISSION OF -- COMMISSION OF BRADY VIOLATIONS WOULD BE ONE OF THEM.

IN THIS CASE, BASED UPON YOUR ALLEGATIONS, THERE IS NO BRADY VIOLATION. THE CHARGES AGAINST YOU WERE DISMISSED BEFORE PRELIMINARY HEARING. THEY WERE DISMISSED BEFORE THE CALIFORNIA PENAL CODE REQUIRES THAT EVIDENCE BE TURNED OVER TO YOU. AND WITHOUT AN INJURY, THAT IS, GOING TO TRIAL AND BEING SUBJECTED TO THE UNLAWFUL -- UNLAWFULLY WITHHELD INFORMATION, THERE'S NO BRADY VIOLATION.

IN TERMS OF THE SUPREME COURT'S DECISION ON THE FAILURE

TO -- OF A SUPERVISORY DISTRICT ATTORNEY TO TRAIN ITS -- HIS OR HER DEPUTIES AS TO HOW TO AVOID BRADY VIOLATIONS, THAT REQUIRES, ONE, A BRADY VIOLATION, AN ACTUAL VIOLATION; AND, TWO, A PATTERN OF -- OF SUCH. YOU HAVEN'T ALLEGED ANYTHING ABOUT A PATTERN. YOU HAVEN'T ALLEGED A VALID BRADY VIOLATION. AND UNDER THE FACTS OF YOUR CASE, GIVEN THE DISMISSAL, YOU CANNOT MAKE A VALID BRADY CLAIM OR A CLAIM FOR THE UNLAWFUL WITHHOLDING OF EVIDENCE.

THEREFORE, I AM GRANTING THE MOTION TO DISMISS ON THE BASIS OF PROSECUTORIAL IMMUNITY OF THE DISTRICT ATTORNEY'S FOR WHATEVER IT IS YOU'RE ALLEGING THEIR ROLE WAS IN YOUR PROSECUTION, NOTWITHSTANDING THE FACT THAT YOU ULTIMATELY WEREN'T PROSECUTED. YOU WERE CHARGED, BUT YOU WERE NEVER PROSECUTED. THERE WAS NO PRELIMINARY HEARING OR TRIAL, SO THAT'S OUT OF THE CASE, AND IT MAY NOT APPEAR IN ANY SUBSEQUENT COMPLAINT.

WITH REGARD TO THE ELEVENTH AMENDMENT IMMUNITY OF THE SHERIFFS, I'VE REVIEWED THE CASES. YES, INDEED, THERE IS NO REAL CLEAR DEFINITIVE LAW, BUT I AM PERSUADED BY THE ANALYSIS OF RICHARD SEEBORG, CHARLES BREYER, AND RON WHYTE, THREE JUDGES OF THIS COURT, WHO'VE FOUND IN FAVOR OF THE VENEGAS INTERPRETATION AS IT APPLIES IN FEDERAL COURT. AND I ADOPT THEIR ANALYSIS AND FIND THAT THE SHERIFF DEFENDANTS -- THE SHERIFF IS A STATE ACTOR AND IS ENTITLED TO QUALIFIED IMMUNITY. I'M SORRY. TO ELEVENTH AMENDMENT SOVEREIGN

IMMUNITY. THAT WOULD APPLY TO THE SHERIFF.

WITH REGARD TO THE INDIVIDUAL DEFENDANTS, MS. KECK, WHAT WAS YOUR ARGUMENT WITH REGARD -- THERE ARE INDIVIDUAL SHERIFF'S DEFENDANTS?

**MS. KECK:** YES, YOUR HONOR. HE SUED THE INDIVIDUAL SHERIFF'S DEPUTIES INDIVIDUALLY. THE SOVEREIGN IMMUNITY APPLIES ONLY TO OFFICIAL CAPACITY. THEY'RE ALL SUED IN THEIR OFFICIAL CAPACITY, AS WELL AS PERSONAL CAPACITY. THE PERSONAL CAPACITY ARGUMENTS ARE QUALIFIED IMMUNITY ARGUMENTS. NO ALLEGED --

**THE COURT:** OKAY. THAT'S WHAT I THOUGHT.

TO THE EXTENT THAT THE LAWSUITS ARE AS TO THE SHERIFF'S DEFENDANTS IN THEIR OFFICIAL CAPACITY, YES, THEY ALL ENJOY ELEVENTH AMENDMENT IMMUNITY.

WITH REGARD TO ANY PERSONAL CAPACITY ALLEGATIONS, AND IT'S NOT CLEAR THAT THERE ARE ANY, THE QUALIFIED IMMUNITY ANALYSIS AT THIS TIME IS SIMPLY TOO EARLY TO APPLY. I HAVE NO IDEA WHO'S RESPONSIBLE FOR DOING WHAT IN PLAINTIFF'S VIEW. AND IT'S POSSIBLE TO RULE ON QUALIFIED IMMUNITY WITHOUT KNOWING WHAT THE SO-CALLED UNCONSTITUTIONAL ACTS IN AN INDIVIDUAL CAPACITY ARE ASSERTED AGAINST THE INDIVIDUAL SHERIFFS. SO THAT REMAINS IN THE CASE.

WITH REGARD TO THE 1983 CLAIMS, THERE WERE CLAIMS BASED UPON THE SEARCH OF THE HOME AT NIGHT, THE ARREST BY THE SONOMA COUNTY SHERIFFS OFFICIALS ARE -- OR OFFICERS. THERE

WAS AN ALLEGATION OF FAILURE TO PROPERLY TRAIN AND SUPERVISE. THOSE WERE THE THREE CLAIMS.

WITH -- WITH REGARD TO THE NIGHT SEARCH, THERE'S A FIRST, FOURTH, AND FOURTEENTH AMENDMENT ALLEGATION. I HAVE NO IDEA HOW THE FIRST OR FOURTEENTH AMENDMENT APPLIES TO THIS SEARCH AT ALL. NONE. IT SEEMS TO ME THAT THIS IS A FOURTH AMENDMENT SEARCH AND SEIZURE ALLEGATION BECAUSE IT BEGAN -- IT OCCURRED AT NIGHT.

DEFENSE IS CORRECT. THAT'S NOT ENOUGH. THERE HAS TO BE AN ALLEGATION THAT IT VIOLATES THE LAW. BECAUSE IT OCCURRED AT NIGHT DOES NOT MAKE IT UNLAWFUL. IT -- AS LONG AS IT COMMENCES BETWEEN 7:00 A.M. AND 10:00 P.M. AND THERE'S NO ALLEGATION IT DIDN'T COMMENCE BETWEEN THOSE HOURS.

YOU'LL BE GIVEN LEAVE TO AMEND WITH REGARD TO ANY FOURTH AMENDMENT VIOLATION.

WITH REGARD TO THE FIRST AMENDMENT, AS TO SONOMA COUNTY AND THE FOURTEENTH AMENDMENT, WHICH I ASSUMED WAS A DUE PROCESS VIOLATION BUT NOW YOU'VE SAID IS SOME KIND OF AN EQUAL PROTECTION VIOLATION, I'LL GRANT LEAVE TO AMEND AS WELL. IF YOU CAN STATE SOMETHING, FINE.

WITH REGARD TO THE ARREST, THERE ARE, ONCE AGAIN, NO ALLEGATIONS AS TO FIRST OR FOURTEENTH AMENDMENT -- NO ALLEGATIONS THAT WOULD SUPPORT A FINDING OF LIABILITY FOR VIOLATING THE FIRST OR THE FOURTEENTH AMENDMENT.

IT ALSO APPEARS TO ME TO BE A FOURTH AMENDMENT VIOLATION,

BUT I WILL GRANT LEAVE TO AMEND. AND IF YOU CAN AMEND TO STATE A 1983 VIOLATION UNDER ANY OF THOSE THREE CONSTITUTIONAL PROVISIONS, YOU MAY DO SO.

AND WITH REGARD TO THE FAILURE TO PROPERLY TRAIN AND SUPERVISE, THAT APPEARS TO ME TO BE DIVIDED INTO TWO CATEGORIES, TRAINING WITH REGARD TO HOW TO CONDUCT PROPER SEARCHES AND A TRAINING WITH REGARD TO BRADY VIOLATIONS. TO THE EXTENT THAT THE FAILURE TO PROPERLY TRAIN AND SUPERVISE BOTH POLICE AND PROSECUTORS IS BASED UPON A WITHHOLDING OF EVIDENCE, I'M GRANTING DISMISSAL. THERE IS NO BRADY VIOLATION. IT'S OUT OF THE CASE.

TO THE EXTENT THAT IT'S BASED UPON THE FAILURE TO PROVIDE TRAINING AS TO PROPER SEARCHES, IT WOULDN'T APPLY TO THE PROSECUTORS AT ALL, SO IT'S DISMISSED. THE PROSECUTORS ARE OUT OF THIS CLAIM.

TO THE EXTENT IT APPLIES TO THE POLICE, THERE HAS TO BE A SPECIFIC ALLEGATION, AND I DON'T FIND SUFFICIENT FACTS THAT WOULD ESTABLISH THIS VIOLATION BASED UPON WHAT'S CURRENTLY PLED, BUT THERE WILL BE LEAVE TO AMEND.

SO TO SUM UP, THE 1983 CLAIMS, THERE -- I WILL NOT RULE ON QUALIFIED IMMUNITY. I'VE RULED ON THE BRADY VIOLATION. IT'S OUT. I'VE RULED ON ELEVENTH AMENDMENT. THERE IS OFFICIAL CAPACITY IMMUNITY, SOVEREIGN IMMUNITY.

AND WITH REGARD TO THE CONSTITUTIONAL CLAIMS, THERE ARE THREE OF THEM ONLY -- NO, THERE'S ONLY THREE. THERE'S THE

NIGHT SEARCH. THERE'S THE ARREST. AND THERE'S THE FAILURE TO TRAIN.

**MS. KECK:** COUNT NO. 4 IS A 1983 CLAIM FOR WITHHOLDING EVIDENCE.

**THE COURT:** WELL, I'VE ALREADY DEALT WITH THAT.

**MS. KECK:** OKAY. SO THAT'S AT THE BEGINNING.

**THE COURT:** THAT'S PART OF BRADY. THAT'S OUT.

**MS. KECK:** THANK YOU.

**MS. DRAKE:** WHICH ARREST ARE WE REFERRING TO?

**MS. KECK:** THEIR --

**THE COURT:** THEIR ARREST. NOT --

(SIMULTANEOUS COLLOQUY.)

**MS. DRAKE:** I THOUGHT THIS -- THANK YOU.

**THE COURT:** NO, I'M DEALING WITH SONOMA FIRST.

ALL RIGHT. SO THERE'S THREE COMPONENTS TO THE 1983 CLAIM, THE NIGHT SEARCH, THE ARREST, AND THE FAILURE TO TRAIN AS TO PROPER SEARCHES. ALL RIGHT?

THE AMENDED COMPLAINT MUST SPECIFY TO WHICH DEFENDANTS THESE THREE ALLEGATIONS APPLY, AND THE COMPLAINT MUST SPECIFY WHAT CONSTITUTIONAL VIOLATION WAS COMMITTED BY EACH OF THE INDIVIDUAL OR ENTITY DEFENDANTS. EACH OF THE DEFENDANTS WHO'S NAMED MUST -- IT MUST BE SPELLED OUT IN THE BODY OF THE COMPLAINT WHAT THEY DID THAT GIVES RISE TO EITHER A FIRST, A FOURTH AMENDMENT OR A FOURTEENTH AMENDMENT VIOLATION.

IF THERE'S NO ALLEGATION, I'M DISMISSING IT WITHOUT ANY

FURTHER DISCUSSION. THERE NEEDS TO BE AN ALLEGATION AS TO EACH.

WITH REGARD TO THE STATE LAW CLAIMS, I FIND THAT THEY ARE BOTH TIME BARRED AND BARRED BY THE GOVERNMENTAL IMMUNITIES ASSERTED, AND THEY'RE ALL DISMISSED WITHOUT LEAVE TO AMEND.

WITH REGARD TO THE SONOMA DEFENDANTS' MOTION TO STRIKE, THE REFERENCES TO THE -- THE FFI IS GRANTED PURSUANT TO THE CALIFORNIA PENAL CODE SECTION 858.1.

THE -- THE MOTION TO STRIKE THE REFERENCES TO THE STATE BAR DISCIPLINARY ACTIONS AS TO FORMER DISTRICT ATTORNEY HALSEY IS GRANTED AS THEY ARE -- THE ALLEGATIONS ARE MORE THAN TEN YEARS OLD AND THERE'S NO ALLEGATIONS THAT HE WAS INVOLVED IN THIS CASE OR THAT THE D.A.'S IN THIS CASE WERE INVOLVED IN HIS CASE. IT'S DISMISSED WITH PREJUDICE, BOTH. THEY MAY NOT APPEAR IN ANY FURTHER COMPLAINT.

THE MOTION FOR MORE DEFINITE STATEMENT IS DENIED GIVEN THAT I'VE DISMISSED THE COMPLAINT IN ITS ENTIRETY WITH LEAVE TO AMEND AS TO THE 1983 CLAIMS ONLY. IS THAT CLEAR?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT.

NOW, TURNING TO SONOMA -- I'M SORRY -- PETALUMA DEFENDANTS, THE PETALUMA DEFENDANTS HAVE MOVED TO DISMISS THE 1983 CLAIMS ON THE SAME BASES AS -- FOR FAILURE TO STATE A CLAIM, AND I FIND THAT THAT IS A WELL-TAKEN MOTION. I HAVE NO IDEA SPECIFICALLY.

YOU COULD TELL FROM MY INTERCHANGE WITH MR. CANNON WITH REGARD TO THE TRAFFIC STOP. I DON'T EVEN KNOW WHAT HE'S ALLEGING. I WILL GIVE LEAVE TO AMEND. YOU HAVE TO -- YOU MAY NOT ADD CLAIMS. YOU MAY NOT ADD DEFENDANTS. YOU CAN SIMPLY AMEND TO ADD THE REQUISITE INFORMATION THAT'S NECESSARY TO ESTABLISH A CONNECTION BETWEEN A PARTICULAR DEFENDANT IN A PARTICULAR CONSTITUTIONAL VIOLATION UNDER EITHER THE FIRST, FOURTH, OR FOURTEENTH AMENDMENT.

THERE IS AN OVERRIDING PROBLEM WITH YOUR COMPLAINT WITH REGARD TO THE PUBLIC ENTITIES, MR. CANNON. AND THAT IS YOU'RE REQUIRED TO ESTABLISH LIABILITY UNDER A MONELL STANDARD. YOU HAVE NOT ASSERTED A MONELL STANDARD, AND IF YOU ARE UNABLE TO DO SO, I'M DISMISSING THE PUBLIC ENTITIES WITH NO FURTHER DISCUSSION WHEN I SEE YOUR COMPLAINT.

DO YOU UNDERSTAND THAT?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. AND WITH REGARD TO THE CHIEF OF THE PETALUMA POLICE DEPARTMENT, IT APPEARS TO ME GIVEN THERE WAS NO OPPOSITION TO DISMISSING HIM, THAT THERE'S NO REASON TO KEEP HIM IN THE CASE AND THAT YOU HAVE NO CLAIM AGAINST HIM.

YOU HAVE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS AND/OR THE MUNICIPALITY IF YOU CAN ESTABLISH A MONELL CLAIM.

**MR. CANNON:** YOUR HONOR, I WAS GOING FOR A FAILURE TO TRAIN CLAIM AGAINST THE CHIEF.

**THE COURT:** FAILURE TO TRAIN AS TO WHAT?

**MR. CANNON:** PROBABLE CAUSE.

**THE COURT:** AS TO PROBABLE CAUSE.

**MR. CANNON:** FOR THE VEHICLE STOP.

**THE COURT:** WELL, YOU HAVE -- WHAT ARE THE ALLEGATIONS THAT WOULD SUPPORT THAT?

**MR. CANNON:** I'VE MAY NOT HAVE PROPERLY SET THEM FORTH.

**THE COURT:** ALL RIGHT.

**MR. CANNON:** I CAN DO BETTER.

**THE COURT:** ALL RIGHT. THEN I WON'T DISMISS THE CHIEF WITH PREJUDICE AT THIS TIME. HE'LL REMAIN IN IT. WE'LL SEE WHAT YOUR AMENDED COMPLAINT LOOKS LIKE.

THE STATE CLAIMS ARE TIME BARRED, AND THEY'RE DISMISSED FOR STATUTE OF LIMITATIONS AS WELL AS GOVERNMENTAL IMMUNITY REASONS.

AND THE MOTION TO STRIKE THE PUNITIVE DAMAGES REQUEST IS DENIED, BUT THAT'S PRIMARILY BECAUSE OF THE FORM OF THE MOTION RULE 12(F) IS NO LONGER AVAILABLE TO DEFENDANTS TO STRIKE DAMAGES. YOU HAVE TO FILE A 12(B) MOTION TO STRIKE DAMAGES.

IF YOU FILE ANOTHER MOTION, YOU CAN INCLUDE THE PUNIES THEN AS WE ALL KNOW PUNITIVE DAMAGES ARE NOT AVAILABLE AS TO PUBLIC ENTITIES. THEY WOULD ONLY BE AVAILABLE AS TO INDIVIDUALS IN THEIR INDIVIDUAL CAPACITY IF LIABILITY WERE ESTABLISHED. BUT BECAUSE YOU HAVEN'T PROCEEDED UNDER THE

RIGHT PROCEDURAL VEHICLE, I CANNOT GRANT THE MOTION TO DISMISS. SO THAT'S DENIED.

**MR. CANNON:** YOUR HONOR, MAY IT PLEASE THE COURT, I JUST WON'T PLEAD THAT, THEN.

**THE COURT:** FINE.

**MR. CANNON:** IF IT'S --

**THE COURT:** YOU CAN WITHDRAW IT.

**MR. CANNON:** I'LL WITHDRAW. I DON'T WANT TO WASTE YOUR TIME.

**THE COURT:** ALL RIGHT. WE'LL INDICATE IN OUR ORDER YOU HAVE WITHDRAWN CLAIM FOR PUNITIVE DAMAGES.

**MR. CANNON:** AGAINST THE -- THE INSTITUTIONAL ENTITIES ONLY IN WHICH THEY DON'T APPLY.

**THE COURT:** AGAINST THE ENTITIES.

**MR. CANNON:** AGAINST THE ENTITIES, YES.

**THE COURT:** ALL RIGHT. SO LET ME MAKE IT CLEAR.

YOU HAVE, MR. CANNON, ONLY 1983 CLAIMS REMAINING. YOU'VE GOT THREE AGAINST THE COUNTY, AND YOU'VE GOT I GUESS THE SAME THREE AGAINST THE CITY TO THE EXTENT THAT YOU CAN ALLEGE THEM. I MEAN, YOU'VE ONLY GOT THE ARRESTS. THEY'RE DIFFERENT ARRESTS.

**MR. CANNON:** YES.

**THE COURT:** AND THE SEARCH ISN'T QUITE THE SAME, BUT YOU'VE GOT A SEARCH OR AN ARREST CLAIM AGAINST EACH. AND YOU'VE GOT THE -- THE -- YOU'VE GOT AN ARREST CLAIM AGAINST

EACH, A SEARCH CLAIM AGAINST EACH, AND A FAILURE TO TRAIN CLAIM AGAINST EACH, ONE FOR -- AND BOTH FOR IMPROPER SEARCHES AND ONE FOR PROBABLE CAUSE.

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** WHAT I SUGGEST THAT YOU DO IS TO WHEN YOU FILE YOUR COMPLAINT, THAT YOU SEPARATE OUT THE SONOMA DEFENDANTS FROM THE PETALUMA DEFENDANTS IN YOUR COMPLAINT, EVEN IF IT MEANS THAT YOU REPEAT THE THREE 1983 CLAIMS AGAINST EACH.

**MR. CANNON:** GOT IT.

**THE COURT:** NUMBER THE CLAIMS INDIVIDUALLY 1 THROUGH 3 AGAINST SONOMA 1 THROUGH -- OR 4 THROUGH 6 AGAINST THE -- THE CITY --

**MS. KECK:** PETALUMA.

**THE COURT:** -- AGAINST THE PETALUMA DEFENDANTS. AND WITHIN THOSE CATEGORIES, YOU MUST BE CLEAR AS TO WHO DID WHAT. IF THERE'S NO CONNECTION -- GIVEN THAT I'VE SPENT AN HOUR AND A HALF WITH YOU, IF THERE'S NO CONNECTION, I'M DISMISSING THEM.

**MR. CANNON:** I UNDERSTAND.

**THE COURT:** I'M NOT GOING TO HOLD A FURTHER HEARING ON IT. THE DEFENDANTS WILL HAVE -- YOU HAVE 28 DAYS FROM TODAY TO FILE YOUR AMENDED COMPLAINT. THE DEFENDANTS HAVE 21 DAYS TO -- WELL, NO, YOU HAVE 21 DAYS, BOTH SIDES GET THE SAME.

YOU GET 21 DAYS TO FILE YOUR AMENDED COMPLAINT, AND THE DEFENDANTS GET 21 DAYS TO FILE THEIR RESPONSE. THEY CAN EITHER FILE ANOTHER MOTION TO DISMISS OR AN ANSWER. IF THEY FILE ANOTHER MOTION TO DISMISS, I'M GOING TO RULE ON THE MOTION ON THE PAPERS.

YOU CAN FILE YOUR OPPOSITION TWO WEEKS AFTER THEY FILE THEIR MOTION. THEY FILE THEIR REPLY A WEEK AFTER THAT. THE MATTER WILL BE DEEMED SUBMITTED. I'M NOT HAVING ANY FURTHER HEARINGS ON THIS.

**MR. CANNON:** I UNDERSTAND.

**THE COURT:** YOU MAY NOT ADD DEFENDANTS OR CAUSES OF ACTION. IS THAT CLEAR?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT.

**MR. CANNON:** YOUR HONOR, IF I MAY, I DO WANT TO DO THIS RIGHT. IF I STIPULATE TO MORE TIME FOR THEM TO RESPOND TO THE AMENDED COMPLAINT, COULD I HAVE MORE TIME TO FILE?

**THE COURT:** NO.

**MR. CANNON:** OKAY.

**THE COURT:** NO. YOU MAY NOT HAVE MORE TIME TO FILE, AND I DON'T CARE IF YOU WANT TO STIPULATE TO A -- IT'S -- THE COURT'S NOT INVOLVED WITH ANY STIPULATIONS TO FILE ANY ANSWERS. I SET DEADLINES FOR THE PLEADINGS.

THE PARTIES -- THE RULES DON'T REQUIRE ME TO APPROVE WHETHER OR NOT YOU STIPULATE NOR MORE TIME.

**MR. CANNON:** OF COURSE NOT.

**THE COURT:** PEOPLE ARE ALWAYS ASKING ME TO APPROVE IT, BUT IT'S NOT REQUIRED BY THE LAW. YOU CAN STIPULATE TO WHATEVER YOU WANT IN TERMS OF THE RESPONSIVE PLEADINGS, BUT I'M SETTING A DEADLINE FOR YOU --

**MR. CANNON:** VERY GOOD, YOUR HONOR. THANK YOU.

**THE COURT:** -- TODAY.

THEIR DEADLINE IS ACTUALLY SET BY OPERATION OF THE LAW UNLESS THERE IS A STIPULATION.

**MR. CANNON:** VERY GOOD.

**THE COURT:** ALL RIGHT. IS THAT CLEAR?

**MR. CANNON:** YES, YOUR HONOR.

**THE COURT:** IS IT CLEAR TO YOU ALL?

**MS. KECK:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. ALL RIGHT. WE'RE ADJOURNED.

**MS. DRAKE:** THANK YOU, YOUR HONOR.

**MS. KECK:** YOUR HONOR, IF I MAY ADDRESS, THERE WAS ALSO A CMC THAT WAS SET FOR HEARING TODAY. IS THAT JUST DEEMED OF CALENDAR?

**THE COURT:** THAT'S OFF CALENDAR UNTIL THE PLEADINGS ARE SET. I'M NOT GOING TO RESCHEDULE IT UNTIL I HAVE PLEADINGS AND AN ANSWER.

**MS. KECK:** THANK YOU.

AND IN CONNECTION WITH OUR REQUEST, YOUR HONOR HAS STAYED DISCOVERY. COULD WE ALSO HAVE DISCOVERY CONTINUED TO BE

STAYED UNTIL THE --

**THE COURT:** DISCOVERY IS STAYED UNTIL THE CMC.

**MR. CANNON:** YEAH.

**THE COURT:** DISCOVERY IS STAYED UNTIL CASE MANAGEMENT CONFERENCE AUTOMATICALLY.

**MS. KECK:** THANK YOU VERY MUCH.

**THE COURT:** OKAY. ANYTHING ELSE?

**MR. CANNON:** NO, YOUR HONOR. THANK YOU.

**THE COURT:** ALL RIGHT.

**MS. DRAKE:** THANK YOU.

(PROCEEDINGS WERE CONCLUDED AT 10:40 A.M.)

--OOO--

**CERTIFICATE OF REPORTER**

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER. I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

Raynee H. Mercado

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

THURSDAY, OCTOBER 24, 2013